IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INSITUFORM TECHNOLOGIES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AMERICAN HOME ASSURANCE COMPANY, ) <br> ) <br> Defendant. ) | Case No. 04 10487 GAO |

**MEMORANDUM IN SUPPORT OF INSITUFORM'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Insituform Technologies, Inc. ("Insituform"), by its attorneys, states the following in support of its motion for summary judgment as to Count II against defendant American Home Assurance Company ("American Home"):

**INTRODUCTION**

Insituform suffered a contractor's rework loss with respect to work and product rejected by the Massachusetts Water Resources Authority on the East Boston Basin Sewer Project (the "MWRA Claim"). Insituform's primary general liability insurance contains a coverage endorsement known as the "Contractor Rework Coverage Amendment." Insituform notified both its primary carrier and excess carrier, American Home, that it was seeking indemnification under the Contractor Rework Coverage Amendment for the MWRA Claim. But American Home denied coverage. American Home claimed that its excess liability insurance policy does not follow form to the primary policy's Contractor Rework Coverage Amendment.

Insituform now seeks a declaration that American Home erroneously denied the MWRA claim because the excess policy follows form to the Contractor Rework Coverage Amendment in the primary policy.

## UNDISPUTED MATERIAL FACTS

### Insituform's Insurance Program

Insituform purchased primary comprehensive general liability insurance from Liberty Mutual Insurance Company ("Liberty"). Motion ¶ 1[1]. Specifically, Liberty issued Insituform insurance policy no. RG2-641-004218-33 effective July 1, 2003 to July 1, 2004 with limits of liability of $1,000,000 per occurrence and $2,000,000 products-completed operations aggregate limit (the "Primary Policy"). Motion ¶ 2, Exhibit A.

Insituform and Liberty expanded coverage under the Primary Policy by including the "Contractor Rework Coverage Amendment," which provides in relevant part:

> We will pay those sums which you become legally obligated to pay for the required removal or repair of "your product" or "your work" including concrete, cement, sand or aggregate, concrete blocks, concrete products or other products manufactured, sold, handled or distributed by or on behalf of the Insured which are defective, subject to the limits of liability and deductible and the provisions specified below:
>
> The amount we will pay under this coverage shall be limited to the lessor of:
>
> 1.    Your actual cost of removing and replacing any of the above items; or

---

[1] Insituform's motion contains the required Local Rule 56.1 Statement of uncontested material facts at ¶¶ 1-13. Reference is made in this memorandum to those facts by "Motion ¶ __" and "Motion Exhibit __."

2. Your actual cost of remedial action taken to avoid removal or replacement of such products.

We will also pay damages for the loss of use of real property and/or consequential business interruption resulting from necessary removal, replacement or remedial action taken to avoid removal or repair of "your product" or "your work".

This coverage shall not apply unless the defect requiring removal or repair of "your work" or "your product" results from an error in the design, prescription, manufacture, blending, mixing or compounding of such work or product and the repair, replacement or removal is made necessary because such work or product has been rejected by the owner, his authorized representative, or a municipality or other authority having jurisdiction.

Defective shall mean that upon testing by an accredited, independent testing agency, "your work" or "your product" does not meet the contractual specifications or accepted standards required for the specific construction in which such materials were incorporated.

Coverage provided under this endorsement shall be subject to all exclusions applicable to "property damage", except exclusions j.(5), j.(6), k., l., m. and n.

*   *   *

| | |
|---|---|
| Limits of Liability: | $1,000,000 per occurrence |
| | $1,000,000 aggregate |
| Deductible | $ 250,000 per occurrence |
| Premium | Included in GL Premium |

Motion Exhibit A at I-87 and 88.

Insituform purchased umbrella excess liability insurance from American Home. Motion ¶ 3. Specifically, American Home issued policy BE 3206923 effective July 1, 2003 to July 1, 2004 with limits of liability of $25,000,000 per occurrence and in the aggregate excess of scheduled primary insurance (the "Excess Policy").

Motion ¶ 4, Exhibit B. The Primary Policy is one of the scheduled primary policies on the Excess Policy. Motion Exhibit B at I-122.

While the Excess Policy is a true "umbrella" policy having its own terms and conditions, Insituform and American Home amended the Excess Policy by endorsement so that it would follow form to specific coverages in the Primary Policy. For instance, the Primary Policy attaches an endorsement that provides employee benefits liability insurance on a claims made basis. Motion Exhibit A at I-54. Endorsement No. 7 of the Excess Policy, titled "Employee Benefits Liability Follow Form Endorsement," extends coverage for employee benefit claims on a following form basis if such coverage is provided in the scheduled underlying coverage. Motion Exhibit B at I-143.

