**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| INSITUFORM TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-10487GAO |
| | ) | |
| AMERICAN HOME ASSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

# PART II TO EXHIBIT B TO
# AFFIDAVIT OF LAWRENCE B. BUTLER

ENDORSEMENT No. 3

This endorsement, effective 12:01 AM:   July 1, 2003

Forms a part of policy no:   BE    3206923

Issued to:   INSITUFORM TECHNOLOGIES, INC, ETAL

By:   AMERICAN HOME ASSURANCE COMPANY

### Commercial Umbrella Policy Form

### ISO 2001 Changes Endorsement

This policy is amended as follows:

I.   **Section I. Coverage** is amended by adding the following:

This policy applies to **Bodily Injury**, **Property Damage, Personal Injury or Advertising Injury** only if prior to the Policy Period, no **Insured** shown in Paragraph E.2., E.3., E.4., and E.5. of **Section IV. Definitions,** no officer, no manager in your risk management, insurance or legal department and no employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part, or that an **Occurrence** had been committed that caused **Personal Injury** or **Advertising Injury**.   If such an **Insured**, manager or authorized employee knew, prior to the Policy Period, that the **Bodily Injury** or **Property Damage** had occurred or that an **Occurrence** had been committed that caused **Personal Injury** or **Advertising Injury,** then any continuation, change or resumption of such **Bodily Injury, Property Damage** or **Personal Injury** or **Advertising Injury** during or after the Policy Period will be deemed to have been known prior to the Policy Period.

**Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** will be deemed to have been known to have occurred at the earliest time when any **Insured** shown under Paragraphs E.2., E.3., E.4., and E.5. of **Section IV. Definitions,** any officer, any manager in your risk management, insurance or legal department or any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit:**

1.   Reports all, or any part, of the **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to us or any other insurer;

2.   Receives a written or verbal demand or claim for damages because of the **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury**; or

3.   Becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur or an **Occurrence** has been committed that has caused or may cause **Personal Injury** or **Advertising Injury**.

II.   **Section IV. Definitions** is amended as follows:

**Section IV. Definitions** is amended to include the following additional definitions:

**Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

© 2002 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

81513 (03/03)
AH1011

I 00131

1. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

2. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**Volunteer Worker(s)** means a person who is not your employee and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**Section IV. Definitions** is amended by deleting subparagraphs 4 and 5 of Paragraph I. **Personal Injury** and replacing them with the following:

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services; or

5. Oral or written publication, in any manner, of material that violates a person's right of privacy.

**Section IV. Definitions** is amended by deleting subparagraphs 3. and 4. of Paragraph A. **Advertising Injury** and replacing them with the following:

3. The use of another's advertising idea in your **Advertisement; or**

4. Infringement upon another's copyright, trade dress or slogan in your **Advertisement.**

**Section IV. Definitions** is amended by adding the following to Paragraph K. **Property Damage:**

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**Section IV. Definitions** is amended by adding the following subparagraphs 9.,10. and 11. to Paragraph E. **Insured:**

9. If you are designated in the Declarations as a trust, you are an **Insured.** Your trustees are also **Insureds,** but only with respect to their duties as trustees.

10. Your **Volunteer Workers** only while performing duties related to the conduct of your business.

11. If you are a limited liability company, you are an **Insured.** Your members are also **Insureds,** but only with respect to the conduct of your business. Your managers are **Insureds,** but only with respect to their duties as your managers.

III. **Section V. Exclusions** is amended as follows:

**Section V. Exclusions,** Paragraph D., subparagraph 1. is deleted and replaced by the following:

© 2002 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

81513 (03/03)
AH1011

**I 00132**

1. Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**Section V. Exclusions**, Paragraph J. is amended by adding the following:

This exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the **Occurrence** which caused the **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any **Insured**.

**Section V. Exclusions**, Paragraph K. is amended by adding the following:

5. Committed by an Insured whose business is:
   a. designing or determining content of web-sites for others; or
   b. An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs I.1., I.2. and I.3. of **Section IV. Definitions**.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**Section V. Exclusions** is amended to include the following additional exclusions:

This insurance does not apply to:

**Personal Injury** or **Advertising Injury** arising out of an electronic chatroom or bulletin board the **Insured** hosts, owns, or over which the **Insured** exercises control.

