UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                      )
INSITUFORM TECHNOLOGIES, INC.,      )
                                                      )
                     Plaintiff,                       )
                                                      )
v.                                                     )          CASE NO. 04-10487 GAO
                                                      )
AMERICAN HOME ASSURANCE          )
COMPANY,                                        )
                                                      )
                     Defendant.                     )
_____)

**AMERICAN HOME ASSURANCE COMPANY'S MEMORANDUM
IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO INSITUFORM TECHNOLOGIES, INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant American Home Assurance Company ("American Home") submits this

memorandum in support of its Cross-Motion for Summary Judgment and Opposition to

Insituform Technologies, Inc.'s ("Insituform") Motion for Partial Summary Judgment.

American Home is entitled to summary judgment because the clear and unambiguous language

of the umbrella liability insurance policy and, more specifically, its Contractor's Endorsement

does not provide coverage for the claims asserted by Insituform.  American Home is, therefore,

entitled to judgment as a matter of law.

## INTRODUCTION

This matter concerns the interpretation of an umbrella liability insurance policy to

determine whether it provides coverage for costs Insituform has allegedly incurred due to its

failure to properly complete work it was hired to perform.  Insituform alleges that umbrella

liability insurance policy, Policy Number BR 3206923, for the policy period July 1, 2003 to July

1, 2004, issued to it by American Home ("American Home Policy"), "follows form" to a Contractor Rework Coverage Amendment contained in a primary policy of insurance issued to Insituform by Liberty Mutual Insurance Company, Policy Number RG2-641-004218-33 ("Primary Policy"). Indeed, this is the sole issue before this Court, because Insituform has not argued, and cannot argue, that the American Home Policy provides coverage if it does not "follow form." As the unambiguous language of the Contractor's Endorsement to the American Home Policy makes clear, it does not generally "follow form" to the Primary Policy. Rather, the Contractor's Endorsement, which is divided into two parts, actually excludes coverage under the section entitled "Excluded Hazards," and then under the section entitled "Following Form Hazards" provides limited additional third-party liability property damage coverage for damages resulting from three specifically detailed and limited happenings: (i) blasting or explosion; (ii) collapse or structural injury of a building; or (iii) underground damages caused by the use of certain above-ground equipment. As detailed below, the costs for which Insituform seeks coverage do not fall into any of these three limited categories. Accordingly, Insituform's claim for coverage must be denied and judgment entered in favor of American Home dismissing the Complaint.

## FACTUAL BACKGROUND

Insituform provides sewer rehabilitation service using certain trenchless technology. (Complaint, ¶ 8.) In approximately August, 2003, Insituform performed sewer rehabilitation work valued at $1,000,000 for the Massachusetts Water Resources Authority ("MWRA") under Contract #6840. (Complaint, ¶¶ 16, 18.) On or about October 31, 2003, the MWRA notified Insituform that the work it performed was unacceptable and that it must be repaired or replaced. (Complaint, ¶ 19.) As a result, Insituform allegedly incurred costs in excess of $1,000,000

repairing its own work.  (Complaint, ¶ 20.)  Insituform does not allege that its failure to properly

rehabilitate the MWRA pipes and the costs that it has allegedly incurred are the result of (i)

blasting or explosion; (ii) the collapse of or structural injury to any building; or (iii) damage to

underground property caused by work performed by Insituform above the surface.

Insituform is insured under two relevant policies of insurance.  The Primary Policy

contains, among other provisions, a Contractor Rework Coverage Amendment.  The Contractor

Rework Coverage Amendment provides, in its entirety, as follows:

## CONTRACTOR REWORK COVERAGE AMENDMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that the policy is hereby amended as indicated.  All other terms and conditions of this
policy remain unchanged.

We will pay those sums which you become legally obligated to pay for the required removal or
repair of "your product" or "your work" including concrete, cement, sand or aggregate, concrete
blocks, concrete products or other products manufactured, sold, handled or distributed by or on
behalf of the Insured which are defective, subject to the limits of liability and deductible and the
provisions specified below.

The amount we will pay under this coverage shall be limited to the lessor of:

1.      Your actual cost of removing and replacing any of the above items; or

2.      Your actual cost of remedial action taken to avoid removal or replacement of such
        products.

We will also pay damages for the loss of use of real property and/or consequential business
interruption resulting from necessary removal, replacement or remedial action taken to avoid
removal or repair of "your product" or "your work".

