IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INSITUFORM TECHNOLOGIES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 04 10487 GAO |
| | ) |
| AMERICAN HOME ASSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**INSITUFORM'S RESPONSE TO AMERICAN HOME ASSURANCE
COMPANY'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Insituform Technologies, Inc. ("Insituform"), by its attorneys and pursuant to Fed.R.Civ.P. 56, hereby responds to American Home Assurance Company's ("American Home") Cross-Motion For Summary Judgment:

**INTRODUCTION**

American Home does not dispute that Insituform's comprehensive general liability insurance with Liberty Mutual (the "Primary Policy") contains a "Contractor Rework Coverage Amendment" that covers the Insituform's liability arising out of corrective work required under a contract with the Massachusetts Water Resources Authority (the "MWRA claim"). American Home merely claims that the Contractor's Endorsement contained in its umbrella policy (the "American Home Policy") that is excess over the Primary Policy does not follow form to the Contractor Rework Coverage Amendment with respect to the MWRA claim.

As detailed below, American Home's interpretation of its Contractor's Endorsement must be rejected because: (1) American Home's interpretation renders several of the contract terms surplusage and is inconsistent with the plain meaning;

(2) Insituform's interpretation is reasonable and therefore governs; and (3) even under American Home's erroneous interpretation, Insituform is entitled to coverage for the MWRA claim.

As a matter of undisputed fact and controlling law, the American Home Policy follows form to the Primary Policy with respect to the MWRA claim. Thus, Insituform seeks an order granting its motion for partial summary judgment, denying American Home's cross motion and declaring that the American Home Policy follows form to the Primary Policy's Contractor Rework Coverage Amendment.

## I. AMERICAN HOME'S INTERPRETATION OF THE CONTRACTOR'S ENDORSEMENT IS UNREASONABLE.

The parties agree that the "However" clause (beginning with "However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance...") near the end of the Contractor's Endorsement acts as an exception to the exclusions above.[1]  Essentially, the "However" clause converts the exclusions to which it refers into coverage provisions, if the primary insurance covers the particular risk.

Insituform and American Home disagree as to which exclusions in the Contractor's Endorsement the "However" clause refers.  Insituform contends that the "However" clause refers to all of the exclusions in the Contractor's Endorsement.  American Home argues that the "However" clause refers to Following Form Hazards No. 1(a), (b) and (c) only.  According to American Home,

---

[1] For ease of reference, a copy of American Home's Contractor's Endorsement is attached to this memorandum as Exhibit A.

2

the "However" clause does *not* refer to Excluded Hazards Nos. 1-4 or the Follow Form Hazard No. 2. American Home Memorandum, pp. 2, 11 and 14.

American Home's interpretation is unreasonable and must be rejected.

### A.  American Home's Interpretation Renders The Terms "Such Bodily Injury" Surplusage.

The salient language from the American Home Contractor's Endorsement is as follows:

> However, if such insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:
>
> 1. This exclusion shall not apply; and
>
> 2. The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance. (Bold face in original.)

American Home Policy at I-134.[2]

This exception/follow form wording is used six different times in the American Home Policy. American Home Policy at I-113, 115, 134, 143 and 144. In each instance the qualifying phrase "if insurance for such..." is tailored to match the exclusion(s) to which the exception refers. For instance, Exclusion I excludes certain "liability" and the qualifying phrase of the "However" clause mirrors the exclusion, "if insurance for such *liability* is provided by...."(Emphasis added). American Home Policy at I-113. Exclusions J and S exclude certain "Bodily Injury or Property Damage" and the "However" clause reads "if insurance for such Bodily

---

[2] Insituform offered the entire American Home Policy in support of its motion for partial summary judgment, see Butler Affidavit, Exhibit B, to which this memorandum makes pagination references.

3

Injury or Property Damage is provided by...." American Home Policy at I-113 and 115.

Likewise, the Employee Benefits Liability Follow-Form Endorsement begins with an exclusion of certain "Bodily Injury, Property Damage, Personal Injury or Advertising Injury." The "However" clause provides "if insurance for such Bodily Injury, Property Damage, Personal Injury or Advertising Injury is provided by...." American Home Policy at I-143. The same is true for the Foreign Limits Limitation Endorsement. American Home Policy at I-144. In each instance, the qualifying phrase of the "However" clause matches the exclusionary wording to which the "However" clause refers. The same is true for the Contractor's Endorsement.

