UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                        )
INSITUFORM TECHNOLOGIES, INC.,          )
                                                        )
                Plaintiff,                              )
                                                        )
v.                                                      )        CASE NO. 04-10487 GAO
                                                        )
AMERICAN HOME ASSURANCE              )
COMPANY,                                          )
                                                        )
                Defendant.                          )
_____)

**AMERICAN HOME ASSURANCE COMPANY'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO INSITUFORM TECHNOLOGIES, INC.'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Defendant American Home Assurance Company ("American Home") submits this reply

memorandum in further support of its Cross-Motion for Summary Judgment and Opposition to

Insituform Technologies, Inc.'s ("Insituform") Motion for Partial Summary Judgment.

American Home is entitled to summary judgment because none of Insituform's new arguments

in its Response to American Home's Cross-Motion for Summary Judgment ("Response")

undermine the clear and unambiguous text of the American Home liability insurance policy,

Policy Number BR 3206923 ("American Home Policy"). Rather, as demonstrated below,

Insituform's belated arguments are belied by both common sense and the terms of the American

Home Policy. American Home is, therefore, entitled to judgment as a matter of law.

**I.      Insituform Has Conceded That There is no Coverage Under the Standard Terms
         and Conditions of the American Home Policy.**

Nowhere in its Response does Insituform address American Home's argument that there

is no coverage under the American Home Policy's standard terms and conditions. Accordingly,

Insituform has conceded this point. If there is any coverage, which American Home contends there is not, it must be based on Insituform's argument that as a result of the Contractor's Endorsement, the American Home Policy "follows form" to the Liberty Mutual primary policy.

## II.    The Term "Such Bodily Injury" is not Surplusage.

Contrary to Insituform's argument (Response at 3-5), American Home's interpretation of the Contractor's Endorsement, which relies upon **both** of the Contractor's Endorsement's two distinct sections -- Excluded Hazards and Following Form Hazards -- does not render the term "such bodily injury" that appears in the Following Form Hazards section surplusage. Rather, the term refers to "bodily injury" that would be covered under Following Form Hazard No. 2, "liability" assumed by the insured under any contract or agreement. Thus, the term's inclusion in the Following Form Hazards section is entirely consistent with American Home's interpretation of the Policy.[1]

The applicable language from the Contractor's Endorsement is as follows:

**Following Form Hazards**

It is further agreed that this insurance does not apply to:

1.    **Property Damage** arising out of:

    a.    Blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment;

---

[1]    Insituform for the first time in its Response suggests that the American Home Policy is ambiguous. It is not. Clearly, the fact that the parties disagree as to the meaning of the American Home Policy does not make it ambiguous. See Center for Blood Research, Inc. v. Coregis Ins. Co., 305 F.3d 38, 41 (1st Cir. 2002) ("An ambiguity is not created simply because a controversy exists between the parties.") (internal quotation marks and citation omitted); Cincinnati Ins. Co. v. Ventetian Terrago, Inc., 198 F. Supp. 2d 1074, 1078 (E.D. Mo. 2001) ("A disagreement between the parties as to the meaning of the policy language does not suffice to create an ambiguity.") (citation omitted). Moreover, this argument is directly contradicted by Insituform's earlier argument that the American Home Policy is unambiguous. (See Insituform Memorandum at 12) (arguing "plain" language of Contractor's Endorsement is "unambiguous").

b.   The collapse of or structural injury to any building or structure due to:

    1)   the grading of land, paving, excavating, drilling, burrowing, filling, back-filling, tunneling, pile driving, coffer-dam or caisson work,

    2)   the moving, shoring, underpinning, raising, or demolition of any building or structure, or the removal or rebuilding of any structural support thereof; or

c.   Damage to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling or pile driving; or

2.   Any liability assumed by the **Insured** under any contract or agreement.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

1.   This exclusion shall not apply; and

2.   The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

As this language clearly establishes, there are four types of specific, limited hazards for which the American Home Policy provides coverage, if such coverage is provided by an underlying policy of insurance:  (i) property damage arising out of blasting or explosion; (ii) property damage arising out of the collapse of or structural injury to any building or structure; (iii) property damage arising out of damage to certain specified items located beneath the surface of the ground or water; and (iv) *any liability* assumed by Insituform under any

contract or agreement.[2]  The term "such bodily injury" is not surplusage because it clearly relates

to the fourth type of hazard:  any liability, including "bodily injury," Insituform assumes on

behalf of a third party under a contract or agreement.  Accordingly, the presence of the term

"such bodily injury" in the separate and distinct Following Form Hazards section of the

Contractor's Endorsement is not surplusage because it relates to certain risks covered by

Following Form Hazard No. 2 of the Contractor's Endorsement.

