IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INSITUFORM TECHNOLOGIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04 10487 GAO |
| ) | |
| AMERICAN HOME ASSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

*EXHIBIT A* **TO SUPPLEMENTAL AFFIDAVIT OF ROBERT KELLEY**

EXHIBIT A



Liberty Mutual Group

70 East Sunrise Hwy
PO Box 9001
Valley Stream, NY 11582
Telephone: (516) 593-8200
Fax: (603) 334-8115

December 10, 2004

Michael Whetsel
Claims Manager
Insituform Technologies, Inc.
702 Spirit 40 Park Drive
Chesterfield, MO 63005

RE: MWRA v Insituform
    Claim Number: P 220-071010-01

Dear Mr. Whetsel:

We have received the materials that you forwarded to us in the above-captioned matter. We have reviewed these materials in conjunction with the terms of the Commercial General Liability Policy that we issued to Insituform Technologies, Inc. for the period June 30, 2003 to June 30, 2004. Based on this review, we have determined that there is a potential of coverage in this matter. As a result, we will provide Insituform with indemnity for the losses incurred in connection with this matter.

The policy language is outlined, in part, below:

Endorsement no. 18 to the policy is the Contractors Rework Coverage Amendment. This endorsement deletes exclusions j(5), j(6), k, l, m and n in the coverage form. The endorsement states that we will pay all sums that Insituform is legally obligated to pay for the required removal or repair of "your product" or "your work" "including concrete, cement, sand or aggregate, concrete blocks, concrete products or other products manufactured, sold, handled or distributed by or behalf of the insured which are defective."

The endorsement states:

The amount we will pay under this coverage shall be limited to the lesser of:

1. Your actual cost or removing and replacing any of the above items; or
2. Your actual cost of remedial action taken to avoid removal or replacement of such products.

The endorsement also states that the coverage afforded does not apply unless the defect requiring removal or repair of "your work" or "your product" (1) results from an error in the design, prescription, manufacture, blending, mixing or compounding of such work or products; and (2) the repair, replacement or removal is made necessary because such work or product has been rejected by the owner, the owner's representative, or a municipality or other authority having jurisdiction. "Defective" is defined in the endorsement to mean that, upon testing by an accredited, independent testing agency, "your work" or "your product" does not meet contractual specifications or accepted standards required for the specific construction in which such materials were incorporated.

According to our investigation, the facts in this case are as follows:

Insituform was subcontracted by D'Allesandro Corp to rehabilitate approx. 5,400 feet of brick & stone lined sewer owned by the MWRA. Insituform was contracted to install a Cast In Place Pipe (CIPP) liner inside an egg-shaped brick pipe with a nominal diameter of 40". The MWRA pipe was unusual in that it was an inverted egg shape with the larger part (41") at the bottom & the smaller part (36") at the top. The project was also unique in that the pipe was 30' below ground level & there was substantial groundwater pressure & infiltration.

The design for the CIPP developed by Insituform was based on a circular pipe with a diameter of 40". Insituform submitted this design to MWRA. Their engineer, Jacobs Engineering, accepted the design & approved the submission. By installing the CIPP liner, the capacity of the pipe was to be increased. This was a requirement of the MWRA contract. Insituform presented flow calculations & Jacobs Civil Engineering accepted the lined pipe would have an increased capacity of 20%.

The installation of the CIPP began on August 13, 2003. The installation was completed on September 8, 2003. Visual inspections of the installation revealed fins or straight line-horizontal protrusions on the side of the pipe. Upon further inspection, severe wrinkles were seen on the entire circumference of most of the pipe. On or about October 31, 2003, the MWRA notified Insituform that the installation failed to meet contract specifications and that the job was rejected.

Insituform tried various remedies to remediate the defects in the installation. Remedies included increasing the pressure of the water used to push the liner and increasing the size of the felt part of the liner & using a lubricant. Wrinkles & fins remained in most areas. Upon further evaluation, the brick host pipe was discovered to have haunches. Upon investigation of these haunches, it was found that there was severe folding of the felt near these haunches, which affected the inflation of the liner. It is believed these haunches in conjunction with the inverted egg shape had an adverse effect on the installation. Insituform tried to trim the fins & some of the wrinkles. The pipe showed leakage through the liner at the trimmed fins as well as other areas. It also revealed the size & shape of the CIPP liner was considerably smaller than the original brick lined pipe. As stated in the Design Submission, the capacity was to be increased by 20%. Observing this decrease in size, MWRA further inspected the pipe & found gaps & hollow spaces between the liner & the brick pipe. Grouting was performed at these locations; however, an evaluation & subsequent testing revealed that the procedure was not effective & the liner would not have the 50-year life expectancy required by the contract.

Attempts at remediating the installation failed. Plans were made to remove and replace the installation. The planning began in October 2003, and removal and reinstallation was completed May 2004. Inspection and testing completed May 8, 2004. The repair and reinstallation was accepted by the MWRA on May 11, 2004.

Our investigation of this claim is now complete. This matter appears to involve "an error in the design, prescription, manufacture, blending, mixing or compounding of [your work]." As a result, there is coverage under the endorsement for this claim.

Our evaluation of this matter and the review of the endorsement precludes us from considering any costs emanating from the initial installations. Therefore, any costs submitted which were incurred prior to October 1, 2003 are excluded from consideration. Costs incurred post October 2, 2003 are potentially covered.

Insituform submitted invoices totaling of $6,824,000 claiming coverage under the Contractors Rework Endorsement.

After a review of all the invoices submitted, we have concluded that we will pay the full limit of $1,000,000 available under the Contractor's Rework Endorsement. As you are aware, the Endorsement provides for a $250,000 per occurrence deductible. This deductible amount will be billed directly to Insituform.

While we have attempted to address all of the coverage considerations related to this claim, Liberty Mutual does not intend to wave any provision, exclusion or condition the policy that it has issued. Liberty Mutual specifically reserves all rights and defenses under the policy of insurance and applicable law and any action taken by Liberty Mutual during its handling of this claim should not be interpreted as a waiver or estoppel to assert any such right. If Liberty Mutual becomes aware of any other policy provisions, exclusions or conditions that may be applicable, Liberty Mutual reserves it rights to later assert these provisions, exclusions or conditions.

Please feel free to contact me if you have any questions concerning our position outlined in this letter or if you have any addition information that you believe may affect our coverage position.

Sincerely,

Egon W. Brown
Director of Technical Claims

cc   Robert L. Kelley
     Of Counsel
     Insituform Technologies, Inc
     702 Spirit 40 Park Drive
     Chesterfield, MO  63005

     Ann Roussel
     Lockton Companies
     3 City Place Drive, Suite 900
     St. Louis, MO  63141

Denise McKibben
Liberty Mutual