UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INSITUFORM TECHNOLOGIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 04-10487 GAO |
| ) | |
| AMERICAN HOME ASSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**AMERICAN HOME ASSURANCE COMPANY'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Defendant American Home Assurance Company ("American Home") submits this memorandum in support of its Motion for Summary Judgment against plaintiff Insituform Technologies, Inc. ("Insituform").

In this action, Insituform seeks insurance coverage for costs it allegedly incurred correcting defects in its work on a construction project for the Massachusetts Water Resources Authority (the "MWRA Claim"). Insituform alleges that the MWRA Claim is covered by Endorsement No. 4, titled "CONTRACTOR'S ENDORSEMENT," attached to a commercial umbrella liability insurance policy issued to Insituform by American Home (the "American Home Policy"). Insituform contends that the American Home Policy provides coverage for the MWRA Claim, claiming that the Contractor's Endorsement "follows form" to a primary policy issued by Liberty Mutual Insurance Company to Insituform (the "Primary Policy"). According

1599059.4

to the Complaint, the Primary Policy contains a "Contractor Rework Coverage Amendment" that purportedly provides coverage for Insituform's defective work. Insituform's argument, however, has no basis in law or fact. As demonstrated herein, the Contractor's Endorsement does not provide "follow-form" coverage for the MWRA Claim because it (1) does not fall within any of the eight (8) specified hazards in the Contractor's Endorsement and (2) is specifically excluded by the standard terms and conditions of the American Home Policy.[1]

The Contractor's Endorsement to the American Home Policy already has been the subject of cross-motions for summary judgment and a motion for reconsideration. In its March 30, 2005 Memorandum and Order (the "Summary Judgment Order"), the Court held that Endorsement No. 4 is ambiguous and "follows form" to the Liberty Mutual Primary Policy, but only with respect to the eight (8) specific hazards enumerated in Endorsement No. 4. See Insituform Technologies, Inc. v. American Home Assur. Co., 364 F.Supp. 2d 3, 6 (D. Mass. 2005).[2]

American Home moved for reconsideration of the Summary Judgment Order on the grounds that Endorsement No. 4 does not provide blanket "follow-form" coverage for Insituform's defective work and, even if ambiguous, does not cover the MWRA Claim. American Home contended that the "following form" coverage in the American Home Policy is limited to the eight specific hazards listed in Endorsement No. 4, none of which provide coverage for the MWRA Claim. Insituform opposed the motion, arguing that the Court

---

[1] As this Court noted, Insituform does *not* allege that the MWRA Claim is covered by the standard terms and conditions of the American Home Policy. See Insituform Technologies, Inc. v. American Home Assur. Co., 364 F.Supp. 2d 3, 4 (D. Mass. 2005). Instead, Insituform's claim is limited to the baseless contention that, pursuant to Endorsement No. 4, the American Home Policy provides "follow-form" coverage for Insituform's defective work.

[2] The Court also granted American Home's motion for summary judgment on Count III of the Complaint, which alleged a violation of Mo. Rev. Stat. § 375.420 (2002). Insituform, 364 F.Supp. 2d at 7. Accordingly, if the Court grants the motion for summary judgment as to Count I (Breach of Contract) and Count II (Declaratory Judgment), the Court can dispose of the Complaint in its entirety.

- 3 -

necessarily concluded in the Summary Judgment Order that the MWRA Claim was covered by the American Home Policy.

On May 24, 2006, the Court issued an order clarifying its prior ruling (the "Clarification Order"). The Court held that, although it ruled in the Summary Judgment Order that Endorsement No. 4 is ambiguous, it did not intend to resolve the broader question of whether the MWRA Claim falls within the coverage of the American Home Policy. (<u>See</u> Clarification Order, at 2.) The Court clarified that it did not consider the question whether there is coverage for the MWRA Claim under the eight hazards listed in Endorsement No. 4. (<u>See id.</u>) The Court concluded that the Summary Judgment Order only determined that Endorsement No. 4 "follows form" to the Liberty Mutual Primary Policy "*to the extent stated in the endorsement*," and that the "However" clause modified all the preceding language in the endorsement. (<u>See id.</u>) (Emphasis added). The Court left to "another day (and perhaps another motion) to determine what implications or consequences the construction of [the Contractor's] endorsement might have for the larger dispute." (<u>See id.</u>)

