**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| INSITUFORM TECHNOLOGIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04 10487 GAO |
| ) | |
| AMERICAN HOME ASSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**INSITUFORM'S MEMORANDUM IN RESPONSE TO AMERICAN HOME'S
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF ITS CROSS
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Insituform Technologies, Inc. ("Insituform"), by its attorneys, states

the following in response to the motion for summary judgment of defendant

American Home Assurance Company ("American Home") and in support of its cross

motion for summary judgment as to Counts I and II:

**INTRODUCTION**

At the outset of this case, Insituform moved for partial summary judgment

and American Home filed a cross-motion for summary judgment. The focus of those

motions was on the proper interpretation to be given American Home's Contractor's

Endorsement. This court resolved the interpretation dispute in Insituform's favor.

Specifically, the court held:

> I construe the However clause in Endorsement No. 4 to modify both the
> Excluded Hazards and the Following Form Hazards sections of the
> Endorsement. Consequently, those hazards "follow form" (as that term
> is used in the parties' submissions) to the primary insurance policy
> issued by Liberty Mutual Insurance Company to Insituform, as it is
> uncontroverted that the Liberty policy is "a policy listed in the Schedule
> of Underlying Insurance."

Mem. and Order, March 30, 2005 (Docket. No. 24), p. 5. In its Memorandum and Order of May 24, 2006, this Court stated: "I leave it to another day (and perhaps another motion) to determine what implications or consequences the construction of that endorsement might have for the larger dispute." Mem. and Order, May 24, 2006 (Docket. No. 38), p. 2. This motion addresses the implications and consequences of the Court's decision and seeks summary judgment against American Home on Counts I and II and an award of money damages of $6,398,299.05 plus pre-judgment interest and costs.

## UNDISPUTED MATERIAL FACTS

### The MWRA Claim

Insituform entered into a subcontract with D'Alessandro Corp. to rehabilitate approximately 5,400 feet of brick sewer owned by the Massachusetts Water Resources Authority (the "MWRA"). Insituform Additional Fact ¶ 1.[1] Insituform "rehabilitates" the sewer by installing into and curing in place a new pipe within the existing host pipe (hence the acronym CIPP - "cured in place pipe.")

The MWRA host pipe was unusual in that it was an inverted egg-shape with the larger radius at the bottom and the smaller radius at the top. Also, it was 20 to 30 feet below ground level and there was substantial ground water pressure and infiltration. Insituform Additional Fact ¶ 2. These conditions posed significant design and installation challenges.

---

[1] Reference is made to the additional facts offered by Insituform in its Local Rule 56.1 Response to American Home's Statement of Undisputed Facts.

2

MWRA's engineer, Jacobs Civil Engineering ("Jacobs"), specified certain design and materials criteria for the CIPP. The design for the CIPP was based on a circular pipe with an equivalent diameter of approximately 39 inches. Insituform initially submitted a proposal to D'Allessandro Corp. suggesting a thicker design based on a non-circular design assumption. Additionally, Insituform suggested a resin that differed from the specified materials in that it had higher design values (i.e., is stronger) and better cure properties in the presence of ground water. Jacobs rejected Insituform's proposed design method and materials, so Insituform submitted a proposal for the installation that incorporated the design criteria specified by Jacobs. Ultimately Jacobs approved Insituform's submission. Insituform Additional Fact ¶ 3.

Insituform began installing the CIPP on August 13, 2003 and completed on September 8, 2003. Insituform Additional Fact ¶ 4. But the newly installed CIPP was damaged. Visual inspections of the installation revealed fins or wrinkles protruding toward the center of the pipe. The fins or wrinkles were intermittent, generally running in the longitudinal direction, and appeared in every quadrant of the geometry. Insituform trimmed the fins or wrinkles at the direction of Jacobs after indicating a concern about compromising the integrity of the laminate with regard to leakage. Insituform Additional Fact ¶ 5.

