IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INSITUFORM TECHNOLOGIES, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | )  Case No. 04 10487 GAO ) |
| AMERICAN HOME ASSURANCE COMPANY, | ) ) |
| Defendant. | ) |

**INSITUFORM'S LOCAL RULE 56.1 RESPONSE TO AMERICAN HOME'S STATEMENT OF UNDISPUTED FACTS AND INSITUFORM'S ADDITIONAL UNDISPUTED MATERIAL FACTS**

Plaintiff Insituform Technologies, Inc. ("Insituform"), by its attorneys, and pursuant to Local Rule 56.1 responds to American Home Assurance Company's ("American Home") Statement of Undisputed Facts, and states Additional Undisputed Material Facts in support of Insituform's Cross Motion For Summary Judgment and in response to American Home's Motion For Summary Judgment.

**INSITUFORM'S LOCAL RULE 56.1 RESPONSE TO AMERICAN HOME STATEMENT OF UNDISPUTED FACTS**

1. Insituform specializes in sewer rehabilitation through trenchless pipeline technologies. (Complaint, ¶ 8.)

**RESPONSE:** Undisputed.

2. In approximately August 2003, Insituform performed sewer rehabilitation work valued at $1,000,000 for the Massachusetts Water Resources Authority ("MWRA") pursuant to Contract #6840. (Complaint, ¶¶ 16-18.)

**RESPONSE:** Undisputed.

3. After Insituform finished the job, it was notified of leakage occurring at the end of the newly installed liner. (Complaint, ¶ 18.)

**RESPONSE:** Undisputed.

4. On or about October 31, 2003, the MWRA notified Insituform that the work Insituform performed did not meet the contract document requirements, was unacceptable, and must be repaired or replaced (the "MWRA Claim"). (Complaint, ¶ 19.)

**RESPONSE:** Undisputed.

5. As a result, Insituform has incurred costs and expenses in excess of $1 million to repair and replace its own defective work. (Complaint, ¶ 20.)

**RESPONSE:** Disputed in part as inaccurate. Insituform has incurred recoverable costs and expenses of $7, 398,299.05. Affidavit of Chris Campos ¶ 4.

6. Insituform purchased primary comprehensive general liability insurance from Liberty Mutual Insurance Company ("Liberty Mutual"). Specifically, Liberty Mutual issued to Insituform insurance policy no. RG2-641-004218-33, effective July 1, 2003 to July 1, 2004, with limits of liability of $1,000,000 per occurrence and $2,000,000 products-completed operations aggregate limit (the "Primary Policy"). (Complaint, ¶ 9.) A copy of the Primary Policy was attached to the Complaint as Exhibit A.

**RESPONSE:** Undisputed.

7.   The Primary Policy contains, among other provisions, a Contractor Rework Coverage Amendment (the "Rework Amendment"). (Complaint, ¶ 10.) The Rework Amendment provides:

### CONTRACTOR REWORK COVERAGE AMENDMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

It is agreed that the policy is hereby amended as indicated. All other terms and conditions of this policy remain unchanged.

We will pay those sums which you become legally obligated to pay for the required removal or repair of "your product" or "your work" including concrete, cement, sand or aggregate, concrete blocks, concrete products or other products manufactured, sold, handled or distributed by or on behalf of the Insured which are defective, subject to the limits of liability and deductible and the provisions specified below.

The amount we will pay under this coverage shall be limited to the less[e]r of:

   1.   Your actual cost of removing and replacing any of the above items; or

   2.   Your actual cost of remedial action taken to avoid removal or replacement of such products.

We will also pay damages for the loss of use of real property and/or consequential business interruption resulting from necessary removal, replacement or remedial action taken to avoid removal or repair of "your product" or "your work."

This coverage shall not apply unless the defect requiring removal or repair of "your work" or "your product" results from an error in the design, prescription, manufacture, blending, mixing or compounding of such work or product and the repair, replacement or removal is made necessary because such work or product has been rejected by the owner, his authorized representative, or a municipality or other authority having jurisdiction.

Defective shall mean that upon testing by an accredited, independent testing agency, "your work" or your product" does not meet the contractual

specifications or accepted standards required for the specific construction in which such materials were incorporated.

Coverage provided under this endorsement shall be subject to all exclusions applicable to "property damage," except exclusions j.(5), j.(6), k., 1., m. and n.

This endorsement shall not apply to any amount which is covered under any other provision of this policy.

Our obligations to pay any amount under this endorsement applies only to amounts in excess of the deductible amount stated below.

The terms of this insurance, including those with respect to:

    (a)    Our right and duty to defend any "suits" seeking damages; and

    (b)    Your duties in the event of an "occurrence," claim or "suit" apply irrespective of the application of the deductible.

