UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INSITUFORM TECHNOLOGIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 04-10487 GAO |
| ) | |
| AMERICAN HOME ASSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**AMERICAN HOME ASSURANCE COMPANY'S MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND
<u>IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

**<u>INTRODUCTION</u>**

Defendant American Home Assurance Company ("American Home") submits this memorandum in opposition to Plaintiff's Cross-Motion for Summary Judgment and in further support of its Motion for Summary Judgment.[1]

Despite Insituform's best efforts to read the Court's prior Orders as requiring a conclusion they do not, this Court has determined that Endorsement No. 4 to the American Home Policy "follows form" to the Liberty Mutual Primary Policy only "to the extent stated in the endorsement." Because the MWRA Claim does not fit within the coverage of any of the eight specific hazards set forth in Endorsement No. 4, there is no coverage under the American

---

[1] In support of its Opposition, American Home also relies on its Response to Plaintiff Insituform Technologies, Inc.'s ("Insituform's") Local Rule 56.1 Response to American Home's Statement of Undisputed Facts and Insituform's Additional Undisputed Material Facts (the "American Home Rule 56.1 Response") and the Affidavits of Gregory P. Deschenes (the "Deschenes Aff.") and Kurt M. Mullen (the "Mullen Aff.") filed with the Court.

Home Policy.  Likewise, Insituform's recent assertion that the defective liner was damaged while it was "being installed" by Insituform (for purposes of Excluded Hazard No. 2 to Endorsement No. 4) is flatly contradicted by the undisputed facts (based on Insituform's admissions), which demonstrate that the MWRA Claim results from a *completed* operation.  As such, the MWRA Claim is excluded by the "Your Work" and "Your Product" exclusions to the American Home Policy.  Finally, even if this Court were to conclude that Insituform's cross-motion for summary judgment should be granted as to liability, its summary judgment motion as to damages is unsupported by admissible evidence, presents genuine issues of material fact and should be denied.

**I.    THE AMERICAN HOME POLICY ONLY "FOLLOWS FORM" TO THE LIBERTY MUTUAL PRIMARY POLICY WITH RESPECT TO THE EIGHT SPECIFIC HAZARDS LISTED IN ENDORSEMENT NO. 4.**

**A.    Insituform has misinterpreted the effect of the Court's Orders.**

Insituform has again misinterpreted the effect of the Court's prior Orders.  Contrary to Insituform's assertion, the Court has not "essentially already ruled" that the American Home Policy follows form to the Contractor Rework Coverage Amendment in the Liberty Mutual Primary Policy.  (See Insituform's Memorandum in Response to American Home's Motion for Summary Judgment and in Support of its Cross-Motion for Summary Judgment (the "Insituform Memo.") at 11, 14.)  Indeed, that was precisely the issue raised by American Home's motion for reconsideration and clarified by the Court.

In its March 30, 2005 Memorandum and Order (the "Summary Judgment Order"), the Court held that Endorsement No. 4 is ambiguous and construed the "However" clause in that endorsement to modify both the "Excluded Hazards" and the "Following Form Hazards" sections of the endorsement.  See Insituform Technologies, Inc. v. American Home Assur. Co.,

10128705.1

364 F.Supp. 2d 3, 6 (D. Mass. 2005). American Home moved for reconsideration, arguing that Endorsement No. 4 does not provide blanket "follow-form" coverage for Insituform's defective work. Instead, American Home contended that the "following form" coverage in the American Home Policy is limited to the eight specific hazards listed in Endorsement No. 4, none of which provides coverage for the MWRA Claim. Insituform opposed the motion, arguing that the Court necessarily concluded in the Summary Judgment Order that the MWRA Claim was covered by the American Home Policy.

On May 24, 2006, the Court issued an order clarifying its prior ruling (the "Clarification Order"). In the Clarification Order, the Court made clear that Endorsement No. 4 only "follows form" to the Liberty Mutual Primary Policy "*to the extent stated in the endorsement*" and that it did not consider whether there is coverage for the MWRA Claim under the eight hazards listed in Endorsement No. 4. (See Clarification Order, at 2) (emphasis added).

