IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INSITUFORM TECHNOLOGIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04 10487 GAO |
| ) | |
| AMERICAN HOME ASSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**INSITUFORM'S REPLY MEMORANDUM IN SUPPORT OF
ITS CROSS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Insituform Technologies, Inc. ("Insituform"), by its attorneys, for its reply in support of its cross motion for summary judgment states:

**INTRODUCTION**

In an effort to duck its responsibility to indemnify Insituform for the MWRA claim, American Home denied coverage and opposed Insituform's first motion for summary judgment by arguing that the However clause of Endorsement No. 4 did not modify all the proceeding language in the endorsement. But that interpretation of Endorsement No. 4 erased the first four hazards from the endorsement.

Having lost that battle, American Home now offers a different interpretation that erases subparagraph 2 of the However clause. In fact, subparagraph 2 of the However clause is never referenced or addressed in American Home's papers. When the However clause is properly construed in light of all the terms in Endorsement No. 4 and the entire policy, there is no genuine issue that:

- the Liberty Mutual primary policy provides insurance for property damage to property being installed by Insituform under its Contractor Rework Coverage Amendment;

- subparagraph 2 of the However clause of Endorsement No. 4 causes the American Home policy to follow form to the Liberty Mutual Contractor Rework Coverage Amendment;

- the MWRA claim is covered under the Liberty Mutual Contractor Rework Coverage Amendment; and

- American Home owes Insituform $6,398,299.05 in damages plus prejudgment interest of $1,249,143.36.

Therefore, Insituform requests that the Court enter summary judgment in its favor and against American Home.

## ARGUMENT

I.  **THE AMERICAN HOME POLICY FOLLOWS FORM TO THE PRIMARY POLICY'S CONTRACTOR REWORK COVERAGE AMENDMENT.**

"I construe the However clause in Endorsement No. 4 to modify both the Excluded Hazards and the Following Form Hazards sections of the Endorsement." Mem. and Order, March 30, 2005 (Docket. No. 24), p. 5. The referenced "However clause" provides:

> However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:
>
> 1.  This exclusion shall not apply; and
>
> 2.  The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance. (Bold in original indicating a defined term)

"I leave it to another day (and perhaps another motion) to determine what implications or consequences the construction of that endorsement might have for the larger dispute." Mem. and Order, May 24, 2006 (Docket. No. 38), p. 2. That day has come.

To properly construe the "However clause" the Court must first determine "if insurance for such Bodily Injury or Property Damage [*i.e.*, one of the listed hazards] is provided by a policy listed in the Schedule of Underlying Insurance." If so, then two consequences follow: (1) the hazard is not excluded; and (2) "the insurance provided by [American Home's] policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance," *i.e.*, umbrella follows form to the terms of the underlying insurance with respect to that hazard.

    A.    **The Liberty Mutual Primary Policy Is Listed In The Schedule Of Underlying Insurance And Provides Insurance For Property Damage to Property Being Installed, Erected Or Worked Upon By The Insured.**

        1.    **The Proper Construction.**

Step one in the proper construction of the However clause is to determine whether the conditional or qualifying phrase, "if insurance for such bodily injury or property damage is provided by a policy listed in the schedule of underlying insurance," is satisfied. This conditional phrase requires two elements: (1) a policy listed in the schedule of underlying insurance (2) that provides insurance for "such bodily injury or property damage." Both elements are satisfied here.

There is no dispute that the Liberty Mutual primary policy is listed in the schedule of underlying insurance. Mem. and Order, March 30, 2005 (Docket No. 24), p. 5. The question becomes, does the Liberty Mutual primary policy provide insurance for one or more of the listed

3

hazards in Endorsement No. 4. Critical to the analysis here is the second hazard, "property damage to property being installed, erected, or worked upon by the insured."[1]

This second hazard stands out because general liability policies do not normally cover damage to the insured's product or the insured's work, which is precisely what the second hazard concerns. The policy jackets from both the Liberty Mutual primary and the American Home umbrella contain exclusions for damage to the insured's product or the insured's work. Butler Aff. Exh. A, p. I-00011 and Exh. B, p. I-00112. The product liability and completed operations coverage provided by these policies cover the injury or damage to third persons or third party property, not damage to the insured's product or the insured's work. Therefore, insurance for Hazard No. 2, "damage to property installed, erected or worked upon by the insured," is akin to first-party insurance, not third-party insurance.

