# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| INSITUFORM TECHNOLOGIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 04-10487 GAO |
| AMERICAN HOME ASSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | |

**AMERICAN HOME ASSURANCE COMPANY'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION
TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Defendant American Home Assurance Company ("American Home") submits this reply memorandum in further support of its Motion for Summary Judgment and in further opposition to Plaintiff's Cross-Motion for Summary Judgment.

Notwithstanding its protests to the contrary, Insituform cannot escape the following conclusions:

- Endorsement No. 4 to the American Home Policy provides only <u>limited</u> "follow form" coverage: the American Home Policy follows form <u>only</u> to the extent that the claim at issue falls within the coverage of the eight specific hazards set forth in Endorsement No. 4.

- Insituform has not and cannot prove that the MWRA Claim comes within the coverage of any of the eight specific hazards set forth in Endorsement No. 4.

10186839.1

Case 1:04-cv-10487-GAO    Document 66-2    Filed 11/16/2006    Page 3 of 12

- 2 -

- Endorsement No. 4 does not modify the "Your Work" and "Your Product" exclusions to the American Home Policy, which plainly bar coverage for the MWRA Claim.

Moreover, Insituform's cross-motion for summary judgment as to damages must be denied because it is unsupported by admissible evidence under Rule 56(e), presents genuine issues of material fact, and American Home is entitled to complete discovery it has noticed on damages pursuant to Rule 56(f).

### I. THE AMERICAN HOME POLICY PROVIDES ONLY LIMITED FOLLOW FORM COVERAGE – IT "FOLLOWS FORM" TO THE LIBERTY MUTUAL PRIMARY POLICY ONLY WITH RESPECT TO THE EIGHT SPECIFIC HAZARDS LISTED IN ENDORSEMENT NO. 4.

Insituform argues that there is coverage under the American Home Policy because both elements of the "However" clause in Endorsement No. 4 have been satisfied: (1) the Liberty Mutual primary policy is listed in the schedule of underlying insurance; and (2) the Liberty Mutual primary policy provides coverage for damage to property being installed, erected or worked upon by Insituform (Excluded Hazard No. 2 of Endorsement No. 4). (See Insituform's Reply Memorandum in Support of Its Cross Motion for Summary Judgment ("Insituform Reply Memo.") at 4-5.)

There are at least two fatal flaws with Insituform's argument. First, Insituform's interpretation ignores important language in Endorsement No. 4. The "However" clause, by referring to "*such* **Bodily Injury** or **Property Damage**," expressly limits "follow form" coverage in the American Home Policy to the eight specific hazards listed above in Endorsement No. 4. (See American Home Assurance Company's Statement of Undisputed Facts ("American Home Statement"), ¶ 13) (italics added; bold in original.) Insituform's interpretation is unreasonable because it would render superfluous the eight hazards listed in Endorsement No. 4,

10186839.1

in clear violation of the canons of construction. <u>Falmouth Nat'l Bank v. Ticor Title Ins. Co.</u>, 920 F.2d 1058, 1061 (1st Cir. 1990) ("[W]henever possible, each word in an insurance policy should be considered and given some meaning.") (citation omitted); <u>Aetna Cas. & Sur. Co. v. General Dynamics Corp.</u>, 968 F.2d 707, 710 (8th Cir. 1992) ("Missouri law requires all terms of an insurance contract be given meaning.") (citation omitted).  Accordingly, this Court must first look to the language of the eight hazards in Endorsement No. 4 to determine whether there is coverage for the MWRA Claim.[1]

Second, Insituform has skipped an important step in the analysis.  Insituform argues that because the Liberty Mutual Contractor Rework Coverage Amendment provides insurance for "damage to property being installed, erected or worked upon by [Insituform]," the American Home Policy necessarily follows form and covers the MWRA Claim.  (Insituform Reply Memo. at 7.)  However, even if this were correct, it begs the question – whether the MWRA Claim itself actually falls within the coverage of any of the eight hazards listed in Endorsement No. 4.  As discussed below, contrary to Insituform's assertion, the MWRA Claim is <u>not</u> a claim for damage to property being installed by Insituform and therefore does not fit within Excluded Hazard No. 2 or any other hazard listed in Endorsement No. 4.

