# EXHIBIT A

10227871.2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| INSITUFORM TECHNOLOGIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 04-10487 GAO |
| AMERICAN HOME ASSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | |

**AMERICAN HOME ASSURANCE COMPANY'S
SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO
<u>INSITUFORM'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Defendant American Home Assurance Company ("American Home") respectfully submits this supplemental memorandum in support of its opposition to Plaintiff Insituform Technologies, Inc.'s ("Insituform's") Cross-Motion for Summary Judgment as to the issue of costs. American Home opposed Insituform's cross-motion, arguing that Insituform is not entitled to summary judgment on damages on several grounds, including that such a determination should be deferred until after American Home has completed necessary discovery under Fed. R. Civ. P. 56(f).

Following the Court's November 20, 2006 hearing on the parties' motion and cross-motion for summary judgment, the parties received the deposition transcript of Larry Mangels, Insituform's Director of Finance for North America. Insituform previously had identified Mr. Mangels as a potential witness regarding the costs Insituform allegedly incurred as a result of the MWRA Claim and Insituform's documentation of the claim amount. (<u>See</u> Affidavit of Gregory

10227871.2

P. Deschenes, submitted in connection with American Home's opposition to Insituform's cross-motion for summary judgment, the "Deschenes Aff.," at ¶ 6.)

As demonstrated below, Mr. Mangels' testimony confirms that there are genuine issues of material fact with respect to the amount of Insituform's claim. In short, the testimonial and additional documentary evidence thus far[1] further demonstrates that summary judgment as to the amount of Insituform's alleged costs is inappropriate.

### **Disputed Issues of Material Fact Regarding Insituform's Alleged Costs**

As demonstrated by Mr. Mangels' testimony, Insituform is seeking to recover through the MWRA Claim several categories of costs that do not correlate to the loss that Insituform actually incurred in removing and replacing the defective liner. Among other issues, Mr. Mangels testified regarding the following matters that raised genuine issues of material fact with respect to the costs that Insituform alleges that it incurred in connection with the MWRA Claim.

### *Inclusion of fixed costs*

Insituform is attempting to recover – by way of this claim – costs it would have incurred notwithstanding the alleged loss; it should not be entitled to do so. American Home, in order to avoid a potential double-recovery on the part of plaintiff, is entitled to discovery on this issue.

---

[1] American Home has noticed the depositions of Mr. Campos and Thomas Porzio, whom Insituform had identified as knowledgeable about the costs that Insituform allegedly incurred in connection with the MWRA Claim. (See Deschenes Aff. at ¶ 6.) Mr. Porzio's deposition is scheduled to take place January 23, 2007, and the parties are finalizing a date for Mr. Campos' deposition. Additionally, American Home suspended the November 17, 2006 deposition of Mr. Mangels because the cost binders produced by Insituform in support of the MWRA Claim were delayed en route to the deposition because of inclement weather. (Ex. 1 to the Affidavit of Kurt M. Mullen (the "Mullen Aff."), submitted herewith, at 132:3-12.) Furthermore, on December 15, 2006, American Home received certain documents that were requested during Mr. Mangels' deposition. (Mullen Aff. at ¶ 3.) Insituform's counsel represented that the documents produced included Mr. Mangels' handwritten notes from a conference call in which Mr. Mangels participated with, among others, Mr. Campos, regarding the MWRA Claim, as well as backup for payments that Insituform made to D'Allessandro Corp. (the contractor on the MWRA Project). (Id.) Accordingly, American Home may recall Mr. Mangels to depose him regarding documents that were not available to American Home during his deposition.

The object of awarding damages in a contractual claim "is to afford the equivalent in money for the actual *loss* sustained by the wrong of another." F.A. Bartlett Tree Expert Co. v. Hartney, 308 Mass. 407, 412 (1941) ("F.A. Bartlett") (emphasis added); see also Kansas City Bridge Co. v. Kansas City Structural Steel Co., 317 S.W.2d 370, 377 (Mo. 1958) ("Kansas City Bridge") ("[P]rerequisite to plaintiff's recovery of this general overhead item as part of its damages, some evidence was essential from which the jury reasonably could have found that such general overhead was not only an *expense* but also represented a *loss* to plaintiff") (emphases in original). Accordingly, it is well settled under Massachusetts law that fixed costs are ordinarily not considered for purposes of determining damages in a breach of contract case where there is evidence that the performance of the work "would neither increase or decrease [the] fixed overhead." Roblin Hope Indus., Inc. v. J.A. Sullivan Corp., 11 Mass. App. Ct. 76, 80 n.4 (1980) (citing F.A. Bartlett). Missouri law appears to be in accord. See, e.g., Kansas City Bridge, 317 S.W.2d at 377 (fixed costs are not included in plaintiff's contractual damages claim unless plaintiff presents evidence that "plaintiff would have, but for the [breach], obtained other work (which it did not have or which it did not in fact obtain) sufficient in amount to have absorbed the allocated portion of general overhead." )

