# EXHIBIT 1

Page 1

1              Volume:    I

2              Pages:     1 - 215

3              Exhibits:  1 - 22

4      IN THE UNITED STATES DISTRICT COURT

5        FOR THE DISTRICT OF MASSACHUSETTS

6   ------------------------------------x

7  INSITUFORM TECHNOLOGIES,

8          Plaintiff,

9     v.                    C.A. No. 04 10487 GAO

10 AMERICAN HOME ASSURANCE COMPANY,

11          Defendant.

12  ------------------------------------x

13

14      DEPOSITION of THOMAS PORZIO, a witness

15 called for examination by the Defendant, taken

16 pursuant to the Applicable Provisions of the

17 Massachusetts Rules of Civil Procedure, before

18 Laurie K. Langer, Registered Professional

19 Reporter and Notary Public in and for the

20 Commonwealth of Massachusetts, at the offices of

21 Nixon Peabody, 100 Summer Street, Boston,

22 Massachusetts, on Tuesday, January 23, 2007,

23 commencing at 10:00 a.m.

24

**Esquire Deposition Services**
**1-866-619-3925**

Page 2

1  APPEARANCES
2
3    HOLLAND & KNIGHT, LLP
4    By Charles L. Philbrick, Esq.
5    131 S. Dearborn Street, 30th Floor
6    Chicago, Illinois 60603
7    (312) 715-5834
8    For the Plaintiff
9
10   NIXON PEABODY LLP
11   By Gregory P. Deschenes, Esq.
12   Kurt M. Mullen, Esq.
13   100 Summer Street
14   Boston, Massachusetts 02110-2131
15   (617) 345-1324
16   For the Defendant
17
18
19
20
21
22
23
24

Page 3

1                INDEX
2  ATTORNEY       EXAMINATION  CROSS   REDIRECT
3  Mr. Deschenes      5
4  EXHIBIT                              PAGE
5  1  12/26/02 Letter from Mr. Porzio and
6     Attached                          76
7  2  12/18/02 Letter from Mr. Doyle    92
8  3  4/17/03 Letter of Transmittal and
9     Attached                          108
10 4  East Boston Branch Sewer
11    Rehabilitation, MWRA Contract No. 6840   114
12 5  Subcontract Agreement             120
13 6  Affidavit of Thomas Porzio        128
14 7  5/15/03 Letter from Mr. Porzio    133
15 8  7/17/03 Letter from Mr. D'Allessandro
16    and Attached                      143
17 9  9/11/03 Memo from Mr. Porzio to Tino
18    Valencia                          149
19 10 D'Allessandro Corp., Non-Conformance
20    Report and Attached               152
21 11 12/16/03 Letter from Mr. Porzio   161
22 12 1/13/04 Letter to Mr. Hornbrook and
23    Attached                          163
24

Page 4

1  (Index continued)
2  EXHIBIT                              PAGE
3  13 1/27/04 Fax Transmission to
4     Mr. D'Allessandro and Attached    172
5  14 Settlement Agreement              175
6  15 5/11/04 Letter from Mr. Porzio
7     and Attached                      180
8  16 Packet of Documents, D08810 to
9     D08837                            183
10 17 6/8/04 Letter to Mr. DelPrete and
11    Attached                          183
12 18 5/20/05 Letter to Mr. D'Allessandro
13    and Attached                      191
14 19 5/24/05 Letter from Mr. Savard    193
15 20 4/19/05 Memo from Mr. Porzio and
16    Attached                          195
17 21 3/31/06 Letter to Mr. Shea        201
18 22 Lessons Learned Report to the
19    Massachusetts Water Resources Authority   204
20
21
22
23
24

Page 5

1              PROCEEDINGS
2
3            THOMAS PORZIO,
4    having been satisfactorily identified by the
5    production of his driver's license, and duly
6    sworn by the Notary Public, was examined and
7    testified as follows:
8
9              EXAMINATION
10
11   BY MR. DESCHENES:
12 Q.  Good morning, Mr. Porzio. My name is Greg
13     Deschenes and along with Kurt Mullen here, my
14     associate, we represent the Defendant in this
15     case, American Assurance.
16 A.  Uh-huh.
17 Q.  American Home Assurance Company.
18 A.  I'm sorry. Just getting my glasses.
19 Q.  Glasses, okay. They'll be important if they're
20     reading.
21 A.  I see paper out there.
22 Q.  If they're reading glasses they'll be essential.
23        I want to thank you for your attendance
24     here at the deposition today and taking your

