# EXHIBIT 2

Page 1

1              UNITED STATES DISTRICT COURT

2               FOR THE OF MASSACHUSETTS

3

4

5  INSITUFORM TECHNOLOGIES, INC.,        )

6                    Plaintiff,          )

7          vs.                           )

8  AMERICAN HOME ASSURANCE COMPANY,      )

9                    Defendants.         )

10

11         The resumed deposition of THOMAS

12 PORZIO, called for examination, taken before

13 ANNETTE M. MONTALVO, a Notary Public within and

14 for the Commonwealth of Massachusetts, and a

15 Registered Merit Reporter of said state, at 100

16 Summer Street, Boston, Massachusetts, on the 2nd

17 day of February, A.D. 2007, at 9:30 a.m.

18

19

20

21

22

23

24

Page 2

1 PRESENT:
2
3    HOLLAND & KNIGHT,
4    (131 South Dearborn Street, 30th Floor,
5    Chicago, Illinois 60603,
6    312-715-5834), by:
7    MR. CHARLES L. PHILBRICK,
8       appeared on behalf of the Plaintiff;
9
10   NIXON PEABODY LLP,
11   (100 Summer Street,
12   Boston, Massachusetts 02110,
13   617-345-1000), by:
14   MR. GREGORY P. DESCHENES,
15      appeared on behalf of the Defendant.
16
17
18
19
20
21
22 REPORTED BY: ANNETTE M. MONTALVO, CSR, RMR,
23        RMR CERTIFICATE NO. 833506.
24

Page 3

1            I N D E X
2 WITNESS                      EXAMINATION
3 THOMAS PORZIO
4    By Mr. Deschenes         4
5    By Mr. Philbrick         100
6
7
8
9
10           E X H I B I T S
11 NUMBER                        PAGE
12 Porzio Exhibit
13
14 No. 23                       5
15 No. 24                       50
16 No. 25                       57
17 No. 26                       64
18 No. 27                       70
19 No. 28                       75
20 Nos. 29, 30, 31              78
21
22
23
24

Page 4

1         THOMAS PORZIO,
2 called as a witness herein, having been
3 previously satisfactorily identified and duly
4 sworn and having testified, was examined and
5 testified further as follows:
6         EXAMINATION (Resumed)
7 BY MR. DESCHENES:
8    Q.  Good morning, Mr. Porzio. Good to see
9 you again.
10   A.  Good morning.
11   Q.  You realize that you are still under
12 oath?
13   A.  I do.
14   Q.  Are there -- strike that.
15       It has been 10, 11 days since our last
16 session. Are there any answers or clarifications
17 that you would like to make to your previous
18 answers in the last session?
19   A.  No.
20   MR. PHILBRICK: Weren't we here last Friday?
21   MR. DESCHENES: I think it was Tuesday, about
22 ten days ago.
23   MR. PHILBRICK: I'm sorry.
24       (WHEREUPON, a certain document was

Page 5

1       marked Porzio Deposition Exhibit
2       No. 23, for identification, as of
3       2/2/07.)
4 BY MR. DESCHENES:
5    Q.  Mr. Porzio, the court reporter handed
6 to you what's been marked as Porzio Exhibit 23.
7 I just ask you to take a moment to review it, and
8 then I will ask you a few questions about it.
9    A.  I have paged through it. Certainly
10 haven't read it.
11   Q.  Okay. I guess my first question is
12 what role, if any, did you play in assembling the
13 repair costs for the MWRA claim?
14   A.  I submitted information in the way of
15 invoices and that kind of thing from our local
16 office from the project site.
17   Q.  And you understand what I mean by the
18 MWRA claim, don't you, or would you like me to
19 clarify that? It is a term that we have used in
20 this case, it being the claim for which the
21 plaintiff Insituform is seeking coverage against
22 my client, American Home Assurance Company. You
23 understand that?
24   A.  I do.

Page 98

1 the host pipe; do you recall that?
2  A.  Again, like I said before, I don't
3 recall specifically that aspect of it, but --
4  Q.  And we looked at a document earlier
5 today about the three myths, the fact that CIPP
6 technology cannot be watertight, cannot be
7 smooth, and does not always fit tight to the host
8 pipe. Do you recall that in your memorandum and
9 the guidelines, the three myths?
10  MR. PHILBRICK: Objection to form. The
11 witness may answer if he can.
12 BY MR. DESCHENES:
13  Q.  You described those as three myths, did
14 you not?
15  A.  I said, for example, 100 percent
16 watertight.
17  Q.  Understood.
18  A.  It is all relative. There are degrees.
19  Q.  But the specifications in the contract
20 require those things, did it not?
21  MR. PHILBRICK: I'm going to object to form.
22 It is argumentative. The witness may answer if
23 he can.
24 BY THE WITNESS:

Page 99

1  A.  All I can say is the spec did make
2 reference to watertightness and smoothness of the
3 liner.
4 BY MR. DESCHENES:
5  Q.  You testified about the bypass alone
6 during Phase 1 costs roughly $10,000 per day; do
7 you recall that?
8  A.  Yes.
9  Q.  And you were of the opinion fairly
10 early on in early November that the pipe liner
11 should be removed and replaced; isn't that
12 correct?
13  A.  At least portions of it, I recall that.
14  Q.  And had Insituform done that at that
15 time it would have saved substantial time and
16 money; isn't that correct?
17  A.  Yes.
18  Q.  Okay. During that time period in
19 October, November and December of 2003, when
20 Insituform was exploring other repair methods, it
21 cost Insituform time and money, did it not?
22  A.  Yes.
23  Q.  And substantial time and money;
24 wouldn't you agree?

Page 100

1  A.  Yes.
2  MR. DESCHENES: I think that's all I have.
3  MR. PHILBRICK: Okay.
4           EXAMINATION
5 BY MR. PHILBRICK:
6  Q.  You were asked questions about whether
7 Insituform could have purchased pumps as opposed
8 to renting them in Phase 1; do you recall that?
9  A.  Yes.
10  Q.  Who would Insituform have purchased
11 pumps from?
12  A.  Well, I --
13  Q.  The question is who would Insituform
14 have purchased pumps from?
15  A.  Well, in retrospect, I guess we could
16 have gone back to Godwin and said, even though
17 the contract line was through D'Allessandro down
18 to us, we could have asked them if we could buy
19 those pumps.
20  Q.  Any basis for knowing whether Godwin
21 would be willing to sell their pumps?
22  MR. DESCHENES: Objection as to form.
23  MR. PHILBRICK: What's wrong with it?
24  MR. DESCHENES: No foundation.

Page 101

1  MR. PHILBRICK: Okay.
2 BY MR. PHILBRICK:
3  Q.  Any basis for your understanding that
4 Godwin would even be willing to sell its pumps?
5  MR. DESCHENES: Objection. You can answer if
6 you understand the question. Just like -- same
7 rules apply.
8 BY THE WITNESS:
9  A.  No, other than to say, you know, as you
10 look at a project from the outset, we're looking
11 at it in retrospect; however, you either rent
12 pumps or buy pumps. That's where I was coming
13 from.
14 BY MR. PHILBRICK:
15  Q.  You were asked questions about what was
16 done to mitigate the cost of the repair and
17 replacement -- I mean, the removal and
18 replacements. Do you recall that?
19  A.  Yes.
20  MR. DESCHENES: Objection.
21 BY MR. PHILBRICK:
22  Q.  And you had specifically said that you
23 did -- you used the phrase, "we were trying to
24 save -- we were saving time." Do you recall