UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10487-GAO

INSITUFORM TECHNOLOGIES, INC.,
Plaintiff

v.

AMERICAN HOME ASSURANCE COMPANY,
Defendant.

OPINION AND ORDER
September 28, 2007

O'TOOLE, D.J.

This opinion and order resolves the cross motions for summary judgment filed by Insituform

Technologies, Inc. ("Insituform") and American Home Assurance Company ("American Home"),

both seeking a final interpretation of the umbrella excess liability insurance policy Insituform

purchased from American Home, and a decision as to whether the policy covers a claim Insituform

made on December 29, 2003.

## I.      Background

Insituform entered into a subcontract with D'Alessandro Corporation to rehabilitate

approximately 5,400 feet of brick sewer owned by the Massachusetts Water Resources Authority

(the "MWRA") by installing and curing in place a new pipe within an existing host pipe, a process

known by the acronym CIPP (cured in place pipe). After installation was complete, the MWRA

notified Insituform that the installation failed to meet the contract specifications and that the job was

rejected. (See Insituform's Local Rule 56.1 Resp. to American Home's Statement of Undisputed

Material Facts and Insituform's Additional Undisputed Material Facts 12, at ¶ 6 [hereinafter Pl.'s

Additional Facts]). Insituform tried various methods to remediate the defects, but the pipe continued

to leak, and the MWRA eventually demanded that Insituform remove and replace all 5,400 feet of piping. (See id. at 13, ¶¶ 8, 10, 14.)

The total cost of removing and replacing the CIPP is alleged to have been $7,398,299.05. Insituform submitted a claim to its primary insurer, Liberty Mutual. After investigation, Liberty Mutual determined that the claim was covered by the Contractor's Rework Coverage Amendment ("Rework Coverage Amendment") to its policy and paid Insituform the full $1 million available under the policy. Insituform submitted a claim for the remaining amount (the "MWRA Claim") to American Home, from whom it had purchased an umbrella excess liability insurance policy. American Home disclaimed coverage for the MWRA Claim on the basis of two policy exclusions: Exclusion F ("**Property Damage** to **Your Product** arising out of it or any part of it") and Exclusion G ("**Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**." (See Am. Home Assurance Co.'s Statement of Undisputed Facts ¶ 15 [hereinafter Def.'s Statement of Facts].) Insituform demanded that American Home withdraw its denial of the MWRA Claim. (See id. ¶ 16.) In response, American Home denied coverage a second time, stating that its policy did not "follow form" to the Liberty Mutual Contractor Rework Coverage Amendment. (See id. ¶ 17.)

Insituform then filed suit against American Home in this Court, claiming coverage for the MWRA Claim under Endorsement No. 4 to the American Home policy, which it argued "followed form" to the primary insurance policy issued by Liberty Mutual. Endorsement No. 4 reads as follows:

### CONTRACTOR'S ENDORSEMENT

### Excluded Hazards

This insurance does not apply to:

1.    **Property Damage** to any property or equipment leased by the **Insured**;

2.    **Property Damage** to property being installed, erected or worked upon by the Insured or by any agents or subcontractors of the **Insured**;

3.    **Bodily Injury** or **Property Damage** arising out of any project insured under a "wrap-up" or any similar rating plan; or

4.    **Bodily Injury** or **Property Damage** arising out of any professional services performed by or on behalf of the **Insured**, including but not limited to the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications, and any supervisory, inspection or engineering services.

## Following Form Hazards

It is further agreed that this insurance does not apply to:

1.    **Property Damage** arising out of:

    a.    Blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment;

    b.    The collapse of or structural injury to any building or structure due to:

        1)    the grading of land, paving, excavating, drilling, burrowing, filling, back-filling, tunneling, pile driving, coffer-dam or caisson work,

        2)    the moving, shoring, underpinning, raising, or demolition of any building or structure, or the removal or rebuilding of any structural support thereof; or

    c.    Damage to or destruction of wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith, beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, back-filling or pile driving; or

2.        Any liability assumed by the **Insured** under any contract or agreement.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

1.        This exclusion shall not apply; and

2.        The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

(Answer of Am. Home Assurance Co., ¶ 14.)

