THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| INSITUFORM TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04 10487 GAO |
| | ) | |
| AMERICAN HOME ASSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**JOINT PRETRIAL MEMORANDUM**

Pursuant to Fed. R. Civ. P. l6 and Local Rule 16.5(D), plaintiff Insituform Technologies, Inc. ("Insituform"), by and through its attorneys, Charles L. Philbrick and Stanley Martin of Holland & Knight LLP, and defendant American Home Assurance Company ("American Home"), by and through its attorneys, Gregory P. Deschenes and Kurt M. Mullen of Nixon Peabody, LLP, hereby submit this Joint Pretrial Memorandum.

**I.      Concise Summary of Evidence To Be Offered.**

**A.      By Plaintiff Insituform Technologies, Inc.**

As to liability, the Court has previously granted summary judgment on Counts I and II (Breach of Contract and Declaratory Judgment) and ruled that American Home is liable to Insituform, but that issues of fact precluded judgment as to the amount of damages.  See Memorandum Opinion and Orders of March 30, 2005, May 24, 2006 and September 28, 2007 [Docket Entries 24, 38 and 72].  The Court also granted American Home's motion for summary judgment on Count III (Bad Faith).  [Docket Entry 24].  Accordingly, Insituform will not offer evidence as to American Home's liability.

Insituform seeks to be put back in as good position financially as it would have been if there had been no breach of its insurance contract by American Home. The damages Insituform suffered as a result of the breach take the form of (1) compensatory damages; (2) consequential damages; and (3) prejudgment interest.

Compensatory Damages: American Home is obligated under the contract of insurance to indemnify Insituform for its actual cost of removing and replacing the cured in place pipe (CIPP) originally installed by Insituform and for consequential business interruption resulting from remedial action taken to avoid removal or repair of the CIPP. Insituform will present evidence as to the actual costs it incurred investigating, removing and replacing the CIPP. The evidence will consist of a description of the conditions and circumstances of the host pipe, the investigation as to whether the CIPP could be repaired as opposed to removed and replaced, the work performed, and documentation as to the costs of the labor, materials and third party vendors that Insituform incurred and paid.

The evidence will establish that between the beginning of October 2003, when Insituform was first notified of a problem with the CIPP, to May 2004 the recoverable costs total $5,052,616.08. This phase of the rework is referred to as Phase I and encompassed the investigation, removal and replacement of approximately 4,500 feet of the 5,400 foot CIPP. During the summer and early fall of 2005, Insituform had to remove and replace the remaining portion of the original CIPP. This is known as Phase II of the rework and Insituform's recoverable costs total $2,002,283.60. Total recoverable costs to investigate, remove and replace for Phase I and Phase II combined is $7,054,899.68. The evidence will further show that all of the labor, materials and third party costs were reasonable and necessary to the work performed and that Insituform took reasonable steps to mitigate the damages.

2

Finally, the evidence will establish that the measure or adjustment of Insituform's claim for indemnification has been calculated to a reasonable degree of accounting and claim adjustment certainty. Specifically, the evidence will show that when the issue first arose in October 2003, Insituform instructed its personnel to capture every cost that hit the particular job. As a result, the original claim submission to Liberty Mutual for Phase I totaled $6,824,000. In the course of the adjustment process, Insituform learned that it had included certain costs that it normally tracks and applies to specific projects that were not properly included in a claim of this type. These costs principally included fixed costs and corporate overhead - costs that would have been incurred notwithstanding the MWRA Claim. So Insituform presented American Home with revised loss documentation in which Phase I costs totaled $5,275,153.66 and Phase II costs of $2,123,145.39. The total loss submission to American Home was $6,398,299.05 (the total loss $7,398,299.05 minus the $1,000,000 payment by Liberty Mutual). Since submitting the loss documentation to American Home, the loss amount has been further refined by documentation of the closeout costs and elimination of additional elements of fixed costs by its loss adjustment expert Chris Campos, who will testify that the proper loss amount is $4,052,616.08 (net of the Liberty Mutual payment) for Phase I and $2,002,283.60 for Phase II, for a total compensable damages figure of $6,054,899.68.

Consequential Damages: The Court has ruled as a matter of law that American Home was obligated to indemnify Insituform for the MWRA Claim. American Home's policy states that loss is payable as follows: "coverage under this policy will not apply unless and until [Insituform] or [Liberty Mutual] is obligated to pay the Retained Limit." The evidence will show that Insituform provided American Home with documentation that Insituform was

obligated, and in fact had, paid the Retained Limit of $1,000,000 no later than March 10, 2004, when Insituform filed its complaint against American Home.

Insituform will present evidence that it notified both Liberty Mutual and American Home of the MWRA Claim in December 2003. Liberty Mutual investigated the claim, but American Home denied coverage on February 13, 2004. Nevertheless, Insituform provided both Liberty Mutual and American Home with detailed claim documentation throughout the first quarter of 2004.

