# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INSITUFORM TECHNOLOGIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04 10487 GAO |
| ) | |
| AMERICAN HOME ASSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

### AFFIDAVIT OF CHRIS CAMPOS

I, Chris Campos, being duly sworn do hereby depose and state:

1. I am a principal with the accounting firm of Campos & Stratis. I have been retained by Insituform Technologies, Inc. to render expert opinion on the value of Insituform's recoverable damages in this case. The statements in this affidavit and in my report are based on personal knowledge or my investigation and are true and correct to the best of my understanding.

2. My credentials as an expert in this area are set forth in my CV, which is attached to the report I prepared in this case. For the past forty five years as a certified public accountant, I have virtually limited my practice to the evaluation of insurance claims on behalf of insurance companies and insureds. A true and correct copy of my report is attached as Exhibit A to this Affidavit.

3. Insituform submitted the MWRA claim to both its primary carrier, Liberty Mutual, and its excess carrier, American Home. Liberty Mutual acknowledged coverage and paid Insituform its policy limit of $1,000,000.

4. Assuming that the American Home policy provides coverage for the MWRA claim, and as explained and qualified in my report, the total amount of recoverable loss is

$7,398,299.05, which is Insituform's actual cost to remove and replace the installed pipe. American Home's share of the recoverable loss is $6,398,299.05, as explained and qualified in my report. The opinions in my report are based on a reasonable degree of accounting certainty.

Signed under the pains and penalties of perjury this 6th day of September 2006.

By: _____
CHRIS CAMPOS

Signed and Sworn to before
me this 6 day of September, 2006

_____
Notary Public

# 4024852_v1

**CAROL SALESKY**
Notary Public
State of New Jersey
Commission Expires Dec. 12, 2008



Exhibit A
to Affidavit of Chris Campos

**CAMPOS&STRATIS**
a professional association
CERTIFIED PUBLIC ACCOUNTANTS

310 Cedar Lane
Teaneck, New Jersey 07666

201/692-0300
Fax: 201/692-0722
212/285-1010

May 22, 2006

Charles L. Philbrick, Esq.
Holland & Knight LLP
131 South Dearborn Street, 30th Floor
Chicago, IL 60603

Re:   Insituform Technologies, Inc. v. American Home Assurance Co.
      Case No. 04 10487 GAO
      Our File No. 17051

Dear Mr. Philbrick:

You have requested that I analyze the claim prepared by Insituform Technologies, Inc. (Insituform), along with the supporting documentation produced, and state my findings thereon.

In August 2003 Insituform began a CIPP installation project in Boston, MA. The project involved lining 5,400 feet of pipe. Following the installation, the owner rejected 4,500 feet of the liner. As a result, Insituform was required to remove and re-install the rejected liner. This work was performed from October 2003 through June 2004, and is referred to as Phase 1.

During the first quarter of 2005, the lines were inspected and it was determined that the segment of the line that was not removed and re-installed in Phase 1 was in need of replacement. This work was performed from June through September 2005, and is referred to as Phase 2.

As a result, Insituform prepared a claim, which totals $7,398,299, as shown on the attached Schedule 1. This amount includes $5,275,154 for Phase 1 repairs, $1,859,145 for Phase 2 repairs, and $264,000 of estimated close-out costs.

There are four major claim components: Payroll, Equipment, Materials, and Subcontractors/Third Party Invoices. Each of these components will be discussed below. The following comments relate to the work I performed in connection with my analysis of the claim. My opinions are based on my review of the documents provided in the four claim binders, as well as discussions with Insituform management.

### Payroll

There are two types of payroll charged to the project (Job No. 160214), Direct Field Labor and Wet-out Labor. The payroll for Phase 1, along with the related payroll burden is reflected in Tabs A-1 (Direct Field) and A-4 (Wet-out) of Insituform's claim. The payroll for Phase 2, along with the related payroll burden is reflected in Tab E-1 (Direct Field) of Insituform's claim. There is no Wet-out Labor claimed for Phase 2.

