# EXHIBIT 3



Exhibit A
to Affidavit of Chris Campos

## CAMPOS&STRATIS
a professional association
CERTIFIED PUBLIC ACCOUNTANTS

310 Cedar Lane
Teaneck, New Jersey 07666

201/692-0300
Fax: 201/692-0722
212/285-1010

May 22, 2006

Charles L. Philbrick, Esq.
Holland & Knight LLP
131 South Dearborn Street, 30th Floor
Chicago, IL 60603

Re:   Insituform Technologies, Inc. v. American Home Assurance Co.
      Case No. 04 10487 GAO
      Our File No. 17051

Dear Mr. Philbrick:

You have requested that I analyze the claim prepared by Insituform Technologies, Inc. (Insituform), along with the supporting documentation produced, and state my findings thereon.

In August 2003 Insituform began a CIPP installation project in Boston, MA. The project involved lining 5,400 feet of pipe. Following the installation, the owner rejected 4,500 feet of the liner. As a result, Insituform was required to remove and re-install the rejected liner. This work was performed from October 2003 through June 2004, and is referred to as Phase 1.

During the first quarter of 2005, the lines were inspected and it was determined that the segment of the line that was not removed and re-installed in Phase 1 was in need of replacement. This work was performed from June through September 2005, and is referred to as Phase 2.

As a result, Insituform prepared a claim, which totals $7,398,299, as shown on the attached Schedule 1. This amount includes $5,275,154 for Phase 1 repairs, $1,859,145 for Phase 2 repairs, and $264,000 of estimated close-out costs.

There are four major claim components: Payroll, Equipment, Materials, and Subcontractors/Third Party Invoices. Each of these components will be discussed below. The following comments relate to the work I performed in connection with my analysis of the claim. My opinions are based on my review of the documents provided in the four claim binders, as well as discussions with Insituform management.

### Payroll

There are two types of payroll charged to the project (Job No. 160214), Direct Field Labor and Wet-out Labor. The payroll for Phase 1, along with the related payroll burden is reflected in Tabs A-1 (Direct Field) and A-4 (Wet-out) of Insituform's claim. The payroll for Phase 2, along with the related payroll burden is reflected in Tab E-1 (Direct Field) of Insituform's claim. There is no Wet-out Labor claimed for Phase 2.




Charles L. Philbrick, Esq.    **CAMPOS&STRATIS**
Page 2 of 8

I understand from Insituform that the data on these schedules (Tabs A-1, A-4 and E-1) was downloaded directly from its JD Edwards system, its internal software program. In addition, there are weekly Certified Payroll Registers for all Direct Field Labor, which are required by municipalities. These registers are not required for Wet-out Labor. The claimed amounts of payroll are reflected below:

Field Payroll

|  | Phase 1 | Phase 2 | Total |
|---|---|---|---|
| Field Gross Pay | $ 514,241 | $ 190,604 | $ 704,845 |
| Payroll Burden |  |  |  |
| General Liability | $ 25,846 | $ 8,324 | $ 34,170 |
| Workers Comp. | 33,763 | 11,195 | 44,957 |
| Employer Payroll Tax | 61,836 | 15,005 | 76,841 |
| Fringe Benefits | 78,877 | 31,322 | 110,199 |
| Total Payroll Burden | $ 200,322 | $ 65,845 | $ 266,167 |
| Total Field Payroll and Burden | $ 714,563 | $ 256,449 | $ 971,012 |

(I note that there is a small difference in the Total Payroll Burden, which totals $65,845 in Phase 2, as compared to $65,908 reflected on Bates Nos. ITI-AIG 000002 and 001851.)

Wet-out Payroll

|  | Phase 1 | Phase 2 | Total |
|---|---|---|---|
| Wet-out Gross Pay | $ 24,997 | $ - | $ 24,997 |
| Payroll Burden |  |  |  |
| General Liability | $ 1,583 | $ - | $ 1,583 |
| Workers Comp. | 1,838 | - | 1,838 |
| Employer Payroll Tax | 2,336 | - | 2,336 |
| Fringe Benefits | 7,118 | - | 7,118 |
| Total Payroll Burden | $ 12,875 | $ - | $ 12,875 |
| Total Wet-out Payroll and Burden | $ 37,871 | $ - | $ 37,871 |

I tested the Direct Field Labor schedules in Tabs A-1 and E-1 against the weekly Certified Payroll Registers in Tabs A-3 and E-3. My analysis determined that the Certified Payroll Registers reflect daily hours for Job No. 160214. Only the hours worked on the project site are included on the registers. Hours for

Charles L. Philbrick, Esq.
Page 3 of 8

CAMPOS&STRATIS

mobilization/demobilization (Task Code 8) are not reflected on the Certified Payroll Registers.

