IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INSITUFORM TECHNOLOGIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04 10487 GAO |
| ) | |
| AMERICAN HOME ASSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**INSITUFORM'S REPLY IN SUPPORT OF ITS
MOTION TO CONTINUE THE TRIAL
DATE AND AMEND THE CASE SCHEDULE**

Plaintiff, Insituform Technologies, Inc. ("Insituform") submits this Reply in support of its motion to continue the trial date of February 4, 2008, and to amend the case schedule to allow defendant American Home Assurance Company ("American Home") additional time to conduct discovery concerning the factual basis to Insituform's consequential damages:

**ARGUMENT**

**1. Insituform's Complaint:** American Home starts with the hollow assertion that Insituform "makes no reference to consequential damages" in the complaint. The point is hollow because Insituform was not obligated to plead anything more than: "Insituform has been damaged by American Home's breach." Insituform Complaint ¶ 33.

Massachusetts law puts the issue of refinancing directly at issue in breach of contract cases: "A plaintiff in an action for breach of contract is entitled in general to damages sufficient in amount to compensate him for the loss actually sustained by him, <u>and to put him in as good position financially as he would have been in if there had been no breach</u>." *Buchholz v. Green Bros. Co.*, 272 Mass. 49, 54, 172 N.E. 101, 103 (Mass. 1930)(Emphasis added); *Zichelle v.*

*Parigian*, 2006 WL 4114290, *8 (D. Mass. 2006)(awarding lost rent incurred when financing was delayed as a result of defendants' breach of contract). Thus, the fact that a plaintiff such as Insituform would seek damages in the form of refinancing costs incurred by Insituform as a direct and proximate result of American Home's failure to pay a $6 million dollar covered claim comes as no surprise.

    **2.**    **Insituform's Initial Disclosure and American Home's Discovery:** American Home claims that its discovery requests "encompassed *all* categories of alleged damages Insituform is claiming in this lawsuit." American Home Response ¶ 4 (italics in original). Not so.

Both discovery requests quoted in the Response seek information as to damages "for which Insituform <u>is seeking coverage</u> in this action under the American Home Policy." American Home Response ¶ 4 (Emphasis added). Insituform seeks coverage for the costs associated with the investigation, testing, removal and replacement of the CIPP. Detailed information concerning the covered loss were provided in response to those discovery requests. But damages naturally flowing from the breach, such as refinancing costs, which but for the breach would not have been incurred, are not responsive to the requests cited by American Home.

American Home's discovery requests underscore the parties' intense focus on the amount of the covered loss in this case. This has been true not only of the discovery, but of the extensive motion practice as well. But it is not fair to say that Insituform never raised the subject of damages caused by American Home's wrongful failure to pay. At the onset of this case, Insituform stated in its Rule 26(a)(1) Initial Disclosure that it sought to recover "monetary damages" in the form of (1) "covered losses in excess of American Home's attachment point"

and (2) those suffered as "a consequence of American Home's wrongful denial." Morris Affidavit, ¶ 1 and Exhibit A at ¶ C.

American Home did seek documents concerning the impact its denial had on Insituform. Morris Affidavit Exhibit B.  Specifically, American Home propounded production requests seeking Insituform's communications with its auditors and all of its audited financial reports for 2003, 2004, 2005 and 2006.  In response, on September 29, 2006 Insituform produced over 2,188 pages of documents, including its Form 10-K for each of those years.[1]   What possible relevance could this information have apart from the financial impact American Home's denial had on Insituform?  None.  Thus, American Home's discovery requests evidence American Home's longstanding awareness that damages caused as a result of American Home's failure to pay are at issue.

Most importantly, Insituform's production of its audited financial information sets forth all of the information needed to prove up the refinancing cost-related damages.  Martin Affidavit ¶ 3 and Exhibit B.  For instance, the Form 10-K for 2004 states:

> As a result of the net loss incurred in the fourth quarter of 2004, the Company was out of compliance with the fixed charges coverage ratio under its Series A Senior Notes as of December 31, 2004. The actual fixed charges coverage ratio at December 31, 2004 was 1.64 to 1.0 as compared with the required minimum fixed charges coverage ratio under the Series A Senior Notes of 1.7 to 1.0 at December 31, 2004. The default under the Series A Senior Notes resulted in a cross-default under the Series 2003-A Senior Notes and the bank line of credit facility with Bank of America.

