UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| INSITUFORM TECHNOLOGIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 04-10487 GAO |
| AMERICAN HOME ASSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) ) ) | |

### AMERICAN HOME ASSURANCE COMPANY'S MOTION *IN LIMINE* TO LIMIT CHRIS CAMPOS' TESTIMONY

### INTRODUCTION

Defendant American Home Assurance Company ("American Home") hereby moves *in limine* to prohibit the introduction of any documents, testimony or other evidence by Chris Campos, CPA, regarding certain costs incurred by Insituform in connection with the MWRA Claim.[1] In particular, American Home moves to exclude testimony by Mr. Campos with respect to whether costs Insituform Technologies, Inc. ("Insituform") incurred prior to December 31, 2003 are recoverable under policies issued by Liberty Mutual or American Home. By his own admission, Mr. Campos is not qualified to interpret insurance policies. American Home also moves to exclude testimony by Mr. Campos regarding areas outside the scope of his retention,

---

[1] American Home reserves its rights to contest Mr. Campos's qualifications, methodologies and the basis of his opinions at trial. See, e.g., Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) (identifying factors for trial courts to consider in qualifying scientific expert witnesses); see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999) (extending Daubert factors to all expert witnesses).

including whether: (1) Insituform's costs were reasonable or necessary; (2) Insituform's remedial and removal/replacement work could have been done more effectively; or (3) Insituform mitigated losses in connection with the MWRA Claim.

## FACTUAL BACKGROUND

Insituform retained Mr. Campos, a certified public accountant, to quantify Insituform's out-of-pocket expenses in connection with Insituform's claim against American Home. See May 11, 2007, Deposition of Chris Campos (the "5/11/2007 Campos Tr."), at 24:15-24, attached as Exhibit 1 to Affidavit of Kurt Mullen (the "Mullen Aff."), submitted herewith. According to Mr. Campos, Mr. Campos has been involved extensively in evaluating insurance claims for approximately 45 years. See Affidavit of Chris Campos, ¶ 2, attached as Exhibit 2 to Mullen Aff.; see also 5/11/2007 Campos Tr. at 27:8-28:3.

In connection with his retention, Mr. Campos reviewed Insituform's costs allegedly related to the MWRA Claim, as selected and organized by Insituform. See 5/11/2007 Campos Tr. at 68:7-17. Mr. Campos also discussed these costs with Insituform management. See May 22, 2006 Report of Chris Campos at 1, Exhibit 2.A to Mullen Aff.

*Mr. Campos originally testified he would quantify Insituform's pre-December 31, 2003 costs*

Although Mr. Campos testified at his May 2007 deposition that he had completed most of his analysis, he clarified that he was conducting a "quantitative" and "qualitative" analysis of the costs that Insituform incurred prior to December 31, 2003, which Insituform alleges are part of its Phase I costs.[2]  5/11/2007 Campos Tr. at 93:22-94:14. Mr. Campos testified that his analysis was related to American Home's argument on summary judgment, which American Home will

---

[2]  Mr. Campos also testified that he was investigating Insituform's estimated close out costs in connection with the MWRA Claim. 5/11/2007 Campos Tr. at 93:13-21.

press at trial, that Insituform improperly included <u>both</u> the costs that Insituform allegedly incurred in its (unsuccessful) repair efforts <u>and</u> its costs allegedly incurred in Insituform's later removal and replacement of the CIPP.[3]  <u>Id.</u> at 70:23-71:24; 94:9-95:9.

Mr. Campos described that his "quantitative" analysis would determine the amount Insituform spent on services rendered or products received prior to December 31, 2003. 5/11/2007 Campos Tr. at 95:17-96:4.  He testified that the "qualitative" analysis would be limited to "talking to the operational people and getting their opinions as to the type of expenditure. . . .  [A]nd how [the expenditure] fits into the [insurance] policy terminology, along with interpretation from counsel."  <u>Id.</u> at 96:5-14.  Mr. Campos stressed that he would not determine whether such costs were recoverable under the Liberty Mutual or American Home policies, testifying that "I'm not doing the qualitative analysis on this.  I'm doing this – someone else – from an operational point of view of the company would be doing this, okay."  <u>Id.</u> at 96:20-97:2.  Regardless of whether Insituform would argue at trial that pre-December 31, 2003 costs are recoverable under the Liberty Mutual policy, Mr. Campos acknowledged that whether such costs are recoverable under the policies "becomes a coverage issue that I am not going to be involved in a coverage area, okay."  <u>Id.</u> at 128:4-8.

