**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| INSITUFORM TECHNOLOGIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04 10487 GAO |
| ) | |
| AMERICAN HOME ASSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**INSITUFORM'S MEMORANDUM REGARDING THE AMOUNT OF PREJUDGMENT INTEREST TO BE AWARDED**

Plaintiff, Insituform Technologies, Inc. ("Insituform"), by its attorneys, submits this Memorandum of Law in support of a 12% prejudgment interest award, calculated from the date on which American Home had the obligation to pay (January 1, 2004). More specifically, Insituform asks this Court to enter an Order awarding Insituform $6,054,899 (the amount of damages already stipulated by defendant American Home Assurance Company), plus prejudgment interest in the amount of $2,752,960 and any additional recoverable costs.

**I.    BACKGROUND.**

On February 4, 2008, this insurance coverage case was set for jury trial on the issue of damages. On the eve of trial, defendant American Home Assurance Company ("American Home") threw in the towel. Trial counsel for American Home stated on the record American Home's intention to stipulate to a judgment in the amount of $6,054,899, the full amount of damages that Insituform intended to seek from the jury. Joint Pretrial Memorandum at p. 3. In

so doing, the jury trial was mooted and the only issue remaining is the calculation of prejudgment interest.[1]

## II.    PREJUDGMENT INTEREST.

### A.    Interest Began To Run On January 1, 2004.

The parties dispute which state's law should apply to dictate the applicable rate of prejudgment interest in this case.  Under the laws of both Massachusetts and Missouri, however, prejudgment interest begins to accrue when the money becomes due and payable by the insurer, pursuant to the terms of the insurance contract.  *Commercial Union Assurance Co. of Australia, Ltd. v. Hartford Fire Ins. Co.,* 86 F. Supp.2d 921, 932 (E.D. Mo. 2000); *Sterilite Corp. v. Continental Cas. Co.*, 494 N.E.2d 1008, 1011 (Mass. 1986).

Here, the American Home Policy states clearly that it is obligated to pay when the Retained Limit is satisfied.  Specifically, Condition P of the policy determines when loss is payable:

> When Loss Is Payable
>
> Coverage under this policy will not apply unless and until the Insured or the Insured's underlying insurer is obligated to pay the Retained Limit.

Complaint, Exhibit B at I 00120.  The policy defines "Retained Limit" to be $1,000,000.  *Id.* at I 00108.

American Home's "When Loss Is Payable" provision does not make <u>payment</u> by either the insured or the underlying insurer a condition precedent to its own obligation to pay.  Rather, payment by American Home is owed as soon as Insituform (the Insured) "is <u>obligated</u> to pay the

---

[1] An insured such as Insituform recovers prejudgment interest in insurance cover disputes.  MASS. GEN. LAWS ANN. 231 § 6C (West 2007); MO. ANN. STAT. § 408.020 (West 2007); *Liberty Mut. Ins. Co. v. Continental Cas. Co., Ill* F.2d 579 (1st Cir. 1985); *New York Life Ins. Co. v. Griesedieck,* 116 F.2d 559 (6th Cir. 1941).

2

Retained Limit." Thus, the loss became payable by American Home as soon as Insituform was obligated to pay more than $1,000,000.

The evidence shows that Insituform was obligated to pay over $1,000,000 no later than December 31, 2003. Attached to this Memorandum is a copy of the spreadsheet prepared by Insituform's Director of Finance, Northern American, Larry Mangels. The spreadsheet reflects the amount and timing of the costs that Insituform incurred with respect to the MWRA claim. Mangels Affidavit ¶¶ 24-28. The costs are adjusted to reflect only those costs recoverable under the Liberty Mutual and American Home policies. Based on Mr. Mangel's analysis, it is evident that Insituform was obligated to pay costs associated with the MWRA claim in excess of $1 million no later than December 31, 2003.

Similarly, Insituform's expert witness, Chris Campos, prepared a summary of the claimed loss that accrued both before and after December 31, 2003 as part of his analysis as to whether pre-December 2003 costs were properly included.[2] Philbrick Affidavit, Exhibit 1 attaching Campos Deposition pp. 12-14 and Campos Deposition Exhibit 14. Campos' summary indicates that the total costs incurred by Insituform through December 31, 2003 were $1,232,276.88. *Id*.

Campos' analysis of the costs incurred by Insituform with respect to the MWRA claim substantiates the data provided by Mr. Mangels from Insituform's accounting system. Therefore, prejudgment interest should start running on January 1, 2004.

