IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INSITUFORM TECHNOLOGIES, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AMERICAN HOME ASSURANCE COMPANY, )<br>)<br>Defendant. ) | Case No. 04 10487 GAO |

## AFFIDAVIT OF LARRY MANGELS

I, Larry Mangels, being duly sworn do hereby depose and state:

1.    I am the Director of Finance, North America for Insituform Technologies, Inc. ("Insituform") and have been responsible or gathering and maintaining the records associated with Insituform's costs for the remediation, removal and replacement of the cured in place pipe ("CIPP") for the MWRA claim. The following is based on personal knowledge and is true and correct to the best of my understanding. If called as a witness in this case, sworn under oath and subject to the penalty of perjury, I would testify as follows:

2.    Beginning in October 2003, Insituform incurred costs associated with the removal and replacement the 4,500 feet of the CIPP installed in the MWRA's East Boston Branch Service ("EBBS") ("Phase 1"). The costs associated with Phase 1 were incurred between October 2003 and June 2004.

3.    Cost associated with Phase 2 removal and replacement of the EBBS were incurred from April through October of 2005.

4. Within the finance department at Insituform, the EBBS project is referred to for record keeping purposes as Boston Project 160241.

5. At my direction and supervision, the back up documentation evidencing all of Insituform's costs for Phase 1 and Phase 2 was gathered, organized, summarized and then provided to Insituform's insurance carriers, Liberty Mutual Fire Insurance Company ("Liberty Mutual") and American Home Assurance Company ("American Home") (hereinafter Insituform's "Backup Documentation").

6. The Backup Documentation provided to American Home was marked ITI-AIG 000001 through ITI-AIG 002608 and consists of four (4) three-ringed notebook binders.

7. I maintain the Backup Documentation in my office at Insituform.

8. The Backup Documentation is organized into five general categories of cost: Payroll & Burden; Equipment and Expendable Supplies; Materials; Subcontractor and Third Party Invoices; and Close Out Cost.

9. The records evidencing Insituform's Payroll & Burden for Phase 1 and Phase 2 consist of payroll records, which are records that Insituform regularly generates and maintains in the course of its business. See Exhibit 1, Tab A and Exhibit 4, Tab E.

10. The records evidencing Insituform's Equipment and Expendable Supplies for Phase 1 and Phase 2 consist of an equipment cost calculation, which are records that Insituform regularly generates and maintains during the course of its business. See Exhibit 1, Tab B and Exhibit 4, Tab F.

11. The records evidencing Insituform's Materials for Phase 1 and Phase 2 consist of internal charges for dry tube and resin costs, which are records that Insituform regularly

2

generates and maintains during the course of its business. See Exhibit 2, Tab C and Exhibit 4, Tab G.

12. The records evidencing Insituform's cost for subcontractor and third party invoices for Phase 1 and Phase 2 consist of invoices and Insituform check stubs, which are records that Insituform regularly receives, generates and maintains during the course of its business. See Exhibit 2 and 3, Tab D and Exhibit 4, Tab H.

13. The records that evidence Insituform's Closeout Costs for Phase 2 consist of invoices and check stubs, which are records that Insituform regularly receives, generates and maintains during the course of its business. See Exhibit 4, Tab I.

14. True and correct copies of the Backup Documentation are attached hereto as Exhibits 1, 2, 3 and 4.

15. The records contained in Exhibits 1, 2, 3 and 4 were prepared by persons with knowledge of the circumstances, acts or events appearing in them.

16. The records contained in Exhibits 1, 2, 3 and 4, such as the payroll records, the equipment cost allocation, the internal charges for dry tube and resin costs, the invoices and check stubs, were created at or near the time of the circumstances, acts, or events appearing in them.

17. It is Insituform's regular practice to make and/or maintain the records contained in Exhibits 1, 2, 3 and 4.

18. The Backup Documentation as contained in Exhibits 1, 2, 3 and 4 have been kept in the ordinary course of the regularly conducted business activities of Insituform.

19.	My deposition was taken in this case. During my deposition, Insituform was asked by American Home's counsel to gather all check stubs evidencing payment to D'Allessandro, one of Insituform's subcontractors that performed the bypass pumping for the MWRA claim.

20.	I gathered all of the D'Allessandro invoices and Insituform check stubs evidencing payment to D'Allessandro for EBBS project 160241 and prepared a summary spreadsheet that delineates the D'Allessandro invoice number, the date of payment by Insituform, the service period by D'Allessandro, the amount of the invoice, the amount of each individual payment by Insituform, and the balance due.

21.	My summary and the accompanying documentation of the D'Allessandro costs were marked I 00164 through I 00197 and a true and correct copy of such documentation is attached as Exhibit 5.

22.	Insituform maintains a general ledger accounting system using a software package known as JD Edwards.

23.	Insituform records all of its costs on an accrual basis within the JD Edwards system using records such as those contained in the Backup Documentation.

24.	Attached as Exhibit 6 is a true and correct copy of a spreadsheet that I prepared. The first column, titled "Total Job Cost," shows all of the costs for Boston project 160241 on a monthly basis as recorded in the JD Edwards system.

25.	The total cost for the Boston project 160241 to Insituform as reflected in the JD Edwards system is $7,853,452. The total amount of cost Insituform sought to recover against American Home and Liberty Mutual was $7,054,899.69. The total cost for the project 160241 as

4

recorded in JD Edwards is approximately $800,000 higher than the recoverable costs because Insituform recorded in JD Edwards some fix costs that Insituform's accounting expert, Chris Campos, removed from the recoverable loss amount.

26. For the purpose of determining the amount of interest on Insituform's cost for Boston project 160241, I adjusted the monthly cost as recorded in JD Edwards based on the percentage of 89%, which reflects the percentage difference between the recoverable cost and the actual cost as maintained in JD Edwards, so that the monthly costs are a percentage of recoverable damages and total $7,054,899.69.

27. The third column of Exhibit 6 represents the cumulated costs as adjusted in the second column. The fourth column shows the timing and amount of the payments made by the primary carrier, Liberty Mutual and the fifth column, titled "Net Outflow," reflects those payments.

28. The last two columns, titled "Monthly Int Rate @ 9.0%" and "Monthly Int Rate @ 12.0%" show the amount of interest accrued for the given month based on the amount in the Net Outflow column.

29. Insituform records costs on an accrual basis, so that costs are recognized in the month in which the service was performed and Insituform is obligated to pay the cost item.

30. Some of the costs in the Backup Documentation are recorded within the JD Edwards system upon actual payment by Insituform. Those costs include payroll, certain labor-burden and benefits, certain material costs and certain closeout costs.

31. Some of the costs in the Backup Documentation are actually paid by Insituform after the cost are incurred and recorded within the JD Edwards system. For instance, cost

associated with D'Allessandro invoices are recorded within the JD Edwards system in the month in which the service was provided but paid afterword.

32. Exhibit 5 demonstrates that Insituform usually paid D'Allessandro within thirty days of the invoice date.

33. The Backup Documentation demonstrates that Insituform generally paid all of the cost within thirty days of Insituform incurring the obligation to pay.

34. While the work was ongoing, Insituform organized its North American operations on a regional basis. Massachusetts was included within its New England region. Insituform's New England region headquarters was located at Charleston, Massachusetts.

Signed under the pains and penalties of perjury this 25th day of February 2008.

By: _____
Larry Mangels

Subscribed and Sworn
Before me this 25th
Day of February, 2008

_____
Notary Public

JANA LAUSE
Notary Public - Notary Seal
State of Missouri
St. Louis County
My Commission Expires Dec. 6, 2009
Commission # 05805615

# 5143575_v1