Likewise, the Primary Policy's definition of "Coverage Territory" originally covered "the United States of American (including its territories and possessions), Puerto Rico and Canada." Motion Exhibit A at I-22. By endorsement, the Primary Policy's coverage territory was expanded to "Anywhere in the world [subject to certain limitations]...." Motion Exhibit A at I-41. Endorsement No. 8 to the Excess Policy causes the Excess Policy to follow form to the Primary Policy with respect to the coverage territory. Motion Exhibit B at I-144.[2]

In the same way, the Excess Policy follows form to the Contractor Rework Coverage Amendment in the Primary Policy. Endorsement No. 4 of the Excess

---

[2] The coverage territory in the Excess Policy was originally "anywhere in the world [without limitation]," Motion Exhibit B at I-106. By endorsing the policy to follow form to the Primary Policy's coverage territory, Endorsement No. 8 limits or narrows the coverage under the Excess Policy. Hence the name, "Foreign Liability Limitation Endorsement." Motion Exhibit B at I-144.

4

Policy is titled the "Contractor's Endorsement." The Contractor's Endorsement sets forth various "Excluded Hazards" and "Follow Form Hazards" and then provides the same following form exception as in Endorsements 7 and 8:

> However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:
>
> 1.  This exclusion shall not apply; and
>
> 2.  The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance. (Bold face in original.)

Motion Exhibit B, at I-134. As a result, Excess Policy follows form to the Primary Policy with respect to the Contractor Rework Coverage Amendment, just as Endorsements 7 and 8 follow form to the Primary Policy's coverage relating, respectively, to Employee Benefits Liability and the Coverage Territory.

### American Home's Denial Of The MWRA Claim

On December 29, 2003, Insituform provided notice of the MWRA Claim to American Home. Motion ¶ 6. In response, American Home denied any duty to indemnify Insituform. Motion ¶ 7 and Exhibit C. American Home based its February 13, 2004 denial solely on the American Home policy jacket and made no reference to the Contractor Rework Coverage Endorsement or the Contractor's Endorsement. Motion Exhibit C.

Insituform demanded that American Home withdraw the denial for the MWRA Claim. Motion ¶ 7. Thereafter, American Home denied coverage for the MWRA Claim a second time, because the Excess Policy does not follow form to the

Primary Policy under the Contractor's Endorsement with respect to the MWRA Claim. Motion ¶ 9.

## ARGUMENT

I. **THE CONTROLLING LAW AND STANDARDS OF REVIEW**

The pleadings and contracts in this insurance coverage dispute present undisputed facts that the Court can resolve as a matter of law. As such, Insituform is entitled to summary judgment against American Home on Count II and a declaration that the Excess Policy follows form to the Primary Policy's Contractor Rework Coverage Amendment.

A. **Declaratory Judgment Is Ripe For Adjudication.**

Interpretation of insurance contracts presents a question of law for the court. *Hobbs v. Farm Bureau Town & Country Ins. Co. of Missouri*, 965 S.W.2d 194, 196 (Mo. Ct. App. 1998); *Assetta v. Safety Ins. Co.*, 43 Mass. App. Ct. 317, 318, 682 N.E.2d 931, 932 (Mass. App. Ct. 1997).[3] A Court does not consider parol evidence, such as affidavit testimony or drafting history, to contradict terms of an unambiguous contract.[4] *See, e.g., Mercantile Bank of St. Louis v. Benny*, 978 S.W.2d 840, 844 (Mo. Ct. App. 1998); *ITT Corp. v. LTX Corp.*, 926 F.2d 1258, 1261 (1st Cir. 1991)(Massachusetts law). Here, the relevant policies and denials are properly before the court. No other information is relevant, let alone material, to the interpretation of the insurance policies.

---

[3] Because rules of interpretation of insurance contracts are substantially similar under Massachusetts law and Missouri law, the choice of law issue need not be resolved for purposes of this Motion.

[4] Consistent with this rule, American Home admits that the Excess Policy "speaks for itself." American Home Answer ¶ 11.

B.   **Insurance Contract Interpretation.**

Insurance contracts are to be interpreted as any other contract, and words are to be given their usual and ordinary meaning. *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 210 (Mo. 1992); *Hakim v. Mass. Insurers' Insolvency Fund*, 424 Mass. 275, 280-81, 675 N.E.2d 1161, 1164 (Mass. 1997). Courts should give effect to all of the provisions in the contract, so as not to render any clause or word meaningless. *Brugioni v. Maryland Cas. Co.*, 382 S.W.2d 707, 712 (Mo. 1964); *Starr v. Fordham*, 420 Mass. 178, 190, 648 N.E.2d 1261, 1269 (Mass. 1995).