This insurance does not apply to:

**Personal Injury** or **Advertising Injury** arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your **Advertisement**, of copy right, trade dress or slogan.

This insurance does not apply to:

**Personal Injury** or **Advertising Injury** arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

All other terms and conditions of this policy remain unchanged.

_____
**Authorized Representative**

© 2002 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

81513 (03/03)
AH1011

I 00133

**ENDORSEMENT No. 4**

This endorsement, effective 12:01 AM:   July 1, 2003

Forms a part of policy no.:   BE    3206923

Issued to:   INSITUFORM TECHNOLOGIES, INC, ETAL

By:   AMERICAN HOME ASSURANCE COMPANY

## CONTRACTOR'S ENDORSEMENT

### Excluded Hazards

This insurance does not apply to:

1. **Property Damage** to any property or equipment leased by the **Insured**;

2. **Property Damage** to property being installed, erected or worked upon by the **Insured** or by any agents or subcontractors of the **Insured**;

3. **Bodily Injury** or **Property Damage** arising out of any project insured under a "wrap-up" or any similar rating plan; or

4. **Bodily Injury** or **Property Damage** arising out of any professional services performed by or on behalf of the **Insured**, including but not limited to the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications, and any supervisory, inspection or engineering services.

### Following Form Hazards

It is further agreed that this insurance does not apply to:

1. **Property Damage** arising out of:

   a. Blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment;

   b. The collapse of or structural injury to any building or structure due to:

      1) the grading of land, paving, excavating, drilling, burrowing, filling, back-filling, tunneling, pile driving, coffer-dam or caisson work;

      2) the moving, shoring, underpinning, raising, or demolition of any building or structure, or the removal or rebuilding of any structural support thereof, or

   c. Damage to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling or pile driving; or

2. Any liability assumed by the **Insured** under any contract or agreement.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

1. This exclusion shall not apply; and

2. The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

03)

**I 00134**

**ENDORSEMENT No. 5**

This endorsement, effective 12:01 AM:  July 1, 2003

Forms a part of policy no.:  BE    3206923

Issued to:  INSITUFORM TECHNOLOGIES, INC, ETAL

By:  AMERICAN HOME ASSURANCE COMPANY

## Commercial Umbrella Policy

### CrisisResponse[SM] and Excess Casualty CrisisFund[SM]

### (Advancement of CrisisResponse Costs during a Crisis Management Event and Crisis Communications Management Insurance )

### Additional Declarations

| | | |
|---|---|---|
| Item 1. **CrisisResponse Sublimit of Insurance:** $250,000 | | **Each Crisis Management Event And Aggregate** |
| Item 2. **Crisis Management Limit of Insurance:** $50,000 | | **Each Crisis Management Event And Aggregate** |
| Item 3. **Premium:** | INCLUDED | |

This policy is amended to provide for Advancement of **CrisisResponse** Costs during a **Crisis Management Event** and Crisis Communications Management Insurance pursuant to the terms, definitions, conditions and exclusions set forth below:

---

### I. INSURING AGREEMENTS-CrisisResponse and Excess Casualty CrisisFund

The following insuring agreements section is added to this policy for the purpose of the coverage provided by this endorsement:

A.  **Advancement of CrisisResponse Costs during a Crisis Management Event**

We will advance on behalf of the **Named Insured CrisisResponse Costs** that may be associated with damages covered by this policy arising from a **Crisis Management Event** first commencing during the Policy Period, up to the amount of the **CrisisResponse Sublimit of Insurance.**

We will advance **CrisisResponse Costs** that may be associated with damages covered by this policy directly to third parties.

B.  **Crisis Communications Management Insurance**

We will pay on behalf of the **Named Insured Crisis Management Loss** arising from a **Crisis Management Event** first commencing during the Policy Period, up to the amount of the **Crisis Management Limit of Insurance .**

C.  A **Crisis Management Event** shall first commence at the time during the Policy Period when a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** and shall end at the earliest of the time when we determine that a crisis no longer exists or when the **CrisisResponse Sublimit of Insurance** and/or the **Crisis Management Limit of Insurance** , whichever applies, has been exhausted.

I 00135

D.  There shall be no Retained Limit applicable to **CrisisResponse Costs** or **Crisis Management Loss**. We shall pay such **CrisisResponse Costs** or **Crisis Management Loss** from first dollar, subject to the other terms and conditions of this endorsement.