This coverage shall not apply unless the defect requiring removal or repair of "your work" or
"your product" results from an error in the design, prescription, manufacture, blending, mixing
or compounding of such work or product and the repair, replacement or removal is made
necessary because such work or product has been rejected by the owner, his authorized
representative, or a municipality or other authority having jurisdiction.

Defective shall mean that upon testing by an accredited, independent testing agency, "your work" or your product" does not meet the contractual specifications or accepted standards required for the specific construction in which such materials were incorporated.

Coverage provided under this endorsement shall be subject to all exclusions applicable to "property damage," except exclusions j.(5), j.(6), k., l., m. and n.

This endorsement shall not apply to any amount which is covered under any other provision of this policy.

Our obligations to pay any amount under this endorsement applies only to amounts in excess of the deductible amount stated below.

The terms of this insurance, including those with respect to:

      (a)      Our right and duty to defend any "suits" seeking damages; and

      (b)      Your duties in the event of an "occurrence," claim or "suit" apply irrespective of the application of the deductible.

We may pay any part or all of the deductible to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible as has been paid by us.

This insurance is excess over any other insurance (including any deductible) which is available under a policy of property insurance, such as, but not limited to, fire and extended coverage, builder's risk or installation coverage.

| Limits of Liability: | $1,000,000 | per occurrence |
|---|---|---|
| | $1,000,000 | aggregate |
| | | |
| Deductible | $250,000 | per occurrence |
| Premium | Included in GL Premium | |

      The second policy under which Insituform is insured is the commercial umbrella liability policy issued by American Home (the "American Home Policy"). The relevant terms, conditions and exclusions of the American Home Policy are as follows:

**Insuring Agreements**

**I.     Coverage**

We will pay on behalf of the **Insured** those sums in excess of the Retained Limited that the **Insured** becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world.  The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.

If we are prevented by law or statute from paying on behalf of the Insured, then we will, where permitted by law or statute, indemnify the Insured for those sums in excess of the Retained Limit.

**IV.    Definitions**

**H.     Occurrence** means:

    1.      As respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured.**  All such exposure to substantially the same general conditions shall be considered as arising out of one **Occurrence…**

**J. 1.  Products-Completed Operations Hazard** includes **Bodily Injury** and **Property Damage** occurring away from your premises you own or rent and arising out of **Your Product** or **Your Work** except:

    a.      products that are still in your physical possession; or

    b.      work that has not yet been completed or abandoned.

**K.     Property Damage** means:

    1.  Physical Injury to tangible property, including all resulting loss of use of the property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    2.  Loss of use of tangible property that is not physically injured.  All such loss shall be deemed to occur at the time of the **Occurrence** that caused it.

**M.**    **Your Product** means:

    1.    Any goods or products, other than real property, manufactured, sold handled, distributed or disposed of by:

        a.    you;

        b.    others trading under your name; or

        c.    a person or organization whose business or assets you have acquired; and

    2.    Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

    **Your Product** includes:

    1.    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

    2.    The providing of or failure to provide warnings or instructions.

    **Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

**N.**    **Your Work** means:

    1.    work or operations performed by you or on your behalf; and

    2.    materials, parts ore equipment furnished in connection with such work or operations.

**V.**    **Exclusions**

This insurance does not apply to:

**F.**  **Property Damage** to **Your Product** arising out of it or any part of it.

**G.**  **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard.**

    This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The American Home Policy also contains, among other provisions, a Contractor's Endorsement.  The Contractor's Endorsement provides, in its entirety, as follows:

## <u>CONTRACTOR'S ENDORSEMENT</u>

### <u>Excluded Hazards</u>

This insurance does not apply to:

1.      **Property Damage** to any property or equipment leased by the **Insured**;

2.      **Property Damage** to property being installed, erected or worked upon by the Insured or by any agents or subcontractors of the **Insured**;

3.      **Bodily Injury** or **Property Damage** arising out of any project insured under a "wrap-up" or any similar rating plan; or

4.      **Bodily Injury** or **Property Damage** arising out of any professional services performed by or on behalf of the Insured, including but not limited to the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications, and any supervisory, inspection or engineering services.