The Contractor's Endorsement is the only instance where the "However" clause refers to more than one exclusion, creating an ambiguity as to which exclusions the clause refers. Just the last? Just the Following Form Hazards? Or all of the exclusions, that is, both the Excluded Hazards and the Following Form Hazards?

The qualifying phrase in the "However" clause resolves the ambiguity. It provides "if insurance for such **Bodily Injury** or **Property Damage** is provided by...." The Following Form Hazards address "Property Damage" and "liability" only, not "Bodily Injury." Excluded Hazards Nos. 3 and 4 address "Bodily Injury," as well as "Property Damage." Therefore, the "However" clause must refer to the Excluded Hazards in order for the words "such Bodily Injury" to serve any purpose.

If, as American Home argues, the "However" clause was intended to refer to the three discrete areas of Property Damage listed under the Following Form

4

Hazards No. 1, then the "However" clause should read "However, if insurance for such **Property Damage** is provided by...." But it does not read that way. Instead, it reads "However, if insurance for such **Bodily Injury** or **Property Damage** is provided by...." The term "**Bodily Injury**" must refer to something in order to have meaning, and Excluded Hazards Nos. 3 and 4 provide that reference. Therefore, since the Excluded Hazards address Bodily Injury, but the Following Form Hazards do not, the only reasonable interpretation of the "However" clause is that it refers to the all the exclusions set forth in the Contractor's Endorsement. This interpretation allows all terms to have meaning and is consistent with a reading of the policy as a whole.[3]

### B. American Home's Interpretation Renders The Excluded Hazards Surplusage.

American Home argues that Insituform's interpretation renders the entire "Excluded Hazard" section of the Contractors Endorsement "superfluous." American Home Memorandum p. 11. This is simply not the case.

The Contractor's Endorsement sets forth essentially eight exclusions that relate to contractor risks. To the extent that the Liberty Mutual policy provides insurance for "such **Bodily Injury** or **Property Damage**," the exclusions in the American Home Contractor's Endorsement serve as an insuring provisions. Again, Insituform's interpretation is not only consistent with a reading of the policy as a

---

[3] American Home's reliance on the word "such" in the "However" clause actually undermines American Home's espoused interpretation. American Home Memorandum, p. 14. The use of the term "such **Bodily Injury** or **Property Damage**" necessitates inclusion of Bodily Injury, which is found only in the "Excluded Hazards," not in the "Following Form Hazards."

whole, it allows all the terms of the Contractor's Endorsement to serve an important purpose.

By contrast, American Home's interpretation renders the first four exclusions of the Contractor's Endorsement superfluous. If the "However" clause was not intended to refer to the Excluded Hazards, then there would be no point in including risks that the policy already excluded. Otherwise, such exclusions would be duplicative of exclusions already in the policy. And that is precisely the case. The first exclusion excludes damage to "leased" property; so does Exclusion D of the American Home Policy at I-112 and 132-33. Likewise, the risks in Excluded Hazard No. 2 are already excluded under Exclusions E and F. American Home Policy at I-112. These provisions serve no purpose if the "However" clause does not reference the Excluded Hazards. Since insurance policies are to be interpreted so that all provisions have meaning, *Falmouth Nat'l Bank v. Ticor Title Ins. Co.*, 920 F.2d 1058, 1061 (1st Cir. 1990) and *Aetna Cas. & Sur. Co. v. General Dynamics Corp.*, 968 F.2d 707, 710 (8th Cir. 1992), American Home's interpretation must be rejected.

**C.     American Home Misapplies Its Erroneous Interpretation.**

American Home seems to suggest that the "However" clause of the Contractor's Endorsement should refer to just the Following Form Hazards. If so, then the American Home Policy would follow form to coverage provided by the primary that falls under Following Form Hazards Nos. 1 and 2. But American Home does not concede even that.

American Home claims that its excess policy follows form to "three specifically detailed and limited happenings: (i) blasting or explosion; (ii) collapse or

6

structural injury of a building; or (iii) underground damages caused by the use of certain above-ground equipment." American Home Memorandum p. 2. American Home reiterates this "three happenings" argument twice more in its memorandum, at pages 11 and 14-15.

These "three happenings" are found in Following Form Hazard No. 1(a), (b) and (c). Therefore, American Home would have this Court believe that the "However" clause does not refer to Following Form Hazard No. 2, which provides: "Any liability assumed by the Insured under any contract or agreement." But obviously, it must. As explained in Section II.B and C below, American Home misapplies its own erroneous interpretation because the MWRA claim constitutes liability assumed by Insituform under the contract with the MWRA and is, therefore, covered even under American Home's theory.