### III.     The Excluded Hazards Section of the Contractor's Endorsement is not Surplusage.

Insituform's next argument, that American Home's interpretation of the Excluded

Hazards portion of the Contractor's Endorsement renders it surplusage and is therefore

erroneous, is likewise untenable.  (Response at 5-6.)  Contrary to Insituform's argument, each of

the four Excluded Hazards excludes coverage in a material way beyond the exclusions in the

standard terms and conditions of the American Home Policy.  Such exclusions are, therefore,

anything but surplusage.

The first Excluded Hazard, "property damage to any property or equipment leased by the

insured," clearly goes beyond the standard terms and condition exclusions.  The only exclusion

in the standards terms and conditions arguably similar is Exclusion D.  Exclusion D, however,

does not extend to equipment leased by Insituform or specifically address property not in

Insituform's care, custody or control.  Likewise, Excluded Hazard No. 2, "property damage to

property <u>being</u> installed, erected or worked upon by the Insured or by any agents or

subcontractors of the Insured"(emphasis added), goes well beyond Exclusion G of the standard

---

[2]     Insituform cries foul over American Home's failure to discuss the fourth type of following form coverage in its moving papers.  (Response at 7.)  As demonstrated herein, this fourth type of coverage is inapplicable to the facts present here.  American Home did not mention it in its previous submission because American Home saw no need to set up straw arguments concerning an irrelevant provision simply to show that it does not afford coverage.

terms and conditions, the only one at all similar, which is limited to products-completed

operations hazards. Thus, Excluded Hazard No. 2 excludes property damage to property <u>being</u>

worked on by Insituform which is <u>not</u> <u>yet</u> <u>completed</u>.  In addition, Excluded Hazard No. 2, unlike

Exclusion G, extends to work performed by an <u>agent</u> or <u>subcontractor</u> of the insured.

Excluded Hazards 3 and 4, which exclude bodily injury or property damage arising out of

a project insured under a "wrap-up" plan and arising out of any professional services performed

by the insured, respectively, Insituform conspicuously does not address.[3]  Clearly these

exclusions are not surplusage inasmuch as there is no exclusion in the standard terms and

conditions even remotely similar to either of them.

As demonstrated above, the Excluded Hazards of the Contractor's Endorsement exclude

coverage for a wide variety of potential liabilities beyond those excluded by the standard terms

and conditions of the American Home Policy.  Moreover, the format of the Contractor's

Endorsement, with its two distinct sections of Excluded Hazards and Following Form Hazards,

demonstrates that the Excluded Hazards section is not surplusage.[4]  Insituform's interpretation is

unreasonable because it would give no meaning to having two separate, distinct sections of the

Contractor's Endorsement.  Therefore, the presence of the Excluded Hazards in the Contractor's

Endorsement further supports American Home's interpretation and undermines Insituform's

position.

---

[3]    This is another example of Insituform simply ignoring, rather than distinguishing, policy provisions that do not support its argument.  The Court, however, is not permitted such an indulgence.  <u>See</u> <u>Falmouth Nat'l Bank v.</u> <u>Ticor Title Ins. Co.</u>, 920 F.2d 1058, 1061 (1st Cir. 1990) ("[W]henever possible, each word in an insurance policy should be considered and given some meaning.") (citation omitted); <u>Aetna Cas. & Sur. Co. v. General</u> <u>Dynamics Corp.</u>, 968 F.2d 707, 710 (8th Cir. 1992) ("Missouri law requires all terms of an insurance contract be given meaning.") (citation omitted).

[4]    Notably absent from Insituform's Response is any argument addressing this point which American Home raised in its initial moving papers.  Rather, Insituform continues to focus on words in isolation and not the complete text and format of the Contractor's Endorsement.