American Home now moves for summary judgment. As American Home will demonstrate, Endorsement No. 4 – and the eight specific hazards described therein – do not, despite Insituform's protestations to the contrary, provide coverage for the MWRA Claim. As shown below, American Home is entitled to judgment for two reasons: <u>First</u>, even if Endorsement No. 4 is ambiguous, as the Court has concluded, the American Home Policy only "follows form" to the Liberty Mutual Primary Policy with respect to the eight specific hazards listed in Endorsement No. 4 and Insituform has not and cannot demonstrate, by offering admissible evidence under Rule 56, that the MWRA Claim actually falls within the coverage of any of those eight hazards. Put another way, regardless of whether Endorsement No. 4 is

ambiguous, and whether some or all of the eight hazards listed in Endorsement No. 4 "follow form" to the Liberty Mutual Primary Policy, none of them provide coverage for the MWRA Claim.  Second, coverage for the MWRA Claim is plainly barred by the standard terms and conditions of the American Home Policy, including the so-called "faulty-workmanship" exclusions (Exclusions F and G), which were **not** modified by Endorsement No. 4 and, therefore, remain in full force and effect.  Accordingly, Insituform cannot demonstrate that it is entitled to coverage under the American Home Policy, either pursuant to the Contractor's Endorsement or any other provision of the policy.  American Home is, therefore, entitled to judgment as a matter of law.

## FACTUAL BACKGROUND

### A.   The MWRA Claim

Insituform provides sewer rehabilitation service using certain trenchless technology. (Statement, ¶ 1.)[3]  In approximately August 2003, Insituform performed sewer rehabilitation work valued at $1,000,000 for the MWRA pursuant to Contract #6840.  (Statement, ¶ 2.)  After Insituform finished the job, it was notified of leakage occurring at the end of the newly installed liner.  (Statement, ¶ 3.)  On or about October 31, 2003, the MWRA notified Insituform that the work it performed did not meet the contract document requirements, was unacceptable, and must be repaired or replaced (the "MWRA Claim").  (Statement, ¶ 4.)  As a result, Insituform has allegedly incurred costs and expenses in excess of $1 million repairing and replacing its own defective work.  (Statement, ¶ 5.)

---

[3] References to the "Statement" are to American Home Assurance Company's Statement of Undisputed Facts, submitted pursuant to Local Rule 56.1 in connection with American Home's Motion for Summary Judgment.

B.     **The Insurance Policies**

Insituform was insured between July 1, 2003 and July 1, 2004 under at least two insurance policies to which Insituform submitted the MWRA Claim: (1) Liberty Mutual's Primary Policy, and (2) and American Home's Umbrella Policy. (Statement, ¶¶ 6, 8.)

*Liberty Mutual Primary Policy*

The Primary Policy contains, among other provisions, a Contractor Rework Coverage Amendment (the "Rework Amendment"). (Statement, ¶ 7.) The Rework Amendment provides in its entirety as follows:

**CONTRACTOR REWORK COVERAGE AMENDMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that the policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

We will pay those sums which you become legally obligated to pay for the required removal or repair of "your product" or "your work" including concrete, cement, sand or aggregate, concrete blocks, concrete products or other products manufactured, sold, handled or distributed by or on behalf of the Insured which are defective, subject to the limits of liability and deductible and the provisions specified below.

The amount we will pay under this coverage shall be limited to the less[e]r of:

1.   Your actual cost of removing and replacing any of the above items; or

2.   Your actual cost of remedial action taken to avoid removal or replacement of such products.

We will also pay damages for the loss of use of real property and/or consequential business interruption resulting from necessary removal, replacement or remedial action taken to avoid removal or repair of "your product" or "your work."