On October 31, 2003, the MWRA notified Insituform that the installation failed to meet the contract specifications and that the job was rejected. Insituform Additional Fact ¶ 6. Insituform tried various remedies to remediate the defects of

the installation, including remedies such as testing of materials and repairing areas
where samples were removed; grouting the annulus; using epoxy resins to repair
leaks and using a spray-applied polyurethane to repair leaks. Insituform
Additional Fact ¶ 7. Notwithstanding the efforts to remediate the defects, the pipe
continued to leak, due mainly to the larger than expected annulus. Insituform
Additional Fact ¶ 8. The pipe showed leakage through the liner at the trimmed fins
as well as other areas. Insituform Additional Fact ¶ 9. Attempts at remedying the
installation failed. MWRA insisted that 4,500 feet of the 5,400 feet of pipe installed
by Insituform be removed and replaced. Insituform Additional Fact ¶ 10.

An independent engineering firm, Haley & Aldrich, was retained to evaluate
the original installation in light of the contractual specifications and to analyze the
repair requirements, submittals and processes. Insituform Additional Fact ¶ 11.
Plans were made to remove and replace the 4,500 feet of damaged CIPP ("Phase 1"),
which began in October 3, 2003. The Phase 1 removal and reinstallation was
completed in May 2004. The inspection and testing of the Phase 1 reinstallation
was completed May 8, 2004. Insituform Additional Fact ¶ 12.

In the first quarter of 2005, the entire installation was inspected. It was then
determined that the segment of the pipe not removed and replaced in Phase 1 was
also damaged. In fact, the pipe had failed in at least two locations and was leaking
at other locations. Insituform Additional Fact ¶ 13. MWRA rejected the remaining
900 feet of the original installation and demanded that it be removed and replaced
("Phase 2"), Insituform Additional Fact ¶ 14. Phase 2 work was performed in June

4

through September of 2005. Insituform Additional Fact ¶ 15. Based on Insituform's investigation and analysis, the buckles in the original installation were caused by using the wrong design thickness and by using a resin material with lower physical and other properties for the installation conditions and environment. The fins, wrinkles, and leaks resulted from a design and fabrication of a liner for a circular pipe, not the inverted egg shape involved. Insituform Additional Fact ¶ 16.

The total amount of Insituform's costs to remove and replace the CIPP was $7,398,299.05. American Home's share of the recoverable loss is $6,398,299.05. Insituform Additional Fact ¶¶ 25-26.

**Insituform's Insurance Program**

Insituform purchased primary comprehensive general liability insurance from Liberty Mutual Insurance Company ("Liberty") that was in effect from July 1, 2003 to July 1, 2004 and had limits of liability of $1,000,000 per occurrence and $2,000,000 products-completed operations aggregate limit (the "Primary Policy"). Affidavit of Lawrence Butler, Exhibit A.[2]

Insituform and Liberty expanded coverage under the Primary Policy by including the "Contractor Rework Coverage Amendment" that provides coverage for damage to property installed by Insituform where the damage is caused by an "error in the design, prescription, manufacture, blending, mixing or compounding of such work or product". To accommodate this coverage, the policy exclusions j.(5), j.(6), k., l., m. and n were excepted from the Contractor's Rework coverage. These

---

[2] The Butler Affidavit (Docket No. 8) was previously filed as part of Insituform's Motion For Partial Summary Judgment.

exclusions concern damage to "Your Work" and "Your Product," among others. Butler Affidavit Exhibit A at I-87 and 88.

Insituform purchased umbrella excess liability insurance from American Home. Butler Affidavit, ¶ 3. Specifically, American Home issued policy BE 3206923 effective July 1, 2003 to July 1, 2004 with limits of liability of $25,000,000 per occurrence and in the aggregate excess of scheduled primary insurance (the "Excess Policy"). Butler Affidavit, ¶ 4, Exhibit B. The Primary Policy is one of the scheduled primary policies on the Excess Policy. Butler Affidavit, Exhibit B at I-122.