We may pay any part or all of the deductible to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible as has been paid by us.

This insurance is excess over any other insurance (including any deductible) which is available under a policy of property insurance, such as, but not limited to, fire and extended coverage, builder's risk or installation coverage.

| Limits of Liability: | $1.000.000 per occurrence |
| | $1.000.000 aggregate |

| Deductible | $250.000 per occurrence |
| Premium | Included in GL Premium |

(Complaint, ¶ 10.)

**RESPONSE:** Undisputed.

    8.    American Home issued an umbrella liability policy, Policy No. BE 3206923, to Insituform for the period July 1, 2003 to July 1, 2004 (the "American Home Policy"). (American Home Answer, ¶ 11.) A copy of the American Home Policy was attached to the Complaint as Exhibit B.

**RESPONSE:** Undisputed.

4

9. A Liberty Mutual general liability policy is listed on the Schedule of Underlying Insurance in the American Home Policy. (American Home Answer, ¶ 12.)

**RESPONSE:** Undisputed.

10. The insuring agreement of the American Home Policy provides as follows:

**I.   Coverage**

> We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the **Insured** becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of…**Property Damage**… that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.
>
> If we are prevented by law or statute from paying on behalf of the Insured, then we will, where permitted by law or statute, indemnify the Insured for those sums in excess of the Retained Limit.

(Ex. B to Complaint.)

**OBJECTION:** Irrelevant.

**RESPONSE:** Undisputed.

11. The American Home Policy contains the following definitions which are relevant to this action:

**IV.   Definitions**

\*   \*   \*

**H.   Occurrence** means:

> 1. As respects…**Property Damage,** an accident, including continuous or repeated exposure to conditions, which results in…**Property Damage** neither expected nor intended from the standpoint of the **Insured.** All such exposure to substantially the same

general conditions shall be considered as arising out of one **Occurrence**. . . .

\* \* \*

J. 1. **Products**-Completed **Operations Hazard** includes...**Property Damage** occurring away from your premises you own or rent and arising out of **Your Product** or **Your Work** except:

    a. products that are still in your physical possession; or

    b. work that has not yet been completed or abandoned.

2. **Your Work** will be deemed completed at the earliest of the following times:

    a. When all of the work called for in your contract has been completed.

    b. When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    c. When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

K. **Property Damage** means:

1. Physical injury to tangible property, including all resulting loss of use of the property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **Occurrence** that caused it.

M. **Your Product** means:

1. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

  a. you;

  b. others trading under your name; or

  c. a person or organization whose business or assets you have acquired; and

 2. Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

 1. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product;** and

 2. The providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

N. **Your Work** means:

 1. work or operations performed by you or on your behalf; and

 2. materials, parts or equipment furnished in connection with such work or operations.

(Ex. B to Complaint.)

**RESPONSE:** Undisputed.

12. The American Home Policy contains the following exclusions which are relevant to this action:

V. **Exclusions**

This insurance does not apply to:

* * *

F. **Property Damage** to **Your Product** arising out of it or any part of it.

G. **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard.**

> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(Ex. B to Complaint.)

**RESPONSE:** Undisputed.

13. The American Home Policy also contains Endorsement No. 4, titled "CONTRACTOR'S ENDORSEMENT," (the "Contractor's Endorsement" or "Endorsement No. 4"), which provides in its entirety as follows:

### CONTRACTOR'S ENDORSEMENT

### Excluded Hazards

This insurance does not apply to:

1. **Property Damage** to any property or equipment leased by the **Insured;**

2. **Property Damage** to property being installed, erected or worked upon by the Insured or by any agents or subcontractors of the **Insured;**

3. **Bodily Injury** or **Property Damage** arising out of any project insured under a "wrap-up" or any similar rating plan; or

4. **Bodily Injury** or **Property Damage** arising out of any professional services performed by or on behalf of the Insured, including but not limited to the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications, and any supervisory, inspection or engineering services.

### Following Form Hazards

It is further agreed that this insurance does not apply to:

1. **Property Damage** arising out of:

   a. Blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment;

      b.    The collapse of or structural injury to any building or structure due to:

              1)    the grading of land, paving, excavating, drilling, burrowing, filling, back-filling, tunneling, pile driving, coffer-dam or caisson work,

              2)    the moving, shoring, underpinning, raising, or demolition of any building or structure, or the removal or rebuilding of any structural support thereof; or

      c.    Damage to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling or pile driving; or

    2.    Any liability assumed by the **Insured** under any contract or agreement.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

    1.    This exclusion shall not apply; and

    2.    The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

(American Home Answer, ¶ 14.)