Together, the effect of the Court's Orders is that, **to the extent** the Liberty Mutual Primary Policy provides coverage for any of the **eight specific hazards** set forth in Endorsement No. 4, the American Home Policy also provides coverage for those hazards.

        **B.**        **Pursuant to the Court's Orders, Endorsement No. 4 only "follows form" to the Liberty Mutual Primary Policy "to the extent stated in the endorsement."**

The American Home Policy does not broadly follow form to the Contractor Rework Coverage Amendment. Rather, Endorsement No. 4 in the American Home Policy provides only limited "following form" coverage – it is expressly circumscribed by the eight specific hazards set forth in Endorsement No. 4.

The "However" clause in Endorsement No. 4 states, "if insurance for *such* **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance,"

this exclusion shall not apply.  (<u>See</u> American Home Statement, ¶ 13) (italics added; bold in original.)  The word "such" operates as an important term of limitation.  <u>See</u> <u>Black's Law Dictionary</u> 1473 (8th ed. 2004) (defining "such" to mean "[t]hat or those; having just been mentioned").  Under any fair reading of the clause "*such* **Bodily Injury** or **Property Damage**," the word "such" refers to the hazards listed above in the Endorsement No. 4.  The "However" clause does not result in *carte blanche* follow-form coverage under Endorsement No. 4, as suggested by Insituform.  Insituform's interpretation would be patently unreasonable because it would render superfluous the eight hazards listed in Endorsement No. 4, in clear violation of the canons of construction.  <u>Falmouth Nat'l Bank v. Ticor Title Ins. Co.</u>, 920 F.2d 1058, 1061 (1st Cir. 1990) ("[W]henever possible, each word in an insurance policy should be considered and given some meaning.") (citation omitted); <u>Aetna Cas. & Sur. Co. v. General Dynamics Corp.</u>, 968 F.2d 707, 710 (8th Cir. 1992) ("Missouri law requires all terms of an insurance contract be given meaning.") (citation omitted).  Moreover, if Endorsement No. 4 was intended to be a general follow form endorsement, it would simply have stated, in one line endorsement, that American Home follows form to the Contractor Rework Coverage Amendment in the Primary Policy.  There would be no reason to include the eight specific hazards above the "However" clause in Endorsement No. 4.

In addition, <u>Gould, Inc. v. Arkwright Mutual Ins. Co</u>., 907 F. Supp. 103 (M.D. Pa. 1995), a case relied upon by Insituform, is clearly distinguishable.  The "following form" provision in <u>Gould</u> differs markedly from the provision in this case, as it states:  "this policy shall not apply, unless insurance is provided by a policy listed in the schedule of underlying insurance and then for no broader coverage than is afforded by such insurance."  In this case, unlike in <u>Gould</u>, the "However" clause, by referring to "*such* **Bodily Injury** or **Property Damage**," expressly limits

the "follows form" coverage in the American Home Policy to those specific hazards listed in Endorsement No. 4.

Notwithstanding the Court's Orders, Insituform argues that the language in Endorsement No. 4 is not pertinent and that the correct analysis is "not whether the claim falls within any of the 8 specific hazards" of the endorsement. (See Insituform Memo. at 16.) Insituform also argues that it has offered admissible evidence that places the MWRA Claim within the Contractor Rework Coverage Amendment. (Id., at 11.) However, whether the MWRA Claim falls within the Contractor Rework Coverage Amendment is of no moment. The language in Endorsement No. 4 of the American Home Policy, not the language in the Liberty Mutual Primary Policy, governs the extent to which American Home follows form. Accordingly, this Court must look to the language of the eight hazards in Endorsement No. 4 to determine whether there is coverage for the MWRA Claim. To do otherwise would ignore the language of the American Home Policy.