However, the Liberty Mutual primary does provide insurance for damage to Insituform's product and Insituform's work. The insurance in the Contractor Rework Coverage Amendment does cover, under specified circumstances, damage "to products manufactured, sold, handled or distributed by or on behalf of the named insured." Butler Aff., Exh. A, p. I-00087. In order to facilitate that coverage for damage to property, manufactured, sold, handled or distributed by Insituform, the endorsement excepts all of the exclusions in the policy jacket that would exclude coverage for damage to the insured's product or the insured's work. *Id.*

Thus, both elements of the conditional clause of the However clause in Endorsement No. 4 are satisfied: (1) the Liberty Mutual primary policy is listed in the schedule of underlying insurance; and (2) the Liberty Mutual provides insurance for property being installed, erected or

---

[1] American Home suggests that Insituform looks only to Excluded Hazard No. 2 as a risk for which there is insurance in the primary. American Home Memorandum p. 6 n. 2. Not so. In the original motions for summary judgment, Insituform demonstrated that the Contractor Rework Coverage Amendment constitutes insurance for Follow Form Hazard No. 2. Insituform Memorandum (Docket Entry 7), pp. 13; Insituform Response (Docket Entry 18), pp. 8-10; and Kelley Affidavit (Docket Entry 19).

4

worked upon by Insituform. Having satisfied the conditional clause, the proper construction of the However clause turns to the consequences set forth in subparagraphs one and two of the However clause.

### 2. American Home's Improper Interpretation.

Rather than focusing on the policy language, American Home focuses on a single clause in the Court's May 24, 2006 Memorandum and Order on Motion for Reconsideration. The Court held:

> I have resolved in the prior memorandum and order that Endorsement No. 4 "follows form" to the Liberty Mutual policy *to the extent stated in the endorsement* and that the "However clause" modifies all the preceding language in the endorsement (emphasis added).

American Home takes this italicized statement out of context, edits out certain words, and adds the word "only" and comes up with: "This Court has determined that Endorsement No. 4 to the American Home Policy 'follows form' to the Liberty Mutual Primary Policy only 'to the extent stated in the endorsement.'" American Home Response, pp. 1, 3. American Home then concludes that the Court's finding has the effect of requiring that the MWRA claim fit within one of the eight hazards set forth in Endorsement No. 4 without regard to any policy in the schedule of underlying insurance. But as the Court made clear in its May 24, 2006 Order, the Court did not assume that the hazards listed in Endorsement No. 4 provide the same coverage as that provided in the Contractor Rework Coverage Amendment, nor did the Court "even consider the question." May 24, 2006 Mem. and Order, p. 2.

According to American Home, the Court need not ever consider the question, and instead consider only whether the MWRA claim comes within Hazard No. 2. But the conditional clause of the However clause in Endorsement No. 4 requires that the Court to consider whether the

Contractor Rework Coverage Amendment is insurance for "damage to property being installed, erected or worked on by [Insituform]."

American Home also argues that the complexity of Endorsement No. 4 indicates that the parties did not intend Endorsement No. 4 to cause the American Home policy to follow form to the Liberty Mutual Contractor Rework Coverage Amendment. American Home Response, p. 4. This argument works against American Home's interpretation, not for it. Where there is uncertainty as to the meaning of an insurance policy, the uncertainty is resolved in favor of coverage. *Krombach v. Mayflower Ins. Co.*, 287 S.W.2d 208, 210 (Mo. 1992); *Hakim v. Mass. Insurers' Insolvency Fund*, 424 Mass. 275, 281, 675 N.E.2d, 1161, 1165 (Mass. 1997).

If American Home did not intend to follow form to the Liberty Mutual Contractor Rework Coverage Amendment, then Endorsement No. 4 should not have been attached to the policy. The fact that the American Home underwriter chose to use a complicated standard form endorsement as opposed to a "general follow form endorsement… that American Home follows form to the Contractor Rework Coverage Amendment" is the underwriter's fault, not Insituform's.