## II. THE MWRA CLAIM DOES NOT COME WITHIN THE COVERAGE OF EXCLUDED HAZARD NO. 2.

The MWRA Claim does not fall within the coverage of Excluded Hazard No. 2, because such hazard, written in the present tense, applies only to ongoing operations, and not completed operations, the type of claim at issue here.  In response, Insituform protests that "the inquiry [of

---

[1]  Contrary to Insituform's assertion, American Home does not want its policy "to follow form to itself." (Insituform Reply Memo. at 7.)  Rather, the American Home Policy follows form to the Liberty Mutual policy **only to the extent** that the MWRA Claim actually comes within any of the eight specific hazards listed in Endorsement No. 4.

whether the MWRA Claim fits within Excluded Hazard No. 2] is irrelevant" and "the argument is preposterous." (Insituform Reply Memo. at 8.)  Insituform next attempts to fit a square peg in a round hole, arguing that the MWRA Claim fits within the coverage of Excluded Hazard No. 2.[2] (Id.)

First, Insituform makes a curious grammatical attack, arguing that Excluded Hazard No. 2 ("**Property Damage** to property *being* installed, erected or worked upon by the **Insured** or by any agents or subcontractors of the **Insured**") is actually written in the **past** tense. (Insituform Reply Memo. at 8.)  However, as Insituform must acknowledge, the word "being" is the present participle of the verb "to be."  If the clause had been written in the past tense, it would have used the past participle – having "been" installed, erected or worked upon by the Insured.

Second, Insituform contends that "completed operations is a totally unrelated subject that concerns American Home's limit of liability." (Insituform Reply Memo. at 8.)  Thus, Insituform argues that the verb tense used in Excluded Hazard No. 2 is irrelevant. (Id.)  However, the "completed operations hazard" provision in the American Home Policy is relevant not only to the limits of liability in the Policy, but also to whether there is any coverage for certain risks under the policy.  "The 'completed operations hazard' provision limits an insurer's liability for

---

[2]   Insituform, without advancing any argument or citing any legal authority, also contends that Insituform is entitled to coverage under Following Form Hazard No. 2 for "liability assumed by the **Insured** under any contract or agreement." (Insituform Reply Memo. at 4 n.1.)  However, as American Home previously demonstrated, the costs for which Insituform seeks recovery are not "liability assumed" by Insituform under a contract or agreement.  Such coverage is limited to situations where the insured has agreed to indemnify another for <u>tort</u> <u>liability</u> to a third party.  It is not meant to cover costs arising out of the insured's own breach of a contractual duty.  Such an interpretation would transform American Home into a guarantor of Insituform's performance under any contract, which is well beyond the scope of the umbrella liability coverage it agreed to provide.  For a more detailed explanation, see "American Home Assurance Company's Reply Memorandum in Further Support of its Cross-Motion for Summary Judgment and Opposition to Insituform Technologies, Inc.'s Motion for Partial Summary Judgment" dated July 23, 2004, (Docket Entry 21), at 6-9.

bodily injury or property damage to losses that occur away form the insured's premises and that arise from the insured's operations after those operations have been completed." See Barry R. Ostrager & Thomas R. Newman, 1 *Handbook on Insurance Coverage Disputes* §7.02[b] (13th ed. 2006). For example, completed operations claims are plainly barred by the "Your Work" exclusion (Exclusion G) ("**Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard"**) of the American Home Policy. The "Your Work" exclusion and Excluded Hazard No. 2 are separate and distinct exclusions that apply to different types of claims. The "Your Work" exclusion, by its express terms, applies to *completed* operations claims. Excluded Hazard No. 2, on the other hand, is written in the present tense and, as such, applies to *ongoing* operations claims. Thus, the distinction between completed operations claims and ongoing operations claims is critically important.

Third, Insituform argues that the presence of fins and wrinkles in the liner during the installation means that property damage occurred prior to the work being "completed." (Insituform Reply Memo. at 9.) However, Insituform previously took the position with the MWRA that such fins and wrinkles in the CIPP were merely "cosmetic" and did not affect the structural integrity or performance of the pipe. (See American Home Rule 56.1 Response, Response Nos. 8 and 16 to Insituform's Additional Undisputed Material Facts). Indeed, Insituform repeatedly assured the MWRA during the installation of the CIPP and for several months afterwards, that the fins and wrinkles were normal and to be expected and that the CIPP was structurally sound.[3] (Id.)

---

[3] In fact, Insituform trimmed the fins and wrinkles, and upon inspection, the CIPP liner appeared to be in good shape and was acceptable to MWRA. It was not until a few weeks later, after the CIPP installation, that a subsequent inspection revealed leaks and defects not previously known. (See MWRA memorandum from Kevin F. O'Brien to Michael J. McBride dated November 20, 2003, at 3, attached hereto as Exhibit 1.)