Here, Insituform has inappropriately included in its alleged damages "fixed costs" that Insituform incurred as part of its day-to-day operations, and not only those costs that Insituform allegedly incurred because of the MWRA Claim. As defined by Mr. Mangels, "fixed costs" mean "[c]osts that [Insituform] would incur even if [Insituform] wouldn't have done a particular job. Costs that are there no matter what." (Ex. 1 to the Affidavit of Kurt M. Mullen (the "Mullen Aff."), submitted herewith, at 32:22-33:2.[2]) By contrast, Mr. Mangels defined "variable

---

[2] References reflect the page:line of the deposition minuscript of Larry Mangels.

costs" to be "a cost that you will only incur if you do another unit of production," or, put another way, a cost "that Insituform is [incurring] only because it has to do work on the MWRA Claim." (Id. at 33:15-34:10.)[3]  As noted by American Home in earlier memoranda, Mr. Campos, Insituform's damages expert, raised concerns regarding Insituform's inclusion of fixed costs in the MWRA Claim because, in Mr. Campos' opinion, "[t]he reparation project [the MWRA Claim] would not result in any incremental charges for the fixed costs."  (Ex. A to the Affidavit of Chris Campos[4] (the "Campos Aff."), at 8.)

Mr. Mangels testified that Insituform did not analyze fixed versus variable costs in connection with either Insituform's claimed payroll or equipment burden because such analyses would be "subjective in nature" as to what constitutes a fixed cost.  (Ex. 1 to Mullen Aff. at 130:5-131:23.)  Notwithstanding this apparent difference in opinion with Insituform's own expert, Mr. Mangels identified during his deposition several categories – all of which are included in the MWRA Claim – that may be considered to be fixed costs.

*Payroll*

- General liability insurance policy

Insituform has included in the MWRA Claim costs related to its general liability insurance policy that covers the entire company.  Although Mr. Mangels testified that there is "some subjectivity" regarding whether general liability insurance is a fixed cost, he testified that he had no reason to doubt that the premium for this policy would be the same regardless of whether Insituform had the MWRA Claim.  (Ex. 1 to Mullen Aff. at 37:4-38:12, 39:12-18.)

---

[3]  As American Home noted in its earlier oppositions to Insituform's cross-motion for summary judgment on costs, Insituform also would have the burden to mitigate its damages, as well as to demonstrate that its costs were reasonable.

[4]  Insituform submitted the Affidavit of Chris Campos in connection with its cross-motion for summary judgment.

10227871.2

- <u>Workers' compensation insurance policy</u>

Insituform also has included in the MWRA Claim costs attributed to the company's workers' compensation policy. As with general liability insurance, Mr. Mangels testified that there is "some subjectivity" regarding whether such insurance is a fixed cost. (Ex. 1 to Mullen Aff., at 37:4-11.) Mr. Mangels also testified, however, that Insituform's workers' compensation policy covered all employees in the company and that he believed that the premium for such policy would be the same regardless of whether Insituform had the MWRA Claim. (<u>Id.</u> at 38:16-39:11.)

*Equipment Burden*

Mr. Mangels testified that, for non-wet-out labor, the per-hour labor charge comprising Equipment Burden was based on the region of the country from which Insituform drew its personnel. For example, the Equipment Burden rate for New England crews was $35 per employee per hour through February 28, 2004, and $26 per employee per hour after March 1, 2004. (Ex. 1 to Mullen Aff. at 66:2-17.) The rate for employees from Insituform's Benicia, California location, some of whom Mr. Mangels testified also worked on the MWRA Claim, was $34 per employee per hour because Insituform's equipment cost rate in California is higher than in New England. (<u>Id.</u> at 66:18-67:7.) Mr. Mangels conceded that these per hour charges may not have reflected Insituform's actual costs, testifying that "[t]he [per hour] rates did not increase or decrease. Actual equipment costs may have increased or decreased, but the rates did not change." (<u>Id.</u> at 67:21-68:1.)

Additionally, Mr. Mangels conceded that six of the seven "cost centers" comprising the Equipment Burden charge could be considered fixed costs. (<u>See</u> Ex. 2 to Mullen Aff. at ITI-AIG 000359-360, ITI-AIG 001940-001941 for the narratives listing the Equipment and Facility Cost

Centers for Phases I and II respectively.) The items that may be considered to be fixed costs include:

- Cost of leasing and maintaining Insituform's regional warehouse Charlton, Massachusetts and yard space (Id. at 42:24-44:11; 64:20-65:1.)