Esquire Deposition Services
1-866-619-3925

Page 174

1  out just two weeks after making the earlier
2  offer?
3 A. Well, as I described earlier the situation was
4  evolving as we continued to work, I believe we
5  were still 24/7 at the time and as, as we
6  continued to attempt repairs and began the
7  removal of Shot 6 we found that circumstances
8  were not as expected. We went back as described
9  earlier and measured more closely other portions
10  of the liner and the decision was made largely
11  by Jacobs that portions of Shot 5 measure in
12  acceptable ranges and that that stretch, three
13  segments of pipe, as I recall, could remain in
14  place with a couple of bungs or so, epoxy
15  repair, remove and replace everything else.
16 Q. And when did Insituform begin removing the
17  liner?
18 A. Shot 6 or the remainder?
19 Q. At any part of the liner. When did Insituform
20  begin it?
21 A. Boy, that's hard to recall. The first part was
22  just before Christmas or shortly thereafter. It
23  was a working Christmas, I remember that.
24 Q. And that was focused on Shot 6; is that correct,

Page 175

1  that removal?
2 A. Yes.
3 Q. And between October and the end of December when
4  you started the removal process had Insituform
5  removed and replaced any of the liner?
6 A. I believe we had removed portions of six. I
7  don't think we had yet installed any liner in
8  that section.
9 Q. And the removal began right around Christmas of
10  2003; is that your testimony?
11     MR. PHILBRICK: Objection to the extent it
12  mischaracterizes his testimony. And it's asked
13  and answered. The witness may answer again.
14 A. Again, the detail as to exactly when we began
15  removal is tough. If it wasn't -- it was either
16  early January or late December.
17 Q. Okay. And up until that point none of the costs
18  that Insituform had incurred involved removal
19  and replacement of the liner; isn't that
20  correct?
21 A. Yes.
22 Q. I think I'm done with that.
23 A. Okay. (Indicating.)
24     (Deposition Exhibit 14 marked for

Page 176

1  identification.)
2 A. This is a trip down memory lane.
3 Q. I'm sure it's not all that pleasant.
4 A. (Witness reviewing.) Do you want me to read
5  this?
6 Q. Just take a quick glance at it and then I'll
7  have some questions.
8 A. I'm ready.
9 Q. Okay. Do you recognize this document?
10 A. Yes.
11 Q. Have you ever seen it before?
12 A. Yes.
13 Q. Okay. And what is it?
14 A. Settlement Agreement associated with the
15  Contract 6840 between D'Allessandro and the MWRA
16  dated 10, March 2004.
17 Q. Were you involved in negotiating this agreement?
18 A. Yes.
19 Q. What was your involvement?
20 A. I believe we looked at the draft to ensure that
21  we and Insituform would support as the
22  subcontractor D'Allessandro's agreement to
23  proceed as written.
24 Q. And do you recall the reason for entering into

Page 177

1  the Settlement Agreement?
2     MR. PHILBRICK: I'm going to object to
3  foundation.
4 A. No.
5     MR. PHILBRICK: The witness may answer if
6  he can.
7 A. No.
8 Q. You don't recall?
9 A. Perhaps I would have to read it in detail and
10  think. But I -- it had to do with detailed
11  contract issues; that's about as detailed as I
12  can remember.
13 Q. Do you know whether Insituform agreed to pay the
14  $210,000 amount which is referenced in paragraph
15  2? It's on the second page.
16 A. Yeah, I see. (Witness reviewing.) Yes. And
17  that was one of the deducts and why we were not
18  paid the full amount.
19 Q. Contract amount?
20 A. That you asked about, yes.
21 Q. Okay. So that came off the top of the million
22  dollars under the contract?
23 A. Yes.
24 Q. Do you recall whether Insituform had any