Insituform filed a motion for partial summary judgment in which it requested a declaration as to the proper construction of Endorsement No. 4. Central to the dispute between the parties was whether the "However clause" contained in Endorsement No. 4 modified all of the language in the endorsement which preceded it or whether it modified only those hazards listed as "Following Form Hazards."

In resolving the parties' dispute over the proper interpretation of the "However clause," I concluded:

> I construe the However clause in Endorsement No. 4 to modify both the Excluded Hazards and the Following Form Hazards sections of the endorsement. Consequently, those hazards "follow form" (as that term is used in the parties' submissions) to the primary insurance policy issued by Liberty Mutual Insurance Company to Insituform, as it is uncontroverted that the Liberty policy is "a policy listed in the Schedule of Underlying Insurance."

(Mem. and Order, March 30, 2005 (dkt. no. 24 at 5.))

4

When American Home moved for reconsideration, I took the opportunity to clarify the scope of my decision. I indicated that "Endorsement No. 4 'follows form' to the Liberty Mutual policy to the extent stated in the endorsement" and that the "'However clause' modifies all of the preceding language in the endorsement," but that I had not considered whether Endorsement No. 4 provided the same coverage as that provided by Rework Coverage Amendment, or the ultimate question of whether the MWRA Claim falls within the coverage of the American Home policy. (Mem. and Order on Mot. for Recons., May 24, 2006 (dkt. no. 38 at 2.))

Those questions are now squarely presented. The parties have filed cross motions for summary judgment on the issue (dkt. nos. 44 and 51) and have briefed it extensively. After consideration of the parties' arguments, including those made at the hearing, I conclude that the MWRA Claim falls within the description of Excluded Hazard No. 2, one of the hazards listed in Endorsement No. 4, and that the Rework Coverage Amendment to the Liberty Mutual Policy provides equivalent coverage. Accordingly, the However clause in Endorsement No. 4 is triggered and Excluded Hazard No. 2 does not apply to exclude the MWRA Claim from coverage.

## II.    Discussion

As I have previously determined, Endorsement No. 4 follows form "to the extent stated in the endorsement." Thus, the degree to which Endorsement No. 4 "follows form" is restricted by the use of the limiting phrase, "if insurance for *such* Bodily Injury or Property Damage is provided by [the Liberty Mutual Policy]. . ." (emphasis added). Endorsement No. 4 follows form only to the extent that the Liberty Mutual policy provides coverage for the specific types of hazards explicitly

listed in the Endorsement – that is, a claim must fall within one of the eight enumerated hazards, matched to a similar provision in the primary policy, in order to be covered by the American Home policy. The crucial inquiries, then, are whether the MWRA Claim fits within any of the hazards listed in Endorsement No. 4, and whether Liberty Mutual's Rework Coverage Amendment provides coverage for that particular hazard.

A.    The MWRA Claim and Endorsement No. 4

Insituform argues that the Rework Coverage Amendment provides coverage equivalent to Excluded Hazard No. 2, which includes "**Property damage** to property being installed, erected or worked upon by the **Insured** . . . ." (See Insituform's Reply Mem. Supp. Cross Mot. Summ. J. 8-9.) The parties argue at length about the meaning and effect of the word "being." American Home argues that "being" connotes a temporal restriction, such that the MWRA Claim would only be covered if the damage occurred *during* installation. Accordingly, says American Home, the MWRA Claim does not fit within this provision because the work was already completed when the damage became apparent. Insituform argues that the phrase in its entirety refers to the past tense because "installed, erected, or worked" are past tense, and that the word "being" is included only because the phrase is written in the passive voice, and alternatively that the damage did in fact occur during installation.