The evidence will show that Liberty Mutual investigated the claim, retained an expert as part of its investigation, and concluded that the MWRA Claim was covered under its Contractors Rework Coverage Amendment. In September of 2004, Liberty made an initial payment to Insituform of $350,000. On December 13, 2004, Liberty Mutual issued a check to Insituform for $650,000, bringing Liberty Mutual's total payment on the MWRA Claim to $1,000,000, Liberty Mutual's policy limit. American Home was obligated to pay Insituform for the MWRA Claim as early as March, 2004 and no later than December 13, 2004. But American Home denied coverage, and thus did not pay Insituform what was owed under the American Home Umbrella policy in 2004.

As a direct result of American Home's failure to pay, the testimony and documentary evidence will show that Insituform ended fiscal 2004 with a "Fixed Charges Coverage Ratio" of 1.64 or approximately $2,000,000 short of the income needed to meet the minimum ratio of 1.70. Insituform's covenants with its lender require Insituform to maintain a Fixed Charges Coverage Ratio of 1.70 or higher. As a result of not receiving payment from American Home in 2004, Insituform was in default and had to negotiate waivers of the default and amendments to its notes resulting in increased rates. The costs to Insituform to negotiate the waivers was $639,148.51.

The increase in interest Insituform has had to pay on the notes through February 2008 is $1,384,954.79. The increase in interest Insituform will have to pay on the notes from February 2008 to maturity is $1,697,123.29. In addition, existing interest rates were set to drop, but those terms were lost as part of the amendments.

Prejudgment Interest: Insituform is entitled to recover prejudgment interest from March 10, 2004 -- the date when American Home's Retained Limit of was exhausted by Insituform's payment in excess of $1,000,000.

Insituform will also present evidence as to the facts relevant to resolving a choice of law issue as to what state's law governs the award of prejudgment interest. The evidence will consist of testimony and documents as to the location of the insured risk, the significant contacts, the parties and the MWRA Claim have with the Commonwealth of Massachusetts and the location of the negotiations for and issuance of the relevant contracts. This evidence will establish that the law of Massachusetts, and thus an interest rate of 12%, applies to this case.

**B.     By Defendant American Home Assurance Company.**

American Home issued an umbrella liability insurance policy to Insituform (the "American Home Policy"). The Court has ruled the American Home Policy follows form to the Liberty Mutual Policy under the Contractor's Endorsement (Endorsement No. 4). However, under the terms and conditions of the American Home Policy, American Home is obligated to indemnify Insituform only for those costs that are reasonable and necessary. Further, Insituform has a duty to mitigate any losses it allegedly suffered, either by preventing them or minimizing their extent. The evidence will establish that Insituform's claim for damages is excessive because Insituform cannot demonstrate that it discharged its duty to mitigate its alleged damages or that the costs Insituform allegedly incurred were reasonable and necessary. Rather, the

evidence will show that the costs Insituform allegedly incurred to repair, then later remove and replace its defective liner are more than seven times the original contract price, and certain of these costs are excessive or not recoverable under the American Home Policy.

The evidence also will show that Insituform has inflated its damages claim against American Home by including both the costs Insituform allegedly incurred in its initial repair efforts and the costs allegedly incurred in Insituform's removal and replacement of the CIPP. The Liberty Mutual Policy's Contractor Rework Coverage Amendment (to which the Court found American Home follows form) provides coverage for the *lesser* of "1.  Your actual cost of removing and replacing any of the above items; or 2.  Your actual cost of remedial action taken to avoid removal or replacement of such products."    Thus, under the Contractor Rework Coverage Amendment, Insituform is entitled to the *lesser* of those two amounts.  The evidence will show that the removal and replacement of the CIPP began no earlier than mid-January 2004, and that none of the costs that Insituform incurred up until that point involved removal or replacement of the CIPP.    This Joint Pretrial Memorandum is the first time Insituform has asserted that business interruption losses are included in the MWRA Claim.  American Home therefore has not had the opportunity to analyze Insituform's characterization of the MWRA Claim as including business interruption losses.

American Home will present evidence as to the facts relevant to resolving a choice of law issue as to what state's law governs the award of prejudgment interest.  The evidence will consist of testimony and documents concerning the place of the making of the contract, including the location of the negotiation, brokering, issuance, execution  and delivery of the American Home Policy, as well as Insituform's principal place of business and "nerve center," and the scope of its operations.

II.    **The Facts Established By the Pleadings, Stipulations and Admissions.**

1.    Defendant American Home Assurance Company is a New York corporation with its principal place of business in New York, New York.

2.    American Home issued an umbrella liability insurance policy, Policy Number BE-3206923, to Instituform for the period July 1, 2003 to July 1, 2004 (the "American Home Policy").

3.    Liberty Mutual issued a general liability policy, which is listed on the Schedule of Underlying Insurance in the American Home Policy.

4.    Insituform is a Delaware corporation, with its principal place of business in Chesterfield, Missouri.  In 2003, Insituform operated in every U.S. state.

5.    Insituform specializes in sewer rehabilitation through trenchless pipeline technologies.

6.    Insituform's North American rehabilitation operations, including research and development, engineering, training and financial support systems, are headquartered in Chesterfield, Missouri.  Tube manufacturing facilities for North America in 2003 were maintained in eight locations, geographically dispersed throughout the United States and Canada.