Charles L. Philbrick, Esq.  **CAMPOS&STRATIS**
Page 2 of 8

I understand from Insituform that the data on these schedules (Tabs A-1, A-4 and E-1) was downloaded directly from its JD Edwards system, its internal software program. In addition, there are weekly Certified Payroll Registers for all Direct Field Labor, which are required by municipalities. These registers are not required for Wet-out Labor. The claimed amounts of payroll are reflected below:

Field Payroll

|  | Phase 1 | Phase 2 | Total |
|---|---|---|---|
| Field Gross Pay | $ 514,241 | $ 190,604 | $ 704,845 |
| Payroll Burden |  |  |  |
| General Liability | $ 25,846 | $ 8,324 | $ 34,170 |
| Workers Comp. | 33,763 | 11,195 | 44,957 |
| Employer Payroll Tax | 61,836 | 15,005 | 76,841 |
| Fringe Benefits | 78,877 | 31,322 | 110,199 |
| Total Payroll Burden | $ 200,322 | $ 65,845 | $ 266,167 |
| Total Field Payroll and Burden | $ 714,563 | $ 256,449 | $ 971,012 |

(I note that there is a small difference in the Total Payroll Burden, which totals $65,845 in Phase 2, as compared to $65,908 reflected on Bates Nos. ITI-AIG 000002 and 001851.)

Wet-out Payroll

|  | Phase 1 | Phase 2 | Total |
|---|---|---|---|
| Wet-out Gross Pay | $ 24,997 | $ - | $ 24,997 |
| Payroll Burden |  |  |  |
| General Liability | $ 1,583 | $ - | $ 1,583 |
| Workers Comp. | 1,838 | - | 1,838 |
| Employer Payroll Tax | 2,336 | - | 2,336 |
| Fringe Benefits | 7,118 | - | 7,118 |
| Total Payroll Burden | $ 12,875 | $ - | $ 12,875 |
| Total Wet-out Payroll and Burden | $ 37,871 | $ - | $ 37,871 |

I tested the Direct Field Labor schedules in Tabs A-1 and E-1 against the weekly Certified Payroll Registers in Tabs A-3 and E-3. My analysis determined that the Certified Payroll Registers reflect daily hours for Job No. 160214. Only the hours worked on the project site are included on the registers. Hours for

Charles L. Philbrick, Esq.                                                                          **CAMPOS&STRATIS**
Page 3 of 8

mobilization/demobilization (Task Code 8) are not reflected on the Certified Payroll Registers.

The Certified Payroll Registers also include the "Check Detail". This section includes the total weekly hours worked by the employee, for all jobs, whether on site or for mobilization/demobilization.

I was able to verify the hours for work done on site. I was also able to verify the mobilization/demobilization hours for weeks in which the employees worked only on Job No. 160214. For these weeks the total hours reflected in the "Check Detail" section of the Certified Payroll Registers equaled the total hours worked on site, plus the hours for mobilization/demobilization. However, I was not able to verify mobilization/demobilization hours for weeks during which the employees worked on more than one job. This is due to the fact that the total hours reflected in the "Check Detail" section of the Certified Payroll Registers included hours for all jobs worked on site (not just Job No. 160214) as well as all mobilization/demobilization hours for all jobs. In any event, for these weeks, the total hours included in the "Check Detail" was greater than the hours claimed for Project No. 160214.

I analyzed the hourly payroll rates, by employee, used in the claim. I determined that, at times, there were different rates used for the same employee. Through discussions with management, I learned that there are different rates used for on-site work versus yard work and mobilization/demobilization. In addition, I determined that the overtime rate was not always 150% of the hourly rate. Again, through discussions with management, I learned the reason for this. These discrepancies have been addressed by Insituform in its payroll narrative, which accompanies the claim (Tab A).

Regarding the payroll burden, Insituform has prepared a lengthy explanation as to how the rates are applied (Tab A), which I will not reiterate. I analyzed the claimed payroll burden and determined that some of the categories of payroll burden are fixed in nature. Therefore, the reparation project would not result in any incremental charges for the fixed expenses. Neither Insituform nor I have performed a fixed v. variable analysis of the payroll burden.

### EQUIPMENT BURDEN

Insituform informed me that the cost of owned equipment and related items is allocated based on the number of actual hours worked on each job.

Included in the equipment burden are charges such as:

- Labor for maintenance of the warehouse and yard
- Leasing and maintaining the warehouse
- Parts and supplies used to maintain, run and repair the equipment
- Equipment depreciation
- Leased vehicles and equipment not used on a specific project
- Taxes, licenses, fees and insurance costs related to the equipment

Charles L. Philbrick, Esq.　　　　　　　　　　　　　　　　　　　　**CAMPOS&STRATIS**
Page 4 of 8

The following hourly rates are used to allocate the equipment burden to projects:

| | |
|---|---|
| Wet-out Labor | $32.50 |
| New England Crews through 02/28/04 | $35.00 |
| New England Crews after 03/01/04 | $26.00 |
| Benicia, CA Crews | $34.00 |

<u>Phase 1</u> – Using these hourly rates, Insituform calculated equipment burden of $404,375.50 related to Direct Field Labor and $23,074.99 related to Wet-out Labor, for a total equipment burden of $427,450.49 for Phase 1.