The Certified Payroll Registers also include the "Check Detail". This section includes the total weekly hours worked by the employee, for all jobs, whether on site or for mobilization/demobilization.

I was able to verify the hours for work done on site. I was also able to verify the mobilization/demobilization hours for weeks in which the employees worked only on Job No. 160214. For these weeks the total hours reflected in the "Check Detail" section of the Certified Payroll Registers equaled the total hours worked on site, plus the hours for mobilization/demobilization. However, I was not able to verify mobilization/demobilization hours for weeks during which the employees worked on more than one job. This is due to the fact that the total hours reflected in the "Check Detail" section of the Certified Payroll Registers included hours for all jobs worked on site (not just Job No. 160214) as well as all mobilization/demobilization hours for all jobs. In any event, for these weeks, the total hours included in the "Check Detail" was greater than the hours claimed for Project No. 160214.

I analyzed the hourly payroll rates, by employee, used in the claim. I determined that, at times, there were different rates used for the same employee. Through discussions with management, I learned that there are different rates used for on-site work versus yard work and mobilization/demobilization. In addition, I determined that the overtime rate was not always 150% of the hourly rate. Again, through discussions with management, I learned the reason for this. These discrepancies have been addressed by Insituform in its payroll narrative, which accompanies the claim (Tab A).

Regarding the payroll burden, Insituform has prepared a lengthy explanation as to how the rates are applied (Tab A), which I will not reiterate. I analyzed the claimed payroll burden and determined that some of the categories of payroll burden are fixed in nature. Therefore, the reparation project would not result in any incremental charges for the fixed expenses. Neither Insituform nor I have performed a fixed v. variable analysis of the payroll burden.

## EQUIPMENT BURDEN

Insituform informed me that the cost of owned equipment and related items is allocated based on the number of actual hours worked on each job.

Included in the equipment burden are charges such as:

- Labor for maintenance of the warehouse and yard
- Leasing and maintaining the warehouse
- Parts and supplies used to maintain, run and repair the equipment
- Equipment depreciation
- Leased vehicles and equipment not used on a specific project
- Taxes, licenses, fees and insurance costs related to the equipment

Charles L. Philbrick, Esq.  
Page 4 of 8

**CAMPOS&STRATIS**

The following hourly rates are used to allocate the equipment burden to projects:

| | |
|---|---|
| Wet-out Labor | $32.50 |
| New England Crews through 02/28/04 | $35.00 |
| New England Crews after 03/01/04 | $26.00 |
| Benicia, CA Crews | $34.00 |

<u>Phase 1</u> – Using these hourly rates, Insituform calculated equipment burden of $404,375.50 related to Direct Field Labor and $23,074.99 related to Wet-out Labor, for a total equipment burden of $427,450.49 for Phase 1.

Insituform analyzed the total equipment burden and expendable and supplies (discussed below) for the New England District for the period from October 2003 through June 2004 and March 2005 (the months during which Phase 1 work was performed) and determined that the costs were over-allocated by 2.25%. Therefore, Insituform adjusted its calculated equipment burden of $427,450.49 by 2.25% ($9,618) and calculated equipment burden of $417,832.49 for Phase 1.

<u>Phase 2</u> – Using the above hourly rates, Insituform calculated equipment burden of $120,069 related to Direct Field Labor. Since there was no Wet-out Labor in Phase 2, there is no equipment burden related to Wet-out Labor in Phase 2.

Insituform analyzed the total equipment burden and expendables and supplies (discussed below) for the New England District for the period from June 2005 through September 2005 and March 2006 (the months during which Phase 2 work was performed) and determined that the costs were over-allocated by 8.82%. Therefore, Insituform adjusted its calculated equipment burden of $120,069 by 8.82% ($10,590) and calculated equipment burden of $109,479 for Phase 2.