Martin Affidavit ¶ 3 and Exhibit B at I00455.  All of the information as to the refinancing costs are in the Form 10-K for 2004 (for which there is no objection), such as:  the fees paid to obtain

---

[1] American Home has identified as a trial exhibit Insituform's Form 10-K for 2003 as Defendant's Trial Exhibit 24.  Insituform has identified its Form 10-K for 2004 as Plaintiffs Trial Exhibit 14.  Neither party has objected to these trial exhibits.  See Joint Pretrial Memorandum pp. 18 and 24.

3

the default waivers of "$240,000;" the expenses incurred to negotiate the waivers and amendments of "$0.5 million;" the increase in the interest rate on the Series A Notes "from 7.88% to 8.88%" and on the Series A-2003 Senior Notes "from 5.29% per annum to 6.54%." *Id.*[2]  Likewise, the financial information that demonstrates how, but for American Home's breach, Insituform would have had more than sufficient income to meet the minimum "Fixed Charges Coverage Ratio" for the close of fiscal 2004, and thus would have avoided the default, the need to negotiate waivers of the default, and the need for amendments to its notes in March 2005. See Form 10-K for 2004, Martin Affidavit, ¶ 2, and Exhibit B. Thus, Insituform's production of its Form 10-K for 2004 provided American Home with both the "computation and production of documents" American Home claims is required by Rule 26(a)(1)(iii). American Home Response ¶ 10 (italics omitted). The few documents that Insituform produced in conjunction with its Rule 26(a)(3) disclosure add nothing to what has been in American Home's hands since September of 2006.

American Home took the deposition of Insituform's Director of Finance for North America, Larry Mangels, on November 17, 2006.[3] Even though American Home had sought and obtained extensive finance documentation before the deposition, such as the Form 10-Ks for 2003, 2004 and 2005, American Home did not ask Mangels a single question about those documents, nor did American Home mark one as an exhibit until its own Rule 26(a)(3) disclosure. Morris Affidavit, Exhibit C (Mangels Deposition Transcript).

---

[2] These facts appear repeatedly throughout the Form 10-K for 2004. See Martin Affidavit Exhibit B at I 00455, I 00466, I 00489-90, I 00495 and I 00499-500.

[3] American Home took no depositions during discovery, but did notice three depositions, Mangels, Porzio and Campos, in mid-September for the two days immediately preceding the discovery cut off of September 29, 2006. Insituform agreed to produce all of these witnesses after the close of discovery: Mangels on November 17, 2006, Porzio on January 23, 2007 and February 2, 2007 and Campos on May 11, 2007 and January 21, 2008.

4

American Home should not be rewarded for its own failure to conduct the discovery it needed by barring evidence of Insituform's consequential damages, as American Home requests. Rather, American Home's Rule 26 and 37 objections should be limited to the few proposed trial exhibits that were provided to American Home with the Rule 26(a)(3) disclosure. By the pending motion, however, Insituform seeks to ensure the finality of any result reached by the jury at trial by seeking additional time for American Home to finish any discovery it may now regret not taking within the time allowed by the Court.

    **3.**    **The Governing Legal Standards:** American Home twists the case authorities to suggest that the sanction of evidence preclusion is a "near automatic" remedy. American Home Response p.8, ¶ 15. Actually, the Rule 26 Advisory Committee's note states: "the duty [to supplement] will normally be enforced… through sanctions imposed by the trial court, including exclusion of evidence, continuance, or other action as the court may deem appropriate."