In fact, Mr. Campos repeatedly testified that he is not qualified to interpret insurance policies.  5/11/2007 Campos Tr. at 69:24-70:17; 123:13-22.  By way of example, Mr. Campos testified, "I'm asked many times to, at a deposition or trial, to interpret the policy, I do not

---

[3]  The Liberty Mutual Policy's Contractor Rework Coverage Amendment (to which the Court concluded American Home follows form) provides coverage for the *lesser* of: "1.  Your actual cost of removing and replacing any of the above items; or 2.  Your actual cost of remedial action taken to avoid removal or replacement of such products."

interpret the policy, that's left to either a licensed adjuster or to an attorney who are licensed to interpret the policies." Id. at 74:2-6.

Mr. Campos further testified, however, that he did not need to review insurance policy language in order to determine costs covered under a policy. Rather, he stated that he was knowledgeable of the "custom and practice" of what liability and property policies cover. 5/11/2007 Campos Tr. at 72:11-73-11.

*Mr. Campos later testified that Insituform's pre-December 31, 2003 costs<br>are recoverable under the policies*

In response to American Home's request for Mr. Campos' supplemental reports and related exhibits or documents, Insituform's counsel informed American Home that "Mr. Campos has concluded his review of the pre-December 31, 2003 costs and in light of that review he *does not intend to change his opinions, i.e., those costs remain properly included in the compensable loss*." See Exhibit 3 to Mullen Aff. (emphasis added).

Given this apparent change of position regarding Mr. Campos' ability to make coverage determinations, American Home deposed Mr. Campos on Monday, January 21, 2008. At this deposition, Mr. Campos confirmed that he conducted a "quantitative" analysis of Insituform's pre-December 31, 2003 costs based on his review of the invoices reflecting services rendered or products received prior to that date. See January 21, 2008, Deposition of Chris Campos (the "1/21/2008 Campos Tr."), at 10:12:11-10, attached as Exhibit 4 to Mullen Aff.

Contrary to his May 2007 testimony, Mr. Campos testified that he alone conducted a "qualitative" analysis, recalling that he relied solely on the deposition testimony of Thomas Porzio, Insituform's site manager for the East Boston project. See 1/21/2008 Campos Tr. at 28:17-31:10. Mr. Campos conceded, however, that his analysis of such costs did not affect or

change any of his prior opinions.  Id. at 32:7-10.  Mr. Campos also reconfirmed that he was not qualified to interpret insurance policies:

> **Q.   Okay, but you had testified before, sir, that you are not qualified to give opinions about coverage; is that correct?**
>
> A.   I – what I testified before was that I don't interpret the policy because I'm not licensed to do that.  You either need to be a licensed adjustor as I understand it or an attorney to interpret the policy and I don't interpret policies, legally or illegally.

Id. at 34:21-35:4; see also 32:11-21; 35:14-18.  Mr. Campos also conceded that determining whether certain costs are recoverable is a matter of policy interpretation.  Id. at 33:2-6; 34:4-10; 55:1-23.

Although Mr. Campos conceded that he was not qualified to interpret policies, he nonetheless testified that he knows what categories of costs are generally covered under an insurance policy based on "custom and practice."  See 1/21/2008 Campos Tr. at 34:11-16; 35:19-23.  As a general matter, Mr. Campos testified that his knowledge of custom and practice is based on his experience working with insurance adjustors in adjusting claims, at settlement conferences and in "very, very few litigation cases."  Id. at 37:12-22; see also 38:3-6; 40:22-41:4.  Mr. Campos also testified that while he does not know whether other forensic accountants rely on written guidelines to evaluate liability claims, he does not.  Id. at 37:23-38:19.

With respect to the MWRA Claim, Mr. Campos testified that "custom and practice" included relying on Liberty Mutual's coverage determination.  1/21/2008 Campos Tr. at 37:7-11.  While Mr. Campos conceded that specific policy language would govern what is recoverable under a policy "in a literal sense," he claimed that actual claim adjustment could trump plain language.  Id. at 45:12-46:6.  Mr. Campos further testified that he relied on Liberty Mutual's

"letter explaining their interpretation of this [policy] and their ultimate decision to pay their limit of liability minus the – above the deductible" to determine what was covered under the Liberty Mutual Policy. Id. at 47:7-15; see also 47:25-48:7.[4] Mr. Campos later claimed that Insituform's pre-December 31, 2003 costs were related to investigating and testing whether the CIPP should be repaired or replaced, which Mr. Campos also alleged are covered under "custom and practice," not the Liberty Mutual Policy terms. Id. at 53:11-54:11.