**B.     Massachusetts Law Should Dictate The Applicable Prejudgment Interest Rate.**

With respect to the award of prejudgment interest, Massachusetts law and Missouri law differ as to the rate of prejudgment interest to be applied. Massachusetts applies prejudgment

---

[2] Insituform allowed American Home to conduct a second deposition of Mr. Campos on January 21, 2008 concerning Mr. Campos' opinion that Insituform's costs incurred between October 2, 2003 and December 31, 2003 were properly included in the amount of the loss. During that deposition, American Home marked Mr. Campos' spreadsheet concerning the pre December, 2003 costs as Campos Deposition Exhibit 14.

3

interest at the rate of twelve percent per annum (12%) in breach of contract claims, MASS. GEN. LAWS ANN. 231 § 6C, while Missouri applies a rate of nine percent (9%). MO. REV. STAT. § 408.020.  This difference as to the interest rate requires the Court to perform a choice of law analysis.[3]

A federal court with diversity jurisdiction must apply the conflict-of-law rules of the state in which it sits, in this case Massachusetts.' *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1942); *OneBeacon Ins. Co. v. Georgia-Pacific Corp.*, 376 F. Supp. 2d 10, 11 (D. Mass. 2005).

### 1. Liberty Mutual Contract Defines Relationship With Massachusetts and Missouri.

On the issue of prejudgment interest in contract cases, Massachusetts law dictates that where there is disagreement among the parties, the law "governing rights and duties under the contract" will also govern prejudgment interest. *Tiverton Power Assocs. Ltd. P'Ship v. Shaw Group, Inc.*, 376 F. Supp. 2d 21, 27 (D. Mass. 2005). The circumstances here beg an important preliminary question: which contract?

As the Court is aware, this case involves two contracts: the primary policy issued by Liberty Mutual, and the umbrella policy issued by American Home. Both the primary policy's Contractors Rework Coverage Amendment and the American Home "Contractor's Amendment" have been the subjects of interpretation. The American Home policy does not "adopt and incorporate" the terms of the Liberty Mutual Contractor Rework Coverage Amendment. Instead, it "follows form" to the underlying contractor rework coverage. Accordingly, the necessary conflict of law analysis should flow from the Liberty Mutual primary policy and not the American Home umbrella policy.

---

[3] Recovery of prejudgment interest under a state law cause of action brought in a federal court is governed by state law. *Mill Pond Assocs., Inc. v. E & B Giftware, Inc.*, 751 F. Supp. 299, 300 (D. Mass. 1990).

4

**2.     Conflict Of Law Analysis Tips In Favor Of Massachusetts.**

"Massachusetts has adopted a functional choice-of-law approach" that is "explicitly guided by the Restatement (Second) of Conflicts of Laws (1971)." *Clarendon Nat'l Ins. Co. v. Arbella Mutual Ins. Co.*, 60 Mass. App. Ct. 492, 495, 803 N.E.2d 750, 752 (2004). Under the Restatement, the rights created by a contract of insurance are to be determined by the local law of the state that the parties to the insurance policy understood would be the principal location of the insured risk during the term of the policy, unless another state has a more significant relationship under the principles of § 6 of the Restatement. RESTATEMENT (SECOND) OF CONFLICTS OF LAW (1971) § 193. However, where the insured risk is transient or where the policy covers multiple risks that are scattered among several states, the presumption loses its strength and the general principles of conflict-of-law apply. *Id.*, comment a.

Where, as here, the presumption of § 193 loses its strength, the courts in Massachusetts will look to the general choice-of-law principles set forth in §188 and §6 of the Restatement. *Clarendon Nat'l Ins. Co.*, 60 Mass. App. Ct. at 497, 803 N.E.2d at 753 (citing RESTATEMENT (SECOND) CONFLICTS OF LAWS § 193). With respect to a contract issue, section 188 provides that the rights and duties of the parties should be determined by the law of the State with the most significant relationship to the transaction and parties. *Id.*; RESTATEMENT (SECOND) CONFLICTS OF LAWS § 188. "[P]articularly close attention [should] be given to (1) the protection of the parties' justified expectations; and (2) the purpose sought to be achieved by the contract, the rules of the interested States and the relation of each of these States to the parties and the transaction." *Id.*

The relevant policies of the forum (Massachusetts) and the interested States (Massachusetts and Missouri) are the same here. The purpose of the Massachusetts statutory

provision permitting prejudgment interest is "to compensate a damaged party for the loss of use or unlawful detention of money." *Spiritual Trees v. Lamson & Goodnow Mfg. Co.*, 424 F. Supp.2d 298, 301 (D. Mass. 2006).

Prejudgment interest in Missouri is similarly granted "to promote settlement of lawsuits and fully compensate plaintiffs by accounting for the time-value of money." *Children Int'l v. Ammon Painting Co.*, 215 S.W.3d 194, 203 (Mo. Ct. App. 2006). Thus, the purpose of the contract and the rules of the interested States does not determine whether Massachusetts' or Missouri's law should apply.