When an insurance contract is ambiguous and subject to more than one reasonable interpretation, the contract is construed against the insurer. *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d at 210 ("Where provisions of an insurance policy are ambiguous, they are construed against the insurer"); *Hakim v. Mass. Insurers' Insolvency Fund*, 675 N.E.2d at 1165 ("Where ... there is more than one rational interpretation of policy language, 'the insured is entitled to the benefit of the one that is more favorable to it.'") (citations omitted). This principle applies "with added rigor in determining the meaning of exclusionary provisions." *Merchants Ins. Co. of New Hampshire, Inc. v. United States Fidelity and Guaranty Co.*, 143 F.3d 5, 8 (1st Cir. 1998); *Warren Davis Properties V, L.L.C. v. United Fire & Casualty Co.*, 111 S.W.3d 515, 522 (Mo. Ct. App. 2003) ("In Missouri, exclusionary clauses are strictly construed against the insurer, and if the clause is ambiguous, it will be construed favorably to the insured.").

When interpreting contracts for insurance, insuring provisions are interpreted broadly, while exclusions are interpreted narrowly. *Harrison v. Tomes*, 956 S.W.2d 268, 270 (Mo. 1997); *Bates v. John Hancock Mut. Life Ins. Co.*, 6 Mass.App.Ct. 823, 370 N.E.2d 1386, 1387 (Mass. App. Ct. 1978); *Martin v. Salem Marine Ins. Co.*, 2 Mass. 420, 425, 1807 WL 675, *3 (Mass. 1807).

## II. THE EXCESS POLICY FOLLOWS FORM TO THE PRIMARY POLICY'S CONTRACTOR REWORK COVERAGE AMENDMENT

American Home did not deny coverage because the facts of the claim do not fall within the insuring provision of the Contractor Rework Coverage Amendment. Motion Exhibit C and American Home Answer ¶¶ 27-28. Rather, American Home contends that the Excess Policy does not follow form to the Contractor Rework Coverage Amendment in the Primary Policy. American Home Answer ¶ 24. But the plain language of the Excess Policy contradicts American Home.

### A. The Follow Form Endorsements.

Three separate endorsements in the Excess Policy cause the Excess Policy to follow form to specific Primary Policy coverages. Each endorsement contains an identical structure and wording, so that when the policy is read as a whole there is no question that American Home's Contractor's Endorsement causes the Excess Policy to follow form to the Contractor Rework Coverage Amendment in the Primary Policy.

### 1. American Home's Employee Benefit Follow-Form Endorsement.

The Primary Policy attaches an endorsement that provides employee benefits liability insurance on a claims made basis. Motion Exhibit A at I-54. Endorsement No. 7 of the Excess Policy, titled "Employee Benefits Liability Follow Form Endorsement," extends coverage for employee benefit claims on a following form basis if such coverage is provided in the scheduled underlying coverage. Motion Exhibit B at I-143.

The structure and wording of American Home's Endorsement No. 7 (the "Employee Benefits Liability Following Form Endorsement") is significant. First, the endorsement sets forth an exclusion that is duplicative of exclusions A and B in the umbrella jacket. Motion Exhibit B at I-112 and 143. Then the endorsement excepts the redundant exclusion as follows:

> However, if insurance for such **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** is provided by a policy listed in the Schedule of Underlying Insurance:
>
> 1. This exclusion shall not apply;
>
> 2. The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance. (Bold face in original.)

Motion Exhibit B at I-143. This exception causes the Excess Policy to follow form to employee benefits coverage if such coverage is provided by scheduled underlying insurance, and qualifies the exception that the additional coverage will not be broader than the coverage provided by the primary. Motion Exhibit B at I-143. Hence the title of endorsement No. 7, "Following Form Endorsement."

American Home used a similar structure and identical wording to cause the Excess Policy to follow form to the Primary Policy in two other contexts: coverage territory and contractors rework.

### 2. American Home's Foreign Liability Limitation Endorsement.

The Primary Policy's definition of "Coverage Territory" originally covered "the United States of America (including its territories and possessions), Puerto Rico and Canada," but was expanded to "Anywhere in the world…[with some limitations]" Motion Exhibit A at I-22 and 41. The Excess Policy's coverage territory was "anywhere in the world [with no limitations]." Motion Exhibit B at I-106. Endorsement No. 8 to the Excess Policy, titled "Foreign Liability Limitation Endorsement," causes the Excess Policy to follow form to the Primary Policy with respect to the coverage territory. Motion Exhibit B at I-144. It employs the same structure and wording as the Employee Benefits Liability Follow Form Endorsement.

First, the Foreign Liability Limitation Endorsement contains an exclusion that limits the coverage territory to "the United States of America, its territories and possessions, Puerto Rico and Canada." Motion Exhibit B at I-144. Then comes the same exception/follow form language:

> However, if insurance for such **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** is provided by a policy listed in the Schedule of Underlying Insurance:
>
> 1.   This exclusion shall not apply;

10

> 2. The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance. (Bold face in original.)