---

## II. LIMITS OF INSURANCE

The following provisions are added to Section III. Limits of Insurance for the purpose of the coverage provided by this endorsement:

A.  The **CrisisResponse Sublimit of Insurance** is the most we will pay for all **CrisisResponse Costs** under this policy, regardless of the number of **Crisis Management Events** first commencing during the Policy Period. This **CrisisResponse Sublimit of Insurance** shall be part of, not in addition to, the Limits of Insurance shown in Item 3 of the Declarations of this policy.

B.  The **Crisis Management Limit of Insurance** is the most we will pay for all **Crisis Management Loss** under this policy, regardless of the number of **Crisis Management Events** first commencing during the Policy Period. This **Crisis Management Limit of Insurance** shall be in addition to the Limits of Insurance shown in Item 3 of the Declarations of this policy.

C.  We will have no obligation to advance **CrisisResponse Costs** or to pay **Crisis Management Loss** from the earliest of the time when we determine that a **Crisis Management Event** has ended or when the **CrisisResponse Sublimit of Insurance** and/or the **Crisis Management Limit of Insurance**, whichever applies, has been exhausted.

---

## III. DEFINITIONS

The following definitions are added to Section IV. Definitions for the purpose of the coverage provided by this endorsement:

A.  **Crisis Management Event** means an **Occurrence** that in the good faith opinion of a **Key Executive** of the **Named Insured**, in the absence of **Crisis Management Services**, has reasonably been associated with or may be associated with:

   1.   damages covered by this policy that are in excess of the Retained Limit applicable to such damages; and

   2.   significant adverse regional or national media coverage.

   **Crisis Management Event** shall include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals.

B.  **Crisis Management Firm** means any public relations firm or crisis management firm approved by us that is hired by the **Named Insured** to perform **Crisis Management Services** in connection with a **Crisis Management Event**. Attached to and forming a part of this endorsement is a Schedule of firms that have been pre-approved by us and may be hired by the **Named Insured** without further approval by us.

C.  **Crisis Management Limit of Insurance** means the Crisis Management Limit of Insurance shown in Item 2 of the Additional Declarations of this endorsement.

D.  **Crisis Management Loss** means the following amounts incurred during a **Crisis Management Event**:

   1.   Amounts for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Named Insured** solely arising from a covered **Crisis Management Event**; and

**I 00136**

2.   Amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Named Insured** or a **Crisis Management Firm** incurred at the direction of a **Crisis Management Firm**, solely arising from a covered **Crisis Management Event**.

E.   **Crisis Management Services** means those services performed by a **Crisis Management Firm** in advising the **Named Insured** on minimizing potential harm to the **Named Insured** from a covered **Crisis Management Event** by maintaining and restoring public confidence in the **Named Insured**.

F.   **CrisisResponse Costs** means the following reasonable and necessary expenses incurred during a **Crisis Management Event** directly caused by a **Crisis Management Event**, provided that such expenses have been pre-approved by us and may be associated with damages that would be covered by this policy:

1.   Medical expenses;

2.   Funeral expenses;

3.   Psychological counseling;

4.   Travel expenses;

5.   Temporary living expenses;

6.   Expenses to secure the scene of a **Crisis Management Event**; and

7.   Any other expenses pre-approved by the Company.

**CrisisResponse Costs** will not include defense costs or **Crisis Management Loss**.

G.   **CrisisResponse Sublimit of Insurance** means the CrisisResponse Sublimit of Insurance shown in Item 1 of the Additional Declarations of this endorsement.

H.   **Key Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the **Named Insured** is a partnership) of the **Named Insured** or sole proprietor (if the **Named Insured** is a sole proprietorship). A **Key Executive** also means any other person designated as such and scheduled by written endorsement.

---

## IV.  EXCLUSIONS

The following exclusions are added to Section V. Exclusions for the purpose of the coverage provided by this endorsement:

This insurance shall not apply to any **CrisisResponse Costs** or **Crisis Management Loss** in connection with a **Crisis Management Event**:

A.   arising out of, based upon or attributable to the facts alleged, or to the same or related acts alleged or contained, in any crisis or claim that has been reported, or in any circumstances where notice has been given, under any policy of which (i) this policy is a renewal or replacement or which it may succeed in time, or (ii) any underlying policy, which is listed in the Schedule of Underlying Insurance, is a renewal or replacement or which it may succeed in time;

B.   arising out of, based upon or attributable to any pending or prior crisis, claim, or **Suit** as of the inception date of this policy.