### <u>Following Form Hazards</u>

It is *further* agreed that this insurance does not apply to:

1.      **Property Damage** arising out of:

      a.      Blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment;

      b.      The collapse of or structural injury to any building or structure due to:

            1)      the grading of land, paving, excavating, drilling, burrowing, filling, back-filling, tunneling, pile driving, coffer-dam or caisson work,

            2)      the moving, shoring, underpinning, raising, or demolition of any building or structure, or the removal or rebuilding of any structural support thereof; or

      c.      Damage to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling or pile driving; or

2.      Any liability assumed by the **Insured** under any contract or agreement.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

1.      This exclusion shall not apply; and

2.      The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

(Italicized emphasis added).

## STANDARD OF LAW

Fed. R. Civ. P. 56(c) provides that summary judgment should be granted when there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. See Sparks v. Fidelity Nat'l Title Ins. Co, 294 F.3d 259, 265 (1st Cir. 2002). The Supreme Court has ruled that "[s]ummary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial." Cleveland v. Policy Mgm't Sys. Corp., 526 U.S. 795, 805-06 (1999) (internal quotation marks and citation omitted). In deciding a motion for summary judgment, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side over the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Here, Insituform bears the burden of proof to show coverage under the

American Home Policy.[1] Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844,

853 (1993) ("The burden of showing that property damage occurred within the coverage of the

policies is on the insured."); National Union Fire Ins. Co. v. Structural Sys. Tech., Inc., 964 F.2d

759, 760 (8th Cir. 1992) ("[I]n Missouri the insured has the burden of proving that the loss and

damages claimed are covered by the insuring provisions . . . ."). Resolution of the coverage issue

is appropriate on summary judgment because "[t]he responsibility of construing the language of

an insurance contract is a question of law for the trial judge . . . ." Cody v. Connecticut Gen.

Life Ins. Co., 387 Mass. 142, 146 (1982) (citations omitted); Universal Underwriters Ins. Co. v.

Lou Fusz Auto. Network, 300 F. Supp. 2d 888, 893 (E.D. Mo. 2004) ("Interpretation of an

insurance policy is a question of law.").

## ARGUMENT

I.    **The Language of an Insurance Contract Must be Interpreted and Applied
According to Its Unambiguous Meaning.**

When interpreting insurance contracts, "[those] provisions [that] are plainly and

definitely expressed in appropriate language must be enforced according to [their] terms." Cody,

387 Mass. at 146 (citations omitted); see also Trustees of Tufts Univ., 415 Mass. at 849 ("We

read the policy as written. We are not free to revise it or change the order of the words.")

(internal quotation marks and citation omitted); Universal Underwriters Ins. Co., 300 F. Supp. 2d

at 893 ("In construing the terms of an insurance policy, I must give the words their plain

meaning, consistent with the . . . intent of the parties.") (internal quotation marks and citation

omitted). Policy considerations cannot control the interpretation of unambiguous insurance

---

[1]    American Home agrees with Insituform (see Insituform's Memorandum at 6 n.3) that the Court need not
resolve a choice of law question because the law on all relevant issues in the two possible jurisdictions,
Massachusetts and Missouri, is similar. See Williams v. ASTRA USA, Inc., 68 F. Supp. 2d 29, 36 (D. Mass.
1999) ("Normally, the first step in applying choice of law principles is to ascertain whether the choice will
effect the outcome--in essence, whether there is an actual conflict of laws.").

contracts, only the language can.  <u>See</u> <u>Rubenstein v. Royal Ins. Co. of Amer.</u>, 44 Mass. App. Ct.

842, 851 (1998).  Moreover, an insurance policy must be construed in accordance with all of its

terms; a court cannot ignore certain provisions of a policy to achieve a desired result.  <u>See</u> <u>id.</u>;

<u>Falmouth Nat'l Bank v. Ticor Title Ins. Co.</u>, 920 F.2d 1058, 1061 (1st Cir. 1990) ("[W]henever

possible, each word in an insurance policy should be considered and given some meaning.")

(citation omitted); <u>Aetna Cas. & Sur. Co. v. General Dynamics Corp.</u>, 968 F.2d 707, 710 (8th

Cir. 1992) ("Missouri law requires all terms of an insurance contract be given meaning.")

(citation omitted).  The terms of the Contractor's Endorsement are clear and unambiguous.  They

must, therefore, be interpreted according to their plain meaning.

## II.    Coverage for Insituform's Claim Is Barred by The Faulty-Workmanship Exclusions Contained in the American Home Policy.