## II. EVEN IF AMERICAN HOME'S INTERPRETATION IS REASONABLE, THE POLICY STILL AFFORDS INSITUFORM COVERAGE.

Even assuming that American Home's interpretation is reasonable, which it is not, Insituform must still prevail.

### A. Insituform Is Entitled To The Benefit Of Its Reasonable Interpretation.

When interpreting an insurance policy on summary judgment, any ambiguity must be construed in favor of Insituform and strictly against American Home. *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 210 (Mo. 1992); *Hakim v. Mass. Insurers' Insolvency Fund*, 675 N.E.2d 1161, 1165 (Mass. 1997)("Where there is more than one rational interpretation of policy language, 'the insured is entitled to the benefit of the one that is more favorable to it.'" (citations omitted)).

7

Here, Insituform's interpretation is, at a minimum, reasonable in that it gives meaning to the words "such Bodily Injury," while American Home's does not. Assuming for the moment that American Home's interpretation is also reasonable, but more restrictive, Insituform's must govern. Even assuming Insituform's interpretation was not reasonable, Insituform is still entitled to coverage for the MWRA claim.

### B. The American Home Policy Follows Form To Coverage For "Any Liability Assumed By The Insured Under Any Contract Or Agreement."

According to American Home, "the sole issue in this case is whether the 'however' clause modifies the Excluded Hazards section of the Contractor's Endorsement, as Insituform contends, or the 'Following Form Hazards,' as American Home contends." American Home Memorandum, pp. 13-14. Thus, even under American Home's reading of the policy, if a claim is covered by the underlying primary Liberty Mutual insurance policy and fits within one of the two "Following Form Hazards," then the policy provides follow form coverage.

The second of the two Following Form Hazards provides:

> 2. Any liability assumed by the **Insured** under any contract or agreement. (Bold face in original.)

American Home Policy at I-134.

Contrary to American Home's "three happenings" argument, a plain reading of the Following Form Hazards section shows that the Contractor's Endorsement provides coverage for: (i) damages caused by blasting or explosion, [Following Form Hazard No. 1(a)], (ii) the collapse of or structural injury to any building, [Following

8

Form Hazard No. 1(b)], (iii) damage to underground property performed by Insituform above the surface, [Following Form Hazard No. 1(c)] and (iv) liability assumed by Insituform under *any contract or agreement* [Following Form Hazard No. 2].

American Home has omitted any reference to coverage for any liability assumed under any contract because the MWRA claim is precisely that.

### C. The MWRA Claim Is "Liability Assumed By The Insured Under Any Contract Or Agreement."

As Insituform's Complaint makes clear, the claim in this case arose from work the MWRA required Insituform to undertake because a liner Insituform had installed "did not meet the contract document requirements and was, therefore, unacceptable and had to be repaired or replaced." (Insituform Complaint ¶19). More specifically, Insituform's subcontract with D'Allessandro Corporation to perform work under the MWRA Contract #6840, East Boston Sewer Rehabilitation incorporated all of the General Conditions of the Contract between D'Allessandro and the MWRA. *See* Subcontract between Insituform and D'Allessandro, attached to Kelley Affidavit, Exhibit A. Under the General Conditions, the contractor was required to build in accordance with the contract documents. *See generally* ¶¶ 3.4.1 – 3.4.10 of the General Conditions. *Id.* Further, the contractor was required to "promptly correct all Work rejected by the Engineer as defective or as failing to conform to the Contract Documents...." *Id.* at Ex. A., ¶ 14.2.1. Therefore, the liability (in the form of additional work and materials) incurred by Insituform was

9

required under its contract with D'Allessandro and the MWRA master contract, and falls squarely within paragraph 2 of the "Following Form Hazards."

As a result, even under American Home's limited reading of the Contractor's Endorsement, there is coverage for the MWRA claim.

### III. AMERICAN HOME HAS DENIED COVERAGE "WITHOUT REASONABLE CAUSE OR EXCUSE."

American Home has moved for summary judgment on Count III of Insituform's complaint which seeks recovery of damages and attorneys' fees under Missouri Revised Statute § 375.420. American Home Memorandum pp. 18 and 19. The facts material to that claim are undisputed and summary judgment is appropriate, but in Insituform's favor, not American Home's.