IV.    **The Costs for Which Insituform Seeks Recovery are not Liabilities Assumed Under a Contract or Agreement.**

Contrary to Insituform's new argument, the costs for which Insituform seeks recovery are not "liabilities assumed under any contract or agreement" such that coverage is provided under Following Form Hazard No. 2.[5]

First, there can be no coverage for the costs Insituform seeks to recover because such costs are clearly excluded by the "Your Work" exclusion (Exclusion G) and Excluded Hazard No. 2. As Insituform acknowledges in its Response, the costs at issue here result from its failure to adequately perform certain work for the Massachusetts Water Resources Authority ("MWRA"). (Response at 9.) The cost of repairing/replacing such defective work is "property damage to property being installed, erected or worked upon by the insured" and therefore excluded by Excluded Hazard No. 2, or property damage arising out of "your work" included in the Products-Completed Operations Hazard and excluded by Exclusion G. See Lusalon, Inc. v. Hartford Acc. & Indem. Co., 400 Mass. 767, 770-73 (1987) (enforcing exclusion in liability insurance policy for property damage caused by faulty workmanship); Columbia Mut. Ins. Co. v. Schauf, 967 S.W.2d 74, 77-78 (Mo. 1998) (same). Where, as here, the costs for which the insured seeks recovery are barred by the clear and unambiguous language of a policy exclusion, there can be no recovery. See Stop & Shop Cos., Inc. v. Federal Ins. Co., 136 F.3d 71, 73 (1st Cir. 1998) (enforcing policy exclusion and holding "where the policy's language is plain, we interpret and enforce it according to the ordinary meaning of the words contained in the policy's provisions.") (citation omitted); Indiana Lumbermens Mut. Ins. v. Timberland Pallet, 195 F.3d 368, 377 (8th Cir. 1999) ("[W]here language in an insurance contract is unequivocal, it is to be

---

[5] This is a completely novel argument for Insituform. It does not appear in its moving papers nor did Insituform ever raise this alleged basis for coverage in its correspondence with American Home prior to instituting suit.

given its plain meaning notwithstanding the fact that it appears in a restrictive provision of a policy.") (internal quotation marks and citations omitted).

Second, as countless courts have recognized, Commercial General Liability ("CGL") policies, such as the American Home Policy, generally do not provide coverage for breach of contract claims.  See, e.g., Amtrol, Inc. v. Tudor Ins. Co., C.A. No. 01-10461-DPW, 2002 U.S. Dist. LEXIS 18691, at *32-33 (D. Mass. Sept. 10, 2002) (recognizing the "general proposition that CGL policies do not cover damages for breach of contract warranties."); see generally Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 7.05 (12th ed. 2004) ("A general liability policy normally excludes from coverage the insured's contractually assumed liability.").  Even when, as here, a CGL policy provides coverage for contractually assumed liability, that coverage is limited to a third party's tort liability the insured has agreed to assume pursuant to an indemnification or hold harmless agreement.  As the authors of the Handbook on Insurance Coverage Disputes note:

> Such an endorsement does not provide coverage for an insured's breach of contract with another party.  Rather, as with the exclusion, the language refers only to situations in which an insured has assumed the tort liability of another party by means of indemnification or hold harmless agreement.

Ostrager, supra, at § 7.05.  As the costs Insituform seeks to recover are not tort liabilities incurred by a third party which Insituform agreed to assume under an indemnification or hold harmless agreement, no coverage is available under Following Form Hazard No. 2.

Third, the costs for which Insituform seeks recovery – the costs for repairing or replacing its own defective work – are not a "liability assumed under a contract or agreement." Insituform's contractual promise to perform work in accordance with certain documents, and "to promptly correct all Work rejected by the Engineer as defective or as failing to conform to the Contracts Documents" (see Response at 9), simply is not a "liability assumed."  Rather, it is a

- 8 -

promise to do something and the costs incurred by Insituform arise from a breach of that promise. In contrast, a "liability assumed" is meant to cover those situations where Insituform agreed to assume the tort liabilities of others, and not costs arising from its own breach of a contractual duty.