This coverage shall not apply unless the defect requiring removal or repair of "your work" or "your product" results from an error in the design, prescription, manufacture, blending, mixing or compounding of such work or product and the repair, replacement or

removal is made necessary because such work or product has been rejected by the owner, his authorized representative, or a municipality or other authority having jurisdiction.

Defective shall mean that upon testing by an accredited, independent testing agency, "your work" or your product" does not meet the contractual specifications or accepted standards required for the specific construction in which such materials were incorporated.

Coverage provided under this endorsement shall be subject to all exclusions applicable to "property damage," except exclusions j.(5), j.(6), k., l., m. and n.

This endorsement shall not apply to any amount which is covered under any other provision of this policy.

Our obligations to pay any amount under this endorsement applies only to amounts in excess of the deductible amount stated below.

The terms of this insurance, including those with respect to:

    (a)    Our right and duty to defend any "suits" seeking damages; and

    (b)    Your duties in the event of an "occurrence," claim or "suit" apply irrespective of the application of the deductible.

We may pay any part or all of the deductible to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible as has been paid by us.

This insurance is excess over any other insurance (including any deductible) which is available under a policy of property insurance, such as, but not limited to, fire and extended coverage, builder's risk or installation coverage.

Limits of Liability:    $1,000,000    per occurrence
                        $1,000,000    aggregate

Deductible              $250,000      per occurrence
Premium                 Included in GL Premium

(Statement, ¶ 7.)

*American Home Umbrella Policy*

The insuring agreement of the American Home Policy provides as follows:

**I.    Coverage**

> We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the **Insured** becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of . . . **Property Damage** . . . that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world.  The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.
>
> If we are prevented by law or statute from paying on behalf of the Insured, then we will, where permitted by law or statute, indemnify the Insured for those sums in excess of the Retained Limit.

(Statement, ¶ 10.)

The American Home Policy contains the following definitions which are relevant to this action:

**IV.    Definitions**

\*        \*        \*

> **H.    Occurrence** means:
>
>> 1.    As respects . . . **Property Damage**, an accident, including continuous or repeated exposure to conditions, which results in . . . **Property Damage** neither expected nor intended from the standpoint of the **Insured.**  All such exposure to substantially the same general conditions shall be considered as arising out of one **Occurrence** . . . .
>
> \*        \*        \*
>
> **J.  1.    Products-Completed Operations Hazard** includes . . . **Property Damage** occurring away from your premises you own or rent and arising out of **Your Product** or **Your Work** except:
>
>> a.    products that are still in your physical possession; or
>>
>> b.    work that has not yet been completed or abandoned.
>
>  2.    **Your Work** will be deemed completed at the earliest of the following times:
>
>> a.    When all of the work called for in your contract has been completed.

    b.   When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    c.   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

*    *    *

**K.**    **Property Damage** means:

    1.   Physical injury to tangible property, including all resulting loss of use of the property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    2.   Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **Occurrence** that caused it.

*    *    *

**M.**    **Your Product** means:

    1.   Any goods or products, other than real property, manufactured, sold handled, distributed or disposed of by:

        a.   you;

        b.   others trading under your name; or

        c.   a person or organization whose business or assets you have acquired; and

    2.   Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

    1.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

    2.   The providing of or failure to provide warnings or instructions.

        **Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

    **N.**    **Your Work** means:

        1.    work or operations performed by you or on your behalf; and

        2.    materials, parts or equipment furnished in connection with such work or operations.

(Statement, ¶ 11.)

The American Home Policy contains the following exclusions which are relevant to this action:

**V.**    **Exclusions**

This insurance does not apply to:

                \*        \*        \*

    **F.**    **Property Damage** to **Your Product** arising out of it or any part of it.

    **G.**    **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard.**

        This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(Statement, ¶ 12.)