### Liberty Mutual's Investigation of The MWRA Claim

Liberty Mutual investigated the MWRA claim to determine whether Insituform was entitled to coverage under the Liberty Mutual primary policy. Insituform Additional Fact ¶ 17. Following its investigation, Liberty Mutual concluded that the MWRA claim "appears to involve 'an error in the design, prescription, manufacture, blending, mixing or compounding of [your work].'" Insituform Additional Fact ¶ 19. Liberty Mutual concluded that "there is coverage under the [Contractor's Rework Coverage Amendment] Endorsement for [the MWRA] claim." Insituform Additional Fact ¶ 20. After a review of all the invoices submitted by Insituform, Liberty Mutual paid the full limit of $1 million available under the Contractor Rework Endorsement, so that the MWRA Claim has pierced the American Home Umbrella limit of liability. Insituform Additional Fact ¶¶ 21-22.

### American Home's Investigation of the MWRA Claim

On December 29, 2003, Insituform provided notice of the MWRA Claim to American Home.  Butler Affidavit, ¶ 6. In response, American Home denied any duty to indemnify Insituform.  Butler Affidavit, ¶ 7 and Exhibit C.  American Home based its February 13, 2004 denial solely on the American Home policy jacket and made no reference to the Contractor Rework Coverage Endorsement or the Contractor's Endorsement.  Butler Affidavit, Exhibit C.

Insituform demanded that American Home withdraw the denial for the MWRA Claim.  Butler Affidavit, ¶ 7. Thereafter, American Home denied coverage for the MWRA Claim a second time, because the Excess Policy does not follow form to the Primary Policy's Contractor Rework Coverage Amendment.  American Home could have but chose not to participate in Liberty Mutual's investigation of the MWRA Claim.  Insituform Additional Fact ¶ 24.

### ARGUMENT

## I.    THE CONTROLLING LAW AND STANDARDS OF REVIEW

### A.    Summary Judgment.

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

7

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### A.    Insurance Contract Interpretation.

Interpretation of insurance contracts presents a question of law for the court. *Hobbs v. Farm Bureau Town & Country Ins. Co. of Missouri*, 965 S.W.2d 194, 196 (Mo. Ct. App. 1998); *Assetta v. Safety Ins. Co.*, 43 Mass. App. Ct. 317, 318, 682 N.E.2d 931, 932 (Mass. App. Ct. 1997).[3] A Court does not consider parol evidence, such as affidavit testimony or drafting history, to contradict terms of an

---

[3] Because rules of interpretation of insurance contracts are substantially similar under Massachusetts law and Missouri law, the choice of law issue need not be resolved for purposes of this Motion.

unambiguous contract.[4] *Mercantile Bank of St. Louis v. Benny*, 978 S.W.2d 840, 844 (Mo. Ct. App. 1998); *ITT Corp. v. LTX Corp.,* 926 F.2d 1258, 1261 (1st Cir. 1991)(Massachusetts law).

Insurance contracts are to be interpreted as any other contract, and words are to be given their usual and ordinary meaning. *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 210 (Mo. 1992); *Hakim v. Mass. Insurers' Insolvency Fund*, 424 Mass. 275, 280-81, 675 N.E.2d 1161, 1164 (Mass. 1997). Courts should give effect to all of the provisions in the contract, so as not to render any clause or word meaningless. *Brugioni v. Maryland Cas. Co.*, 382 S.W.2d 707, 712 (Mo. 1964); *Starr v. Fordham*, 420 Mass. 178, 190, 648 N.E.2d 1261, 1269 (Mass. 1995).