**RESPONSE:** Undisputed.

    14.    On December 29, 2003, Insituform provided notice of a contractor's rework claim by the MWRA to American Home. (See Affidavit of Lawrence B. Butler, submitted in connection with Insituform's Local Rule 56.1 Statement in

support of Insituform's Motion for Partial Summary Judgment (the "Butler Aff."), at ¶ 6.)

**RESPONSE:** Undisputed.

15.  AIG Technical Services, Inc. ("AIGTS"), the claims administrator on behalf of American Home at the time, disclaimed coverage for this claim on the basis of Exclusion F (**"Property Damage** to **Your Product** arising out of it or any part of it") and Exclusion G (**"Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard"**. (See Ex. C to Complaint.)

**RESPONSE:** Undisputed.

16.  Insituform thereafter demanded that American Home withdraw its declination of coverage. (American Home Answer, ¶ 23.)

**RESPONSE:** Undisputed.

17.  American Home has informed Insituform that there is no coverage under the American Home Policy in connection with the MWRA Claim, and that that American Home Policy does not follow form to the Primary Policy under the American Home Policy's Contractor's Endorsement. (American Home Answer, ¶ 24.)

**OBJECTION:** This statement is not supported by admissible evidence, and therefore, cannot be considered.

**RESPONSE:** Disputed. American Home verbally denied coverage for the MWRA claim a second time, this time based solely on an interpretation of the Contractor's

Endorsement. Specifically, American Home contended that the exception within the Contractor's Endorsement applied only to the "following form hazard" immediately above the exception, and not the "excluded hazard" or any provision of the policy jacket. Insituform Complaint ¶ 24.

## INSITUFORM'S ADDITIONAL, UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1, Insituform offers the following additional, undisputed material facts in opposition to American Home's Motion for Summary Judgment and in support of Insituform's cross-motion for summary judgment:

### The MWRA Claim

1.     Insituform was subcontracted by D'Alessandro Corp. to rehabilitate approximately 5,400 feet of brick sewer owned by the MWRA. Affidavit of Tom Porzio ¶ 2 ("Porzio Affidavit ¶ __").

2.     The MWRA host pipe was unusual in that it was an inverted egg-shape with the larger radius at the bottom and the smaller radius at the top, and it was located 20 to 30 feet below ground level with substantial ground water pressure and infiltration. Porzio Affidavit ¶ 3.

3.     MWRA's engineer, Jacobs Civil Engineering ("Jacobs"), specified certain design and materials criteria for the CIPP. The design was based on a circular pipe with an equivalent diameter of approximately 40 inches. Insituform initially submitted a proposal to D'Allessandro Corp. suggesting a thicker design based on a non-circular design assumption. Additionally, Insituform suggested a resin that differed from the specified materials in that it had higher design values

11

(i.e., is stronger) and better cure properties in the presence of groundwater. As the proposed design method and materials were not accepted by Jacobs, Insituform submitted a proposal for the installation that incorporated the design criteria specified by Jacobs. Ultimately Jacobs approved Insituform's submission. Porzio Affidavit ¶ 4.

4. The installation of the CIPP began on August 13, 2003 and was competed on September 8, 2003. Porzio Affidavit ¶ 5.

5. Visual inspections of the installation revealed fins or wrinkles protruding toward the center of the pipe. The fins or wrinkles were intermittent, generally running in the longitudinal direction, and appeared in every quadrant of the geometry. Insituform trimmed the fins or wrinkles at the direction of Jacobs after indicating a concern about compromising the integrity of the laminate with regard to leakage. Porzio Affidavit ¶ 6.

6. On October 31, 2003, the MWRA notified Insituform that the installation failed to meet the contract specifications and that the job was rejected due to leakage and that remediation was necessary. Porzio Affidavit ¶ 7. American Home Response To Insituform First Set of Requests To Admit ¶ 8.

7. Insituform tried various remedies to remediate the defects of the installation, including remedies such as testing the materials and repairing areas where samples were removed; grouting the annulus; proposal of epoxy repairs; and proposal of spray-applied polyurethane. Porzio Affidavit ¶8.

8. Notwithstanding the efforts to remediate the defects, the pipe continued to leak due mainly to the larger than expected annulus. The size of the annulus also caused other concerns about the integrity of the pipe to be raised. Porzio Affidavit ¶ 9.

9. The pipe showed leakage through the liner at the trimmed fins as well as other areas. Porzio Affidavit ¶ 10.

10. Attempts at remedying the installation failed. MWRA insisted that 4,500 feet of the 5,400 feet of pipe installed by Insituform be removed and replaced. Porzio Affidavit ¶ 11.