Finally, while Insituform contends that Liberty Mutual covered the MWRA Claim under its primary policy, American Home would not bound by Liberty Mutual's coverage determination even if the American Home Policy followed form (which it does not). An excess carrier is not bound by the primary carrier's coverage determination, even if there is follow form coverage. Allmerica Financial Corporation v. Certain Underwriters, 18 Mass. L. Rep. 333, 2004 Mass. Super. LEXIS 420 (Mass. Super. Ct. Sept. 27, 2004). It is therefore irrelevant whether Liberty Mutual decided to cover the MWRA Claim. Rather, the only issue is whether the MWRA Claim falls within any of the eight specific hazards of Endorsement No. 4, which, as discussed below, it clearly does not.

10128705.1

## II.     THE MWRA CLAIM DOES NOT FIT WITHIN EXCLUDED HAZARD NO. 2 .

Finally acknowledging that the MWRA Claim must fit within one of the eight hazards in Endorsement No. 4, Insituform attempts to shoehorn the MWRA Claim within the coverage of Excluded Hazard No. 2.[2]  (Insituform Memo. at 15-16.)  But Insituform's effort does not work.

Insituform argues, without any support, that the MWRA Claim is a "classic example" of "damage to property being installed by Insituform."  (See Insituform Memo. at 13.)  However, Insituform's position is undercut by several fatal concessions Insituform has made in this case.  Specifically, Insituform admitted that it was not notified of leakage at the end of the newly installed line until after "Insituform finished the job." (See Insituform's Local Rule 56.1 Response to American Home's Statement of Undisputed Facts and Insituform's Additional Undisputed Materials Facts (the "Insituform Statement"), Response No. 3.))  Insituform further admitted that the "installation of the [liner] began on August 13, 2003 and was comp[l]eted on September 8, 2003."  (See Insituform Statement, Additional Undisputed Material Fact No. 4.)

Based on its plain language, written in the **present** tense, Excluded Hazard No. 2 ("**Property Damage** to property *being* installed, erected or worked upon by the **Insured** or by any agents or subcontractors of the **Insured**") applies only to ongoing operations, and not completed operations, the type of claim at issue here.   (See American Home Statement, ¶ 13) (italics added; bold in original endorsement.)

In this case, as conceded by Insituform, the MWRA Claim arises from Insituform's *completed* operations, not its ongoing operations.  Under the terms of the American Home Policy, "Your Work" will be deemed "completed" at the earliest of the following times:

---

[2]  Significantly, Insituform does not contend that the MWRA Claim falls within any of the other seven hazards listed in Endorsement No. 4.  Rather, Insituform has put all of its eggs in the basket of Excluded Hazard No. 2.

    a.    When all of the work called for in your contract has been completed.

    b.    When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    c.    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

(See American Home Statement, ¶ 11.)  Moreover, work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, is treated as completed.  (Id.)

Here, there can be no doubt that the alleged damage to the sewer pipe occurred **after** Insituform completed its work on the MWRA project.  It was only after Insituform "finished" its work that Insituform was notified of leakage occurring at the end of the newly installed liner, and it was not until October 31, 2003 that the MWRA notified Insituform that Insituform's work needed to be repaired or replaced because the work did not meet the contract requirements.  (See American Home Statement, ¶¶ 3 and 4).  In fact, according to Insituform, installation of the liner began on August 13, 2003 and Insituform completed its work on September 8, 2003.  (Insituform Statement, Additional Undisputed Fact No. 4.)  Moreover, as the applicable policy language makes clear, work done by Insituform to repair or replace its original defective work, which is otherwise complete, is deemed completed.[3]  (American Home Statement, ¶ 11)

Because the MWRA Claim is based on Insituform's completed operations, no coverage is available under Excluded Hazard No. 2.  Rather, as discussed more fully below, such a completed operations claim is plainly barred by Exclusion G ("**Property Damage** to **Your**

---

[3] Additionally, Insituform repeatedly assured MWRA during the installation of the CIPP and for several months afterwards that the CIPP was structurally sound. (American Home Rule 56.1 Response, Response Nos. 8 and 16 to Insituform's Additional Undisputed Material Facts.)  For example, Insituform noted in August 2003 that the wrinkles and fins in the CIPP (which Insituform now argues are evidence that the CIPP was injured while it was being installed (see Insituform Memo. at 15)) were merely "cosmetic" and did not affect structural integrity. (American Home Rule 56.1 Response, Response Nos. 8 and 16 to Insituform's Additional Undisputed Material Facts.)

**Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard"**) of the American Home Policy.

### III. ENDORSEMENT NO. 4 DOES NOT MODIFY THE "YOUR WORK" AND "YOUR PRODUCT" EXCLUSIONS, WHICH, AS INSITUFORM HAS CONCEDED, PLAINLY BAR COVERAGE FOR THE MWRA CLAIM.

Pursuant to the Court's Orders, the "However" clause in Endorsement No. 4 modified only those eight hazards listed in Endorsement No. 4. Endorsement No. 4 does not refer to or modify any other terms and conditions of the American Home Policy. In fact, the endorsement expressly states that "[a]ll other terms and conditions of this policy remain unchanged." (American Home Statement, ¶ 13.) As the Court has noted, Insituform does **not** allege that the MWRA Claim is covered by the standard terms and conditions of the American Home Policy. See Insituform Technologies, Inc. v. American Home Assur. Co., 364 F.Supp. 2d at 4. Accordingly, if the "faulty workmanship" exclusions (Exclusions F and G) in the American Home Policy were **not** modified by Endorsement No. 4 and they remain in full force and effect, coverage for the MWRA Claim is barred.

In response, Insituform argues that damage to property being installed by the insured will "always fall" within the "Your Product" and "Your Work" exclusions (Exclusions F and G). (See Insituform Memo. at 17.) Insituform also argues that the "Your Product" and "Your Work" exclusions are the "functional equivalent" of Excluded Hazard No. 2 in the Contractor's Endorsement. (Id. at 12, 17.) Thus, Insituform argues that the savings clause ("[a]ll other terms and conditions of this policy remain unchanged") in Endorsement No. 4 does not apply to the "Your Product" and "Your Work" exclusions (Exclusions F and G) and that American Home's interpretation would render Excluded Hazard No. 2 meaningless. (Id. at 17.) However, in

advancing these arguments, Insituform fundamentally misunderstands the interplay between the Contractor's Endorsement and the "faulty workmanship" exclusions.

The "Your Work" exclusion and Excluded Hazard No. 2 are separate and distinct exclusions that apply to different types of claims. Contrary to Insituform's assertion, Excluded Hazard No. 2 in the Contractor's Endorsement is not the "functional equivalent" of the "Your Work" exclusion (Exclusion G) in the American Home Policy. Insituform has ignored a critical difference between the two exclusions: each of the exclusions has a different temporal component. The "Your Work" exclusion, by its express terms, applies to *completed* operations claims. Excluded Hazard No. 2, on the other hand, is written in the present tense and, as such, applies to *ongoing* operations claims.

Excluded Hazard No. 2 is similarly inapplicable with respect to the "Your Product" exclusion. Nowhere does Excluded Hazard No. 2 (or, indeed, any other provision of Endorsement No. 4) reference "Your Product," as that term is defined in the American Home Policy. (See American Home Statement, ¶ 13.) The American Home Policy defines "Your Product" to mean "1. [a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: a. You . . . ." (Id. at ¶ 11.) "Your Product" further includes "1. [w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product** . . . ." (Id.) (bold in original). Not only does Insituform now argue that its work constitutes "property" (Insituform Memo. at 13), Insituform represented to the MWRA on numerous occasions – before, during and after the CIPP installation – as to the fitness, quality, durability and performance of its product. (American Home Rule 56.1 Response, Response Nos. 8 and 16 to Insituform's Additional Undisputed

Material Facts.)  As noted above, these representations persisted even after Insituform relinquished control over the CIPP.