**B.    Subparagraph 2 Of The However Clause Is A Follow Form Provision.**

**1.    The Proper Construction.**

Two consequences follow the determination that the Liberty Mutual primary policy provides insurance for "damage to property being installed, erected or worked on by [Insituform]": (1) the exclusion for damage to property being installed by Insituform does not apply; and (2) the umbrella provides coverage for damage to property being installed by Insituform, but on terms no broader than the primary, *i.e.*, the umbrella follows form to the primary.

In *Gould, Inc. v. Arkwright Mutual Ins. Co.*, 907 F. Supp. 103, 107 (M.D. Pa. 1995), the district court interpreted the phrase "unless insurance is provided by a policy listed in the schedule of underlying insurance, and then for no broader coverage than is afforded by such insurance," which is essentially identical language to subparagraph 2 in Endorsement No. 4. The *Gould* court concluded that the umbrella followed form to the primary such that the terms of the primary governed. *Gould*, 907 F. Supp. at 106-107. This is precisely what "follow form" means. Black's Law Dictionary defines a "follow form policy" as "an insurance policy that adopts the terms and conditions of another insurance policy." Black's Law Dictionary (8th Ed. 2004). Hence, the *Gould* court found that "whatever [the primary] policy gave the insured will be applicable in [the umbrella] policy. The only limitation is that the coverage cannot be broader than the [primary] policy." *Gould*, 907 F. Supp. at 107.

The same is true here. Because the Contractor Rework Coverage Amendment provides insurance for "damage to property being installed, erected or worked upon by [Insituform]," the American Home policy follows form to the Contractor Rework Coverage Amendment.

  2.   **American Home's Improper Interpretation.**

American Home claims that *Gould, Inc.* is distinguishable. American Home Response, p. 4. However, the policy at issue in *Gould* employs virtually the same follow form language to achieve the same follow form result. *Gould* is directly on point.

American Home never addresses the significance or meaning of subparagraph 2 to the However clause in Endorsement No. 4. The reason is simple. American Home wants its policy to follow form to itself, not the Contactor Rework Coverage Amendment—"the 'However' clause, by referring to '*such* Bodily Injury or Property Damage' expressly limits the 'follows form' coverage in the American Home Policy to those specific hazards listed in Endorsement

7

No. 4." American Home Memorandum, pp. 4-5. But it is impossible for a policy to follow form to itself. Thus, American Home's interpretation is unreasonable.

Instead of addressing the meaning of subparagraph 2 of the However clause, American Home argues that the MWRA claim does not fall within Excluded Hazard No. 2. As mentioned above, the inquiry is irrelevant. Also, the argument is preposterous. According to American Home:

> Based on its plain language written in the **present** tense, Excluded Hazard No. 2 ("**Property Damage**" to property *being* installed, erected or worked upon by **Insured** or by any agents or subcontractors of the **Insured**) applies only to ongoing operations and not to completed operations, the type of claim at issue here. (Emphasis in original.)

American Home Response, p. 6. First, American Home has the grammar wrong. The clause is written in the past tense: "installed, erected or worked" are past tense. The present participle of the verb "to be" is used because the sentence is written in the passive voice.

Second, American Home creates confusion by contrasting use of the term "being" with the concept of "completed operations." But completed operations is a totally unrelated subject that concerns American Home's limit of liability. Unlike individual occurrences, product liability and completed operations claims are subject to an aggregate limit of liability. Butler Aff., Exh. B, p. I-00105. The policies do not ever cover damage to the insured's product or the insured's work, whether that work is completed or not (unless, as here, insurance for the insured's product or work is specifically provided). Thus, the verb tense used in Excluded Hazard No. 2 is irrelevant.