Moreover, Insituform's new-found position is undercut by the admissions Insituform has made in this case that the alleged damage to the sewer pipe occurred **after** Insituform completed its work on the MWRA project. Insituform has admitted that it was not notified of leakage at the end of the newly installed line until after "Insituform finished the job." (See Insituform's Local Rule 56.1 Response to American Home's Statement of Undisputed Facts and Insituform's Additional Undisputed Materials Facts (the "Insituform Statement"), Response No. 3.) Insituform has further admitted that the "installation of the [liner] began on August 13, 2003 and was comp[l]eted on September 8, 2003." (See Insituform Statement, Additional Undisputed Material Fact No. 4.) It was not until October 31, 2003, that the MWRA notified Insituform that Insituform's work needed to be repaired or replaced because the work did not meet the contract requirements. (See American Home Statement, ¶¶ 3 and 4). Moreover, as the applicable policy language makes clear, work done by Insituform to repair or replace its original defective work, which is otherwise complete, is deemed completed. (American Home Statement, ¶ 11).

Accordingly, based on Insituform's own admissions, it is clear that the MWRA Claim arises from Insituform's *completed* operations, not its ongoing operations.

### III.   INSITUFORM IS NOT ENTITLED TO SUMMARY JUDGMENT ON DAMAGES.

Insituform has the burden of proving the damages it allegedly suffered as a result of American Home's alleged breach of contract with reasonable certainty. See D.O. Haynes & Co. v. Nye, 185 Mass. 507, 509, 70 N.E. 932, 933 (1904) ("[T]he burden was on the plaintiff to establish its damages, and the jury were not bound to believe this evidence, or to disregard the circumstances from which they might have found that the damage was something less than the contract price"); Coady v. Wellfleet Marine Corp., 62 Mass. App. Ct. 237, 245, 816 N.E.2d 124, 131 (2004) ("The plaintiff has the burden of proving his damages 'with reasonable certainty'")

10186839.1

(citation omitted); see also Cornejo v. Crawford County, 153 S.W.3d 898, 902 (Mo. Ct. App. 2005) ("A party claiming damages for breach of contract bears 'the burden of proving the existence and amount of damages with reasonable certainty'") (citation omitted). In addition, Insituform also has the burden of showing that the costs it allegedly incurred were related to the repair and replacement of the defective liner and were reasonable and necessary. Quinn Bros., Inc. v. Wecker, 414 Mass. 815, 819, 611 N.E.2d 234, 236 (1993); see also Clayton Center Assoc. v. Schindler Haughton Elevator Corp., 731 F.2d 536, 541 (8th Cir. 1984) (applying Missouri law; "[f]inding there was admissible evidence to establish the defective conditions due to [defendant]'s breach, [plaintiff]'s remaining task was to establish the reasonable cost of repairs").

Here, Insituform has not met its burden. Insituform has submitted no documentary evidence or fact witness testimony under Rule 56(e) to demonstrate its purported damages. Insituform has not introduced into evidence any invoices or other documents supporting its claimed costs.[4] Furthermore, Insituform has not offered any testimony to meet its burden of demonstrating that the costs Insituform allegedly incurred were related to the repair and replacement of the defective liner or were reasonable and necessary.

The only evidence put forward by Insituform regarding damages was Mr. Campos' affidavit and expert report. Such a showing is insufficient. Mr. Campos' affidavit and report fail to comply with the requirements of Fed. R. Evid. 702 and 703 and therefore should be disregarded. Federal Rule of Evidence 702(1) requires that a proposed expert's testimony be "based upon sufficient facts or data." Here, none of the facts or data upon which Mr. Campos

---

[4] While Insituform argues that its expert witness, Chris Campos, has studied all the claim documentation submitted to Liberty Mutual and American Home, (see Insituform Reply Memo. at 11), none of that "claim documentation" has been admitted into evidence.

purportedly relies have been admitted into evidence.  Nor does Mr. Campos, either in his affidavit or his expert report, explain the methodology he used in testing and evaluating Insituform's alleged damages.  Furthermore, this Court should exclude Mr. Campos's conclusions because they are unreliable as to the issue of whether the costs were reasonably required in connection with the remediation. Mr. Campos is an accountant who opines only that there is adequate documentation to support certain of Insituform's claimed damages.  He is not an expert on cured-in-place pipe liner technology or its associated costs.  Moreover, Mr. Campos has no personal knowledge about how and why the repair and remediation costs were allegedly incurred.  Accordingly, Mr. Campos did not – and cannot – conclude whether the costs included in Insituform's claim are reasonably related to the remediation.  Nor did he offer any opinion regarding whether the costs were reasonable and necessary.  Accordingly, this Court should exclude his report.  See Richmond Steel, Inc. v. Puerto Rican American Ins. Co., 954 F.2d 19, 21 (1st Cir. 1992) (affirming trial court's exclusion of Certified Public Accountant's expert damages testimony as unreliable pursuant to Fed. R. Evid. 702 where expert could not determine whether damages were related to claim).