- Labor costs for the maintenance of Insituform's regional warehouse in Charlton, Massachusetts and yard (Id. at 65:2-5.)

- Equipment depreciation (straight line depreciation) (Id. at 39:19-24; 64:20-65:1.)

- Cost of leased vehicles and equipment not used on a specific project (Id. at 68:18-23.)

- Equipment insurance and taxes (Id. at 41:2-42:23; 68:24-69:3.)

- The safety equipment portion of the "Other Costs" category (Id. at 69:4-9.) Furthermore, Mr. Mangels testified that the safety equipment included in the "Other Costs" Equipment Burden cost center was "very similar" to the material covered by the $6 per employee per hour charge included in the "Expendables & Supplies" portion of the MWRA Claim. (Id. at 69:23-70:14; 72:3-19.)

*Improper inclusion of repair costs in Phase I of the MWRA Claim*

Mr. Mangels testified that Insituform calculated its Phase I costs beginning from the date that Insituform finished the initial CIPP installation, which he estimated to be a few months before Insituform's actual removal and replacement of the CIPP work in connection with Phase I. (Ex. 1 to Mullen Aff. at 26:5-17.) Mr. Mangels further testified that such pre-removal and replacement costs resulted from Insituform's unsuccessful attempt to repair the CIPP following Insituform's initial installation, and that these costs were included in Phase I because Insituform viewed them as "related" to the subsequent removal and replacement. (Id. at 26:18-28:5.) The Contractor Rework Coverage Amendment to the Liberty Mutual Policy, to which Insituform contends that the American Home Policy follows form, however, provides coverage only for the *lesser* of Insituform's "actual cost of removing and replacing ['your product' or 'your work']" *or*

10227871.2

Insituform's "actual cost of remedial action taken to avoid removal or replacement of such products."  (See Insituform's Local Rule 56.1 Response to American Home's Statement of Undisputed Facts, ¶ 10) (emphases added).  Repair costs to an insured's existing product or work do not appear to be covered under the Liberty endorsement.  Accordingly, Insituform's costs for its unsuccessful repair should not be covered even under the Liberty Mutual Policy.

*Calculation of standard rate versus actual rate of material*

Mr. Mangels further testified that direct labor in connection with manufacturing the CIPP for installation was charged at the "standard rate" forecast at the beginning of the year, which may have differed from the actual cost that Insituform incurred in connection with manufacturing this material.  (Ex. 1 to Mullen Aff. at 80:9-81:23; 84:3-17; 86:23-87:8.)

*Hours spent mobilizing/demobilizing*

In his report, Mr. Campos noted that he was not able to verify the hours that Insituform employees spent mobilizing and demobilizing in connection with MWRA Claim for weeks in which employees worked on more than one job.  (Ex. A to Campos Aff. at 3.)  As Mr. Mangels testified, time that the crew spent mobilizing and demobilizing (that is, traveling between the yard and the job site) for the MWRA Claim was charged at the employee's regular hourly wage, whereas on-site work was charged at the state-mandated prevailing wage rate.  (Ex. 1 to Mullen Aff. at 46:19-47:19.)  Mr. Mangels did not know, however, how Insituform calculated mobilization and demobilization rates where its crew was working on multiple projects, or even whether it could be calculated.  (Id. at 51:14-22.).

*Estimated close-out costs*

The MWRA Claim includes estimated close-out costs in the amount of $264,000.  (See Ex. A to Campos Aff. at 7-8.)  Although Mr. Mangels did not know the exact amount of

- 8 -

Insituform's alleged close-out costs, Mr. Mangels testified that he believed that such costs were lower than the $264,000 estimate. (Ex. 1 to Mullen Aff. at 116:10-117:2.) Insituform has not produced any documentation supporting its close-out costs. (Id. at ¶ 5.)

## CONCLUSION

For the foregoing reasons, and for the reasons stated in American Home's prior memoranda, Insituform's cross-motion for summary judgment on the issue of costs should be denied.

Respectfully submitted,

AMERICAN HOME ASSURANCE COMPANY,

By its attorneys,

/s/ Kurt M. Mullen
Gregory P. Deschenes (BBO #550830)
gdeschenes@nixonpeabody.com
Gregg A. Rubenstein (BBO #639680)
grubenstein@nixonpeabody.com
Kurt M. Mullen (BBO #651954)
kmullen@nixonpeabody.com
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts  02110
(617) 345-1000
(617) 345-1300 (facsimile)

Dated: January 8, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by first class mail on January 8, 2007 and upon all parties registered for electronic notification via the Court's electronic filing system.

/s/ Kurt M. Mullen
Kurt M. Mullen

10227871.2