Although I find Insituform's "passive voice" argument strained, incorrect as a matter of grammar, and unpersuasive, I agree that the phrase "being installed, etc." does not create a temporal limitation as contended by American Home. Rather, in context, the phrase "being installed, erected or worked upon" is best understood as modifying the noun "property" that immediately precedes it and thus serves to distinguish damage to, in this case, the CIPP, from damage to other types of

property. In other words, the phrase answers the question, "Damage to what property?" by specifying, "Damage to that property that is 'being installed, erected or worked upon' by the Insured."    In a similar fashion, the preceding Excluded Hazard No. 1 in the Contractor's Endorsement excludes damage to another category of property: What property?  "[A]ny property or equipment leased by the **Insured**." (Excluded Hazard No. 3 and No. 4 do not specify the types of property to which they apply but rather describe the scope of what is excluded by reference to the source of the damage, rather than its effect on a particular class of property.)

This understanding is consistent with the practical sense and purpose of the insurance transaction. Both the underlying Liberty Mutual policy and the American Home excess umbrella policy are principally third-party liability policies. Excluded Hazard No. 2, as a general matter, makes clear that the policy does not provide coverage that is more like first-party coverage for property damage to the Insured's own property. Thus, it is the purpose of the clause to make clear what property is covered and what is not. It is not the activity of "installing, erecting or working upon" that is the concern of the exclusion but rather the connection of the property with the Insured, so that it could be made clear that first-party coverage was not intended.  This is further consistent with other exclusions covering "Your Work" and "Your Product."  The "However clause," of course, reversed the exclusion so that the policy would cover damage to this particular type of property, but that is not significant in understanding the meaning of the words in the exclusion.

Accordingly, Excluded Hazard No. 2 does not have a temporal limitation, and the damage to the CIPP prompting the MWRA Claim falls within its scope.  By operation of the "However clause," the exclusion does not apply if coverage is provided by the underlying Liberty Mutual policy.

B.        Excluded Hazard No. 2 and the Liberty Mutual Rework Contract Amendment

The next question is whether the Liberty Mutual Rework Contract Amendment provides coverage for the same hazard as defined in Excluded Hazard No. 2. The Rework Coverage Amendment extends coverage to Insituform's work and product. To effectuate this coverage, it eliminated various exclusions from the primary policy, including "Exclusion n: Recall of Products, Work Or Impaired Property," which is especially relevant here:

> n:        Recall of Products, Work Or Impaired Property
>
> Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
> (1) "Your product";
>
> (2) "Your work"; or
>
> (3) "Impaired property";
>
> if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

(Liberty Mutual Policy, Butler Aff. Ex. A p. I-00011-12; Rework Coverage Amendment, Butler Aff. Ex. A p. I-00087).

Although the wording of Exclusion n. does not exactly match the wording of Excluded Hazard No. 2, that is not essential. The key inquiry is whether it provides substantially equivalent coverage for the MWRA Claim, and it is clear that it does. The MWRA Claim for the problems with the CIPP is a claim for damage for "loss, cost or expense" incurred by Insituform for the "withdrawal, recall,...repair, removal or disposal of" its "product" or "work" and accordingly it fits

within Exclusion n. which, having been eliminated by the Rework Coverage Amendment, results in coverage for the MWRA Claim. The effect of this is that the However clause of Endorsement No. 4 applies, nullifying Excluded Hazard No. 2, and therefore the American Home umbrella policy provides coverage for the MWRA Claim.

**III.    Damages**

Insituform has also moved for summary judgment on the issue of damages. I conclude that there remains a genuine issue of material fact as to the proper amount of damages, and therefore summary judgment on that issue is not appropriate. See Fed. R. Civ. P. 56(c).

**IV.    Conclusion**

For the foregoing reasons, the plaintiff's cross motion for summary judgment (dkt. no. 51) GRANTED with respect to liability and DENIED with respect to damages. The defendant's motion for summary judgment (dkt. No. 44) is DENIED.

It is SO ORDERED.

        /s/ George A. O'Toole, Jr.
        United States District Judge