7.    Insituform entered into a subcontract with D'Allessandro Corp.

8.    In August 2003, Insituform performed sewer rehabilitation work valued at $1,000,000 for the Massachusetts Water Resources Authority ("MWRA") pursuant to Contract #6840.

9.    After Insituform finished the job, it was notified of leakage occurring at the end of the newly installed liner.

10.     On or about October 31, 2003, the MWRA notified D'Allessandro and Insituform that the liner did not meet the contract requirements and was, therefore, unacceptable, and had to be repaired or replaced (the "MWRA Claim").  Jacobs Civil Inc. sent a letter dated October 31, 2003 to Jon D'Allessandro, president of D'Allesandro Corp., stating in part that Jacobs Civil Inc.'s "observations indicate the [CIPP] liner with the repairs made to it does not meet the Contract Document requirements and is therefore unacceptable at this time."

11.     During the period September 30, 2003 though December 2003, Insituform explored various repair methods and alternatives to removal and replacement of the failed liner, which ultimately proved unsuccessful or were rejected by the MWRA.

12.     The Phase I repairs involved removing and replacing Shots 1-4, a portion of Shot 5 and Shot 6 between at or around December 2003 and April 2004.

13.     The Phase II repairs involved removing and replacing Shot 5 between July 2005 and August 2005.

14.     On December 10, 2004, Liberty Mutual determined that there was coverage for the MWRA Claim under its policy and has indemnified Insituform for the MWRA claim pursuant to the Liberty Mutual policy's Contractor Rework Coverage Amendment endorsement.

15.     On September 24, 2004, Liberty Mutual issued a check to Insituform in the amount of $350,000 for the MWRA Claim. On December 13, 2004, Liberty Mutual issued a check to Insituform in the amount of $650,000 for the MWRA Claim, exhausting the Liberty Mutual Policy's limits.

16.     Barry E. Schnurman of Lockton Companies of St. Louis, Inc. acted on behalf of Insituform as a broker in negotiating and procuring the American Home Policy at issue.  Mr.

Schnurman's business address is: Barry E. Schnurman, CPCU, ARM, Vice President, Lockton Companies, Three CityPlace Drive, Suite 900, St. Louis, Missouri 63141, (314) 812-3289.

III.    **Contested Issues of Fact.**

    A.    **By Plaintiff Insituform Technologies, Inc.**

    1.    Whether Insituform took remedial action by investigating potentially less expensive alternatives to removal and replacement of its product or work.

    2.    The time frame within which Insituform took remedial action by investigating potentially less expensive alternatives to removal and replacement of its product or work.

    3.    Whether the costs incurred by Insituform for bypass pumping, remedial action and testing that began in October 2003 and continued through December 31, 2003 represented damages for a consequential business interruption resulting from necessary removal, replacement or remedial action taken by Insituform to avoid removal or repair of Insituform's product or work.

    4.    Whether the amount paid by Insituform for bypass pumping, remedial action and testing that began in October 2003 and continued through the end of December, 2003 was reasonable and necessarily incurred.

    5.    The total amount of damages recoverable in this case for consequential business interruption resulting from necessary removal, replacement or remedial action taken by Insituform to avoid removal or repair of Insituform's product or work.

    6.    Whether the total costs of removal and replacement of Insituform's product or work submitted in this case were reasonable and necessarily incurred.

    7.    The total amount recoverable in this case for Insituform's costs of removal and replacement of its product or work.

8.    Whether, as a result of American Home's failure to pay, Insituform was forced into a position of failing to meet certain covenants with its lenders which, in turn, led Insituform to incur consequential losses including the costs of negotiating waivers of default and amendments to its notes, and increased interest rates on a going forward basis.

9.    The total amount of consequential losses incurred by Insituform to negotiate waivers of default and amendments to Insituform's notes, and the total loss associated with increased interest rates on a going forward basis.

10.    Whether the costs incurred by Insituform were either its actual cost of removing and replacing its CIPP or damages for the loss of use of real property and/or consequential business interruption resulting from necessary removal, replacement or remedial action taken to avoid removal or repair of its CIPP.

11.    The date on which Insituform became obligated to pay the Retained Limit, as that term is defined by American Home's policy.

12.    When was American Home obligated to pay Insituform.

**B.     By Defendant American Home Assurance Company**

1.     Whether the costs Insituform incurred in repairing, removing and replacing the CIPP liner were reasonable and necessary.

2.     Whether Insituform has discharged its duty to mitigate any damages it allegedly suffered, either by preventing them or minimizing their extent.

3.     When prejudgment interest begins to accrue.

4.     Insituform's actual cost of remedial action taken to avoid removal or replacement of the CIPP.

5.     Insituform's actual cost of removing and replacing the CIPP.

**IV.     Jurisdiction.**

There is complete diversity of citizenship between the defendant and plaintiff, and the matter in controversy exceeds the sum of $75,000, exclusive of interest, attorney's fees, and costs. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 to hear this breach of contract and declaratory judgment action.

Neither party disputes venue or jurisdiction over any of the claims.

**V.     Pending Motions.**

Insituform has filed a motion to continue the trial date in light of American Home's contention that it would be prejudiced by Insituform's evidence of consequential damages.