Insituform analyzed the total equipment burden and expendable and supplies (discussed below) for the New England District for the period from October 2003 through June 2004 and March 2005 (the months during which Phase 1 work was performed) and determined that the costs were over-allocated by 2.25%. Therefore, Insituform adjusted its calculated equipment burden of $427,450.49 by 2.25% ($9,618) and calculated equipment burden of $417,832.49 for Phase 1.

<u>Phase 2</u> – Using the above hourly rates, Insituform calculated equipment burden of $120,069 related to Direct Field Labor. Since there was no Wet-out Labor in Phase 2, there is no equipment burden related to Wet-out Labor in Phase 2.

Insituform analyzed the total equipment burden and expendables and supplies (discussed below) for the New England District for the period from June 2005 through September 2005 and March 2006 (the months during which Phase 2 work was performed) and determined that the costs were over-allocated by 8.82%. Therefore, Insituform adjusted its calculated equipment burden of $120,069 by 8.82% ($10,590) and calculated equipment burden of $109,479 for Phase 2.

I tested the equipment burden and determined that the rates were correctly applied to the hours worked. I noted that some hours were not charged with equipment burden. Insituform informed me that this was mainly due to the fact that certain task codes were not charged with equipment burden such as Task Code 1 (surveying work) and Task Code 8 (mobilization). Insituform further informed me that certain employees (John J. Perry for example) did not have codes, which allowed equipment to be charged on their projects. Accordingly, this portion of the claim may be understated.

I also reviewed Insituform's calculations and agree with the adjustments made to account for the over-allocation of equipment burden. However, in my opinion, some of the expenses included in the equipment burden are fixed in nature and, therefore, the reparation project would not result in any incremental charges for the fixed expenses. Neither Insituform nor I have prepared a fixed v. variable analysis of the equipment burden.

## **MATERIALS – TUBE AND RESIN**

The Materials – Tube and Resin component of the claim is reflected on schedules in Tabs C-1 (Phase 1) and G-1 (Phase 2) of Insituform's claim and includes the following:

Charles L. Philbrick, Esq.  
Page 5 of 8

**CAMPOS&STRATIS**

|  | Phase 1 | Phase 2 | Total |
|---|---|---|---|
| Material | $ 328,051 | $ 77,964 | $ 406,016 |
| Scrap | 1,342 | 114 | 1,456 |
| Direct Labor | 15,723 | 5,765 | 21,488 |
| Setup Labor | 2,253 | 305 | 2,557 |
| Variable Overhead | 47,705 | 22,280 | 69,985 |
| Total | $ 395,075 | $ 106,428 | $ 501,502 |

I reviewed the "Production Cost Inquiry" sheets from the JD Edwards system and verified the above amounts for Material, Scrap, Direct Labor and Setup Labor. I note that these amounts represent actual materials and hours at standard rates. Therefore, it is possible that the actual cost of production would differ from the standard cost of production.

Regarding the Overhead, the standard costing method resulted in Overhead of $69,282 for Phase 1 (Bates No. ITI-AIG 000366) and $29,386 for Phase 2 (Bates No. ITI-AIG 001946).

Phase 1 Overhead – Insituform analyzed the actual costs for 2004 and determined that overhead was 330% of Direct Labor. Insituform applied this percentage to the Direct Labor and Setup Labor of $17,976 and calculated overhead of $59,320.

I noted that there were fixed expenses included in the overhead and raised this issue. Insituform determined that 80.42% of overhead for 2004 was variable. Therefore, Insituform applied this percentage to the total overhead of $59,320 and calculated variable overhead of $47,705. Insituform included this amount (rather than the standard overhead amount of $69,282) in its claim. (Bates Nos. ITI-AIG 000366-7)

I reviewed Insituform's overhead calculations and agree that it is appropriate to exclude the fixed portion of the overhead from the claim.

Phase 2 Overhead – Insituform analyzed the actual costs for 2005 and determined that overhead was 438% of Direct Labor. Insituform applied this percentage to the Direct Labor and Setup Labor of $6,070 and calculated overhead of $26,587.