I tested the equipment burden and determined that the rates were correctly applied to the hours worked. I noted that some hours were not charged with equipment burden. Insituform informed me that this was mainly due to the fact that certain task codes were not charged with equipment burden such as Task Code 1 (surveying work) and Task Code 8 (mobilization). Insituform further informed me that certain employees (John J. Perry for example) did not have codes, which allowed equipment to be charged on their projects. Accordingly, this portion of the claim may be understated.

I also reviewed Insituform's calculations and agree with the adjustments made to account for the over-allocation of equipment burden. However, in my opinion, some of the expenses included in the equipment burden are fixed in nature and, therefore, the reparation project would not result in any incremental charges for the fixed expenses. Neither Insituform nor I have prepared a fixed v. variable analysis of the equipment burden.

## MATERIALS – TUBE AND RESIN

The Materials – Tube and Resin component of the claim is reflected on schedules in Tabs C-1 (Phase 1) and G-1 (Phase 2) of Insituform's claim and includes the following:

Charles L. Philbrick, Esq.
Page 5 of 8

**CAMPOS&STRATIS**

|  | Phase 1 | Phase 2 | Total |
|---|---|---|---|
| Material | $ 328,051 | $ 77,964 | $ 406,016 |
| Scrap | 1,342 | 114 | 1,456 |
| Direct Labor | 15,723 | 5,765 | 21,488 |
| Setup Labor | 2,253 | 305 | 2,557 |
| Variable Overhead | 47,705 | 22,280 | 69,985 |
| Total | $ 395,075 | $ 106,428 | $ 501,502 |

I reviewed the "Production Cost Inquiry" sheets from the JD Edwards system and verified the above amounts for Material, Scrap, Direct Labor and Setup Labor. I note that these amounts represent actual materials and hours at standard rates. Therefore, it is possible that the actual cost of production would differ from the standard cost of production.

Regarding the Overhead, the standard costing method resulted in Overhead of $69,282 for Phase 1 (Bates No. ITI-AIG 000366) and $29,386 for Phase 2 (Bates No. ITI-AIG 001946).



Phase 1 Overhead – Insituform analyzed the actual costs for 2004 and determined that overhead was 330% of Direct Labor. Insituform applied this percentage to the Direct Labor and Setup Labor of $17,976 and calculated overhead of $59,320.

I noted that there were fixed expenses included in the overhead and raised this issue. Insituform determined that 80.42% of overhead for 2004 was variable. Therefore, Insituform applied this percentage to the total overhead of $59,320 and calculated variable overhead of $47,705. Insituform included this amount (rather than the standard overhead amount of $69,282) in its claim. (Bates Nos. ITI-AIG 000366-7)

I reviewed Insituform's overhead calculations and agree that it is appropriate to exclude the fixed portion of the overhead from the claim.

Phase 2 Overhead – Insituform analyzed the actual costs for 2005 and determined that overhead was 438% of Direct Labor. Insituform applied this percentage to the Direct Labor and Setup Labor of $6,070 and calculated overhead of $26,587.

Insituform further determined that 83.8% of overhead for 2005 was variable. Therefore, Insituform applied this percentage to the total overhead of $26,587 and calculated variable overhead of $22,280. Insituform included this amount (rather than the standard overhead amount of $29,386) in its claim. (Bates Nos. ITI-AIG 001946-7)

I reviewed Insituform's overhead calculations and agree that it is appropriate to exclude the fixed portion of the overhead from the claim.

Charles L. Philbrick, Esq.
Page 6 of 8

**CAMPOS&STRATIS**

## SUBCONTRACTORS AND THIRD PARTY INVOICES

**Equipment Rentals** – I reviewed the supporting documentation produced and determined that the claimed amount of $36,976.98 is supported by check stubs and invoices. Of this amount, $984.38 is related to Phase 1, and $35,992.60 is related to Phase 2.

**Per Diem and Lodging** – I reviewed the supporting documentation produced and determined that the claimed amount of $86,440.71 is supported by check stubs, hotel bills, credit card statements and "Supplier Ledger Inquiry" sheets. Of this amount, $66,452.49 is related to Phase 1, and $19,988.22 is related to Phase 2.