The District Court enjoys broad discretion in administering its docket. This discretion encompasses the granting and denial of requests for continuances. *United States v. Saccoccia*, 58 Fed. 3rd 754, 770 (1st Cir. 1995). The District Court has available to it a range of sanctions for the untimely production of discovery material. The First Circuit has noted that "in addressing such matters, trial judges must work a complicated equation, balancing fairness to the parties with the need to manage crowded dockets." The reality here is that a continuance is already a significant sanction against Insituform because it has been seeking redress against American Home since March, 2004. Again, Insituform is willing to endure this "sanction" in order to ensure certainty in the trial result – at least to the extent that it can avoid some future complaint by American Home that it did not have sufficient opportunity to discover what it needed to about Insituform's damages and was therefore unfairly prejudiced at trial.

American Home's own case authorities demonstrate that the sanction of exclusion of evidence is imposed in cases of extreme misconduct conduct that is not even remotely present here. For instance, American Home relies on:

- *Thibeault v. Square D. Company*, 960 F.2d 239 (1st Cir. 1992) where the personal injury plaintiff never disclosed an expert in discovery but three days before trial served a thirty seven page Supplementary Interrogatory Answer that named seven experts and changed the plaintiff's theory of liability from faulty electrical design and deficient guards;

- *Portland National Gas Transmission System v. 4.83 Acres More or Less*, 230 F.3d 1347 2000 WL 1425761 *3 (1st Cir. (N.H.) (Opinion not published) where the plaintiff stated at his deposition that he would "not be quantifying any damages regarding the historic house," but later produced for trial an exhibit "which (did) did quantify damages as to the house;"

- *Klonoski v. Mahlab*, 156 F.3d. 255 (1st Cir. 1998) where on the 13th day of trial during cross-examination of the plaintiff, the defendants disclosed for the first time and used on cross examination letters written by the deceased wife that violated "a court order requiring disclosure of such information prior to trial;"

Unlike the cases cited by American Home, this is not a situation involving repeated continuances, violations of court orders, or abuses of the discovery deadline. There has never been a motion to compel in this case, Insituform has not engaged in contradictory conduct and, as explained in foot note 3 above, Insituform has accommodated American Homes post-discovery cut off depositions without out complaint.

**CONCLUSION**

When all of the circumstances are considered, such as no prior delays, the lack of hardship to the non-movant, and the good faith of the movant, *Amarin Plastics, Inc. v. Marilyn Cup Corp.*, 946 F.2d 147, 151 (1st Cir. 1991), the draconian measure called for by American Home to preclude Insituform from introducing any evidence of damages beyond what American Home owes for the MWRA Claim is simply not appropriate. That result would work a substantial prejudice against Insituform and give American Home a windfall. Rather, the appropriate remedies are to either: (1) allow Insituform to prove up all of its damages based on the existing evidence at a February 4, 2008 trial, but bar the documents disclosed for the first time as part of the Rule 26(a)(3) disclosure; or (2) continue the trial for a brief period to allow American Home an opportunity to take discovery on the issue.

Dated: January 23, 2008                                    Respectfully submitted,

                                                           INSITUFORM TECHNOLOGIES, INC.


                                                           By:    /s/ Charles L. Philbrick
                                                                  Charles L. Philbrick, *pro hoc vice*
                                                                  Holland & Knight LLP
                                                                  131 S. Dearborn St., 30th Fl.
                                                                  Chicago, IL 60603-5547
                                                                  (312) 263-3600

                                                                  and

                                                                  Stanley A. Martin, Esq.
                                                                  Holland & Knight LLP
                                                                  10 St. James Avenue
                                                                  Boston, MA 02116
                                                                  (617) 523-2700

8

**CERTIFICATE OF SERVICE**

      I certify that a true and accurate copy of the following document was served upon the attorney of record for the Defendant by virtue of electronically filing this document with the Court on the 23th day of January, 2008.

INSITUFORM'S MOTION TO CONTINUE<br>
THE TRIAL DATE AND AMEND CASE SCHEDULE

                                             By:    /s/ Charles L. Philbrick
                                                          Charles L. Philbrick
                                                          Holland & Knight LLP
                                                          10 St. James Avenue
                                                          Boston, MA 02116
                                                          (617) 523-2700

# 5074090_v1