*Other limitations on Mr. Campos' retention*

Mr. Campos testified that his assignment did not include an analysis of whether the costs that Insituform incurred were reasonably related to the remediation, whether they were reasonable and necessary, or whether they could have been done more effectively by another method. 5/11/2007 Campos Tr. at 76:19-77:24; 129:4-131:9. Additionally, Mr. Campos testified that his assignment for Insituform did not include an analysis of whether Insituform mitigated losses in connection with the MWRA Claim. Id. at 79:18-80:2; 80:17-22; 109:4-8; 191:10-19.

**ARGUMENT**

Mr. Campos is not qualified to offer an opinion as to whether the costs Insituform incurred prior to December 31, 2003 are covered under the Liberty Mutual or American Home policies. Furthermore, Mr. Campos was not retained to offer an opinion as to whether Insituform's costs allegedly incurred in connection with the MWRA Claim were reasonable and necessary, or whether Insituform mitigated its costs. Because Mr. Campos' testimony on these

---

[4] Mr. Campos conceded that the plain language of the "lesser of" language in the Liberty Mutual Policy's Contractor Rework Coverage Amendment should mean that Liberty Mutual would pay "the lesser of the two items" – repair or replacement. 1/21/2008 Campos Tr. at 52:4-8.

- 7 -

subjects would not assist a trier of fact understand the evidence or determine a fact in issue, or would confuse the jury and unfairly prejudice American Home, this Court should exclude Mr. Campos's testimony as to these subjects.

Federal Rule of Evidence 702 permits a witness who has been "qualified as an expert by knowledge, skill, experience, training, or education" to testify regarding "scientific, technical, or other specialized knowledge" only where "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case," so long as such testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Under Rule 403, a Court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."

Notwithstanding Mr. Campos' alleged familiarity with insurers' "custom and practice," it is well-settled that "provisions [that] are plainly and definitely expressed in appropriate language must be enforced according to [their] terms." Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982) (citations omitted); see also Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844, 849 (1993) ("We read the policy as written.  We are not free to revise it or change the order of the words") (internal quotation marks and citation omitted); Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, 300 F. Supp. 2d 888, 893 (E.D. Mo. 2004) ("In construing the terms of an insurance policy, I must give the words their plain meaning, consistent with the . . . intent of the parties") (internal quotation marks and citation omitted). Likewise, "where the policy's language is plain, we interpret and enforce it according to the ordinary meaning of the words contained in the policy's provisions." Stop & Shop Cos., Inc. v.

Federal Ins. Co., 136 F.3d 71, 73 (1st Cir. 1998) (citations omitted); see also Newyear v. Church Ins. Co., 155 F.3d 1041, 1043 (8th Cir. 1998) ("Words in an insurance contract are to be given their plain and ordinary meaning.") (citation omitted). Policy considerations cannot control the interpretation of unambiguous insurance contracts, only the language can. See Rubenstein v. Royal Ins. Co. of Amer., 44 Mass. App. Ct. 842, 851 (1998). Moreover, an insurance policy must be construed in accordance with all of its terms; a court cannot ignore certain provisions of a policy to achieve a desired result. See id.; Falmouth Nat'l Bank v. Ticor Title Ins. Co., 920 F.2d 1058, 1061 (1st Cir. 1990) ("[W]henever possible, each word in an insurance policy should be considered and given some meaning") (citation omitted); Aetna Cas. & Sur. Co. v. General Dynamics Corp., 968 F.2d 707, 710 (8th Cir. 1992) ("Missouri law requires all terms of an insurance contract be given meaning") (citation omitted).

Furthermore, "[t]he responsibility of construing the language of an insurance contract is a question of law for the trial judge . . . ." Cody, 387 Mass. at 146 (citations omitted); Universal Underwriters Ins. Co., 300 F. Supp. 2d at 893 ("Interpretation of an insurance policy is a question of law").