Likewise, the candidate states' relationships to the transaction are the same. While Insituform is headquartered in Missouri, its New England operations are headquartered in Massachusetts. Mangels Affidavit ¶ 34. Liberty Mutual is headquartered in Massachusetts, and American Home is a New York Company that underwrote its policy in Georgia. Complaint, Exhibit A and Joint Pretrial Memorandum pp. 7 and 16. Thus, no state has a superior relationship to the parties or to the transaction. As a result, the parties' justified expectations are paramount and clearly warrant the application of Massachusetts law.

The Liberty Mutual policy contains several endorsements that evidence an expectation that the law of the location of the risk would govern the contract. Complaint, Exhibit A at I 00062, I 00074, I 00075-76, I 00077, I 00078, I 00079, I 00089 and I 00092. For instance, endorsement No. 39 is titled "STATE OF MINNESOTA GOVERNMENTAL IMMUNITIES ENDORSEMENT (For use when Including City as an Additional Insured)." Endorsement No. 15 is titled "TEXAS CHANGES - EMPLOYMENT RELATED PRACTICES EXCLUSION." Complaint Exhibit A at I 00062 and 92. These endorsements alter the terms of the contract depending upon the location of the insured risk. By including these jurisdiction specific

6

endorsements, the parties must have anticipated that the laws of various states would apply to the contract depending upon the location of the risk.

Accordingly, the parties would expect Massachusetts law to govern a claim brought by a Massachusetts municipality (the MWRA) against a contractor with regional base in Massachusetts involving insurance by Liberty Mutual, a Massachusetts company headquartered in Boston, regarding an insured risk that was located in Massachusetts. By comparison, the connections to Missouri are trivial.

Since "protection of the justified expectations of the parties 'is the basic policy underlying the field of contracts,'" and because the contracts demonstrate that the parties justifiably expected the law of the location of the insured risk to apply, then Massachusetts law applies to the MWRA claim and Massachusetts' rate of pre-judgment interest (12%) should apply.

### C.   The Prejudgment Interest Calculation

Ordinarily, calculation of the amount of prejudgment interest is left to the Clerk of the Court. Here, information concerning the timing, rate and calculation of prejudgment interest is sufficiently cumbersome that the parties have submitted what they believe to be the appropriate method of calculation. *See* Exhibits 1, 2, 3 and 4 to the Affidavit of Larry Mangels.

As set forth above, Insituform maintains that in light of American Home's "When Loss Is Payable" provision, prejudgment interest started to run when Insituform was obligated to pay more than $1 million with respect to the MWRA claim. Insituform further contends that Massachusetts 12% prejudgment interest rate should apply. Using these two criteria, Insituform's Director of Finance for North America has prepared a spreadsheet that reflects Insituform's costs for the MWRA claim, by month, starting in October of 2003 and running through the present. Mangels Affidavit ¶¶ 24-28 and Exhibit 6.

7

As laid out in Exhibit 6 of Mangels Affidavit, the total amount of prejudgment interest due Insituform as of the end of February 2008 is $2,752,960. Interest will continue to accrue at a rate of $60,549 per month until a final judgment is entered.

## III.    CONCLUSION.

For all of the foregoing reasons, Insituform respectfully requests that this Court enter judgment in its favor, and against American Home, and award to Insituform the stipulated damages of $6,054,899, plus prejudgment interest in the amount of $2,752,960 (and continuing to accrue at a rate of $60,549 per month) as of February 29, 2008. Insituform further requests an award of costs and such other relief as this Court deems just and proper.

Dated:  February 25, 2008                    Respectfully submitted,

INSITUFORM TECHNOLOGIES, INC.


By:    /s/ Charles L. Philbrick
       Charles L. Philbrick, *pro hoc vice*
       Holland & Knight LLP
       131 S. Dearborn St., 30th Fl.
       Chicago, IL 60603-5547
       (312) 263-3600

       and

       Stanley A. Martin, Esq.
       Holland & Knight LLP
       10 St. James Avenue
       Boston, MA 02116
       (617) 523-2700

8

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the following document was served upon the attorney of record for the Defendant by virtue of electronically filing this document with the Court on the 25th day of February, 2008.

INSITUFORM'S TRIAL BRIEF

> By:   /s/ Charles L. Philbrick
> Charles L. Philbrick, *pro hoc vice*
> Holland & Knight LLP
> 131 S. Dearborn St., 30th Fl.
> Chicago, IL 60603-5547
> (312) 263-3600
>
> and
>
> Stanley A. Martin, Esq.
> Holland & Knight LLP
> 10 St. James Avenue
> Boston, MA 02116
> (617) 523-2700

# 5140964_v2