Motion Exhibit B at I-144. Again, this exception causes the Excess Policy to follow form to the underlying coverage territory if such coverage is provided by scheduled underlying insurance, and qualifies the exception that the additional coverage will not be broader than the coverage provided by the primary. Motion Exhibit B at I-144. American Home used the same structure and language to follow form to the Contractor Rework Coverage Amendment.

### 3. American Home's Contractor's Endorsement.

Comprehensive general liability insurance usually excludes claims for the insured's work or product. The standardized policy jackets for both policies at issue contained such standard exclusions. Motion Exhibit A at I-11 and Exhibit B at I-112. However, the Primary Policy contained an endorsement that provided coverage for defective work performed or product installed by Insituform, the Contractor Rework Coverage Amendment. Motion Exhibit A at I-87.

Just like the employee benefits coverage and the coverage territory, the Excess Policy was amended by endorsement to follow form to the Contractor Rework Coverage Amendment. American Home did so by employing the same structure and language as in Endorsements Nos. 7 and 8.

First, Endorsement No. 4, titled "Contractor's Endorsement," sets forth redundant exclusions such as "**Property Damage** to property being installed, erected or worked upon by the **Insured**...(boldface in original)" Motion Exhibit B at

11

I-134. Then American Home employed the same exception/follow form language as used in Endorsement Nos. 7 and 8:

> However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:
>
> 1. This exclusion shall not apply;
>
> 2. The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance. (Bold face in original.)

Motion Exhibit B at I-134. Again, this exception causes the Excess Policy to follow form to the underlying contractor's rework coverage if such coverage is provided by scheduled underlying insurance, and qualifies the exception that the additional coverage will not be broader than the coverage provided by the primary.

When read as a whole, the plain language of the Excess Policy's Contractor's Endorsement unambiguously follows form to the Primary Policy's Contractor Rework Coverage Amendment. Any attempt to interpret the Excess Policy otherwise contradicts the plain language of the policy, which American Home admits "is a document whose terms and conditions speak for themselves." American Home Answer ¶ 11; *Gould, Inc. v. Arkwright Mutual Ins. Co.*, 907 F. Supp. 103, 107 (M.D. Pa. 1995).

> In *Gould*, the umbrella policy at issue contained the following language:
>
> I. This policy shall not apply, *unless insurance is provided by a policy listed in the schedule of underlying insurance, and then for no broader coverage than is afforded by such insurance*:
>
> VI. to any liability of any INSURED arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the

>   atmosphere or any watercourse or body of water unless such discharge, dispersal, release or escape is sudden and accidental. (Emphasis added)

*Gould*, 907 F. Supp. at 106 and 107. The court had ruled that policies with pollution exclusions akin to the one set forth under "VI" above, did not cover the environmental claim at issue. Other policies with different pollution exclusion wording, such as the one in the scheduled underlying primary policy, provided coverage. The court ruled that the qualifying language, in italics above, caused the umbrella policy to follow form to the primary so that the "sudden and accidental" pollution exclusion did not apply. Specifically, the court found that language highlighted with italics had the following impact:

>   While it is true that the [umbrella] policy cannot give broader coverage than that listed in the underlying [primary] policy, it is also true that the [umbrella] policy cannot void coverage given the insured under the [primary] policy....Whatever [the primary] policy gave the insured will be applicable in [the umbrella] policy. The only limitation is that the coverage cannot be broader than the [primary] policy.

*Gould*, 907 F. Supp. at 107.

Here, American Home's Excess Policy employs virtually the same language and structure to achieve the same result. A variety of Contractor related risks, such as damage to the Insituform's product and liability assumed under contract, do not apply and whatever the Liberty Primary Policy gave Insituform will be applicable in American Home's Excess Policy. "The only limitation is that the coverage cannot be broader than the [primary] policy."

13

Therefore, Insituform is entitled to summary judgment as to Count II and a declaration that the Excess Policy follows form to the Primary Policy with respect to the Contractor Rework Coverage Amendment in the Primary Policy.

## CONCLUSION

For the reasons stated above, Insituform prays for summary judgment in its favor and against American Home on Count II and a declaration that American Home's Excess Policy follows form to the Contractor Rework Coverage Amendment in the Primary Policy.

>Respectfully submitted,
>
>INSITUFORM TECHNOLOGIES, INC.
>
>By: _____
>Stanley A. Martin
>Holland & Knight LLP
>10 St. James Avenue
>Boston, Massachusetts 02116
>(617) 523-2700

Of counsel:

Charles L. Philbrick
Eric Robben
Holland & Knight LLP
131 S. Dearborn St., 30th Floor
Chicago, Illinois 60603-5547
(312) 263-3600

Dated: May 10, 2004

# 1859900_v4