---

## V.  CONDITIONS

The following conditions are added to Section VI. Conditions for the purpose of the coverage provided by this endorsement:

**I 00137**

A.  You must report any **Crisis Management Event** to us within twenty-four (24 ) hours of the time that a **Key Executive** first becomes aware of an **Occurrence** that gives rise to a **Crisis Management Event** to be eligible for the advancement of **CrisisResponse Costs** and the payment of **Crisis Management Loss**.

Notice of a **Crisis Management Event** may be given by calling 1-877-AIG-3100. If notice is given by telephone, written notice shall be given as soon as practicable thereafter. Written notice should include:

1.  how, when and where the **Crisis Management Event** is taking or took place;

2.  the names and addresses of any injured persons and any witnesses; and

3.  the nature and location of any injury or damage arising out of the **Crisis Management Event**.

Written notice should be mailed or delivered to:

> AIG Excess Casualty Claim Department
> 70 Pine Street
> New York, NY 10270

B.  There shall be no requirement that you obtain prior written approval from us before incurring any **Crisis Management Loss**, provided that the **Crisis Management Firm** selected by you to perform the **Crisis Management Services** has been approved by us. If you choose to retain a firm that does not appear in the Schedule attached to and forming a part of this endorsement, you must obtain our consent, which shall remain in our sole discretion, prior to retaining the services of such firm.

C.  Any payments for **Crisis Management Loss** or advancement of **CrisisResponse Costs** that we make under this endorsement:

1.  shall not be deemed to be a determination of the **Insured's** liability with respect to any claim or **Suit** that results from a **Crisis Management Event**; and

2.  shall not create any duty to defend any **Suit** or to investigate any claim arising from a **Crisis Management Event**, nor any coverage obligations under this policy.

D.  If the Crisis Communications Management Insurance provided by this endorsement and any other insurance issued to the **Named Insured** by us or any of our affiliated companies shall apply to the same crisis or claim, the maximum limit of insurance under all insurance available shall not exceed the highest applicable limit of insurance available under any one policy or endorsement. This condition does not apply to any other insurance issued by us or any of our affiliated companies specifically to apply as excess insurance over this endorsement.

E.  In the event of a dispute between the **Named Insured** and us as to whether a **Crisis Management Event** has occurred, the **Named Insured** may, at its own cost, retain the services of an approved **Crisis Management Firm** and/or advance **CrisisResponse Costs**. Provided, however, if the **Named Insured** elects to retain an approved **Crisis Management Firm** or to we shall have no obligation to reimburse under this endorsement the advance **CrisisResponse Costs**, **Named Insured** for such costs or expenses. The right to reimbursement shall be arbitrated pursuant to the rules of the American Arbitration Association in New York, New York or in the state indicated in Item 1 of the Declarations of this policy as the **Named Insured's** principal place of business.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.      **I 00138**