As Insituform's acknowledges by making no claim for coverage under any part of the

American Home Policy other than the Contractor's Endorsement, there is no coverage for the

costs it allegedly sustained under the standard terms and conditions of the American Home

Policy.  As detailed above, the standard terms and conditions of the American Home Policy

specifically exclude coverage for faulty workmanship by excluding coverage for property

damage to "Your Work" and "Your Product."   (<u>See</u> Exclusions F & G at 6, <u>supra</u>.)  As the

alleged costs at issue here result from Insituform's failure to install its product, no coverage is

available under the standard terms and conditions of the American Home Policy.

Exclusions in liability insurance policies for faulty workmanship, like those involved

here, have been upheld in both Massachusetts and Missouri.  <u>See</u> <u>Lusalon, Inc. v. Hartford Acc.</u>

<u>& Indem. Co.</u>, 400 Mass. 767, 770-73 (1987) (enforcing exclusion in liability insurance policy

for property damage caused by faulty workmanship); <u>Columbia Mut. Ins. Co. v. Schauf</u>, 967

S.W.2d 74, 77-78 (Mo. 1998) (same).  As courts in both jurisdictions have explained, such

exclusions are enforceable because "[t]he possibility of damaging the property on which one is working is the type of routine, controllable, and limited risk that constitutes a business risk." Schauf, 967 S.W.2d at 78; Dorchester Mut. Fire Ins. Co v. First Kostas Corp., Inc., 49 Mass. App. Ct. 651, 654 (2000) ("General liability coverage is not intended as a guarantee of the insured's work, and for that reason, general liability policies contain 'business risk' exclusions.") (citation omitted). As Insituform itself has recognized, and these cases clearly confirm, the faulty workmanship exclusions in the American Home Policy should be enforced so as to deny coverage for the costs sought in this case.

**III.    The *Entire* Text of the Contractor's Endorsement to the American Home Policy Clearly Establishes That it Does Not Provide Coverage for the Costs Insituform has Allegedly Incurred and Insituform's Proposed Interpretation is Unreasonable Because it Would Render Half of the Endorsement Superfluous.**

The unambiguous text of the **entire** Contractor's Endorsement to the American Home Policy clearly establishes that it does not "follow form" to the underlying Primary Policy and does not provide coverage for the costs Insituform has allegedly incurred as a result of having to repair its own work. See Falmouth Nat'l Bank, 920 F.2d at 1061 ("In attempting to discern the expectations of the parties, Massachusetts courts look at the insurance contract as a whole in order to effectuate its overall purpose.") (citations omitted). Rather, the Contractor's Endorsement, which is divided into two parts, actually excludes coverage under the section entitled "Excluded Hazards," and then under the section entitled "Following Form Hazards" provides coverage specifically limited to (i) damages caused by blasting or explosion, (ii) the collapse of or structural injury to any building, or (iii) damage to underground property caused by work performed by Insituform above the surface. Moreover, the Court cannot, as Insituform would have it do, interpret only one textual provision of the Contractor's Endorsement and ignore the remaining 50% of text that it contains. Finally, contrary to Insituform's assertion,

when the language of the Contractor's Endorsement is compared to the language of other

endorsements in the American Home Policy, it is clear that the American Home Policy does not

"follow form" to the underlying Contractor's Rework Coverage Amendment.

A. <u>The Contractor's Endorsement Limits Following Form Coverage to Damages
Caused by Blasting or Explosion, the Collapse of or Structural Injury to a
Building, or Damages to Certain Underground Property Caused by Work
Performed Above the Surface.</u>

The Contractor's Endorsement to the American Home Policy contains two distinctive

sections with two separate subtitles.

The first section, entitled "Excluded Hazards," actually <u>excludes</u> several contractor-type

hazards.  It states, among other things, that the American Home Policy "does not apply to . . .

**Property Damage** to property being installed, erected or worked upon by the Insured or by any

agents or subcontractors of the **Insured** . . . ."  (<u>Supra</u> at 5-6) (emphasis in original).  This

provision appears in a separate paragraph of the first section numbered "2," and is one of four

separately numbered paragraphs detailing types of damages to which the American Home Policy

does not apply.  Remarkably, Insituform makes no mention of this section whatsoever in its

Memorandum and not once reproduces the text of the entire Contractor's Endorsement.  Clearly,

as Insituform concedes, absent any other language in the American Home Policy, this provision,

as well as the faulty workmanship exclusions discussed above, would bar coverage for the costs

Insituform seeks to recover here.  <u>See</u> <u>Bagley v. Monticello Ins. Co.</u>, 430 Mass. 454, 457 n.2

(1999) ("Because the terms of the exclusion are plain and free from ambiguity . . . we do not, as

the [plaintiff] suggests, construe them strictly against the insurer.") (internal quotation marks and

citation omitted).