First American Home misstates the controlling standard. To prevail on a claim pursuant to § 375.420, an insured can recover damages for vexatious refusal to pay insurance proceeds by demonstrating "that the insurer's refusal to pay the loss was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person." *DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 710 (Mo. 1984)(Missouri Supreme Court upheld jury finding of vexatious refusal to pay). Whether a refusal to pay is vexatious or not must be determined by the situation as presented to the insurer at the time it was called on to pay. *Id.* The term "vexatious" means without reasonable or probable cause or excuse. *Housing Authority of the City of Clinton v. Buamann*, 512 S.W.2d 436, 440 (Mo. App. 1974) (awards of attorneys' fees and for vexatious delay proper).

American Home misstates the standard for recovery. American Home insists

that Insituform can only recover under Count III if Insituform demonstrates that American Home was vexatious and recalcitrant. American Home Memorandum, p. 19.[4] But that is not the case – Insituform need only demonstrate that American Homes' refusal to pay was unreasonable given the circumstances. *Dewitt*, 667 S.W.2d at 710; *Buamann*, 512 S.W.2d at 440; *Russell*, 834 S.W.2d at 221; *Hunt v. United States Fire Ins. Co. of New York*, 193 S.W.2d 778 (Mo. App. 1941) (insurance company's obstructive maneuvers without merit); *Travelers Indemnity Co. v. Woods*, 663 S.W.2d 392 (Mo. App. 1983) (reviewing whether insureds' submission instruction was proper where insurance company refused to pay based only on "suspicion" that insured caused the loss).

Here, it is undisputed that after Insituform's initial notice of the MWRA claim, American Home denied the claim based on Exclusions A and F and did not even reference the Contractor's Endorsement. Butler Affidavit, Exhibit C; Insituform 56.1 Response, ¶¶ 6 and 7. Apparently, American Home's claims person did not bother to read the whole policy before writing her denial.

Thereafter, Insituform demanded that the bogus denial be withdrawn. *Id.* at ¶ 8. American Home informed Insituform that there was no coverage for the MWRA claim because the American Home policy did not follow form to the Primary Policy under the Contractor's Endorsement with respect to the MWRA claim. Insituform Local Rule 56.1 Response ¶ 9. However, American Home never explained why. It just refused coverage without cause or excuse.

---

[4] American Home also erroneously claims that Insituform has not plead any facts supporting its claim under §375.420. This position patently ignores paragraph 39 of Insituform's complaint which specifically sets forth why American Home's actions were and are unreasonable.

11

It was not until responding to Insituform's motion for summary judgment that American Home attempted to explain why its excess policy does not follow form to the Liberty Mutual Contractors Rework Coverage Amendment. As already discussed, American Home has floated an unreasonable interpretation that even it misapplies in order to avoid coverage.

On these facts alone, this Court can find American Home's "refusal to pay was without reasonable or probable cause or excuse." *Perkins v. Philadelphia Life Ins. Co.*, 586 F. Supp. 296, 301 (W.D. Mo. 1984) (cited by American Home at p. 19). Thus, this Court should enter summary judgment against American Home on liability as to Count III of the complaint, with a determination of damages and award of reasonable attorney's fees to follow.

## CONCLUSION

The Court has three independent bases for granting summary judgment in favor of Insituform and against American Home. First, the contract unambiguously provides coverage, as American Home's reading of the Contractor's Endorsement would unreasonably and unnecessarily render critical portions of the policy as surplusage. Second, any ambiguity in the Endorsement must be construed against American Home and in favor of Insituform. Third, even American Home's erroneous reading results in coverage for Insituform because the MWRA claim constitutes "any liability assumed by the Insured under any contract or agreement." Further, the record is undisputed that American Home first denied coverage without reference to the controlling policy language and then maintained the erroneous denial without reasonable grounds for excuse.

As a result, summary judgment on liability under Counts II and III should be entered in favor of Insituform and against American Home.

Dated: July 8, 2004

Respectfully submitted,

INSITUFORM TECHNOLOGIES, INC.

By: _____
Stanley A. Martin
Holland & Knight LLP
10 St. James Avenue
Boston, Massachusetts 02116
(617) 523-2700

Of counsel:

Charles L. Philbrick
Holland & Knight LLP
131 S. Dearborn St., 30th Floor
Chicago, Illinois 60603-5547
(312) 263-3600

# 2070561_v2