Fourth, the costs at issue are not a "liability assumed under a contract or agreement" for which coverage was provided under the Primary Policy. Insituform has not claimed, because it cannot, that its primary carrier, Liberty Mutual Insurance Company, paid for such costs based on coverage that it provided for "liability assumed under any contract or agreement." Indeed, the Primary Policy specifically excludes coverage for "'bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement," unless it is pursuant to an "insured contract."[6] (See Complaint Ex. A at 2 of 20, Exclusion B.) Therefore, there is no applicable primary coverage based on "liability assumed under any contract or agreement," to which the American Home Policy follows form.

Finally, there is no coverage under Following Form Hazard No. 2 because allowing coverage would make Following Form Hazard No. 2 the exception that swallows the rule. See New Hampshire Ins. Guar. Ass'n v. Markem Corp., 424 Mass. 344, 252 (1997) (recognizing principle that exception cannot swallow rule); Richardson v. Quiktrip Corp., 81 S.W.3d 54, 73 (Mo. Ct. App. 2002) (same). When interpreting insurance contracts, courts are not free to leave their common sense at the door. See Fishman v. LaSalle Nat'l Bank, 247 F.3d 300, 302 (1st Cir. 2001) ("Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons"); Chehval v. St. John's Mercy Med. Ctr., 958 S.W.2d 36, 39 (Mo. Ct. App.

---

[6]    An "insured contract" is defined, in relevant part, in the Primary Policy as "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the **tort liability** of another party to pay for

*(Footnote continued on next page)*

1997) ("To ascertain the intent of the parties to an unambiguous contract, we give the language used its natural, ordinary, and common sense meaning, and consider the entire contract, along with its object, nature, and purpose.")  If Insituform is correct, there is absolutely no limit to coverage under the American Home Policy so long as Insituform enters into a contract with any party and breaches that contract.  Such an interpretation would transform American Home into a guarantor of Insituform's performance under any contract, which is well beyond the scope of the umbrella liability coverage it agreed to provide.  Clearly, this is not what Following Form Hazard No. 2 provides, but it is precisely what Insituform argues.  As neither the standard terms and conditions of the American Home Policy nor Following Form Hazard No. 2 provide coverage for work that Insituform contractually agreed to perform, it cannot recover for the costs at issue here.

**V.    The Undisputed Material Facts Require Dismissal of Insituform's Claim Under Missouri Revised Statutes § 375.420.**

As American Home detailed in its initial moving papers, Insituform has failed to allege any facts that would permit recovery under Mo. Rev. Stat. § 375.420.  Insituform's claim under this statute is based on two alleged facts, both of which American Home admits:  (1) American Home initially denied Insituform's claim based solely on the standard terms and conditions of the American Home Policy, not on the Contractor's Endorsement; and (2) American Home did not subsequently agree that coverage existed under the Contractor's Endorsement.  (Response at 11; Complaint ¶ 39.)  In the first instance, American Home did not refer to the Contractor's Endorsement because American Home did not believe that the endorsement applied.  Thereafter, American Home did not accept Insituform's claim because no coverage is available under the

---

*(Footnote continued from previous page)*
'bodily injury' or 'property damage' **to a third person or organization**."  (Complaint Ex. A at 17 of 20, Definition 9f) (emphasis added).

Contractor's Endorsement.  As American Home's memoranda demonstrate, both of its coverage positions were correct.  Its refusal to pay was, therefore, entirely reasonable.  Moreover, where, as here, there are no factual disputes between the parties, simply disagreement as to available coverage for certain costs, an insurer's good faith denial of coverage cannot give rise to a claim under Mo. Rev. Stat. § 375.420.  See Perkins v. Philadelphia Life Ins. Co., 586 F. Supp. 296, 301 (W.D. Mo. 1984) ("An insurer is subject to damages under Mo. Rev. Stat. § 374.420 only if the refusal to pay was without reasonable or probable cause or excuse.").

## CONCLUSION

For the reasons set forth above, and for those reasons set forth in American Home's initial memorandum of law, American Home's Cross-Motion for Summary Judgment should be granted, Insituform's Motion for Partial Summary Judgment should be denied, and Insituform's Complaint should be dismissed in its entirety.

AMERICAN HOME ASSURANCE COMPANY,

By its attorneys,

_____/s/ G. Rubenstein_____
Gregory P. Deschenes (BBO #550830)
Gregg A. Rubenstein (BBO #639680)
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts  02110
(617) 345-1000
(617) 345-1300 (facsimile)

Dated:  July 23, 2004