The American Home Policy also contains Endorsement No. 4, titled "CONTRACTOR'S ENDORSEMENT," (the "Contractor's Endorsement" or "Endorsement No. 4"), which provides in its entirety as follows:

### CONTRACTOR'S ENDORSEMENT

### Excluded Hazards

This insurance does not apply to:

    1.    **Property Damage** to any property or equipment leased by the **Insured**;

2.  **Property Damage** to property being installed, erected or worked upon by the **Insured** or by any agents or subcontractors of the **Insured**;

3.  **Bodily Injury** or **Property Damage** arising out of any project insured under a "wrap-up" or any similar rating plan; or

4.  **Bodily Injury** or **Property Damage** arising out of any professional services performed by or on behalf of the **Insured**, including but not limited to the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications, and any supervisory, inspection or engineering services.

**Following Form Hazards**

It is further agreed that this insurance does not apply to:

1.  **Property Damage** arising out of:

    a.  Blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment;

    b.  The collapse of or structural injury to any building or structure due to:

        1)  the grading of land, paving, excavating, drilling, burrowing, filling, back-filling, tunneling, pile driving, coffer-dam or caisson work,

        2)  the moving, shoring, underpinning, raising, or demolition of any building or structure, or the removal or rebuilding of any structural support thereof; or

    c.  Damage to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling or pile driving; or

2.  Any liability assumed by the **Insured** under any contract or agreement.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

1.  This exclusion shall not apply; and

      2.      The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

(Statement, ¶ 13.)

### C. American Home's Denial of the MWRA Claim

On December 29, 2003, Insituform provided notice of a contractor's rework claim by the MWRA to American Home. (Statement, ¶ 14.) AIG Technical Services, Inc. ("AIGTS"), the claims administrator on behalf of American Home at the time, disclaimed coverage for the MWRA Claim on the basis of Exclusion F ("**Property Damage** to **Your Product** arising out of it or any part of it") and Exclusion G ("**Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**." (Statement, ¶ 15.)

Insituform thereafter demanded that American Home withdraw its declination of coverage. (Statement, ¶ 16.) American Home informed Insituform that there is no coverage under the American Home Policy in connection with the MWRA Claim, and that the American Home Policy does not follow form to the Primary Policy under the American Home Policy's Contractor's Endorsement. (Statement, ¶ 17.)

### LEGAL STANDARD

Fed. R. Civ. P. 56(c) provides that summary judgment should be granted when there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The Supreme Court has stated that "[s]ummary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial." Cleveland v. Policy Mgm't Sys. Corp., 526 U.S. 795, 805-06 (1999) (internal quotation marks and citation

omitted). In deciding a motion for summary judgment, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side over the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Here, Insituform bears the burden of proof to show coverage under the American Home Policy.[4] Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844, 853, 616 N.E.2d 68, 74 (1993) ("The burden of showing that property damage occurred within the coverage of the policies is on the insured") (citation omitted); National Union Fire Ins. Co. v. Structural Sys. Tech., Inc., 964 F.2d 759, 760 (8th Cir. 1992) ("[I]n Missouri the insured has the burden of proving that the loss and damages claimed are covered by the insuring provisions . . . ."). Resolution of the coverage issue is appropriate on summary judgment because "[t]he responsibility of construing the language of an insurance contract is a question of law for the trial judge . . . ." Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146, 439 N.E.2d 234, 237 (1982) (citation omitted); Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, 300 F. Supp. 2d 888, 893 (E.D. Mo. 2004) ("Interpretation of an insurance policy is a question of law").

When interpreting insurance contracts, "[those] provisions [that] are plainly and definitely expressed in appropriate language must be enforced according to [their] terms." Cody, 415 Mass. at 849, 439 N.E.2d at 237 (citations omitted); see also Trustees of Tufts Univ., 415 Mass. at 849, 616 N.E.2d at 72 ("We read the policy as written. We are not free to revise it or change the order of the words.") (internal quotation marks and citation omitted); Universal Underwriters Ins. Co., 300 F. Supp. 2d at 893 ("In construing the terms of an insurance policy,

---

[4]   The parties agreed in their earlier summary judgment submissions that a choice of law analysis did need to be conducted at that time because Massachusetts' and Missouri's rules of interpretation of insurance contracts are substantially similar. Insituform, 364 F.Supp. 2d at 5 n.1.