When an insurance contract is ambiguous and subject to more than one reasonable interpretation, the contract is construed against the insurer. *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d at 210 ("Where provisions of an insurance policy are ambiguous, they are construed against the insurer"); *Hakim v. Mass. Insurers' Insolvency Fund*, 675 N.E.2d at 1165 ("Where ... there is more than one rational interpretation of policy language, 'the insured is entitled to the benefit of the one that is more favorable to it.'") (citations omitted). This principle applies "with added rigor in determining the meaning of exclusionary provisions." *Merchants Ins. Co. of New Hampshire, Inc. v. United States Fidelity and Guaranty Co.*, 143 F.3d 5, 8 (1st Cir. 1998); *Warren Davis Properties V, L.L.C. v. United Fire & Casualty Co.*, 111 S.W.3d 515, 522 (Mo. Ct. App. 2003) ("In Missouri, exclusionary clauses are strictly

---

[4] Consistent with this rule, American Home admits that the Excess Policy "speaks for itself." American Home Answer ¶ 11.

construed against the insurer, and if the clause is ambiguous, it will be construed favorably to the insured.").

When interpreting contracts for insurance, insuring provisions are interpreted broadly, while exclusions are interpreted narrowly. *Harrison v. Tomes*, 956 S.W.2d 268, 270 (Mo. 1997); *Bates v. John Hancock Mut. Life Ins. Co.*, 6 Mass.App.Ct. 823, 370 N.E.2d 1386, 1387 (Mass. App. Ct. 1978); *Martin v. Salem Marine Ins. Co.*, 2 Mass. 420, 425, 1807 WL 675, *3 (Mass. 1807).

Here, the facts of the MWRA claim are not disputed. Rather, American Home only claims that its policy does not follow form to the Primary Policy with respect to the coverage under the Contractor Rework Coverage Amendment. Thus, the dispute is entirely one of insurance contract interpretation.

## II.   THE MWRA CLAIM IS COVERED BY THE CONTRACTOR REWORK COVERAGE AMENDMENT.

### A.   Liberty Mutual Investigated the MWRA Claim And Concluded It Was Covered.

There can be no genuine issue that the primary carrier investigated the MWRA Claim, concluded that the claim was covered under the Contractor Rework Coverage Amendment and paid its policy limit of liability of $1,000,000 to Insituform. Both Liberty Mutual's coverage analysis and checks evidencing payment of $1,000,000 are before the Court. Supplemental Kelly Affidavit, Exs. A and B.

B.    **Insituform Has Offered Admissible Evidence That Places The MWRA Claim Within The Contractor Rework Coverage Amendment.**

American Home may contend that Liberty Mutual's determination of coverage is not binding on American Home, even though American Home could have participated in Liberty Mutual's investigation, but chose not to.   In that case, Insituform has offered evidence concerning the facts of the MWRA Claim that satisfies each element of coverage under the Contractor Rework Coverage Amendment.  Insituform Additional Facts ¶¶ 1 to 15 and 25-26.  Thus, there is no genuine issue that the MWRA Claim is covered under the Contractor Rework Coverage Amendment.  The only remaining issue is whether the American Home umbrella policy follows form the Contractor Rework Coverage Amendment.  This issue is pure contract interpretation, and the Court has essentially already ruled.

**III.   THE AMERICAN HOME POLICY FOLLOWS FORM TO THE PRIMARY POLICY'S CONTRACTOR REWORK COVERAGE AMENDMENT.**

There is a reason why American Home fought so hard to convince this Court that the However clause in Endorsement No. 4, the Contractor's Endorsement, does not apply to the Excluded Hazards in the endorsement.  Here is why -- if the However clause applies to Excluded Hazard No. 2, then the umbrella follows form to the primary's Contract Rework Coverage Amendment.

11

A.    **The Contractor Rework Coverage Amendment Provides Coverage For Damage To Property Being Installed By Insituform.**

A consequence of the Court's ruling that the However clause modifies all the proceeding language in Endorsement No. 4, is that each of the listed hazard's become a functional insuring provision, and therefore, each hazard must be interpreted broadly.  *Harrison*, 956 S.W.2d at 270; *Bates*, 370 N.E.2d at 1386.