11. An independent engineering, Haley & Aldrich, was retained to evaluate the original installation in light of the contractual specifications and to analyze the repair requirements, submittals and processes. Porzio Affidavit ¶ 12.

12. Plans were made to remove and replace 4,500 feet of the installation ("Phase 1"), which began in October 3, 2003. The Phase 1 removal and reinstallation was completed in May 2004. The inspection and testing of the reinstallation was completed May 8, 2004. Porzio Affidavit ¶ 13.

13. In the first quarter of 2005, the entire installation was inspected. It was then determined that the segment of pipe not removed and replaced in Phase 1 was also damaged. In fact, the pipe had failed in at least two locations and was leaking at other locations. Porzio Affidavit ¶ 14.

14. MWRA rejected the remaining 900 feet of the original installation and demanded that it be removed and replaced ("Phase 2"). Porzio Affidavit ¶ 15.

15.     Phase 2 work was performed from June through September of 2005. Porzio Affidavit ¶ 16.

16.     The buckles in the original installation were caused by using the wrong design thickness and by using a resin material with lower physical and other properties for the installation conditions and environment. The fins, wrinkles, and leaks resulted from a design and fabrication of a liner for a circular pipe, not the inverted egg shape involved.. Porzio Affidavit ¶ 17.

### Liberty Mutual's Investigation of the MWRA Claim

17.     Liberty Mutual investigated the MWRA Claim to determine whether Insituform was entitled to coverage under the Liberty Mutual policy no. RG2-641-004218-033 (the "Liberty Mutual Primary Policy"). Supplemental Affidavit of Robert Kelley ¶ 1, Ex. A.[1]

18.     Attached as Exhibit A to the Supplemental Affidavit of Robert Kelley is a genuine copy of Liberty Mutual's December 10, 2004 correspondence to Insituform concerning its investigation of the MWRA claim. Supplemental Kelley Affidavit ¶ 1, Ex. A.

19.     Following its investigation, Liberty Mutual concluded that the MWRA claim "appears to involve 'an error in the design, prescription, manufacture, blending, mixing or compounding [your work].'" Supplemental Kelley Affidavit ¶ 1, Ex. A; American Home Response To Insituform First Set of Requests To Admit ¶ 14.

---

[1] The Supplemental Affidavit of Robert Kelley ("Supplemental Kelley Affidavit") was previously filed (Docket No. 29) in response to American Homes' Motion For Reconsideration.

20. Liberty Mutual concluded that "there is coverage under the [Contractor's Rework Coverage Amendment] Endorsement for [the MWRA] claim." Supplemental Kelley Affidavit ¶ 1, Ex. A; American Home Response To Insituform First Set of Requests To Admit ¶ 15.

21. After a review of all the invoices submitted by Insituform, Liberty Mutual concluded that it would pay the full limit of $1 million available under the Contractor Rework Endorsement. Supplemental Kelley Affidavit ¶ 2, Ex. B.

22. Liberty Mutual paid its full limit of liability under the Liberty Mutual Primary Policy for the MWRA Claim, so that the MWRA Claim has pierced the American Home umbrella limit of liability. Supplemental Kelley Affidavit ¶ 2, Ex. B.

23. Attached as Exhibit B of the Supplemental Affidavit of Robert Kelley is a genuine copy of Liberty Mutual check numbers A0-80195880 and A0-8019420 in the amounts of $650,000 and $350,000, respectively. Supplemental Kelley Affidavit ¶ 2, Ex. B.

### American Home's Investigation of the MWRA Claim

24. American Home could have but chose not to participate in Liberty Mutual's investigation of the MWRA Claim. American Home Response To Insituform First Set of Requests To Admit ¶ 21.

### Insituform's Damages

25. Insituform's actual cost to remove and replace the original installation is $7,398,299.05. Affidavit of Chris Campos ¶ 4.

26. American Home's share of the loss is $6,398,299.05. Affidavit of Chris Campos ¶ 4.

| | |
|---|---|
| Dated: September 7, 2006 | Respectfully submitted, |
| | INSITUFORM TECHNOLOGIES, INC. |
| | By: /s/Stanley A. Martin |
| | Stanley A. Martin |
| | Holland & Knight LLP |
| | 10 St. James Avenue |
| | Boston, Massachusetts 02116 |
| | (617) 523-2700 |

Of counsel:

Charles L. Philbrick
Holland & Knight LLP
131 S. Dearborn St., 30th Floor
Chicago, Illinois 60603-5547
(312) 263-3600

# 4013559_v1

16