Accordingly, even if Endorsement No. 4 is ambiguous, and even if the "However" clause applies to both the hazards listed in the "Following Form Hazards" and the "Excluded Hazards" sections, pursuant to its terms, it does not modify or change any of the other standard terms and conditions of the American Home Policy, including Exclusions F ("Your Product") and G ("Your Work").  As conceded by Insituform, coverage is plainly barred by Exclusions F and G, which were **not** modified by Endorsement No. 4 and, therefore, remain in full force and effect.

### IV.     INSITUFORM IS NOT ENTITLED TO SUMMARY JUDGMENT ON DAMAGES.

Insituform argues, without any support (in fact, only by implication), that it is entitled to summary judgment on the issue of damages.[4]  Even if the American Home Policy provided coverage for the MWRA Claim, which it does not, the amount of damages should be determined at trial.

Despite Insituform's blithe assertion (see Insituform Memo. at  19) that "the amount of the [MWRA] claim is not disputed and readily ascertainable" (a proposition for which Insituform tellingly provides no support), Insituform has not submitted for the Court's consideration any admissible evidence under Rule 56(e) supporting its alleged damages.  If anything, the information submitted by Insituform's own expert raises serious questions as to the reasonableness and necessity of certain categories of costs, topics that need to be further probed in discovery and at trial.  Furthermore, American Home has noticed depositions not only of Insituform's expert witness (upon whom Insituform exclusively relies in its cross-motion for

---

[4]  Although the point heading in Insituform's memorandum states that "Insituform Is Entitled To An Award Of Damages and Prejudgment Interest," (Insituform Memo. at 18), Insituform's argument is focused entirely on the alleged availability and calculation of prejudgment interest.

summary judgment to provide support of its damages), but also of two other individuals Insituform identified as knowledgeable about costs Insitiuform allegedly incurred in connection with the MWRA Claim.  Accordingly, summary judgment on the issue of damages is inappropriate and must be denied.[5]

At the outset, Insituform claims in its cross-motion that it spent $7,398,299.05 to remove and replace its original CIPP installation (Insituform Statement, Additional Undisputed Material Fact No. 25), and that American Home's share is $6,398,299.05 (id., at Additional Undisputed Material Fact No. 26).  American Home emphasizes that these alleged costs result from a contract that originally valued Insituform's work in its entirety at $1,000,000.  (American Home Statement, ¶ 2.)  Thus, Insituform's costs to repair and/or replace the defective liner are more than seven times the original contract price.  This discrepancy alone appears proof positive that Insituform's claimed damages – including whether they were unreasonable and excessive – should be determined by the trier of fact and not by this Court as a matter of law.

        **A.**        **Insituform has not introduced any admissible evidence under Rule 56(e) to support its damages claim.**

Federal Rule of Civil Procedure 56(c) expressly recognizes that summary judgment may be rendered solely on the issue of liability where there is a genuine issue as to the amount of damages.  It bears repeating that the rule further provides that summary judgment can be rendered only if "the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[5] Additionally, notwithstanding Insituform's "preference" for the Massachusetts rate of prejudgment interest (see Insituform Memo. at 19), the Court first must conduct a trial on damages and determine as a matter of law whether Insituform's claim is governed by Massachusetts or Missouri law.  In Morris v. Watsco, Inc., 385 Mass. 672 (1982), the Massachusetts Supreme Judicial Court, answering a certified question from First Circuit, concluded that a federal court in the District of Massachusetts sitting in diversity must apply a foreign state's prejudgment interest rate if the foreign state's substantive law governs the claim.

together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Here, Insituform has not introduced any admissible evidence, either by way of fact witness testimony or documentary proof, under Rule 56(e) to demonstrate its purported damages. Rather, Insituform relies solely upon the affidavit of its expert, Chris Campos, which attaches Mr. Campos' expert report.  (See Insituform Statement, Response No. 5, Additional Undisputed Material Fact Nos. 25 and 26.)  Even if the Court were to conclude that Mr. Campos' affidavit comports with Fed. R. Evid. 702 and 703 (which American Home disputes), the fact remains that Mr. Campos' assessment of damages is "qualified," subject to several caveats that implicate the reasonableness of Insituform's alleged costs.