American Home takes its "use of the term 'being'" argument one step further by asserting that Excluded Hazard No. 2 requires that the property damage occur while Insituform's product is being installed. American Home Response, p. 7. American Home then declares that "there

8

can be no doubt that the alleged damage to the sewer pipe occurred after Insituform completed its work on the MWRA project." American Home Response, p. 7. But, the undisputed evidence before the Court is that the damage to the sewer pipe (fins, wrinkles, and leaks) occurred while Insituform installed the pipe. American Home Response to Insituform Local Rule 56.1 Additional Facts, ¶¶ 5, 8, 9, and 16. By contrast, the best evidence American Home can muster is that "Insituform was *notified* of the leakage occurring at the end of the newly installed liner and it was not until October 31, 2003 that the MWRA *notified* Insituform that Insituform's work needed to be repaired or replaced because the work did not meet the contract requirements." American Home Response, p. 7. American Home's dependence upon notification is self-defeating. In order for American Home's argument to add up, which it does not, the the fins, wrinkles and leaks in the liner must occur after completion of the work, notification to Insituform of the damage is irrelevant. Thus, American Home's focus on the term "being" leads only to the conclusion that the MWRA claim involves damage (fins, wrinkles, and leaks) to property (Insituform's product) being installed by Insituform.

II.  **THE MWRA CLAIM IS COVERED BY THE CONTRACTOR REWORK COVERAGE AMENDMENT.**

American Home does not dispute that Liberty Mutual investigated the MWRA claim and concluded that it was covered under the Contractor Rework Coverage Amendment. American Home Response to Insituform Local Rule 56.1 Statement of Additional Undisputed Facts, ¶¶ 17-23. It is also undisputed that Liberty Mutual paid its $1 million limit of liability on the MWRA claim. *Id.* Therefore, if American Home's policy follows form to the Liberty Mutual Contractor Rework Coverage Amendment, which it does, then American Home's obligation to indemnify Insituform for the MWRA claim is triggered.

Rather than actually contest whether the MWRA claim is covered under the Contractor Rework Coverage Amendment, American Home punts by claiming that it is not bound by Liberty Mutual's coverage determination. American Home cites *Allmerica Financial Corp. v. Certain Underwriters at Lloyds of London*, 18 Mass. L. Rptr. 333, 204 W.L. 2341388 (Mass. Super. 2004), for the proposition that "an excess carrier is not bound by the primary carrier's coverage determination, even if there is follow form coverage. " American Home Response, p. 5.

American Home has overstated the holding in *Allmerica Financial Corp.* There, the court only held that "the excess insurer is [not] subject to the primary insurer's *interpretation* of the same policy terms" (emphasis added). *Allmerica Financial Corp.*, 204 W.L. 2341388 at p. 4. Also, there was no dispute that the London Market excess policy was "follow form" to the CNA primary. *Id.* at p. 1 ("The Underwriters policy was a 'follow form' policy which means that it incorporated the terms set forth in CNA's primary policy.") Unlike the situation here, the primary carrier and the excess carrier both investigated the claim and came to different conclusions as to whether the claim was covered.

American Home did not investigate the MWRA claim. American Home Response to Insituform Local Rule 56.1 Additional Facts, ¶ 24. American Home does not dispute that the MWRA claim falls within the terms of the Liberty Mutual Contractor Rework Coverage Amendment. Rather, American Home's focus is "whether the MWRA claim falls within any of the eight specific hazards of Endorsement No. 4." American Home Response, p. 5. Therefore, *Allmerica* does not apply.

Insituform has offered admissible evidence that demonstrates, as a matter of law, that the MWRA claim is covered under the Contractor Rework Coverage Amendment. American Home

has chosen not to controvert Insituform's evidence. Instead, American Home floats a policy interpretation that the MWRA claim does not fall within the eight specific hazards of Endorsement No. 4. Under F.R.C.P. 56(e), the issue is therefore resolved. In the event that the Court concludes, as it should, that Endorsement No. 4 causes the American Home policy to follow form to the Liberty Mutual Contractor Rework Coverage Amendment, Insituform is entitled to summary judgment as to liability in this case.

### III. INSITUFORM IS ENTITLED TO AN AWARD OF DAMAGES AND PREJUDGMENT INTEREST.

American Home offers three arguments on the issue of damages: (1) that Insituform has not supported its claim with admissible evidence; (2) that Insituform did not mitigate and/or its claimed damages are not reasonable; and by way of a fall back, (3) American Home makes a plea under F.R.C.P. 56(g) for discovery. American Home Memorandum, pp. 10-15. All fail as a matter of law.