Even if the Campos affidavit and report were admissible, summary judgment on damages is inappropriate.  First, American Home has not had the opportunity to cross-examine Mr. Campos.  Where a court allows an expert to testify on the basis of underlying data that has not been admitted, the opposing party must be able to cross-examine the expert on his or her conclusions.  See Fed. R. Evid. 705; see also University of Rhode Island v. A.W. Chesterton Co., 2 F.3d 1200, 1218 (1st Cir. 1993) (noting that even if trial court had admitted expert testimony, it would have been "subject of course to [the opposing party]'s right to probe the premises of the opinion on cross-examination").  Second, analysis of expert testimony is inherently the province

of the jury and is not suitable for disposition by summary judgment. "[I]f a court admits [expert] testimony, then it is for the jury to decide whether any, and if any what, weight is to be given to the testimony." Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S. Ct. 724, 729, 88 L. Ed. 967, 973 (1944) (citations omitted); Metropolitan Life Ins. Co. v. Bancorp Services, LLC, 421 F. Supp. 2d 1196, 1200 (E.D. Mo. 2006) (if admissible, "[t]he factual basis of an expert's opinion goes to the credibility of the testimony . . .") (citation omitted).

Indeed, many of the opinions contained in the Campos report raise genuine issues of material fact concerning Insituform's claimed damages. For example:

- Mr. Campos could not verify mobilization/demobilization hours for weeks during which Insituform's employees worked on more than one job;

- Mr. Campos noted that certain materials and hours were charged at Insituform's standard rates, which may not represent its actual cost of production;

- Mr. Campos acknowledged that certain categories of claimed costs were improper because they were fixed in nature and the MWRA Claim would not have resulted in any incremental charge in Insituform's fixed costs; and

- Mr. Campos also acknowledged that he had no supporting documentation as to Insituform's estimated future costs and therefore had no opinion as to the validity of those estimates.

(See Campos Affidavit, Expert Report, at 3, 4, 5, 8.) Accordingly, at a minimum, the conclusions in the expert report create a genuine issue of material fact regarding Insituform's alleged damages, precluding the entry of summary judgment.

Finally, even if the Court determines that the issue of damages is otherwise amenable to summary judgment, American Home noticed in September the depositions of not only Mr. Campos, but also of Tom Porzio and Larry Mangels, each of whom Insituform identified as witnesses regarding costs associated with the MWRA Claim. Insituform has agreed to make Mr.

Mangels available to be deposed on November 17, 2006, with the depositions of Mr. Porzio and Mr. Campos to occur at a later date. During these depositions, American Home plans to explore the necessity and reasonableness of the costs that Insituform purportedly incurred in connection with its remediation. Accordingly, even if the issue of damages were otherwise amenable to summary judgment – which American Home contends it is not – such a determination should come after American Home completes necessary discovery as set forth in the Fed. R. Civ. P. 56(f) affidavit submitted in opposition to Insituform's cross-motion for summary judgment.

Accordingly, summary judgment on the issue of damages is inappropriate and must be denied.

## CONCLUSION

For the foregoing reasons, and for those reasons set forth in American Home's Motion for Summary Judgment and Memorandum in support thereof, Plaintiff's Cross-Motion for Summary Judgment should be denied, American Home's Motion for Summary Judgment should be granted, and Insituform's Complaint should be dismissed in its entirety.

AMERICAN HOME ASSURANCE COMPANY,

By its attorneys,

/s/ Gregory P. Deschenes
Gregory P. Deschenes (BBO #550830)
gdeschenes@nixonpeabody.com
Gregg A. Rubenstein (BBO #639680)
grubenstein@nixonpeabody.com
Kurt M. Mullen (BBO #651954)
kmullen@nixonpeabody.com
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110
(617) 345-1000
(617) 345-1300 (facsimile)

Dated: November 16, 2006

10186839.1

## CERTIFICATE OF SERVICE

      I hereby certify that a true copy of the above document was served upon the attorney of record for each party by first class mail on November 16, 2006 and upon all parties registered for electronic notification via the Court's electronic filing system.

                                      /s/ Gregory P. Deschenes
                                      Gregory P. Deschenes

10186839.1