American Home intends to respond next week to Insituform's motion to continue and also intends to file motions *in limine* directed to (1) the admissibility of evidence related to Insituform's alleged consequential damages, produced for the first time starting on December 24, 2007; (2) the scope of recoverable damages under the Liberty Mutual Policy's Contractor Rework Coverage Amendment, (3) the  scope and admissibility of Insituform's expert testimony

on the reasonableness of costs Insituform allegedly incurred, and (4) the admissibility of evidence related to American Home's claim handling.

**VI.     Issues of Law and Evidentiary Questions.**

       **A.     Issues Of Law.**

       **By Plaintiff Insituform Technologies, Inc.:**

       1.     The purely legal questions as to contract interpretation have been resolved by the Court on summary judgment.  To the extent questions of law remain as to the scope of recoverable damages, those issues are mixed questions of law and fact.  Thus, the jury instructions will be tailored to define the boundaries of recoverable compensatory damages.

       2.     Whether Insituform is entitled to pre-judgment interest is not dispute.  A conflict of law exists, however as to which state's law, Massachusetts or Missouri, governs the rate of pre-judgment interest.

**By Defendant American Home Assurance Company:**

1.      Whether the terms and conditions of the Liberty Mutual Policy's Contractor Rework Coverage Amendment allow Insituform to recover against American Home <u>both</u> the costs Insituform allegedly incurred in its initial repair efforts <u>and</u> the costs allegedly incurred in Insituform's removal and replacement of the CIPP.   When interpreting insurance contracts, "[those] provisions [that] are plainly and definitely expressed in appropriate language must be enforced according to [their] terms."  <u>Cody v. Connecticut Gen. Life Ins. Co.</u>, 387 Mass. 142, 146, 439 N.E.2d 234, 237 (1982); <u>see</u> <u>also</u> <u>Trustees of Tufts Univ. v. Commercial Union Ins. Co.</u>, 415 Mass. 844, 849, 616 N.E.2d 68, 72 (1993) ("We read the policy as written.  We are not free to revise it or change the order of the words.") (internal quotation marks and citation omitted); <u>Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network</u>, 300 F. Supp. 2d 888, 893 (E.D. Mo. 2004) (applying Missouri law) ("In construing the terms of an insurance policy, [the court] must give the words their plain meaning, consistent with the . . . intent of the parties.") (internal quotation marks and citation omitted).

2.      Whether Massachusetts or Missouri law governs the award of any prejudgment interest.  Massachusetts General Law c. 231, § 6C, provides for a 12 percent annual prejudgment interest rate for contractual claims.  Missouri Revised Statute § 408.020, provides for a 9 percent annual rate.

   **B.      Evidentiary Questions.**

   **By Plaintiff Insituform Technologies, Inc.:**  The defendant has raised a number of objections to Insituform's trial exhibits, which Insituform believes are easily overcome through witness examination.  For instance, American Home has raised FRE 802 and 901 objections to trial exhibits that come from its own claim file.  Unless American Home withdraws these

objections, Insituform will be forced to call an American Home corporate designee to over come these objections. Otherwise, Insituform does not contemplate bringing any motion in limine.

**By Defendant American Home Assurance Company:**

1.    Whether Insituform is precluded from presenting evidence of a new category of damages, consequential damages, that had not been disclosed or identified during discovery. See Fed. R. Civ. P. 26(a) and (e), 37.

2.    Whether Insituform is precluded from presenting evidence of American Home's claim handling. The Court has previously ruled that American Home is liable to Insituform for breach of the insurance contract. See Memorandum Opinion and Orders of March 30, 2005, May 24, 2006 and September 28, 2007 [Docket Entries 24, 38 and 72]. The Court also has granted summary judgment in American Home's favor on Insituform's bad faith claim. See Memorandum Opinion and Order of March 30, 2005 [Docket Entry 24]. The only issue remaining for trial is the amount of Insituform's damages. See Memorandum Opinion and Order of September 28, 2007 [Docket Entry 72].

3.    Whether Insituform's expert witness, Chris Campos, is precluded from offering any opinions concerning whether the remediation costs Insituform incurred in repairing and replacing the CIPP liner were reasonable and necessary. Mr. Campos is not an expert in trenchless technology or the type work that Insituform did in connection with the MWRA Claim. (See, e.g., Campos Deposition, May 11, 2007, at 33:18-35:21.) Moreover, Mr. Campos testified at his deposition that he has no opinion as to whether Insituform's claimed costs were reasonably related to the remediation, nor did he analyze whether such costs were reasonable and necessary. (Id., at 129:4-130.20.)    American Home reserves the right to challenge Mr. Campos' methodologies and/or quantification of Insituform's alleged damages.

**VII.    Requested Amendments To The Pleadings.**

There are no requests to amend the pleadings.

**VIII.    Additional Matters To Aid In The Disposition Of The Matter.**

None.

**IX.    Length Of Trial.**

The parties anticipate that the trial in this matter will last two or three trial days.