Insituform further determined that 83.8% of overhead for 2005 was variable. Therefore, Insituform applied this percentage to the total overhead of $26,587 and calculated variable overhead of $22,280. Insituform included this amount (rather than the standard overhead amount of $29,386) in its claim. (Bates Nos. ITI-AIG 001946-7)

I reviewed Insituform's overhead calculations and agree that it is appropriate to exclude the fixed portion of the overhead from the claim.

Charles L. Philbrick, Esq.  **CAMPOS&STRATIS**
Page 6 of 8

## SUBCONTRACTORS AND THIRD PARTY INVOICES

**Equipment Rentals** – I reviewed the supporting documentation produced and determined that the claimed amount of $36,976.98 is supported by check stubs and invoices. Of this amount, $984.38 is related to Phase 1, and $35,992.60 is related to Phase 2.

**Per Diem and Lodging** – I reviewed the supporting documentation produced and determined that the claimed amount of $86,440.71 is supported by check stubs, hotel bills, credit card statements and "Supplier Ledger Inquiry" sheets. Of this amount, $66,452.49 is related to Phase 1, and $19,988.22 is related to Phase 2.

**Expendables and Supplies** – Insituform informed us that the cost of expendables and supplies is allocated on a monthly basis, based on the number of actual hours worked on each job. Expendables and supplies include items such as hard hats, gloves and goggles. The costs for these items are charged at a rate of $6 per hour worked.

Phase 1 – Using the $6 hourly rate, Insituform calculated expendables and supplies of $90,392.10 for Phase 1. This amount represents the sum of the monthly Journal Entries made to allocate the expendables and supplies for the months of October 2003 through June 2004 and March 2005 (Bates Nos. ITI-AIG 000916-7).

In order to test that amount I applied $6 to the total hours worked during Phase 1 of 14,752.35 hours and arrived at $88,514.10. There is a difference of $1,878, or 2%, from Insituform's allocated amount of $90,392.10.

As stated above, Insituform analyzed the total equipment burden and expendables and supplies for the New England District for the period from October 2003 through June 2004 and March 2005 (the months during which Phase 1 work was performed) and determined that the costs were over-allocated by 2.25%. Therefore, Insituform adjusted its calculated expendables and supplies of $90,392.10 by 2.25% ($2,034) and calculated expendables and supplies of $88,358.10. I reviewed Insituform's calculation and agree with the adjustment made to account for the over-allocated expendables and supplies.

In addition to these allocated expenses, there is $4,608.71 of additional expenses for which invoices and check stubs were provided. Therefore, the total claimed expendables and supplies is $92,966.81 for Phase 1.

Phase 2 – Using the $6 hourly rate, Insituform calculated expendables and supplies of $31,578 for Phase 2. This amount represents the sum of the monthly Journal Entries made to allocate the expendables and supplies for the months of June through September 2005 and March 2006 (Bates No. ITI-AIG 002133).

In order to test that amount I applied $6 to the total hours worked during Phase 2 of 5,255 hours and arrived at $31,530. There is a difference of $48, or less than 1%, from Insituform's allocated amount of $31,578.

As stated above, Insituform analyzed the total equipment burden and expendables and supplies for the New England District for the period from June 2005 through September

Charles L. Philbrick, Esq.  
Page 7 of 8

**CAMPOS&STRATIS**

2005 and March 2006 (the months during which Phase 2 work was performed) and determined that the costs were over-allocated by 8.82%. Therefore, Insituform adjusted its calculated expendables and supplies of $31,578 by 8.82% ($2,785) and calculated expendables and supplies of $28,793 for Phase 2. I reviewed Insituform's calculation and agree with the adjustment made to account for the over-allocated expendables and supplies.

In addition to these allocated expenses, there is $50.54 of additional expenses for which expense reports and check stubs were provided. Therefore, the total expendables and supplies is $28,843.54 for Phase 2.

**Miscellaneous Expenses** – I reviewed the supporting documentation produced and determined that the claimed amount of $358,593.27 is supported by check stubs, expense reports, credit card statements and invoices. Of the amount, $200,950.60 is related to Phase 1 and $157,642.67 is related to Phase 2. The miscellaneous expenses include items such as parts, supplies, FedEx, waste removal, fuel and delivery costs.

**Independent Testing Services** – I reviewed the supporting documentation produced and determined that the claimed amount of $10,475.00 is supported by invoices and check stubs. Of this amount, $9,925.00 is related to Phase 1, and $550.00 is related to Phase 2.