**Expendables and Supplies** – Insituform informed us that the cost of expendables and supplies is allocated on a monthly basis, based on the number of actual hours worked on each job. Expendables and supplies include items such as hard hats, gloves and goggles. The costs for these items are charged at a rate of $6 per hour worked.

Phase 1 – Using the $6 hourly rate, Insituform calculated expendables and supplies of $90,392.10 for Phase 1. This amount represents the sum of the monthly Journal Entries made to allocate the expendables and supplies for the months of October 2003 through June 2004 and March 2005 (Bates Nos. ITI-AIG 000916-7).

In order to test that amount I applied $6 to the total hours worked during Phase 1 of 14,752.35 hours and arrived at $88,514.10. There is a difference of $1,878, or 2%, from Insituform's allocated amount of $90,392.10.

As stated above, Insituform analyzed the total equipment burden and expendables and supplies for the New England District for the period from October 2003 through June 2004 and March 2005 (the months during which Phase 1 work was performed) and determined that the costs were over-allocated by 2.25%. Therefore, Insituform adjusted its calculated expendables and supplies of $90,392.10 by 2.25% ($2,034) and calculated expendables and supplies of $88,358.10. I reviewed Insituform's calculation and agree with the adjustment made to account for the over-allocated expendables and supplies.

In addition to these allocated expenses, there is $4,608.71 of additional expenses for which invoices and check stubs were provided. Therefore, the total claimed expendables and supplies is $92,966.81 for Phase 1.

Phase 2 – Using the $6 hourly rate, Insituform calculated expendables and supplies of $31,578 for Phase 2. This amount represents the sum of the monthly Journal Entries made to allocate the expendables and supplies for the months of June through September 2005 and March 2006 (Bates No. ITI-AIG 002133).

In order to test that amount I applied $6 to the total hours worked during Phase 2 of 5,255 hours and arrived at $31,530. There is a difference of $48, or less than 1%, from Insituform's allocated amount of $31,578.

As stated above, Insituform analyzed the total equipment burden and expendables and supplies for the New England District for the period from June 2005 through September

Charles L. Philbrick, Esq.
Page 7 of 8

**CAMPOS&STRATIS**

2005 and March 2006 (the months during which Phase 2 work was performed) and determined that the costs were over-allocated by 8.82%. Therefore, Insituform adjusted its calculated expendables and supplies of $31,578 by 8.82% ($2,785) and calculated expendables and supplies of $28,793 for Phase 2. I reviewed Insituform's calculation and agree with the adjustment made to account for the over-allocated expendables and supplies.

In addition to these allocated expenses, there is $50.54 of additional expenses for which expense reports and check stubs were provided. Therefore, the total expendables and supplies is $28,843.54 for Phase 2.

**Miscellaneous Expenses** – I reviewed the supporting documentation produced and determined that the claimed amount of $358,593.27 is supported by check stubs, expense reports, credit card statements and invoices. Of the amount, $200,950.60 is related to Phase 1 and $157,642.67 is related to Phase 2. The miscellaneous expenses include items such as parts, supplies, FedEx, waste removal, fuel and delivery costs.

**Independent Testing Services** – I reviewed the supporting documentation produced and determined that the claimed amount of $10,475.00 is supported by invoices and check stubs. Of this amount, $9,925.00 is related to Phase 1, and $550.00 is related to Phase 2.

**Field Office Expense** – I reviewed the supporting documentation produced and determined that the claimed amount of $1,077.98 is supported by credit card statements and check stubs. This total amount is related to Phase 1.

**Air Travel** – I reviewed the supporting documentation produced and determined that the claimed amount of $10,812.49 is supported by expense reports, credit card statements and check stubs. Of this amount, $8,998.68 is related to Phase 1, and $1,813.81 is related to Phase 2.

**Meals** – I reviewed the supporting documentation produced and determined that the claimed amount of $2,450.19 is supported by expense reports, receipts, credit card statements and check stubs. Of this amount, $1,332.92 is related to Phase 1, and $1,117.27 is related to Phase 2.