Mr. Campos repeatedly testified that he does not have the training or education to testify regarding insurance policy interpretation. Fed. R. Evid. 702. Because Mr. Campos is not qualified to offer an opinion as to insurance policy coverage, any "expert" testimony he could offer on this subject would confuse the jury and unfairly prejudice American Home. Fed. R. Evid. 403. Not only is Mr. Campos not qualified to offer such an opinion, Rules 701, 702 and 403 are designed to guard "against the admission of opinions which merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day." Fed. R. Evid. 704 Advisory Committee Note (1972). Additionally, Mr. Campos should not be allowed to testify

concerning a question of law that is for the Court to decide. <u>See</u> 3 Stephen A. Saltzburg, et al., <u>Federal Rules of Evidence Manual</u> § 702.02[15]. Accordingly, this Court should prohibit Mr. Campos from offering any testimony as to whether Insituform's costs prior to December 31, 2003 are recoverable under the Liberty Mutual or American Home policies.[5]

Even if this Court qualifies Mr. Campos as an expert with respect to quantifying costs presented to him by Insituform, this Court should exclude any proffered testimony beyond the scope of his retention. "[E]ven though a proposed witness might possess credentials to render some expert opinions, the trial court may, and perhaps *must*, exclude on grounds of disqualification any testimony that extends beyond the witness's demonstrated expertise." 4 <u>Weinstein's Federal Evidence 2d ed.</u> § 702.04[6] (Hon. Joseph M. McLaughlin ed., 2007) (emphasis added); <u>see</u> <u>also</u> <u>Levin v. Dalva Brothers, Inc.</u>, 459 F.3d 68, 78-79 (1st Cir. 2006) (affirming trial court's limitation of expert testimony to certain issues where other proffered subjects were outside scope of expertise). As a result, this Court should exclude Mr. Campos' testimony on any issues that are outside the scope of his expertise or retention, including, not only his interpretation of recoverable costs under the Liberty Mutual or American Home policies, but also whether: (1) Insituform's costs were reasonably related to the remediation; (2) such costs were reasonable and necessary; (3) Insituform's remedial and removal/replacement work

---

[5] American Home also is not bound by coverage determinations made by Liberty Mutual in adjusting this loss. In <u>Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London</u>, 449 Mass. 621, 633 (2007), the Massachusetts Supreme Judicial Court concluded that even insurers who issue a pure "follow form" policy are entitled to make an independent determination as to what is covered under the underlying primary policy. Accordingly, Mr. Campos' reliance on Liberty Mutual's coverage determination and adjustment of the MWRA Claim is not relevant as to whether Insituform's costs are covered under the American Home Policy. Fed. R. Evid. 402. Not only is such evidence irrelevant, any testimony by Mr. Campos as to Liberty Mutual's adjustment of the claim will unfairly prejudice American Home and confuse the jury. Fed. R. Evid. 403.

could have been done more effectively by another method; or (4) Insituform mitigated losses in connection with the MWRA Claim.

## CONCLUSION

For the foregoing reasons, American Home respectfully requests that this Court enter an order:

(1) Prohibiting the introduction of any documents, testimony or other evidence by Mr. Campos concerning whether:

    (a) certain costs, including but not limited to costs incurred by Insituform prior to December 31, 2003 are recoverable under the Liberty Mutual or American Home policies;

    (b) the costs that Insituform incurred were reasonably related to the remediation;

    (c) whether such costs were reasonable and necessary;

    (d) whether Insituform's remedial and removal/replacement work could have been done more effectively by another method; or

    (e) whether Insituform mitigated losses in connection with the MWRA Claim.

(2) Granting such other further relief as this Court deems just and proper.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), American Home requests a hearing on this motion and believes that oral argument will assist the Court.

10870536.2

## LOCAL RULE 7.1(A) CERTIFICATION

By signing below, the undersigned certifies that he has conferred in good faith with counsel for plaintiff in a good faith effort to resolve or narrow the issue presented by this motion.

        Respectfully submitted,

        AMERICAN HOME ASSURANCE COMPANY,

        By its attorneys,

        /s/ Kurt M. Mullen
        Gregory P. Deschenes (BBO #550830)
        gdeschenes@nixonpeabody.com
        Gregg A. Rubenstein (BBO #639680)
        grubenstein@nixonpeabody.com
        Kurt M. Mullen (BBO #651954)
        kmullen@nixonpeabody.com
        NIXON PEABODY LLP
        100 Summer Street
        Boston, Massachusetts  02110
        (617) 345-1000
        (617) 345-1300 (facsimile)

Dated:  January 25, 2008

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon all parties registered for electronic notification via the Court's electronic filing system on January 25, 2008.

        /s/ Kurt M. Mullen
        Kurt M. Mullen

10870536.2