_____
**Authorized Representative**
or Countersignature (in States Where Applicable)

**Excess Casualty CrisisFund**
**(Crisis Communications Management Insurance)**

*Approved Crisis Management Firms*
*as of May 1, 2002*

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|
| **Abernathy MacGregor Group** | | |
| <u>New York Office</u><br>501 Madison Avenue<br>New York, NY 10022 | James T. MacGregor<br>Tel. (212) 371-5999<br>Cell (212) 593-1845 | *Emergency Only*<br>Tel. (212) 343-0818<br>Cell (917) 449-9964 |
| | Rhonda Barnat, Managing Director<br>Tel. (212) 371-5999<br>Cell (212) 593-1845 | *Emergency Only*<br>Cell (917) 912-6378 |
| <u>Los Angeles Office</u><br>611 West Sixth Street<br>Suite 1880<br>Los Angeles, CA 90017 | Ian D. Campbell<br>Tel. (213) 630-6550<br>Cell (213) 489-3443 | *Emergency Only*<br>Tel. (818) 957-5650<br>Cell (917) 940-3476 |
| **Citigate Sard Verbinnen** | | |
| <u>New York Office</u><br>630 Third Avenue<br>New York, NY 1 0017 | George Sard<br>Tel. (212) 687-8080<br>Fax (212) 687-8344<br><br><u>Citigate Sard Verbinnen web address:</u><br>www.sardverb.com<br><br>Paul Verbinnen<br>Tel. (212) 687-8080<br>Fax (212) 687-8344<br><br><u>Citigate Sard Verbinnen web ad dress:</u><br>www.sardverb.com | *Emergency Only*<br>Contact switchboard @<br>(212) 687-8080 |
| **Hill & Knowlton** | | |
| <u>New York Office</u><br>466 Lexington Avenue<br>3rd Floor<br>New York, NY 10017 | Richard C. Hyde<br>Tel. (212) 885-0372<br>Cell (917) 816-2208<br>Fax: (212) 885-0570<br><br>Arthur Forster<br>Tel. (212) 885-0442<br>Cell: (908) 337-6853<br>Fax: (212) 885-0570<br>aforster@hillandknowlton.com | *Emergency Only*<br>H&K Crisis Pager<br>(888) 264-5193<br>24 Hours/7 Days |

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|

### Hill & Knowlton Continued

**Additional United States/Canada Offices:**
Atlanta; Austin; Calgary; Chicago; Detroit; Ft. Lauderdale; Houston; Irvin e; Los Angeles; Montreal; Ottawa; Portland; Quebec City; Sacramento; San Francisco; San Juan; Seattle; Tampa; Toronto; Vancouver; Washington, D.C.

**International Offices:**
**Latin America:** Bogota; Buenos Aires; Caracas; Mexico City; Sao Paulo; Santiago; Guatemala
**Europe, Middle East, Africa:** Amsterdam; Aschaffenburg; Athens; Barcelona; Berlin; Brussels; Budapest; Dubai; Frankfurt; Helsinki; Jeddah; London; Madrid; Manama; Milan; Moscow; Paris; Prague; Riga; Rome; Stockholm; Tallinn; Warsaw
**Asia Pacific:** Auckland; Bangkok; Beijing; Canberra; Hong Kong; Kuala Lumpur; Melbourne; Seoul; Shanghai; Singapore; Sydney; Tokyo; Wellington

### Lexicon Communications Corp.

| <u>Los Angeles Office</u><br>9200 Sunset Blvd.<br>Suite 1203<br>Los Angeles, CA 90069 | Steven B. Fink<br>Tel. (213) 346-1212<br>Cell (626) 253-1519<br>sfink<br><u>Lexicon Comm web address:</u><br>www.crisismanagement.com | **Emergency Only**<br>Contact switchboard @<br>(213) 346-1200, ext. 225 |

### PR21 (A Division of Edelman Worldwide)

| <u>New York Office</u><br>79 Fifth Avenue, 17th Fl.<br>New York, NY 10003 | Jon Goldberg<br>Tel. (212) 299-8952<br>Fax (212) 462-1026/7 | **Emergency Only**<br>Cell (973) 699-7148<br>Pager (877) 386-8115 |

**Additional United States/Canada Offices:**
Atlanta; Austin; Chicago; Dallas; Los Angeles; Miami; Milwaukee; Montreal; Sacramento; San Francisco; Seattle; Silicon Valley; Toronto; Washington, D.C.

**International Offices:**
**Latin America:** Buenos Aires; Mexico City; Sao Paulo
**Europe:** Barcelona; Brussels; Dublin; Frankfurt; Hamburg; London; Madrid; Milan; Paris
**Asia Pacific:** Beijing; Guangzhou; Hong Kong; Kuala Lumpur; Seoul; Shanghai; Singapore; Sydney; Taipei

### Robinson Lerer & Montgomery

| <u>New York Office</u><br>75 Rockefeller Plaza<br>6th Floor<br>New York, NY 10019 | Michael J. Gross<br>Tel. (212) 484-7721<br>Cell (917) 853-0620<br>Fax (212) 484-7411<br>mgross52@aol.com | **Emergency Only**<br>Contact switchboard @<br>(212) 484-6100 |

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|
| **Sitrick and Company Inc.** | | |
| <u>Los Angeles Office</u><br>2029 Century Park East<br>Suite 1750<br>Los Angeles, CA 90067 | Michael S. Sitrick<br>Tel. (310) 788-2850<br>Cell (310) 788-2855 | ***Emergency Only***<br>(310) 358-1011<br>24 hours/7 days |

Additional United States Offices:  New York and Washington, D.C.