The second section of the Contractor's Endorsement, upon which Insituform relies, fares

no better.  This section, significantly entitled "Following Form Hazards," provides as follows:

**Following Form Hazards**

It is further agreed that this insurance does not apply to:

2.     **Property Damage** arising out of:

      a.     Blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment;

      b.     The collapse of or structural injury to any building or structure due to:

            1)     the grading of land, paving, excavating, drilling, burrowing, filling, back-filling, tunneling, pile driving, coffer-dam or caisson work,

            2)     the moving, shoring, underpinning, raising, or demolition of any building or structure, or the removal or rebuilding of any structural support thereof; or

      c.     Damage to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling or pile driving; or

2.     Any liability assumed by the **Insured** under any contract or agreement.

However, if insurance for *such* **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

1.     This exclusion shall not apply; and

2.     The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

(American Home Statement of Undisputed Facts, ¶ 23.) (italicized emphasis added).

Thus, the sole issue in this case is whether the "however" clause ("However, if insurance

for *such* **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of

- 14 -

Underlying Insurance") (emphasis added) modifies the "Excluded Hazards" section of the Contractor's Endorsement, as Insituform contends, or the "Following Form Hazards," as American Home contends. Inexplicably, Insituform's argument for coverage appears to be based entirely on ignoring the presence of the three specific causes of property damage set forth in the second section of the Contractor's Endorsement. (Insituform Memorandum at 11-12.) Moreover, Insituform would have this Court simply close its eyes to the language that appears directly above the language upon which it relies, the "Excluded Hazards" section, thereby negating any import to the word "such" that appears in the following form language. See Trustees of Tufts Univ., 415 Mass. at 849 ("We read the policy as written. We are not free to revise it or change the order of the words."). As both lawyers and non-lawyers readily appreciate, parties to a contract are not free to simply ignore provisions they do not like and enforce those they find advantageous. See Filiatrault v. Comverse Tech., Inc., 275 F.3d 131, 136 (1st Cir. 2001) ("Settled principles of construction forbid the balkanization of contractual language for interpretation purposes."). The Contractor's Endorsement, when read in its entirety, only "follows form" as to coverage provided in the Primary Policy for three specific types of limited third-party Property Damage. As Insituform has not suffered such Property Damage, its claim for coverage must be denied.[2]

The only plausible and reasonable interpretation of this section of the Contractor's Endorsement is that American Home agreed to provide "follow form" coverage for Property Damage arising out of three specific limited instances. Those three instances are: (i) blasting or explosion; (ii) the collapse of or structural injury to any building due to certain specified

---

[2]    The cases Insituform relies upon are inapposite because the language of the provisions being construed in those cases is markedly different. As such, those cases stand for the unremarkable proposition that different provisions in different policies result in different coverages.

activities; and/or (iii) damage to certain underground property caused by the use of mechanical equipment for certain specified above-ground purposes.  Only if "insurance for **such** Bodily Injury or Property Damage is provided by a policy listed in the Schedule of Underlying Insurance" will the exclusion not apply to the American Home Policy.  By using the term "**such** Bodily Injury or Property Damage" the Contractor's Endorsement clearly is referring to the exclusions immediately above it in the "Following Form Hazards" section and limits the availability of coverage under the American Home Policy to damages arising out the three articulated events.  To do otherwise would be to render the first separately titled and set apart section irrelevant.  See Falmouth Nat'l Bank, 920 F.2d at 1061 ("[W]henever possible, each word in an insurance policy should be considered and given some meaning.") (citation omitted); Aetna Cas. & Sur. Co., 968 F.2d at 710 ("Missouri law requires all terms of an insurance contract be given meaning.") (citation omitted).  As Insituform does not and cannot claim that the costs it seeks arose out of one of these three instances, there is no coverage for such damages under the American Home Policy.  Accordingly, Insituform's claims must be denied.