[the court] must give the words their plain meaning, consistent with the . . . intent of the parties.") (internal quotation marks and citation omitted).  Policy considerations cannot control the interpretation of unambiguous insurance contracts, only the language can.  See Rubenstein v. Royal Ins. Co. of Amer., 44 Mass. App. Ct. 842, 851, 694 N.E.2d 381, 387 (1998).  Moreover, an insurance policy must be construed in accordance with all of its terms; a court cannot ignore certain provisions of a policy to achieve a desired result.  See id.; Falmouth Nat'l Bank v. Ticor Title Ins. Co., 920 F.2d 1058, 1061 (1st Cir. 1990) ("[W]henever possible, each word in an insurance policy should be considered and given some meaning.") (citation omitted); Aetna Cas. & Sur. Co. v. General Dynamics Corp., 968 F.2d 707, 710 (8th Cir. 1992) ("Missouri law requires all terms of an insurance contract be given meaning.") (citation omitted).

## ARGUMENT

Insituform cannot demonstrate that the MWRA Claim falls within any of the eight (8) specified hazards set forth in the Contractor's Endorsement to the American Home Policy. Moreover, Insituform has not argued – and indeed, cannot argue – that the MWRA Claim falls within the American Home Policy's standard terms and conditions.  Accordingly, no coverage is available for the MWRA Claim under the American Home Policy and American Home is entitled to judgment as a matter of law.

**I.    There is No Coverage Under The American Home Policy Because The MWRA Claim Does Not Fit Within Any Of The Eight Hazards Listed in Endorsement No. 4.**

In its Summary Judgment Order, the Court held that Endorsement No. 4 is ambiguous and construed the "However" clause in that endorsement to modify both the "Excluded Hazards" and the "Following Form Hazards" sections of the endorsement.  See Insituform, 364 F. Supp. 2d at 6.  Thus, as a result of the Court's ambiguity ruling, the four (4) Excluded Hazards in Endorsement No. 4 are to be construed as Following Form Hazards.  Nonetheless, in its

- 14 -

Clarification Order, the Court made clear that Endorsement No. 4 only "follows form" to the Liberty Mutual Primary Policy "*to the extent stated in the endorsement.*"  (See Clarification Order, at 2) (emphasis added.)  Together, the effect of the Court's Orders is that, **to the extent** the Primary Policy provides coverage for any of the **eight specific hazards** set forth in Endorsement No. 4, the American Home Policy also provides coverage for those hazards.  As shown below, Endorsement No. 4 does not broadly follow form to the Primary Policy's Rework Amendment.  Nor do the eight specified hazards listed in Endorsement No. 4, analyzed individually, provide coverage for the MWRA Claim.  Accordingly, Insituform has not and cannot demonstrate that Endorsement No. 4 to the American Home Policy provides coverage for the MWRA Claim.

      **A.**      **Pursuant to the Court's Summary Judgment Order and Clarification Order, the American Home Policy follows form to the Liberty Mutual Policy only to the extent of the eight specific hazards listed in Endorsement No. 4.**

Endorsement No. 4 does not broadly "follow form" to all of the terms and conditions in the Primary Policy.  Rather, Endorsement No. 4 follows form only as to the eight specific hazards listed in the endorsement <u>only if</u> those hazards are otherwise covered by the Primary Policy and the claim at issue falls within those hazards.  Thus, the "following form" coverage in the American Home Policy is expressly limited to those eight specific hazards listed in Endorsement No. 4.

The "However" clause in Endorsement No. 4 provides that "if insurance for *such* **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance," this exclusion shall not apply.  (See Statement, ¶ 13) (italics added; bold in original.)  The word "such" operates as a term of limitation.  See Black's Law Dictionary 1473 (8th ed. 2004) (defining "such" to mean "[t]hat or those; having just been mentioned").  Under any fair reading of the clause "*such* **Bodily Injury** or **Property Damage**," the term "such" refers to the