The second hazard/insuring provision to which the However clause of Endorsement No. 4 modifies -- "property damage to property being installed, erected or worked upon by [Insituform]" -- is the functional equivalent of the "Your Work" and "Your Product" exclusions found in both the primary and the umbrella policies. Butler Affidavit, Ex. A p. I-11 and Ex. B p.I-113.  American Home calls these the "faulty workmanship" exclusions.

The question the However clause asks is whether there is insurance in the scheduled primary for damage to property being installed, erected or worked upon by Insituform.  Plainly there is under certain specified circumstances.

The primary policy's Contractor Rework Coverage Amendment extends coverage to Insituform's work and Insituform's product under certain circumstances.  The damage to Insituform's work or product must be caused by a "defect" resulting from "an error in the design, prescription, manufacture, blending, mixing or compounding of such work or product" and the owner must have rejected the work or product.  In order to accommodate this coverage for damage to product

12

being installed by Insituform, the endorsement eliminates several exclusions including the "Your Work" and "Your Product" exclusions.

The MWRA claim is a classic example of the primary policy covering damage to property being installed by Insituform. The claim involves damage to property being installed by Insituform, where the damage was caused by a "defect" and the CIPP was rejected by the owner. Thus, the primary policy does provide coverage for damage to property being installed by the insured. As such, the two subparagraphs of the However clause come into play.

### B.   The However Clause Is A Follow Form Provision.

Two consequences follow the determination that the primary policy provides coverage for Excluded Hazard No. 2: (1) the exclusion for damage to property being installed by Insituform does not apply; and (2) the umbrella provides coverage for damage to property being installed by Insituform, but on terms no broader than the primary, *i.e.*, the umbrella follows form to the primary.

In *Gould, Inc. v. Arkwright Mutual Ins. Co.,* 907 F. Supp. 103, 107 (M.D. Pa. 1995), the district court interpreted essentially identical language and concluded that the umbrella followed form to the primary such that the terms of the primary governed. In *Gould*, the umbrella policy at issue contained the following language:

> I. This policy shall not apply, *unless insurance is provided by a policy listed in the schedule of underlying insurance, and then for no broader coverage than is afforded by such insurance*:
>
> VI. to any liability of any [sudden and accidental pollution exclusion]. (Emphasis added)

*Gould*, 907 F. Supp. at 106 and 107. The court had previously ruled that policies with sudden and accidental pollution exclusions akin to the one set forth under "VI" above, did not cover the environmental claim at issue. Other policies with different pollution exclusion wording, such as the one in the scheduled underlying primary policy, provided coverage. The court ruled that the qualifying language, in italics above, caused the umbrella policy to follow form to the primary so that the "sudden and accidental" pollution exclusion did not apply. Specifically, the court found that language highlighted with italics had the following impact:

> While it is true that the [umbrella] policy cannot give broader coverage than that listed in the underlying [primary] policy, it is also true that the [umbrella] policy cannot void coverage given the insured under the [primary] policy....Whatever [the primary] policy gave the insured will be applicable in [the umbrella] policy. The only limitation is that the coverage cannot be broader than the [primary] policy.

*Gould*, 907 F. Supp. at 107.

Here, American Home's policy employs virtually the same language and structure to achieve the same follow form result. Claims involving damage to property installed by Insituform will not be covered unless covered by the primary. And when covered by the primary, whatever the Liberty primary policy gave Insituform will be applicable in American Home's umbrella policy. "The only limitation is that the coverage cannot be broader than the [primary] policy."

Therefore, the material consequence of the court's previous ruling is that the American Home umbrella policy follows form to the primary policy's Contractor Rework Coverage Amendment. As previously discussed, the MWRA Claim is

covered under the primary policy, therefore American Home follows form and must indemnify Insituform for the balance of the loss.

**IV.   American Home's Interpretations Of Its Contractor's Endorsement Are Either Unreasonable Or They Render To Policy Language Ambiguous.**

American Home offers two conflicting policy interpretations for the proposition that the umbrella does not follow form to the Contractor Rework Coverage Amendment. Both are unreasonable and violate the rules of contract construction. But even if they were reasonable, they do not negate Insituform's reasonable interpretation, so at best the umbrella is ambiguous and coverage is resolved in Insituform's favor.