Federal Rule of Evidence 702(1) requires that a proposed expert's testimony be "based upon sufficient facts or data."  Here, none of the facts or data upon which Mr. Campos purportedly relies have been admitted into evidence.  Mr. Campos states that his opinion is "based on [his] review of the documents provided in the four claim binders, as well as discussions with Insituform management."  (Campos Affidavit, Expert Report, at 1.)  Insituform, however, has not even attempted to submit any of these documents into evidence.  Insituform also has not submitted any evidence regarding what information was included in the claim binders that Mr. Campos reviewed, or the material that was excluded.  Likewise, Insituform has not submitted any evidence to demonstrate which members of Insituform management discussed the MWRA Claim with Mr. Campos, as well as those who did not.  Nor does Mr. Campos, either in his affidavit or his expert report, discuss the methodology he used in testing and evaluating Insituform's alleged damages.

Even if admissible, analysis of expert testimony is inherently the province of the jury and is not suitable for disposition by summary judgment. "[I]f a court admits [expert] testimony, then it is for the jury to decide whether any, and if any what, weight is to be given to the testimony." Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S. Ct. 724, 729, 88 L. Ed. 967, 973 (U.S. 1944) (citations omitted); Metropolitan Life Ins. Co. v. Bancorp Services, LLC, 421 F. Supp. 2d 1196, 1200 (E.D. Mo. 2006) (if admissible, "[t]he factual basis of an expert's opinion goes to the credibility of the testimony . . .") (citation omitted).[6]

Because Insituform has not introduced any admissible evidence under Rule 56(e) to support its damages claim, summary judgment must be denied.

### B. There is a genuine issue of material fact as to whether Insituform mitigated its damages and whether its costs were reasonable.

Insituform's claim for summary judgment on damages further fails because Insituform has not demonstrated that it discharged its duty to mitigate damages or that its alleged costs were reasonable. Both of these factors are prerequisites to recovery under an insurance policy and Insituform has addressed neither in its cross-motion for summary judgment.

*Duty to mitigate*

It is well-settled that there is a duty on the part of the insured to mitigate covered losses, either by preventing them or minimizing their extent. Lee R. Russ & Thomas F. Segalla, 12 Couch on Insurance § 178:10, 178-17 (3d ed., West 2005). Both Massachusetts and Missouri follow this general rule. See Savers Property & Casualty Insurance Co. v. Admiral Insurance

---

[6] Additionally, "the mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact." Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S. Ct. 724, 729, 88 L. Ed. 967, 973 (U.S. 1944) (citation omitted). While Mr. Campos himself is not an interested in the outcome of this suit, he relies exclusively on information provided by Insituform, an interested party. Insituform cannot attempt to circumvent the general rule requiring trial testimony on this issue by laundering it through its expert witness.

Agency, 61 Mass. App. Ct. 158, 167 (2004) "[t]he general rule with respect to mitigation of damages is that a plaintiff may not recover for damages that were avoidable by the use of reasonable precautions on [its] part." (citation omitted); Cunningham v. Cunningham, 805 S.W.2d 363, 365 (Mo. App. 1991) ("Mitigation of damages as a generally recognized principle of law is also known as the rule of avoidable consequences. The rule requires that one damaged through alleged breach by another of some legal duty or obligation make reasonable efforts to minimize the resulting damage.") (quotation omitted).

In this case, Insituform has offered no admissible evidence under Rule 56(e) to demonstrate that Insituform attempted to mitigate its damages in repairing and/or replacing the defective liner.