#### A. Campos' Affidavit And Report Are Admissible.

Insituform has offered as evidence of the proper measure of damages the affidavit and report of its expert witness, Chris Campos. Mr. Campos is a nationally recognized expert in the area of insurance claim adjustment and evaluation. He has been a leader in the field for over 40 years. Campos Aff. ¶ 2 and Exh. A. Campos has studied all the claim documentation submitted to Liberty Mutual and American Home. The concludes that: "the total amount of recoverable loss is $7,398,299.05, which is Insituform's actual cost to remove and replace the installed pipe. American Home's share of the recoverable loss is $6,398,299.05 as explained and qualified in my report. My opinions in my report are based on a reasonable degree of accounting certainty." Campos Aff. ¶ 4.

In order to establish that Mr. Campos' affidavit is not admissible, American Home bears the burden of demonstrating that Campos is either unqualified, has utilized a methodology that renders his opinions unreliable, or that his opinions do not fit such that they would not be helpful to the fact finder. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 5, 79 (1993). American Home has not even attempted to address any of these elements. Rather, American Home simply makes the empty statement without any justification or explanation that Insituform has offered no admissible evidence.

Mr. Campos is eminently qualified. His opinions as to the proper measure of the loss are a direct fit and helpful to the fact finder that is in no position to sift through the thousands of pages of cost documentation. Campos' detailed review and analysis of the claim documentation in order to determine Insituform's actual costs of removing and replacing the CIPP is precisely the "good grounds" and sound methodology called for under *Daubert* and its progeny. Thus, there is no credible basis for barring Mr. Campos' averments in his affidavit and report.

Short of demonstrating that Mr. Campos' affidavit and report are not admissible, it is also American Home's burden to controvert his opinions as to the proper measure of damages in this case. If American Home fails to raise a genuine issue as Insituform's actual cost of removing and replacing the CIPP, then Insituform is entitled to summary judgment. F.R.C.P. 56(e). Here, American Home has not offered any contrary testimony as to the proper measure of Insituform's damages. Thus, Insituform is entitled to summary judgment as to damages in this case.

**B.     American Home Admits That Insituform Did Mitigate, And The Contractor Rework Coverage Amendment Defines Insituform's Recovery.**

American Home's assertion that Insituform failed to mitigate its damages is puzzling. Mitigation is not an element of Insituform's breach of contract or declaratory judgment claims. Mitigation is an affirmative defense. The fact that Insituform "has offered no admissible

evidence... that Insituform attempted to mitigate its damages" is of no consequence. American Home Response, p. 14. The fact that American Home has offered not admissible evidence of Insituform's alleged failure to mitigate is dispositive.

Equally puzzling is that Insituform did offer evidence that it attempted to mitigate the loss by repairing instead of replacing the defective liner and American Home did not dispute the evidence. Insituform's statement of additional fact, paragraph 7, and American Home's response is as follows:

> 7. Insituform tried various remedies to remediate the defects of the installation, including remedies such as testing the materials and repairing areas where samples were removed; grouting the annulus; proposal of epoxy repairs; and proposal of spray-applied polyurethane. Porzio Aff. ¶ 8.

**RESPONSE**: Undisputed.

American Home Response to Insituform Local Rule 56.1 Additional Facts, p. 7. It is "undisputed" that Insituform attempted to mitigate its damages by pursuing repairs in lieu of the more costly rip out and replacement of the CIPP that Insituform installed.

As to the proper measure of damages, American Home ignores the controlling policy language, *i.e.*, the Contractor Rework Coverage Amendment, and looks to Massachusetts and Missouri case authority that involves "reasonable cost of repair" as a measure of damages. American Home Response, p. 14. Unlike those cases, the Contractor Rework Coverage Amendment provides specific terms as to the extent of indemnification:

> We will pay those sums which you become legally obligated to pay for the required removal or repair of "your product" or "your work"....
>
> The amount we will pay under this coverage shall be limited to the lesser of:
>
> 1. Your actual cost of removal and replacing any of the above items....

13

Butler Aff., Exh. A, p. I-00087. Therefore, the proper measure of damages is Insituform's actual cost of removing and replacing the CIPP that Insituform installed. Mr. Campos' affidavit and report specifically categorize, quantify and determine Insituform's actual costs for removal and replacement of the CIPP.