**X.    Witnesses To Be Called.**

**A.    By Plaintiff Insituform Technologies, Inc.**

Plaintiff will call the following witnesses:

Larry Mangles, Director of Finance, North America
Insituform Technologies, Inc.
17988 Edison Avenue
Chesterfield, MO 63005
(636) 530-8000

Thomas Porzio
147 Dudley-Oxford Road
Dudley, MA 01571
(804) 822-2656

Chris Campos, CPA
Campos & Straits P.C.
310 Cedar Lane
Teaneck, NJ 07666
(201) 692-0300

Margaret Hoeler
AIG Technical Services, Incorporated
1200 Abernathy Road NE
North Park Town Center
Building 600
Atlanta, GA  30328
(707) 671-2320

Plaintiff may call the following witnesses:

Juanita M. Britton
AIG Technical Services, Incorporated
Excess Casualty Claims
175 Water Street, 22nd Floor
New York, NY  10038
(212) 458-3725

Lisa Hardy
AIG Technical Services, Incorporated
Excess Casualty Claims
175 Water Street, 22nd Floor
New York, NY  10038
(212) 458-5707

Kenneth Horenstein
AIG Technical Services, Incorporated
Excess Casualty Claims
175 Water Street, 22nd Floor
New York, NY  10038

AIG Corporate Representative
Pursuant To Federal Rule Of Civil Procedure
Rule 30(b)(6) with knowledge as to the contents
and authenticity of American Homes' claim file

Jon D'Allessandro
41 Ledin Drive
P.O. Box 245
Avon, MA  02322
(508) 559-6400

Liberty Mutual Corporate Designee Re Coverage and Payment
Plaintiff reserves the right to call any witness listed by Defendant.

**B.      By Defendant American Home Assurance Company.**

American Home may call the following witnesses:

Margaret Hoeler
AIG Excess Casualty
1200 Abernathy Road NE
North Park Town Center Bldg 600
Atlanta, GA 30328
(770) 671-2320

American Home reserves the right to call any witness listed by Insituform.

**XI.    Proposed Exhibits.**

    **A.    By Plaintiff Insituform Technologies, Inc..**

Plaintiff will offer the following exhibits:

| Trial Exhibit No. | Description | American Home Objection(s) | Ruling |
|---|---|---|---|
| PL 1 | American Home Umbrella Policy No. 3206923 (I00105 to I00151) | None | N/A |
| PL 2 | Liberty Mutual CGL Policy No. R62-641-004218-033 (I00001 to I00103) | None | N/A |
| PL 3 | EBB3 Rework Insurance Claim: Binder 1 of 4 (ITI-AIG 000001 to 364) | F.R.E. 602, F.R.E. 802, F.R.E. 901 | |
| PL 4 | EBB3 Rework Insurance Claim: Binder 2 of 4 (ITI-AIG 000365 to 977) | F.R.E. 602, F.R.E. 802, F.R.E. 901 | |
| PL 5 | EBB3 Rework Insurance Claim: Binder 3 of 4 (ITI-AIG 000978 to 1833) | F.R.E. 602, F.R.E. 802, F.R.E. 901 | |
| PL 6 | EBB3 Rework Insurance Claim: Binder 4 of 4 (ITI-AIG 001834 to 2608) | F.R.E. 602, F.R.E. 802, F.R.E. 901 | |
| PL 7 | American Home Declaration of Coverage (I00153 to I00156) | None | N/A |
| PL 8 | D'Allessandro Invoice/Payment Details (I00164 to I00197) | None | N/A |
| PL 9 | Final Close-Out Costs (I00405 to I00433) | F.R.E. 602, F.R.E. 802, F.R.E. 901 | |

| PL 10 | Lockton Correspondence to Liberty and American Home of February 23, 2004 (AH00791) (Insit. Dep. Ex. 9) | F.R.E. 106 F.R.E. 402, | |
|-------|---------------------------------------------------------------------------------------------------------|------------------------|---|
| PL 11 | Lockton Correspondence to Liberty Mutual of April 8, 2004 (AH 00575 to AH 00721) (Insituform Dep. Ex. 11) | F.R.E. 402 | |
| PL 12 | Liberty Correspondence to Insituform of December 10, 2004 (Exhibit A to Supplemental Affidavit of Robert Kelly) | F.R.E. 402, F.R.E. 403 F.R.E. 602, F.R.E. 802, F.R.E. 901 | |
| PL 13 | Liberty Mutual Check Numbers AO-80195880 and AO-80194240 dated December 13, 2004 and September 24, 2004, respectively (Exhibit B to Supplemental Affidavit of Robert Kelly) | None | N/A |
| PL 14 | Insituform 10-K 2004 (I00442 to I00509) | None | N/A |
| PL 15 | Calculation Of Negative Financial Covenants (I00434) | July 23, 2006 Order granting Motion for Extension of Time to Complete Discovery, Fed. R. Civ. P. 26, 37, F.R.E. 402, F.R.E. 403, F.R.E. 602, F.R.E. 802, F.R.E. 901, F.R.E. 1006 | |
| PL 16 | Senior Note Covenant Amendments (I00435) | July 23, 2006 Order granting Motion for Extension of Time to Complete Discovery, Fed. R. Civ. P. 26, 37, F.R.E. 402, F.R.E. 403, | |