**Field Office Expense** – I reviewed the supporting documentation produced and determined that the claimed amount of $1,077.98 is supported by credit card statements and check stubs. This total amount is related to Phase 1.

**Air Travel** – I reviewed the supporting documentation produced and determined that the claimed amount of $10,812.49 is supported by expense reports, credit card statements and check stubs. Of this amount, $8,998.68 is related to Phase 1, and $1,813.81 is related to Phase 2.

**Meals** – I reviewed the supporting documentation produced and determined that the claimed amount of $2,450.19 is supported by expense reports, receipts, credit card statements and check stubs. Of this amount, $1,332.92 is related to Phase 1, and $1,117.27 is related to Phase 2.

**Subcontractors and Consultants** – I reviewed the supporting documentation produced and determined that the claimed amount of $4,467,931.68 is supported by invoices and check stubs. (I note that the amount reflected on Bates No. ITI-AIG 00002 is actually $4,467,901.68, a difference of $30, which will be explained below.) Of this amount, $3,327,153.85 is related to Phase 1, and $1,140,777.83 is related to Phase 2. Please note that the schedule in Tab D-9 totals $3,327,153.85 (Bates No. ITI-AIG 001784), while the amount brought forward to the total cost summary sheet (Bates No. ITI-AIG 00002) is $3,327,123.85, a difference of $30.

## CLOSE-OUT COSTS

In addition to the claimed incurred costs of $7,134,299.05, there are estimated costs of remaining remediation totaling $264,000 (Tab I) as follows:

Charles L. Philbrick, Esq.  **CAMPOS&STRATIS**
Page 8 of 8

| | |
|---|---:|
| MWRA City Engineer Costs | $160,000 |
| Haley & Aldrich | 24,000 |
| Trailing Costs | 80,000 |
| Total | $264,000 |

Since these amounts are estimates of future costs, I have not reviewed any supporting documentation to date.

### SUMMARY

As discussed above, I reviewed the claim prepared by Insituform, along with the supporting documentation produced. In my opinion, the claimed costs are adequately supported by documentation. However, as stated above, there are some claimed costs which appear to be fixed in nature. The reparation project would not result in any incremental charges for the fixed costs.

My opinion is based on a reasonable degree of accounting certainty and upon over 50 years of education, experience and training, the last 45 of which I have been a Certified Public Accountant and have virtually limited my practice to the evaluation of property insurance claims on behalf of insurance companies and insureds. I reserve the right to amend this report should additional information or documentation be made available to me.

I have been compensated for my services rendered in this assignment at an hourly rate of $300. My compensation is not contingent on the outcome of this litigation. A copy of my Curriculum Vitae and cases in which I have testified either at trial or in deposition during the last four years are attached.

Very truly yours,

CAMPOS & STRATIS

*Chris Campos*

Chris Campos

**CAMPOS&STRATIS**

Schedule 1

## SUMMARY OF CLAIMED REPAIR COSTS

Re: Insituform Technologies, Inc.

|  | Phase 1 | | Phase 2 | | |
|---|---|---|---|---|---|
|  | Section | Amount | Section | Amount | Total |
| **Payroll & Burden** | | | | | |
| Field Gross Payroll Report | A-1 | $ 514,240.87 | E-1 | $ 190,604.44 | $ 704,845.31 |
| Wetout Gross Payroll | A-4 | 24,996.59 |  |  | 24,996.59 |
| Labor - Burden and Benefits | A-1 & A-4 | 213,196.48 | E-1 | 65,908.36 | 279,104.84 |
| Equipment Burden | A-1 & A-4 | 417,832.49 | E-1 | 109,479.00 | 527,311.49 |
| Materials - Tube, Resin and Freight | C-1 | 395,074.52 | G-1 | 106,427.65 | 501,502.17 |
| **Subcontractor and Third Party Invoices** | | | | | |
| Equipment Rentals | D-1 | 984.38 | H-1 | 35,992.60 | 36,976.98 |
| Per Diem and Lodging | D-2 | 66,452.49 | H-2 | 19,988.22 | 86,440.71 |
| Expendable and Supplies | D-3 | 92,966.81 | H-3 | 28,843.54 | 121,810.35 |
| Miscellaneous Expenses | D-4 | 200,950.60 | H-4 | 157,642.67 | 358,593.27 |
| Independent Testing Services | D-5 | 9,925.00 | H-5 | 550.00 | 10,475.00 |
| Field Office Expense | D-6 | 1,077.98 |  |  | 1,077.98 |
| Air Travel | D-7 | 8,998.68 | H-6 | 1,813.81 | 10,812.49 |
| Meals | D-8 | 1,332.92 | H-7 | 1,117.27 | 2,450.19 |
| Subcontractor and Consultants | D-9 | 3,327,123.85 | H-8 | 1,140,777.83 | 4,467,901.68 |
| Subtotal |  | $ 5,275,153.66 |  | $ 1,859,145.39 | $ 7,134,299.05 |
| Close-out Costs |  | - | 1 | 264,000.00 | 264,000.00 |
| **Total** |  | $ 5,275,153.66 |  | $ 2,123,145.39 | $ 7,398,299.05 |