**Subcontractors and Consultants** – I reviewed the supporting documentation produced and determined that the claimed amount of $4,467,931.68 is supported by invoices and check stubs. (I note that the amount reflected on Bates No. ITI-AIG 00002 is actually $4,467,901.68, a difference of $30, which will be explained below.) Of this amount, $3,327,153.85 is related to Phase 1, and $1,140,777.83 is related to Phase 2. Please note that the schedule in Tab D-9 totals $3,327,153.85 (Bates No. ITI-AIG 001784), while the amount brought forward to the total cost summary sheet (Bates No. ITI-AIG 00002) is $3,327,123.85, a difference of $30.

## CLOSE-OUT COSTS

In addition to the claimed incurred costs of $7,134,299.05, there are estimated costs of remaining remediation totaling $264,000 (Tab I) as follows:

Charles L. Philbrick, Esq.  
Page 8 of 8

**CAMPOS&STRATIS**

| | |
|---|---:|
| MWRA City Engineer Costs | $160,000 |
| Haley & Aldrich | 24,000 |
| Trailing Costs | 80,000 |
| Total | $264,000 |

Since these amounts are estimates of future costs, I have not reviewed any supporting documentation to date.

### SUMMARY

As discussed above, I reviewed the claim prepared by Insituform, along with the supporting documentation produced. In my opinion, the claimed costs are adequately supported by documentation. However, as stated above, there are some claimed costs which appear to be fixed in nature. The reparation project would not result in any incremental charges for the fixed costs.

My opinion is based on a reasonable degree of accounting certainty and upon over 50 years of education, experience and training, the last 45 of which I have been a Certified Public Accountant and have virtually limited my practice to the evaluation of property insurance claims on behalf of insurance companies and insureds. I reserve the right to amend this report should additional information or documentation be made available to me.

I have been compensated for my services rendered in this assignment at an hourly rate of $300. My compensation is not contingent on the outcome of this litigation. A copy of my Curriculum Vitae and cases in which I have testified either at trial or in deposition during the last four years are attached.

Very truly yours,

CAMPOS & STRATIS

Chris Campos

# CAMPOS & STRAITS

Schedule 1

## SUMMARY OF CLAIMED REPAIR COSTS

Re: Insituform Technologies, Inc.

| | Phase 1 | | Phase 2 | | Total |
|---|---|---|---|---|---|
| | Section | Amount | Section | Amount | |
| **Payroll & Burden** | | | | | |
| Field Gross Payroll Report | A-1 | $ 514,240.87 | E-1 | $ 190,604.44 | $ 704,845.31 |
| Walkout Gross Payroll | A-4 | 24,996.59 | | | 24,996.59 |
| Labor - Burden and Benefits | A-1 & A-4 | 213,196.48 | E-1 | 65,908.36 | 279,104.84 |
| **Equipment Burden** | A-1 & A-4 | 417,832.49 | E-1 | 109,479.00 | 527,311.49 |
| **Materials - Tube, Resin and Freight** | C-1 | 395,074.52 | G-1 | 106,427.65 | 501,502.17 |
| **Subcontractor and Third Party Invoices** | | | | | |
| Equipment Rentals | D-1 | 984.38 | H-1 | 35,992.60 | 36,976.98 |
| Per Diem and Lodging | D-2 | 66,452.49 | H-2 | 19,988.22 | 86,440.71 |
| Expendable and Supplies | D-3 | 92,966.81 | H-3 | 28,843.54 | 121,810.35 |
| Miscellaneous Expenses | D-4 | 200,950.60 | H-4 | 157,642.67 | 358,593.27 |
| Independent Testing Services | D-5 | 9,925.00 | H-5 | 550.00 | 10,475.00 |
| Field Office Expense | D-6 | 1,077.98 | | | 1,077.98 |
| Air Travel | D-7 | 8,998.68 | H-6 | 1,813.81 | 10,812.49 |
| Meals | D-8 | 1,332.92 | H-7 | 1,117.27 | 2,450.19 |
| Subcontractor and Consultants | D-9 | 3,327,123.85 | H-8 | 1,140,777.83 | 4,467,901.68 |
| **Subtotal** | | $ 5,275,153.66 | | $ 1,859,145.39 | $ 7,134,299.05 |
| **Close-out Costs** | | - | | 264,000.00 | 264,000.00 |
| **Total** | | $ 5,275,153.66 | | $ 2,123,145.39 | $ 7,398,299.05 |