**ENDORSEMENT No.** 6

**This endorsement, effective 12:01 AM:** July 1, 2003

**Forms a part of policy no.:** BE    3206923

**Issued to:** INSITUFORM TECHNOLOGIES, INC, ETAL

**By:** AMERICAN HOME ASSURANCE COMPANY

## CROSS SUITS EXCLUSION

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of any injuries initiated, alleged, or caused to be brought about by a **Named Insured** covered by this policy against any other **Named Insured** covered by this policy.

All other terms and conditions of this policy remain unchanged.

_____

**AUTHORIZED REPRESENTATIVE**

60441 (5/94)
AH0187

I 00142

ENDORSEMENT No. 7

**This endorsement, effective 12:01 AM:**  July 1, 2003

**Forms a part of policy no.:** BE    3206923

**Issued to:**  INSITUFORM TECHNOLOGIES, INC, ETAL

**By:**  AMERICAN HOME ASSURANCE COMPANY

### EMPLOYEE BENEFITS LIABILITY FOLLOW-FORM ENDORSEMENT
### (CLAIMS MADE VERSION 2)

## PROVIDES CLAIMS MADE COVERAGE - PLEASE READ CAREFULLY

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of any negligent act, error or omission of the **Insured** or of any other person for whom the **Insured** is legally liable in the administration of the **Insured's** Employee Benefit Programs as defined herein.

However, if insurance for such **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** is provided by a policy listed in the Schedule of Underlying Insurance:

1.   This exclusion shall not apply;

2.   The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance; and

3.   Solely as respects this endorsement, we will only provide coverage for a claim made against the **Insured** during our policy period.

     If the insurance provided by the policy listed in the Schedule of Underlying Insurance provides coverage for **Occurrences** occurring on or after a specified Retroactive Date or for claims made during an Extended Reporting Period, the insurance provided by our policy will also provide such coverage.

For the purposes of this endorsement, the following definitions apply:

1.   <u>Employee Benefit Programs</u> shall mean Group Life Insurance, Group Accident or Health Insurance, Pension Plans, Profit Sharing Plans, Employee Stock Subscription Plans, Worker's Compensation, Unemployment Insurance, Social Security and Disability Benefits.

2.   <u>Administration</u> shall mean:

     a.   Giving counsel to employees with respect to Employee Benefit Programs;

     b.   Interpreting Employee Benefit Programs;

     c.   Handling of records in connection with Employee Benefit Programs; or

     d.   Effecting enrollment, termination or cancellation of employees under Employee Benefit Programs;

     provided all such acts are authorized by you.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

62081 (2/95)
AH0265

I 00143

**ENDORSEMENT No. 8**

**This endorsement, effective 12:01 AM:**   July 1, 2003

**Forms a part of policy no:**   BE    3206923

**Issued to:**   INSITUFORM TECHNOLOGIES, INC, ETAL

**By:**   AMERICAN HOME ASSURANCE COMPANY

**Commercial Umbrella Policy Form**

**FOREIGN LIABILITY LIMITATION ENDORSEMENT**

This policy is amended as follows:

**Section V. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury,** or **Advertising Injury** that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such **Bodily Injury, Property Damage, Personal Injury,** or **Advertising Injury** is provided by a policy listed in the Schedule of Underlying Insurance:

1.   This exclusion shall not apply; and

2.   The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms, exclusions and conditions of this policy remain unchanged.

_____

**Authorized Representative**
or Countersignature (in States Where Applicable)

81251 (12/02)
AH0080

**I 00144**

**ENDORSEMENT No.** 9

**This endorsement, effective 12:01 AM:** July 1, 2003

**Forms a part of policy no.:** BE     3206923

**Issued to:** INSITUFORM TECHNOLOGIES, INC, ETAL

**By:** AMERICAN HOME ASSURANCE COMPANY

## LEAD EXCLUSION

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury, Advertising Injury** or any other loss, cost or expense arising out of the presence, ingestion, inhalation or absorption of or exposure to lead in any form or products containing lead.