This conclusion is further reinforced by comparing the language of the Contractor's Endorsement to the Contractor Rework Coverage Amendment in the Primary Policy.  First, as its very title suggests, the Contractor Rework Coverage Amendment is specifically designed to provide coverage for "rework" that the insured contractor must perform.  (American Home Statement of Undisputed Facts, ¶ 14.)  In comparison, the Contractor's Endorsement of the American Home Policy makes no specific reference to "rework."  (American Home Statement of Undisputed Facts, ¶ 23.)  In addition, coverage is granted under the Contractor Rework Coverage Amendment for "your product" and "your work."  (American Home Statement of Undisputed Facts, ¶ 14.)  The Contractor's Endorsement does not use either of these terms.  Likewise, as

detailed above, the Contractor's Endorsement specifies three certain limited type of property damage while the Contractor Rework Coverage Amendment contains no such limitations or classifications of causes of damages covered. Finally, it is clear that the intent and purpose of the Contractor Rework Coverage Amendment is to provide Insituform with some limited amount of first-party property damage coverage. No such intent is evident from the language and structure of the Contractor's Endorsement, which is limited to third-party liability coverage for Property Damage. Given the breadth of dissimilarity between the two endorsements, it is clear that the Contractor's Endorsement does not and was not intended to "follow form" to the Contractor Rework Coverage Amendment.

> B.     When Compared to Other Endorsements of the American Home Policy, it is Clear that the Contractor's Endorsement Does not Follow Form to the Underlying Contractor Rework Coverage Amendment.

In its Memorandum, Insituform goes to great length to argue that because two other endorsements to the American Home Policy, the Employee Benefits Liability Follow-Form Endorsement and Foreign Liability Limitation Endorsement, expand coverage on a "following form" basis, the coverage in the Contractor's Endorsement must also do so. (Insituform Memorandum at 8-11.)  Comparing the language of two other endorsements with the Contractor's Endorsement is completely irrelevant – Insituform's claim that the American Home Policy "follows form" to the Contractor Rework Coverage Amendment contained in the Primary Policy must stand or fall based on the language of the Contractor's Endorsement itself. Nonetheless, even if this Court were to consider such comparisons relevant, even the most cursory review of these other endorsements reveals that, contrary to Insituform's assertion, they do **not** "contain[] an identical structure and wording . . ." as the Contractor's Endorsement. (Insituform Memorandum at 8.)  As the structure and wording of these endorsements differ, so do the coverage they provide.

1.     The Contractor's Endorsement is Dissimilar to the Employee Benefits
       Liability Follow-Form Endorsement.

The first endorsement to which Insituform compares the Contractor's Endorsement is the

Employee Benefits Liability Follow-Form Endorsement.  As is immediately apparent, the very

title of this endorsement, "Employee Benefits Liability **Follow-Form** Endorsement," stands in

stark contrast to the title of the endorsement at issue here: "Contractor's Endorsement."  The fact

that the term "follow-form" is absent from the title of the Contractor's Endorsement and that

American Home used that term in the title of another endorsement proves that American Home

did not intend the coverage under the Contractor's Endorsement to "follow-form" to the

coverage provided under the Primary Policy.  See Stop & Shop Cos., Inc. v. Federal Ins. Co.,

136 F.3d 71, 73 (1st Cir. 1998) ("[W]here the policy's language is plain, we interpret and enforce

it according to the ordinary meaning of the words contained in the policy's provisions.")

(citations omitted); Newyear v. Church Ins. Co., 155 F.3d 1041, 1043 (8th Cir. 1998) ("Words in

an insurance contract are to be given their plain and ordinary meaning.") (citation omitted).

Instead, the term "following form" appears only in the Contractor's Endorsement in the

subsection entitled "**Following Form** Hazards," indicating that the follow form carve-out is only

intended to apply to that section of the Contractor's Endorsement.

The two endorsements also differ dramatically in that the Employee Benefits Liability

Follow-Form Endorsement contains no list of specific employee benefits programs for which

coverage is available.  Rather, all damages "arising out of any negligent act, error or

omission . . . in the administration of the Insured's Employee Benefit Programs" are covered.  As

American Home clearly understood how to draft language to provide coverage for all types of a

certain kind of risk covered by underlying insurance, its use of dissimilar language and structures

in the Contractor's Endorsement and the Employee Benefits Liability Follow-Form Endorsement

also demonstrates a clear intent to provide different levels of coverage under the endorsement. The fact that coverage under the Employee Benefits Liability Follow-Form Endorsement follows form to that provided under the primary policy therefore offers no support that the same scope of coverage exits under the Contractor's Endorsement.

>    2.    The Contractor's Endorsement is Dissimilar to the Foreign Liability
>    Limitation Endorsement.