hazards listed above in the Contractor's Endorsement. Accordingly, if the Primary Policy provides coverage for any of those specific hazards listed in the Contractor's Endorsement, then the American Home Policy also provides coverage. For example, (as per the Court's interpretation), if the Primary Policy provides coverage for claims arising out of a project under a "wrap-up" or similar rating plan (see Contractor's Endorsement Excluded Hazard No. 3, at Statement, ¶ 13), then that exclusion in the Contractor's Endorsement would not apply, and the American Home Policy would also provide coverage for a project under a "wrap-up" or similar rating plan. The "However" clause does not result in *carte blanche* follow-form coverage under Endorsement No. 4, as suggested by Insituform. Such an interpretation would be patently unreasonable since it would render superfluous the eight hazards listed in the Contractor's Endorsement. If the Contractor's Endorsement was intended to be a general follow form endorsement, it would simply have stated, in one line endorsement, that American Home follows form to the Contractor Rework Coverage Amendment in the Primary Policy.

This conclusion is further bolstered by comparing the hazards in the American Home Policy's Contractor's Endorsement to the Primary Policy's Rework Amendment. As its very title suggests, the Primary Policy's Rework Amendment is specifically designed to provide coverage for "rework" that the insured contractor must perform. (See Statement, ¶ 7.) The American Home Policy's Contractor's Endorsement makes no reference to "rework," or any other type of hazard that would provide coverage for the insured's defective work. (See Statement, ¶ 13.) Given the vast differences between the two endorsements, it is clear that the Contractor's Endorsement does not, and was not intended, to broadly "follow form" to the Rework Amendment.

**B.     The MWRA Claim does not fall within any of the eight specific hazards listed in Endorsement No. 4.**

Insituform's claim fails because it cannot shoehorn the MWRA Claim into one of the eight specific hazards listed in the American Home Policy's Contractor's Endorsement. Those eight hazards are:

- **Property Damage** to any property or equipment leased by the **Insured.**

- **Property Damage** to property being installed, erected or worked upon by the **Insured** or by any agents or subcontractors of the **Insured.**

- **Bodily Injury** or **Property Damage** arising out of any project insured under a "wrap-up" or any similar rating plan.

- **Bodily Injury** or **Property Damage** arising out of any professional services performed by or on behalf of the **Insured**, including but not limited to the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications, and any supervisory, inspection or engineering services.

- **Property Damage** arising out of blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment.

- **Property Damage** arising out of the collapse of or structural injury to any building or structure due to:

    1)   the grading of land, paving, excavating, drilling, burrowing, filling, back-filling, tunneling, pile driving, coffer-dam or caisson work, or

    2)   the moving, shoring, underpinning, raising, or demolition of any building or structure, or the removal or rebuilding of any structural support thereof.

- **Property Damage** arising out of damage to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling or pile driving.

- Any liability assumed by the **Insured** under any contract or agreement.

(Statement, ¶ 13.)

Here, Insituform has conceded that the individual hazards do not apply to the MWRA Claim. In responding to American Home's Motion for Reconsideration, Insituform argued that "the issue has never been whether the MWRA Claim falls within the terms of the American Home policy or its Contractor's Endorsement," and that "[w]hether the MWRA Claim falls within the terms of American Home's Contractor's Endorsement is an irrelevant and improper consideration." (See Insituform's Response to Motion for Reconsideration ("Insituform's Response"), at 4.) Insituform's concession that the MWRA Claim does not fall within one of the eight hazards in the Contractor's Endorsement is fatal to its prosecution of this lawsuit.

**II.     The Faulty-Workmanship Exclusions in the American Home Policy, Which Were Not Modified by Endorsement No. 4, Bar Coverage for the MWRA Claim.**

As Insituform acknowledges by making its claim only under Endorsement No. 4 to the American Home Policy, the standard terms and conditions of the American Home Policy provide no coverage for the MWRA Claim. Indeed, in Insituform's opposition to American Home's motion for reconsideration, Insituform stated that "the issue has never been whether the MWRA Claim falls within the terms of the American Home policy or its Contractor's Endorsement." (See Insituform's Response, at 4.) The standard terms and conditions of the American Home Policy specifically exclude coverage for faulty workmanship by excluding coverage for property damage to "Your Work" and "Your Product." (See Statement, ¶ 12.) Because the alleged costs in connection with the MWRA Claim result from Insituform's defective work and failure to install its product, no coverage is available under the standard terms and conditions of the American Home Policy.