**A.   The MWRA Claim Is A Claim For Damage To Property Being Installed By Insituform.**

American Home argues that while "the American Home policy only "follows" with respect to the eight (8) specific hazards listed in endorsement number 4," Insituform has not – and cannot – demonstrate that the MWRA claim actually falls within the coverage of any of those 8 hazards." American Home Motion p. 1. This interpretation fails for two reasons.

First, the MWRA Claim clearly is a claim for damage to property being installed by Insituform. There is no doubt that Insituform installed the CIPP. Moreover, while the CIPP was being installed, it was physically injured as evidenced by the presence of fins, wrinkles and leaks. Thus, the facts of the MWRA claim fall directly within the broad parameters of "damage to property being installed by the insured."

Second, and more importantly, the analysis called for by the However clause in the Contractor's Endorsement is not whether the claim falls within any of the 8 specific hazards. Rather, the analysis is whether any scheduled primary insurance provides coverage for such bodily injury or property damage set forth in the 8 specific hazards. As mentioned in Section III above, the primary policy's Contractor Rework Coverage Amendment does provide coverage for damage to property being installed by the insured. American Homes interpretation is flawed in that it completely ignores the analysis called for under the However clause.

### B.    Exclusions F and G in the American Home Policy Jacket Do Not, And Cannot, Apply.

American Home offers the alternative argument that even if the MWRA Claim falls within the "damage to property being installed by the insured" hazard, then the claim would still be excluded by exclusions f and g of the policy which exclude claims arising out of "your work" and "your product." This interpretation is unreasonable because it ignores and eliminates from Endorsement No. 4 the second subparagraph of the However clause.

The second subparagraph of the However clause is the essence of this follow form provision. If the primary policy provides coverage for damage to property being installed by the insured (which it does), then subparagraph 2 of the However clause provides coverage for damage to property being installed by the insured, but the coverage "will not be broader than the insurance coverage provided by the policy listed in the schedule of underlying insurance." Thus, the terms of the underlying primary policy defines what is and is not covered and the umbrella follows form to

16

the primary. As the *Gould* court put it: "Whatever [the primary] policy gave the insured will be applicable in [the Umbrella] policy." *Gould*, 907 F.Supp. at 107.

American Home looks to the last phrase in Endorsement No. 4, "All other terms and conditions of this policy remain unchanged," and argues that this clause has the effect of preserving exclusions f and g for "Your work" and "Your Product." But damage property installed by the insured is always going to fall within exclusions f and g. Therefore, American Home's interpretation renders Excluded Hazard No. 2 meaningless.

The purpose of the However clause is to cause the umbrella to follow form to the primary policy's terms and conditions, so that the umbrella policy's terms and conditions are no longer pertinent. This can be seen by an examination of the entire policy and the other umbrella endorsements that employ the same follow form language. For instance, Endorsement No. 7 of the umbrella policy, titled "Employee Benefits Liability Follow Form Endorsement," extends coverage for employee benefits claims using the same However clause to follow form if such coverage is provided in the scheduled underlying coverage. Butler Affidavit Ex. B at I-143. Also like Endorsement No. 4, Endorsement No. 7 ends with the same salutation: "All other terms and conditions of this policy remain unchanged." Nowhere in Endorsement 7 is there an exception or elimination of exclusions A and B of the umbrella. Exclusions A and B exclude coverage for employee benefits claims.

According to American Home, even if the primary policy provides coverage for employee benefits claims (which it does by endorsement, Butler Affidavit Ex. A at I-

17

54), an employee benefits claim covered under the scheduled primary would still be excluded by virtue of exclusions A and B in the policy jacket. This interpretation is preposterous and renders the Endorsement No. 7 meaningless. Thus, a reading of the entire policy underscores the unreasonableness of American Home's argument that exclusions F and G exclude coverage even if the umbrella follows form to the primary's Contractor Rework Coverage Amendment.