### *Reasonableness of costs*

Not only must an insured mitigate costs, the costs themselves must be reasonable. This reasonableness principle has been applied in both Massachusetts and Missouri courts. In Guaranty-First Trust Co. v. Textron, the Massachusetts SJC held that "where damage to real property is not permanent, the measure of recovery is the reasonable expense of repairing the injury . . . ." 416 Mass. 332, 337 (1993). The court expounded on this proposition by further stating that "in the context of curable damage to personal property, the general requirement that a party seeking damages take reasonable action to limit or mitigate damages translates into the rule that recovery for loss of use is limited to the time reasonably necessary to make repairs." Id. (quotation omitted). Missouri follows a similar rule. Business Men's Assurance Co. of America v. Graham, 891 S.W.2d 438, 449 (Mo. App. 1994) ("[T]he measure of damages was the reasonable cost of repairing any damage . . ."); Slay Warehousing Co., Inc. v. Reliance Ins. Co., 471 F.2d 1364, 1369 (8th Cir. 1973) ("The burden rests on the [policyholder] to show what

expenses were incurred as 'reasonable means to protect, safeguard and salvage the property' under the policy").

Here, Insituform has offered no admissible evidence under Rule 56(e) to meet its burden of demonstrating that costs Insituform allegedly incurred were reasonable. In fact, Mr. Campos' opinion casts doubts as to whether Insituform's costs are reasonable. Among other issues, Mr. Campos states in his report that he "was not able to verify mobilization/demobilization hours for weeks during which the employees worked on more than one job" (Campos Aff., Expert Report at 3), and that part of Insituform's claim for certain payroll categories (id.) and equipment (id. at 4) appeared to be fixed in nature. Mr. Campos' expert report further concluded that the MWRA Claim would not affect Insituform's fixed costs, meaning that Insituform would have incurred these costs as part of its ordinary business even if there was no MWRA Claim. (Id. at 8.) The report also noted that he was not provided with any supporting documentation as to Insituform's projected close-out costs. (Id.)

As with other issues relating to Insituform's alleged damages, at a minimum, the conclusions in the expert report create a genuine issue of material fact as to whether Insituform mitigated its damages and whether its costs were reasonable, precluding the entry of summary judgment.

### C.    Pursuant to Fed. R. Civ. P. 56(f), the Court should refuse to consider Insituform's Cross-Motion for Summary Judgment on Damages.

If the Court determines that the issue of damages is otherwise amenable to summary judgment, American Home respectfully requests pursuant to Fed. R. Civ. P. 56(f) that the Court refuse the application at this time or order a continuance so that American Home can conduct its noticed depositions of the individuals that Insituform has identified as knowledgeable regarding the costs allegedly incurred in connection with the MWRA Claim. Notwithstanding American

Home's pending Motion to Stay Discovery, American Home has noticed the depositions of Tom Porzio and Larry Mangels, each of whom Insituform previously identified as witnesses regarding costs associated with the MWRA Claim. (See ¶ 6 of Deschenes Aff.) Additionally, American Home has noticed the deposition of Insituform's expert, Mr. Campos. (Id.)

## CONCLUSION

For the foregoing reasons, and for those reasons set forth in American Home's Motion for Summary Judgment and Memorandum in support thereof, Plaintiff's Cross-Motion for Summary Judgment should be denied, American Home's Motion for Summary Judgment should be granted, and Insituform's Complaint should be dismissed in its entirety.

AMERICAN HOME ASSURANCE COMPANY,

By its attorneys,

/s/ Gregory P. Deschenes
Gregory P. Deschenes (BBO #550830)
gdeschenes@nixonpeabody.com
Gregg A. Rubenstein (BBO #639680)
grubenstein@nixonpeabody.com
Kurt M. Mullen (BBO #651954)
kmullen@nixonpeabody.com
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110
(617) 345-1000
(617) 345-1300 (facsimile)

Dated: September 21, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by first class mail on September 21, 2006 and upon all parties registered for electronic notification via the Court's electronic filing system.

/s/ Gregory P. Deschenes
Gregory P. Deschenes

10128705.1