American Home also argues that the difference between the MWRA contract price and the cost to remove and replace the CIPP that Insituform installed "appears proof positive that Insituform's claimed damages—including whether they were unreasonable and excessive—should be determined by a trier of fact and not by the court as a matter of law." American Home Memorandum, p. 11. The inference is not justified. Of course, to remove and replace a pipe that is 40 feet underground will be considerably more than to install the pipe. The reasonable inference to be drawn is that the disparity represents a liability risk that Insituform has sought to avoid by procuring $26 million of insurance from Liberty Mutual and American Home, combined.

Just because the damages are large does not mean a defendant is entitled to a jury trial. To avoid summary judgment, the non-movant has the burden of coming forward with admissible evidence that creates a genuine issue as to a material fact. In response to Insituform's evidence as to its actual cost to remove and replace the CIPP, American Home has offered no evidence that Insituform's actual costs are anything other than what has been presented to the Court.

### C. American Home Is Not Entitled To More Discovery.

In a last ditch effort to avoid summary judgment, American Home seeks relief under F.R.C.P. 56(f) for damages discovery.[2] However, the First Circuit has set a high bar for such relief:

---

[2] American Home has not sought F.R.C.P. 56(f) relief for discovery as to liability. American Home Response, p. 15.

14

> When, as is often the case, the reason relates to incomplete discovery, the party's explanation must take a special form: it should show good cause for the failure to have discovered the facts sooner; it should set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame probably exist; and it should indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.

*Resolution Trust Corp. v. Northbridge Associates, Inc.*, 22 F.3d 1198, 1203 (1st Cir. 1994). American Home has satisfied none of these requirements.

American Home claims that it has "diligently pursued discovery." Deschenes Aff., ¶ 6. American Home has not. This case has been pending for 2½ years. Insituform served its Rule 26 Initial Disclosure on American Home on May 4, 2004, at the outset of the case. Notwithstanding Insituform's requests to American Home to do likewise, American Home refused to make its initial disclosure until required to do so in advance of an initial pretrial conference. American Home finally made its initial disclosure on January 30, 2006, one year and eight months after the filing of the complaint.

January of 2006 formal discovery began. The original scheduling order called for the completion of discovery by June 30, 2006. Twice the discovery deadlines have been continued. American Home should have disclosed its experts on August 21, 2006. It did not. All discovery closed on September 29, 2006. Nine months after the opening of discovery and just two weeks before the close of discovery, American Home issued its first three deposition notices to Insituform for witnesses who were disclosed many months prior. American Home has not diligently pursued discovery, nor has it explained why it could not have conducted the needed discovery sooner. Deschenes Aff. ¶ 6.

In addition to failing to utilize its time to take discovery of the damages in this case, American Home has failed to set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist. The Deschenes affidavit

also fails to indicate how the emergent facts will influence the outcome of the pending summary judgment motion. As such, the Deschenes affidavit is insufficient to support a request for additional discovery under Rule 56(f).

Accordingly, there is no genuine issue. Insituform spent $7,398,299.05 removing and replacing the CIPP that Insituform installed. American Home is contractually obligated to indemnify Insituform for the actual cost of removal and replacing the CIPP, excess of the Liberty Mutual primary. The proper measure of Insituform's damages are $6,398,299.05 and that Insituform is entitled to prejudgment interest in the amount of $1,249,134.36.

## CONCLUSION

For the reasons stated above, Insituform prays for summary judgment in its favor and against American Home on Counts I and II and an award of money damages in the amount of $6,398,299.05, plus prejudgment interest of $1,249,134.36 and costs.

Dated: October 6, 2006

Respectfully submitted,

INSITUFORM TECHNOLOGIES, INC.

By: /s/Charles L. Philbrick
    Charles L. Philbrick
    Holland & Knight LLP
    131 S. Dearborn St., 30th Floor
    Chicago, Illinois 60603-5547
    (312) 263-3600

    Stanley A. Martin
    Holland & Knight LLP
    10 St. James Avenue
    Boston, Massachusetts 02116
    (617) 523-2700

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of Insituform Technologies, Inc.'s Reply Memorandum in Support of Its Cross-Motion for Summary Judgment was served upon:

>Gregory P. Deschenes
>Kurt Mullen
>Nixon Peabody LLP
>100 Summer Street
>Boston, MA 02110-2131

by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/  Charles L. Philbrick

# 4089107_v1