| | | F.R.E. 602, F.R.E. 802, F.R.E. 901, F.R.E. 1006 | |
|---|---|---|---|
| PL 17 | Code Of Professional Conduct (C&S 0128 to 0137) | July 23, 2006 Order granting Motion for Extension of Time to Complete Discovery, Fed. R. Civ. P. 26, 37, F.R.E. 106 F.R.E. 402, F.R.E. 802, F.R.E. 901, F.R.E. 1001-1003 | |
| PL 18 | Fees In Conjunction With Debt Amendment (I00440) | July 23, 2006 Order granting Motion for Extension of Time to Complete Discovery, Fed. R. Civ. P. 26, 37, F.R.E. 402, F.R.E. 403, F.R.E. 602, F.R.E. 802, F.R.E. 901, F.R.E. 1006 | |
| PL 19 | Porzio Email Folders (I00157) | See below | |
| PL 20 | Porzio Email To Valencia of September 11, 2003 Re EBBS Accepted (I00157) | F.R.E. 802 | |
| PL 21 | Porzio Email To Baxter And Others of October 2, 2003 Re Urgent Problem At EBBS (I00157) | F.R.E. 802 | |
| PL 22 | Porzio Email To Valencia And Laszczynski of October 4, 2003 Re Leaks In Liner (I00157) | None | N/A |

| PL 23 | Porzio Email To Laszczynski And Baxter of October 9, 2003 Re Status And Support Needs (I00157) | F.R.E. 802 | |
|-------|---|---|---|
| PL 24 | Porzio Email To Laszczynski, Baxter And Vaughn of October 18, 2003 Re EBBS Repairs Summary - Saturday (I00157) | F.R.E. 802 | |
| PL 25 | Photographs (D00819 to D00833) | None | N/A |
| PL 26 | Summary of Costs of 3/16/05 Note Amendment (I00514 to I00518) | July 23, 2006 Order granting Motion for Extension of Time to Complete Discovery, Fed. R. Civ. P. 26, 37, F.R.E. 402, F.R.E. 403, F.R.E. 602, F.R.E. 802, F.R.E. 901, F.R.E. 1006 | |
| PL 27 | Thompson Coburn Invoices (I00518 to I00540) | July 23, 2006 Order granting Motion for Extension of Time to Complete Discovery, Fed. R. Civ. P. 26, 37, F.R.E. 402, F.R.E. 403, F.R.E. 602, F.R.E. 802, F.R.E. 901 | |

| PL 28 | Bryan Cave Invoice (I00541) | July 23, 2006 Order granting Motion for Extension of Time to Complete Discovery, Fed. R. Civ. P. 26, 37, F.R.E. 402, F.R.E. 403, F.R.E. 602, F.R.E. 802, F.R.E. 901 | |
|---|---|---|---|
| PL 29 | Chapman & Cutler Invoices (I00542 to I00545) | July 23, 2006 Order granting Motion for Extension of Time to Complete Discovery, Fed. R. Civ. P. 26, 37, F.R.E. 402, F.R.E. 403, F.R.E. 602, F.R.E. 802, F.R.E. 901 | |
| PL 30 | Capital Partners LLC Invoices (I00546 to I00548) | July 23, 2006 Order granting Motion for Extension of Time to Complete Discovery, Fed. R. Civ. P. 26, 37, F.R.E. 402, F.R.E. 403, F.R.E. 602, F.R.E. 802, F.R.E. 901 | |
| PL 31 | Demonstrative Exhibit(s):  Summaries Insituform's Damages | See below | |

| PL 32 | Demonstrative Exhibit(s): Summaries of Insituform's Loss Submissions | See below | |
| PL 33 | Demonstrative Exhibit(s): Time Lines Summarizing Chronology of Events | See below | |

American Home reserves its right to object to the above or any other exhibits pursuant to Fed. R. Evid. 402 or 403. See Fed. R. Civ. P. 26(a)(3). Additionally, American Home reserves its right to object on any grounds to Insituform's demonstrative exhibits, designated PL 31-33, after such exhibits are produced to American Home.

Finally, American Home reserves its right to object to any document contained in exhibit PL 19, Porzio E-mail Folders (I 00157) beyond those identified as exhibits PL 20-24. The computer disc bearing Bates stamp I 00157 contains over 6,500 documents, and reviewing all of these documents in order to formulate objections would be unduly burdensome and oppressive.