**CAMPOS&STRATIS**
a professional association
CERTIFIED PUBLIC ACCOUNTANTS

310 Cedar Lane
Teaneck, New Jersey 07666

201/692-0300
Fax: 201/692-0722
212/285-1010

**CURRICULUM VITAE OF CHRIS CAMPOS, CPA, SENIOR PARTNER**

**HOME ADDRESS:**

121 Chestnut Street, Englewood Cliffs, New Jersey 07632

**BUSINESS ADDRESS:**

310 Cedar Lane, Teaneck, New Jersey 07666

**EDUCATION:**

Bachelor of Science degree in Business Administration from Rutgers University. Was attending Graduate Schools of Business at both New York University and Rutgers University at time of entering military service.

**PROFESSION:**

Certified Public Accountant

**LICENSED IN THE FOLLOWING STATES:**

New Jersey, New York, Illinois, Georgia, Louisiana, Pennsylvania, Florida, Puerto Rico

**EXPERIENCE:**

An accountant for over 40 years, whose practice in recent years has been limited to investigative accounting. Started career with Ernst & Ernst and except for military service was with that firm until 1969. Was a partner with Ernst & Ernst when left to organize predecessor to present firm, Campos & Stratis, a professional association. "Senior Partner" of present firm. Number of various investigations of all types is estimated at over 3,500. While with Ernst & Ernst, now Ernst & Young, performed audits for a wide variety of industries in manufacturing, distribution, services, and financial. Mr. Campos has lectured extensively to various insurance, professional and industry groups on a wide variety of topics, including investigative auditing, arson and fraud. He has also written numerous articles relating to evaluation of damages, arson and the use of accountants by attorneys.

**CAMPOS&STRATIS**

**MILITARY EXPERIENCE:**

Member of U.S. Army. Spent eighteen months as a member of Army Audit Agency, conducting audits of the U.S. Government Contractors.

**PROFESSIONAL SOCIETIES AND ACTIVITIES**

1. American Institute of Certified Public Accountants
2. New Jersey Society of Certified Public Accountants
3. New York Society of Certified Public Accountants
4. Pennsylvania Society of Certified Public Accountants

**TEACHING:**

Lectured at training classes for:

a. Ernst & Ernst
b. Campos & Stratis
c. Many legal and insurance agencies

**COURT ROOM AND DEPOSITION TESTIMONY:**

Has testified numerous times in various courts and panels.

**PUBLICATIONS:**

The following is a list of publications authored by Chris Campos within the preceding ten years and prior.

"An Investigative Accountant's Review of an Arson Case". *Federation of Insurance Counsel Quarterly.* Winter 1981.

"An Investigative Accountant's Review of an Arson Case". *The National Fire & Arson Report.* May/June 1982.

"The Attorney/Accountant Relationship". In Practice Tips, *The Brief.* February 1983.
"Clarifying Business Loss Claims". London, *Insurance Week.* October 1984.

"Problems Arising in Business Interruption Loss Claims". *Insurance Adjuster; The Monthly Magazines of Claims and Losses.* January/February 1985.

"Use of Accountants In Casualty Claims". *For the Defense.* April 1988.

"Casualty Claims: An Accountant's Day of Reckoning". *Risk Management.* August 1988.

"Accountants Have Increasing Role in Assisting With Settling Claims". *Claims Magazine.* June 1989.

**CAMPOS&STRATIS**

"Auditing in an Adversarial Environment". *Claims Magazine*. December 1990.

"CPA's and Business Interruption Loss Claims". *The CPA Journal*. August 1992.

"Accountants Useful in Increasingly Complex Casualty Claims". *Claims Magazine*. May 1993.

"Working With Public Adjusters". *Claims Magazine*. November 1993.

Reviewer of manuscript – chapters on Business Income Insurance. *Commercial Property Insurance and Risk Management*, Volume 1, Fourth Edition, CPCU 3, 1994.