All other terms and conditions of this policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

61718 (12/94)
AH0261

I 00145

**ENDORSEMENT No. 10**

**This endorsement, effective 12:01 AM:** July 1, 2003

**Forms a part of policy no.:** BE   3206923

**Issued to:** INSITUFORM TECHNOLOGIES, INC, ETAL

**By:** AMERICAN HOME ASSURANCE COMPANY

<u>NOTICE OF OCCURRENCE ENDORSEMENT</u>

Your failure to give first report of a claim to us shall not invalidate coverage under this policy if the loss was inadvertently reported to another Insurer. However, you shall report any such **Occurrence** to us within a reasonable time once you become aware of such error.

All other terms, conditions and exclusions remain the same.

AUTHORIZED REPRESENTATIVE

62223 (3/95)
AH0274

I 00146

ENDORSEMENT No. 11

This endorsement, effective 12:01 AM:  July 1, 2003

Forms a part of policy no.:  BE     3206923

Issued to:  INSITUFORM TECHNOLOGIES, INC, ETAL

By:  AMERICAN HOME ASSURANCE COMPANY

## PROFESSIONAL LIABILITY EXCLUSION

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the **Insured** or any person for whom the **Insured** is legally responsible.

All other terms and conditions of this policy remain unchanged.

AUTHORIZED REPRESENTATIVE

60458 (5/94)
AH0203

I 00147

**ENDORSEMENT No.** 12

**This endorsement, effective 12:01 AM:** July 1, 2003

**Forms a part of policy no.:** BE    3206923

**Issued to:** INSITUFORM TECHNOLOGIES, INC, ETAL

**By:** AMERICAN HOME ASSURANCE COMPANY

## RADIOACTIVE MATERIAL OR EQUIPMENT EXCLUSION

This insurance does not apply to any **Bodily Injury** or **Property Damage** arising out of the **Insured's** selling, disposing of or handling any radioactive material or equipment.

All other terms and conditions of this policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

57838 (6/93)
AH0130

I 00148

ENDORSEMENT No. 13

**This endorsement, effective 12:01 AM:** July 1, 2003

**Forms a part of policy no:** BE    3206923

**Issued to:** INSITUFORM TECHNOLOGIES, INC, ETAL

**By:** AMERICAN HOME ASSURANCE COMPANY

### Commercial Umbrella Policy Form

### <u>Total Pollution Exclusion Endorsement</u>

This policy is amended as follows:

**Section V. Exclusions,** Paragraph M. is deleted in its entirety and replaced by the following:

This insurance does not apply to:

1. Any **Bodily Injury, Property Damage** or **Personal Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere in the world at any time;

2. Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants;** or

3. Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants.**

For the purpose of this endorsement only, **Section IV. Definitions** is amended to include the following additional definition:

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.    Waste includes materials to be recycled, reconditioned or reclaimed.

All other terms and conditions of this policy remain unchanged.

_____
**Authorized Representative**

62221 (03/03)
AH0272

I 00149

ENDORSEMENT No. 14

**This endorsement, effective 12:01 AM:** July 1, 2003

**Forms a part of policy no.:** BE    3206923

**Issued to:** INSITUFORM TECHNOLOGIES, INC, ETAL

**By:** AMERICAN HOME ASSURANCE COMPANY

## UNINTENTIONAL ERRORS OR OMISSIONS ENDORSEMENT

Your failure to disclose all hazards existing as of the inception date of the policy shall not prejudice you with respect to the coverage afforded by this policy provided such failure or any omission is not intentional.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

62222 (03/95)
AH0273

I 00150

**ENDORSEMENT No.** 15

**This endorsement, effective 12:01 AM:**  July 1, 2003

**Forms a part of policy no.:** BE    3206923

**Issued to:**  INSITUFORM TECHNOLOGIES, INC, ETAL

**By:**  AMERICAN HOME ASSURANCE COMPANY

## WAIVER OF SUBROGATION

In the event of any payment under this policy for a loss for which you have waived the right of recovery in a written contract entered into prior to the loss, we hereby agree to also waive our right of recovery. This waiver shall only apply with respect to a loss occurring due to operations undertaken as per the specific contract in which you waived the right of recovery.

All other terms and conditions of this policy remain unchanged.

_____
**AUTHORIZED REPRESENTATIVE**

60417 (5/94)
AH0166

I 00151

I 00152