Again, contrary to Insituform's argument, the language and structure of the Foreign Liability Limitation Endorsement is dissimilar, not identical, to that of the Contractor's Endorsement. Unlike the Contractor's Endorsement, the Foreign Liability Limitation Endorsement has no separately titled subsections for "Excluded Hazards" and "Following Form Hazards." The Foreign Liability Limitation Endorsement also differs to the extent that it addresses only one issue: accident location. The Contractor's Endorsement, on the other hand, addresses numerous different types of coverage issues. As the structure and language of the Foreign Liability Limitation Endorsement are different than that of the Contractor's Endorsement, it too offers no support for Insituform's argument.

**IV.    Insituform's Claim Under Missouri Revised Statutes § 375.420 Must be Dismissed Because American Home Properly Denied Coverage and its Denial Was Reasonable.**

Count III of Insituform's Complaint for damages and attorney's fees pursuant Mo. Rev. Stat. § 375.420 must be dismissed as a matter of law because American Home properly denied coverage for Insituform's claim. Missouri Rev. Stat. § 375.420 provides that:

>    In any action against any insurance company to recover the amount of any
>    loss under a policy of automobile, fire, cyclone, lightning, life, health, accident,
>    employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or
>    other insurance except automobile liability insurance, if it appears from the
>    evidence that such company has refused to pay such loss without reasonable cause
>    or excuse, the court or jury may, in addition to the amount thereof and interest,
>    allow the plaintiff damages not to exceed twenty percent of the first fifteen
>    hundred dollars of the loss, and ten percent of the amount of the loss in excess of

fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter
judgment for the aggregate sum found in the verdict.

Section 375.420 has been held to be penal in nature and is, therefore strictly construed. State
Farm Mut. Ins. Co. v. Shahan, 141 F.3d 819, 824 (8th Cir. 1998) (citing Mears v. Columbia Mut.
Ins. Co., 855 S.W.2d 389, 394 (Mo. Ct. App. 1993)). To recover under section 375.420,
Insituform must prove that American Home's attitude in addressing Insituform's claim was
"vexatious and recalcitrant." DeWitt v. American Family Mut. Ins. Co., 667 S.W.2d 700, 710
(Mo. 1984); Perkins v. Philadelphia Life Ins. Co., 586 F. Supp. 296, 301 (W.D. Mo. 1984) ("An
insurer is subject to damages under Mo. Rev. Stat. § 374.420 only if the refusal to pay was
without reasonable or probable cause or excuse."). Where an insurer's denial of coverage is
proper, an insured's claim under section 375.420 fails as a matter of law. See Shahan, 141 F.3d
at 824 ("State Farm's refusal to pay was based on the clear and unambiguous language of the
insurance policies. Therefore, it was clearly not without reasonable cause."); St. Louis
Trimming, Inc. v. American Credit Indem. Co., 924 F. Supp. 99, 102 (E.D. Mo. 1996) ("[T]he
Court concludes as a matter of law that there exists no coverage under the policy . . . [and]
[d]efendant is therefore entitled to summary judgment on . . . plaintiff's claim[] . . . based on the
[] allegedly vexatious refusal to pay . . . ."); Columbia Union Nat'l Bank v. Hartford Acc. &
Indem Co., 496 F. Supp. 1263, (W.D. Mo. 1980) (granting summary judgment dismissing claim
under section 375.420 where insurer properly denied claim for coverage). As American Home
properly denied Insituform's claim and Insituform has alleged no facts to support its claim under
section 375.420, count III of the Complaint must be dismissed. See LeBlanc v. Great Am. Ins.
Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994) ("[E]ven in cases where
elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if

the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.").

## **CONCLUSION**

Determination of coverage arising under insurance contracts requires faithful application of the precise terms of the contract.  Here, the language in the entire Contractor's Endorsement in the American Home Policy clearly limits to three specific instances the type of additional coverage that is provided.  Such clear and unambiguous terms must be accorded their plain meaning and enforced accordingly.  For the foregoing reasons, American Home's Cross-Motion and Opposition should be granted and Insituform's Complaint should be dismissed in its entirety.

AMERICAN HOME ASSURANCE COMPANY,

By its Attorneys,


_____/s/ G. Rubenstein_____
Gregory P. Deschenes (BBO #550830)
Gregg A. Rubenstein (BBO #639680)
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts  02110
(617) 345-1000
(617) 345-1300 (facsimile)

Dated:  June 23, 2004