Under this Court's analysis in the Summary Judgment Order, the "However" clause in Endorsement No. 4 to the American Home Policy modifies only those eight hazards listed in the

endorsement. Endorsement No. 4 does not refer to or modify any other terms and conditions of the American Home Policy. In fact, Endorsement No. 4 expressly provides that "[a]ll other terms and conditions of this policy remain unchanged." (See Statement, ¶ 13.) Accordingly, even though the Court has concluded that Endorsement No. 4 is ambiguous, meaning that the "However" clause applies to all of the hazards listed in the endorsement, the endorsement does **not** modify or change the American Home Policy's Exclusion F (the "Your Product" exclusion) or Exclusion G (the "Your Work" exclusion).

It is well settled that exclusions in insurance policies must be read and applied independently of each other and that if any one exclusion applies, coverage is barred. See Continental Casualty Co. v. Gilbane Building Co., 391 Mass. 143, 150-151, 461 N.E.2d 209, 214 (1984); Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes § 1.03[b] at 20 (12th ed. 2004) ("Each exclusion in a policy is meant to be read with the insuring agreement, independently of every other exclusion."); 2 Lee R. Russ, Couch on Insurance §22:30 at 22-65 (3d ed. 2000) ("[E]ach separate exclusion must be separately construed."). In this case, as conceded by Insituform, coverage is plainly barred by the standard terms and conditions of the American Home Policy, including Exclusions F and G, which were **not** modified by Endorsement No. 4 and, therefore, remain in full force and effect.

Exclusions in liability insurance policies for faulty workmanship, such as those involved here, have been routinely upheld in both Massachusetts and Missouri to bar coverage for an insured's defective work. See Lusalon, Inc. v. Hartford Acc. & Indem. Co., 400 Mass. 767, 511 N.E.2d 595 (1987) (enforcing exclusion in liability insurance policy for property damage caused by faulty workmanship); Columbia Mut. Ins. Co. v. Schauf, 967 S.W.2d 74, 77-78 (Mo. 1998) (same). As courts in both jurisdictions have explained, such exclusions are enforceable because

"[t]he possibility of damaging the property on which one is working is the type of routine, controllable, and limited risk that constitutes a business risk." Schauf, 967 S.W.2d at 78; Dorchester Mut. Fire Ins. Co v. First Kostas Corp., Inc., 49 Mass. App. Ct. 651, 654, 731 N.E.2d 569, 572 (2000) ("General liability coverage is not intended as a guarantee of the insured's work, and for that reason, general liability policies contain 'business risk' exclusions.") (citation omitted).  See also B & T Masonry Const. Co. v. Public Serv., 382 F.3d 36 (1st Cir. 2004) (Massachusetts law) (business risk exclusions bar coverage to any damages to the project caused by the insured's faulty workmanship).

As Insituform has recognized, and these cases clearly confirm, the faulty-workmanship exclusions in the American Home Policy should be enforced so as to deny coverage for the MWRA Claim.  Accordingly, Exclusions F and G, which were **not** modified by Endorsement No. 4, still apply to bar coverage for the MWRA Claim.  American Home's motion for summary judgment must be granted.

- 20 -

## CONCLUSION

For the foregoing reasons, American Home's Motion for Summary Judgment should be granted and Insituform's Complaint should be dismissed in its entirety.

AMERICAN HOME ASSURANCE COMPANY,

By its Attorneys,

/s/ Gregory P. Deschenes
Gregory P. Deschenes (BBO #550830)
gdeschenes@nixonpeabody.com
Gregg A. Rubenstein (BBO #639680)
grubenstein@nixonpeabody.com
Kurt M. Mullen (BBO #651954)
kmullen@nixonpeabody.com
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts  02110
(617) 345-1000
(617) 345-1300 (facsimile)

Dated:  August 24, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 24, 2006.

/s/ Gregory P. Deschenes
Gregory P. Deschenes