### C.    If American Home's Interpretations Are Reasonable, Then The Umbrella Is Ambiguous.

As this Court has previously ruled, where the American Home umbrella is ambiguous, i.e. susceptible to more than one reasonable interpretation, the reasonable interpretation favoring coverage is governs. Memorandum and Order of March 30, 2005, page 5. American Home's interpretations are in no sense better than the reasonable interpretation offered by Insituform. Moreover, they in no way negate the reasonableness of Insituform's interpretation. That being the case, both Missouri and Massachusetts rules of insurance contract construction favor Insituform's interpretation. Thus, Insituform is entitled to summary judgment as to Counts I and II.

### V.    Insituform Is Entitled To An Award Of Damages and Prejudgment Interest.

The Missouri statute UAMS 408.020 allows recovery for prejudgment interest and is applicable to actions on insurance policies. *New York Life Ins. Co. v. Griesedieck*, 116 F.2d 559 (6th Cir. 1941). Likewise, the Massachusetts statute

MGLA 231 §6 allows recovery of prejudgment interest in insurance coverage disputes. *Liberty Mut. Ins. Co. v. Continental Cas. Co.,* 771 F.2d 579 (1st Cir. 1985).

The statutes mandate an award of prejudgment interest when the amount due under contract is readily ascertainable. *Insurance Co. of North America v. Skyway Aviation, Inc.* 828 S.W.2d 888 (App. W.D. 1992). Here, the amount of the claim is not disputed and readily ascertainable. Also, a written demand or request is a condition precedent to an award of interest in a suit on an insurance contract. *DeLisle v. Cape Mut. Ins. Co*, 675 S.W.2d 97 (App. S.D. 1984). Insituform did so. American Home Answer ¶ 23.

Generally, policyholder is entitled to interest at statutory rate from date that claim became payable under policy. *Francka v. Fire Ins. Exchange*, 668 S.W.2d 189 (App. S.D. 1984). Here, there can be no dispute that Phase 1 damages of MWRA claim became payable under the American Home policy on September 24, 2004, the date the primary carrier paid its limit of liability on the claim. Phase 2 damages became due on September 2005. Insituform Additional Fact ¶ 15.

There is one difference between Missouri and Massachusetts with respect to recovery of prejudgment interest, the rate. Under Massachusetts law, prejudgment interest runs at a rate of 12% interest per annum on damages from a breach of contract claim. MGLA 231 § 6. Missouri allows prejudgment interest on contract claims at a rate of 9%. VAMS 408.020. Insituform prefers the Massachusetts rate.

Applying the Massachusetts rate to the undisputed facts, Insituform in entitle to prejudgment interest as follows: Phase 1 damages of $4,275,154 from

September 2004 to present ($42,751.54/month x 24 months = $1,026,036.96); Phase 2 damages of $1,859,145 from September 2005 to the present ($18,591.45/month x 12 months = $223,097.40). Thus, Insituform is entitled to an award of pre-judgment interest as of September 2006 of $1,249,134.36.

## CONCLUSION

For the reasons stated above, Insituform prays for summary judgment in its favor and against American Home on Count I and II and an award of money damages in the amount of $6,398,299.05, plus prejudgment interest of $1,249,134.36 and costs.

Dated: September 7 2006                    Respectfully submitted,

                                           INSITUFORM TECHNOLOGIES, INC.


                                           By: /s/Stanley A. Martin
                                               Stanley A. Martin
                                               Holland & Knight LLP
                                               10 St. James Avenue
                                               Boston, Massachusetts 02116
                                               (617) 523-2700


Of counsel:

Charles L. Philbrick
Holland & Knight LLP
131 S. Dearborn St., 30th Floor
Chicago, Illinois 60603-5547
(312) 263-3600

# 4023536_v1

21