### B.    By Defendant American Home Assurance Company.

American Home may offer the following exhibits into evidence:

| Trial Exhibit No. | Description | Insituform's Objection | Ruling on Objection |
|---|---|---|---|
| DEF 1 | Campos Deposition Exhibit 11 Regarding Equipment Burden | No Objection | N/A |
| DEF 2 | Campos Deposition Exhibit 12 Regarding Summary of Fringe Benefits | No Objection | N/A |
| DEF 3 | Expert Report from Chris Campos dated May 22, 2006 | No Objection | N/A |
| DEF 4 | Affidavit of Chris Campos dated September 6, 2006 | F.R.E. 106, 402, 613, 802 | |
| DEF 5 | Affidavit of Thomas Porzio dated September 7, 2006 | F.R.E. 402, 613, 802 | |

| DEF 6 | Insituform's First Supplemental Answers to American Home's First Set of Interrogatories dated June 22, 2006 | F.R.E. 402, 403, 802, 901 | |
|---|---|---|---|
| DEF 7 | Letter dated January 18, 2005 from Charles L. Philbrick to Gregory P. Deschenes | F.R.E. 106, 402, 802, 901 | |
| DEF 8 | Massachusetts Water Resources Authority Specification for East Boston Branch Sewer Rehabilitation, MWRA Contract No. 6840 (Porzio Deposition Exhibit 4) | F.R.E. 106, 402, 802 | |
| DEF 9 | Subcontract Agreement between D'Allesandro Corp. and Insituform Technologies, Inc. dated April 24, 2003 (Porzio Deposition Exhibit 5; marked ITI-AIG 012207 to 012216) | F.R.E. 106, 402, 802 | |
| DEF 10 | E-mail dated October 8, 2003 from Thomas Porzio to various recipients (marked ITI-AIG 013460) | F.R.E. 402 | |
| DEF 11 | E-mail dated October 9, 2003 from Thomas Porzio to various recipients (marked ITI-AIG 013459) | F.R.E. 402, 802, 901 | |
| DEF 12 | Letter dated December 16, 2003 from Thomas Porzio to Jon D'Allesandro dated December 16, 2003 (Porzio Deposition Exhibit 11; marked ITI-AIG 003217) | F.R.E. 402 | |
| DEF 13 | Letter dated January 13, 2004 from Thomas S. Rooney, Jr. to Michael Hornbrook (Porzio Deposition Exhibit 12; marked ITI-AIG 012227 to 012231) | F.R.E. 402, 403, 802 | |
| DEF 14 | Letter dated January 26, 2004 from F.G. Valencia to Jon D'Allesandro (Porzio Deposition Exhibit 13; marked ITI-AIG 005777 to 005780) | F.R.E. 402, 403 | |
| DEF 15 | Settlement Agreement between D'Allesandro Corp. and Massachusetts Water Resources Authority dated March 10, 2004 (Porzio Deposition Exhibit 14) | F.R.E. 402, 403, 802 | |
| DEF 16 | Letter dated June 4, 2004 from Thomas Porzio to Jon D'Allesandro (Porzio Deposition Exhibit 16; marked D 08812) | F.R.E. 402, 403 | |
| DEF 17 | Letter dated June 8, 2004 from Brian Albert to Michael DelPrete (Porzio Deposition Exhibit 17; marked D 08840) | F.R.E. 402, 802 | |

| DEF 18 | E-mail dated December 19, 2003 from Tom Porzio to Tino Valencia (Porzio Deposition Exhibit 24; marked ITI-AIG SUPP 00162) | F.R.E. 402, 403 | |
|--------|---------------------------------------------------------------------------------------------------------------------------|-----------------|---|
| DEF 19 | E-mail from Tom Porzio to Rick Baxter dated February 23, 2004 (Porzio Deposition Exhibit 25; marked ITI-AIG SUPP 00295 to 00297) | F.R.E. 402, 403 | |
| DEF 20 | Memorandum from Tom Porzio to Greg Laszczynski dated March 6, 2004 (Porzio Deposition Exhibit 26; marked ITI-AIG SUPP 00321 to 00326) | F.R.E. 402, 403 | |
| DEF 21 | Memorandum from Tom Porzio to Rick Baxter dated August 13, 2004 (Porzio Deposition Exhibit 27; marked ITI-AIG SUPP 00528 to 00530) | F.R.E. 402, 403 | |
| DEF 22 | E-mail dated February 22, 2006 from Bob Kelley to Chris Campos (Marked C&S 0005) | F.R.E. 402, 403, 802 | |
| DEF 23 | Letter dated April 20, 2006 from Bob Kelley to Charles Philbrick, Stan Martin and Chris Campos (Defendant's Exhibit 7; marked C&S 0108) | F.R.E. 106, 402, 403, 802 | |
| DEF 24 | Insituform's Form 10-K for the Fiscal Year Ending December 31, 2003 (marked ITI EBBS 500872-501074) | No Objection | N/A |
| DEF 25 | Insituform's 2003 Annual Report (marked ITI EBBS 500000-500062) | No Objection | N/A |

Insituform reserves its right to object to the above or any other exhibits pursuant to Fed. R. Evid. 402 or 403. See Fed. R. Civ. P. 26(a)(3).

## XII.    Remaining Issues Associated With Fed.R.Civ.P 26(a)(3) Disclosures.

### A.    By Plaintiff Insituform Technologies, Inc.

As part of its Rule 26(a)(3) disclosure, Insituform provided American Home with spreadsheets, summaries and backup documentation quantifying the consequential damages Insituform incurred in order to negotiate waivers of its debt instruments in early 2005 as a result of its failure to meet the required Fixed Charges Ratio at the close of fiscal 2004.   Insituform

intends to prove at trial that these consequential damages are the direct result of American Home's wrongful denial of coverage.