"Depreciation: Is It a Saved Expense In a Business Interruption Claim?"; *Claims Magazine*, September 1995

"Don't Wait Until Trial To Call an Accountant"; *New Jersey Lawyer*, October 1992

"Corporate Counsel Should Actively Pick Forensic Experts"; *Corporate Legal Times*, September 1995

"Business Interruption Coverage: Don't Underestimate Your Claim"; *The Metropolitan Corporate Counsel*, April 2002

## CAMPOS&STRATIS

### CASES IN WHICH CHRIS CAMPOS HAS TESTIFIED AT TRIAL OR BEEN DEPOSED
### In the Last Four Years

| Caption | Court | Law Firm |
|---|---|---|
| Roger Rich v. Florasynth | Superior Court New Jersey Bergen County | McElroy Deutsch & Mulvaney Morristown, New Jersey |
| The Intimate Bookshop, Inc. v. Barnes & Noble Inc., BARNES AND NOBLE.COM, INC. Borders Group, Inc. Walden Acquisition Company | United States District Court Southern District of New York | Carl E. Person, Esq. New York, New York |
| Weiss v. Ferro | Superior Court New Jersey | Thaddeus J. Hubert, III, Esq. Hoagland Longo Moran Dunst & Doukas New Brunswick, New Jersey |
| P.S.G. Inc. v. SKW Real Estate | Superior Court Connecticut | Joseph Valdes, Esq. Ryan Ryan Johnson & DeLuca Stamford, Connecticut |
| Egber v. Egber | Superior Court New Jersey Bergen County | Goodman Associates Howard, Leopold, Esq. Hackensack, New Jersey |
| Ruth Asman, as Executrix of the Estate of Arnold Asman v. Bzura, et al. | Superior Court New Jersey | Roger B. Kaplan, Esq. Wilentz Goldman & Spitzer Woodbridge, New Jersey |
| Anthony's Towing, et al. v. E&K Agency, Inc. | Superior Court New Jersey | Peter P. Frunzi, Jr., Esq. Frunzi & Scarborough Shrewsbury, NJ |

**CAMPOS&STRATIS**

## CASES IN WHICH CHRIS CAMPOS HAS TESTIFIED AT TRIAL OR BEEN DEPOSED
### In the Last Four Years

| Caption | Court | Law Firm |
|---|---|---|
| Jersey Mills v. Bushwick Realty | Superior Court New Jersey | Peter P. Frunzi, Jr., Esq. Frunzi & Scarborough Shrewsbury, NJ |
| Depot Inc. of Tinton v. New Plan of Tinton Falls, Inc. | Superior Court New Jersey | Vincent L. Galasso, Esq. Hackensack, NJ |
| RLR Wagner, Inc., et al. v. Plante & Moran, LLP, et al. | State of Michigan Branch County Circuit Court | Steven E. Bangs, Esq. Richard Craig Krause & Assoc., P.C. East Lansing, MI |
| Atlantic Exposition Services, Inc. and Patrick Perino v. Howard J. Casper a/k/a Howard L. Casper | Superior Court New Jersey Atlantic County | John M. Donnelly, Esq. Levine, Staller, Sklar, Chan, Brodsky & Donnelly, P.A. Atlantic City, NJ |
| Louis Manganaro v. Donald Raymond Martin, Gerald Hallisey, James Goldsmith, Stainless Tubular Products, Inc. and Stainless & Nickel Alloys, LLC | Superior Court New Jersey Bergen County | Frank Holahan, Esq. Harwood Lloyd, LLC Hackensack, NJ |
| RSR Corporation, et al v. A.I.U. Insurance Company, et al | District Court Texas Harrison County | Robert E. Ruder, Esq. Jackson Campbell, PC Washington, D.C. |
| Estate of James Bastek, M.D. v. Sea-Land Services, Inc. | Superior Court New Jersey Bergen County | Richard Weiner, Esq. Richard J. Weiner, P.C. Montvale, NJ |
| Swan International Optical v. United Water New Jersey, et.al. | Superior Court New Jersey Bergen County | Patrick Papalia, Esq. Herten, Burstein, Sheridan, Cevasco, Bottinelli & Litt, L.L.C. Hackensack, NJ |