In the wake of receiving Insituform's Rule 26(a)(3) disclosure, American Home claimed that Insituform's identification of certain summaries and documents concerning the calculation of consequential damages constitutes a "new category of damages" and "an entirely new category of cost." Correspondence of American Home Attorney Gregory Deschenes of January 3, 2008.

Insituform disagrees with American Home's contention.    Relief in the form of consequential damages is within the pleadings, identified in Insituform's initial disclosure and documented in records sought in discovery. Insituform's complaint encompasses the recovery of consequential as well as compensatory damages.    In addition, Insituform stated in its initial disclosure that American Home's wrongful denial had an adverse impact on its earnings and that Insituform would seek consequential damages:

> As a consequence of American Home's wrongful denial, Insituform has had to book the entire loss against earnings, thereby officially driving down its fourth quarter earnings of 2003.  Those damages are not yet computed due to incomplete information.

During discovery in this matter, American Home sought discovery of Insituform's audited financial information and its SEC filings, including its Form 10-K for 2004.  All of the details and documentation concerning Insituform's failure to meet its Fixed Charges Ratio at the close of fiscal 2004 are set forth in Insituform's SEC filings, including its 2004 10K.  American Home is therefore charged with knowledge of the information contained in Insituform's audited reports and SEC filings, including the facts concerning Insituform's failure to meet its Fixed Charges Ratio at the close of fiscal 2004.

While Insituform disagrees with American Home's objections, the matter in controversy is narrow in scope, yet substantial in amount (over $3 million).  As such, Insituform believes that

to best move this case toward a fair yet efficient resolution, the current trial date should be continued in order to allow American Home to take discovery with respect to Insituform's claim for consequential damages. Towards that end, Insituform filed a motion to continue the trial on January 8, 2008.

**B.    By Defendant American Home Assurance Company.**

American Home opposes Insituform's attempt to introduce evidence of its alleged "consequential damages," and will respond next week to Insituform's attendant Motion to Continue Trial Date and Amend the Case Schedule. This evidence and Insituform's motion to continue is occasioned by Insituform's own blatant disregard of its discovery obligations. The deadline for fact discovery in this case was September 29, <u>2006</u>, and Insituform consistently has taken the position that any discovery not noticed before that date was closed.

On Christmas Eve 2007, and thereafter on December 27 and 28, 2007 and January 2, 2008, while ostensibly making Rule 26(a)(3) pretrial disclosures, Insituform produced, for the very first time, documents concerning a damages claim never previously asserted against American Home – approximately $3.7 million in costs related to Insituform's March 2005 debt refinancing – which Insituform now claims are consequential damages arising from American Home's denial of coverage. Prior to December 24, 2007, American Home had no knowledge of this damages claim. Insituform had never articulated this damages claim in its Complaint, initial disclosure, discovery responses, or cross-motion for summary judgment on damages.

Because such productions and disclosures were clearly untimely – made fifteen months after the close of discovery and one month before trial – and the use of such evidence at trial would severely prejudice American Home, American Home intends to file a motion *in limine* to prohibit the introduction of any of this evidence at trial and will file next week a response to

26

Insituform's motion to continue.  After almost four years of litigation, on the eve of trial, Insituform should not be permitted to go back to the "drawing board," reopen discovery and add an entirely new damages claim.  Accordingly, all documents and other evidence concerning Insituform's new consequential damages claim should be excluded in their entirety.

American Home also disagrees with Insituform's assessment that the matter in controversy involving its previously undisclosed damages claim is "narrow in scope," implying that only a short continuance would be necessary.  First, the additional $3.7 million that Insituform now seeks represents an almost 60 percent increase of the $6.1-6.4 million that Insituform all along has argued represented its claim against American Home.  Second, the size and complexity of Insituform's worldwide operations, coupled with the large value of the debt instruments and the comparatively small amount by which Insituform was out of compliance with such instruments, raises a serious issue of causation.  American Home anticipates discovery on these issues would undoubtedly be extensive and complex, likely relating to all of Insituform's business divisions and numerous factors, other than the East Boston project, that

caused Insituform to refinance in March 2005. American Home also anticipates that it would be required to retain expert witnesses.

Respectfully submitted,

INSITUFORM TECHNOLOGIES, INC.,

By its attorneys,


___/s/Stanley Martin_____
Charles L. Philbrick (*pro hoc vice*)
charles.philbrick@hklaw.com
HOLLAND & KNIGHT LLP
131 S. Dearborn Street, 30th Floor
Chicago, IL 60603-5547
(312) 263-3600

Stanley Martin (BBO # 543937)
stan.martin@hklaw.com
HOLLAND & KNIGHT LLP
10 St. James Avenue
11th Floor
Boston, MA 02116
(617) 523-2700


January 16, 2008

# 5065315_v2

Respectfully submitted,

AMERICAN HOME ASSURANCE COMPANY,

By its attorneys,


_____/s/ Gregory P. Deschenes_____
Gregory P. Deschenes (BBO #550830)
gdeschenes@nixonpeabody.com
Kurt M. Mullen (BBO #651954)
kmullen@nixonpeabody.com
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110
(617) 345-1000
(617) 345-1300 (facsimile)