# CAMPOS&STRATIS

## CASES IN WHICH CHRIS CAMPOS HAS TESTIFIED AT TRIAL OR BEEN DEPOSED
### In the Last Four Years

| Caption | Court | Law Firm |
|---|---|---|
| Solution F., SA v. Jesel Valvetrain Innovation, Inc. et al | United States District Court District of New Jersey | Walter R. Timpone, Esq. Michael Devins, Esq. McElroy, Deutsch & Mulvaney Morristown, NJ |
| Jazz Photo Corporation v. Imation Corp. and Imation S.p.A. | United States District Court District of New Jersey | Peter J. Frazza, Esq. Budd Larner et al. Short Hills, NJ |
| Liverpool Club Corp. v. Wausau Insurance Company, Timothy L. Jansen and Riedman Corp. | Supreme Court State of New York County of Onondaga | John A. DeFrancisco, Esq. DeFrancisco Law Firm Syracuse, NY |
| Debra Mashberg v. Bruce Gates | Supreme Court State of New Jersey Chancery Division/Family Part Union County | Frank J. LaRocca, Esq. Spinato, Conte & LaRocca Glen Rock, NJ |
| United Properties Group, Inc. v. International Golf Maintenance, Inc. ans Meadowbrook Golf Group, Inc. | Superior Court State of New Jersey Law Division Bergen County | Scott D. Jacobson, Esq. Herten, Burstein, Sheridan, Cevasco, Bottinelli, Litt, Toskos & Harz, L.L.C. Hackensack, NJ |
| A.J. M. Meat Packing, Inc. vs. American International Insurance Company of Puerto Rico | Superior Court of Bayamon The Commonwealth of Puerto Rico | Diana Azizi de Arbona PO Box 361728 San Juan, PR 00936-1728 |
| Travelers Indemnity Company of Illinois vs. NRC Insurance Services, Inc. et al | United States District Court Eastern District of Missouri Eastern Division | Steven M. Wald, Esq. Lathrop & Gage L.C. The Equitable Building, Suite 1300 10 South Broadway St. Louis, MO 63102-1708 |
| United Property Group, Inc. vs International Golf Maintenance, Inc., et al and Meadowbrook Golf Group, Inc. | Superior Court State of New Jersey Bergen County | Herten, Burstein, Sheridan, Cevasco, Bottinelli, Litt, Toskos & Harz, L.L.C. Court Plaza North 25 Main Street Hackensack, NJ 07601-7032 |

Case 1:04-cv-10487-GAO    Document 54    Filed 09/01/2006    Page 16 of 16

# CAMPOS&STRATIS

## CASES IN WHICH CHRIS CAMPOS HAS TESTIFIED AT TRIAL OR BEEN DEPOSED
### In the Last Four Years

| Caption | Court | Law Firm |
|---|---|---|
| Double O Meat Market Inc. vs. All American Insurance Company | Superior Court State of New Jersey Bergen County | Richard J. Driver, Esq. WolfBlock Brach Eichler 101 Eisenhower Parkway Roseland, NJ 07068 |
| St. Paul Fire & Marine Insurance Company vs Fidelity National Information Solutions, Inc. et al | United States District Court Eastern District of Missouri Eastern Division | J. Robert Sears, Esq. Lathrop Gage The Equitable Building, Ste 1300 10 South Broadway St. Louis, MO 63102-1708 |
| David and Judith Rivkin vs State of New Jersey, et al | Superior Court State of New Jersey Monmouth County | Thomas C. Regan, Esq. Pitney, Hardin, Kipp & Szuch LLP PO Box 1945 Morristown, NJ 07962-1945 |
| Lava Trading Inc. vs Hartford Fire Insurance Company | United States District Court Southern District of New York | Rebecca Levy-Sachs, Esq. Robinson & Cole LLP 280 Trumbull Street Hartford, CT 06103 |
| A. Keith Esmail and Sera Jane Coombs vs David W. Coombs Jr., et al | Court of Common Pleas State of Pennsylvania County of Lehigh Civil Division | Sandor Engel, Esq. Engel, Wiener and Bergstein 825 North Twelfth Street Allentown, PA 18102 |
| Mount Nittany Inn vs Robert G. Benner vs Swartz Fire & Safety Equipment Company | Court of Common Pleas State of Pennsylvania County of Centre | Michael J. Reilly, Esq. Kevin P. Smith, Esq. Law Offices of Robert A. Stutman 275 Commerce Dr, Suite 304 Ft. Washington, PA 19034 |
| Landec Corporation vs Sorema N. A. Reinsurance Company, et al | Superior Court of New Jersey Law Division-Somerset County | Thomas McKay, III, Esq. Cozen O'Connor Cherry Hill, NJ 08002 |