UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| INSITUFORM TECHNOLOGIES, INC., | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. 04-10487 GAO |
| AMERICAN HOME ASSURANCE COMPANY, | ) |
| Defendant. | ) |

**AMERICAN HOME ASSURANCE COMPANY'S MEMORANDUM ADDRESSING CHOICE OF LAW AND PREJUDGMENT INTEREST CALCULATION ISSUES**

### INTRODUCTION

Pursuant to the Court's February 1, 2008 Order, defendant American Home Assurance Company ("American Home") hereby submits this memorandum addressing the choice of law and related prejudgment interest issues that the parties have been unable to resolve by agreement.

As set forth more fully below, because the undisputed facts demonstrate that the parties intended Missouri law to apply, this Court should rule that the Missouri prejudgment interest statute, Missouri Revised Statute § 408.020, applies to recovery by Insituform Technologies, Inc. ("Insituform") for the MWRA Claim. In addition, based on the undisputed facts and applicable law, this Court should rule that (1) prejudgment interest did not begin to run until Insituform's claim became liquidated, on or about April 7, 2006; (2) alternatively, prejudgment interest did not begin to run until December 13, 2004, at the earliest, when the primary insurer, Liberty Mutual, paid the claim and the underlying policy limit was exhausted; (3) prejudgment interest

runs from the dates when Insituform paid the costs at issue, not the dates when such costs accrued or when Insituform received invoices for such costs; and (4) American Home is entitled to a credit for the full amount of Liberty Mutual's $1 million policy limit up front before any prejudgment interest is calculated against American Home, because American Home could not be liable under its policy unless and until the underlying insurer had been obligated to pay $1 million in costs.

## STATEMENT OF FACTS

The parties have stipulated to the following facts relevant to the Court's choice of law and prejudgment interest determinations:

### *Facts Relevant to Choice of Law Determination*

1.    In August 2003, Insituform performed sewer rehabilitation work valued at $1,000,000 for the Massachusetts Water Resources Authority ("MWRA") pursuant to Contract #6840.  (Joint Pretrial Memo., Sec. II, ¶ 8.)

2.    On or about October 31, 2003, the MWRA notified Insituform that the liner it had manufactured and installed did not meet the contract requirements and was, therefore, unacceptable, and had to be repaired or replaced (the "MWRA Claim").  (Joint Pretrial Memo., Sec. II, ¶ 10.)

3.    American Home Assurance Company is a New York corporation with its principal place of business in New York, New York.  (Joint Pretrial Memo., Sec. II, ¶ 1.)

4.    American Home issued an umbrella liability insurance policy, Policy Number BE-3206923, to Insituform for the period July 1, 2003 to July 1, 2004 (the "American Home Policy").  (Joint Pretrial Memo., Sec. II, ¶ 2.)

5.    Insituform is a Delaware corporation, with its principal place of business in Chesterfield, Missouri.  (Joint Pretrial Memo., Sec. II, ¶ 4.)

6.    Insituform specializes in sewer rehabilitation through trenchless pipeline technologies.  (Joint Pretrial Memo., Sec. II, ¶ 5.)

7.    Insituform's North American rehabilitation operations, including research and development, engineering, training and financial support systems, are headquartered in Chesterfield, Missouri.  (Joint Pretrial Memo., Sec. II, ¶ 6.)

8.    In 2003, Insituform operated in every U.S. state.  (Joint Pretrial Memo., Sec. II, ¶ 4.)

9.    Insituform's tube manufacturing facilities for North America in 2003 were maintained in eight locations, geographically dispersed throughout the United States and Canada. (Joint Pretrial Memo., Sec. II, ¶ 6.)

10.    Barry E. Schnurman of Lockton Companies of St. Louis, Inc. acted on behalf of Insituform as a broker in negotiating and procuring the American Home Policy at issue.  Mr. Schnurman's business address is:  Barry E. Schnurman, CPCU, ARM, Vice President, Lockton Companies, Three City Place Drive, Suite 900, St. Louis, Missouri  63141, (314) 812-3289. (Joint Pretrial Memo., Sec. II, ¶ 16.)

The following additional facts are relevant to the Court's choice of law and prejudgment interest determinations:

1.    Margaret Hoeler was the underwriter responsible for the American Home Policy at issue and was involved in negotiating, underwriting and approving the American Home Policy at issue.  (Affidavit of Margaret Hoeler ("Hoeler Aff."), ¶ 2.)

2.    American Home is authorized to do business in the State of Missouri.  (Hoeler Aff., ¶ 4.)

3.    The American Home Policy was produced by Lockton Companies of St. Louis, Inc., 1 City Place Drive, Suite 160, St. Louis, Missouri 63141.  (Complaint, Exhibit B; Exhibit PL 1, at I 00105.)

4.    The premium for the American Home Policy was determined based on American Home's rates filed with the State of Missouri, the location of Insituform's headquarters.  (Hoeler Aff., ¶ 3.)

5.    The Coverage Part of the American Home Policy's Insuring Agreement provides, in relevant part, that American Home:

> [W]ill pay on behalf of the **Insured** those sums in excess of the Retained Limit that the **Insured** becomes legally obligated to pay by reason of liability imposed by law . . . because of . . . **Property Damage** . . . that takes place during the Policy Period and is caused by an **Occurrence** happening *anywhere in the world.*

> (Complaint, Exhibit B; Exhibit PL 1, at I 00106.  Bold in original, italics added.)

6.    The American Home Policy's three-page Schedule of Underlying Insurance identifies 14 insurance policies, including three described as "foreign" liability policies. (Complaint, Exhibit B; Exhibit PL 1, at I 00122-124.)

7.    Count III of Insituform's Complaint asserted that American Home violated Missouri's bad faith statute, Mo. Rev. Stat. § 374.420.  (Complaint, Count III.)  The Court has entered judgment in American Home's favor on Count III.  [Docket Entry 24.]

*Facts Related to Prejudgment Interest Calculation*

8.    On December 29, 2003, Insituform provided American Home with first notice of the MWRA Claim.  (Complaint, ¶ 21.)

9.      On February 13, 2004, American Home denied coverage for the MWRA Claim. (Complaint, ¶ 21.)

10.     Insituform commenced this lawsuit on March 10, 2004, by filing its Complaint, which did not quantify damages.  (Complaint.)

11.     In its initial disclosure dated May 4, 2004, Insituform notified American Home that "[w]hile Insituform has sustained covered losses in excess of American Home's attachment point, the amount of the loss is still not known as the repair and replacement is ongoing." (Affidavit of Gregory P. Deschenes ("Deschenes Aff."), ¶ 2.)

12.     The Phase I and Phase II repairs to the liner took place between December 2003 and April 2004 and July 2005 and August 2005, respectively.  (Joint Pretrial Memo., Sec. II, ¶¶ 12 and 13.)

13.     On December 10, 2004, Liberty Mutual determined that there was coverage for the MWRA Claim under the Liberty Mutual Policy.  (Joint Pretrial Memo., Sec. II, ¶ 14.)

14.     On December 13, 2004, Liberty Mutual issued a check to Insituform in the amount of $650,000 for the MWRA Claim, exhausting the Liberty Mutual Policy's limits.  (Joint Pretrial Memo., Sec. II, ¶ 15.)

15.     By letter dated January 18, 2005, Insituform notified American Home that Liberty Mutual had concluded adjustment of the loss and paid its full policy limit.  (Deschenes Aff., ¶ 3.) The letter states, in pertinent part:

> As you may recall, when we initiated the action and filed the original motion for summary judgment, Liberty Mutual was still adjusting the loss.  As a result, we did not seek summary judgment as to the breach of contract count as the underlying limit has not been exhausted.  Now, the underlying limit is exhausted and American Home's failure to pay at this point in time constitutes a breach of contract.

(Id.)

16.    On April 7, 2006, Insituform provided its first complete damages calculation in its answers to American Home's first set of interrogatories.  There, Insituform estimated its total damages at $7,482,504.77, but qualified that:  "Insituform's analysis and compilation of the costs associated with the MWRA Claim are ongoing and subject to adjustment."  (Deschenes Aff., ¶ 4.)

17.    Insituform repeatedly provided differing damages estimates after April 7, 2006.  (See, e.g., American Home Assurance Company's Motion *In Limine* to Exclude All Evidence Concerning Plaintiff's New Consequential Damages Claim and For Imposition of Sanctions Against Plaintiff and its Counsel, dated January 18, 2008.)  [Docket Entry 82.]


## ARGUMENT

### A.    Under Massachusetts choice of law principles, Missouri's prejudgment interest statute applies to the MWRA Claim.

Massachusetts choice of law principles require that a single state's laws govern rights under an insurance policy where, as here, one insurance policy covers an insured's operations in multiple states.  Because the relevant factors here favor Missouri law, Insituform's recovery for the MWRA Claim is governed by Missouri's prejudgment interest statute.

Throughout this litigation, Missouri and Massachusetts law have been substantively similar.  Not so with prejudgment interest.  Massachusetts General Law c. 231, § 6C, provides for a 12 percent annual prejudgment interest rate for contractual claims.  Missouri Revised Statute § 408.020 provides for a 9 percent prejudgment rate.

Massachusetts choice of law principles apply because this Court is sitting in diversity jurisdiction.  Millipore Corp. v. Travelers Indem. Co., 115 F.3d 21, 29 (1st Cir. 1997).

Massachusetts uses "a flexible interest-based approach to conflict of laws issues and will consider a wide variety of factors in choosing the applicable law." Id. at 30 (citation omitted).

Despite the flexibility of this approach, the Massachusetts Supreme Judicial Court ("SJC") has concluded that only one state's law should apply to an insurance coverage dispute where a single insurance policy covers an insured's operations in multiple states. In particular, the SJC has concluded that "a duty to defend or indemnify under a nationwide comprehensive general liability policy as to [an underlying] claim should not depend on the law of the jurisdiction governing that particular claim, but should be determined by the law governing the interpretation of the insurance policy and its issuance." W.R. Grace & Co. v. Hartford Acc. & Indem. Co., 407 Mass. 572, 586 (1990); see also Millipore, 115 F.3d at 31 ("Under Massachusetts law, one jurisdiction's rules of decision must be applied to all sites covered under [a] multistate [comprehensive general liability] policy"); United Tech. Corp. v. Liberty Mut. Ins. Co., 407 Mass. 591, 597 n.10 (1990) (agreeing with New Jersey Supreme Court's view that "the notion that the insured's rights under a single policy vary from state to state depending on the state in which the claim invoking the coverage arose contradicts not only the reasonable expectations of the parties but also the common understanding of the commercial community") (citation omitted).

Because Massachusetts law provides that only one state's law will apply to insurance coverage disputes, courts place special emphasis on the parties' expectations *at the time the policy was issued.* Millipore, 115 F.3d at 31. Accordingly, courts applying Massachusetts choice of law principles in these circumstances apply the law of the policyholder's principal place of business, especially where, as here, the same state is the location where the policy was

negotiated and delivered. See id. at 31 (applying Massachusetts law); W.R. Grace, 407 Mass. at

585 (concluding New York law would apply).

Here, the relevant choice of law facts point in favor of Missouri law applying. In 2003,

Insituform operated in every state. Insituform's tube manufacturing facilities for North America

in 2003 were likewise dispersed across eight locations throughout the United States and Canada.

The American Home Policy insuring Insituform is excess of 14 underlying insurance policies,

including three described as "foreign" liability policies. The Coverage Part of the American

Home Policy's Insuring Agreement applies to "**Property Damage** . . . that takes place during the

Policy Period and is caused by an **Occurrence** happening *anywhere in the world*." (Bold in

original, italics added.)

Because Insituform operated nationwide in 2003, Massachusetts choice of law principles

favor Missouri. Missouri was the location of Insituform's principal place of business. Missouri

also was the location of Insituform's North American financial support systems, including the

research and development, engineering and training for its rehabilitation operations. Insituform

used a Missouri broker, Barry E. Schnurman of Lockton Companies of St. Louis, Inc., to

negotiate and procure the American Home Policy. The premium for the American Home Policy

was determined based on American Home's rates filed with the State of Missouri, the location of

Insituform's headquarters. The American Home Policy ultimately was produced in Missouri by

a Missouri broker.[1]

---

[1]    Insituform may contend that the coverage at issue is first-party property, not general liability, and
therefore the location of the insured risk takes on greater weight. Insituform also may contend that
the policy that is the subject of interpretation is not the American Home Policy but the Liberty Mutual
primary policy and its Contractor Rework Coverage Amendment. American Home disagrees. First,
the American Home Policy is an umbrella liability, not a first-party property insurance policy.
Moreover, regardless of whether the American Home Policy is considered a liability or first-party
property policy, where, as here, the policy covers the insured's operations in multiple states,
Massachusetts choice of law principles place greater emphasis on the place of making the contract

Not only do the *objective* facts demonstrate that the parties expected that Missouri law would apply in an insurance coverage dispute, Insituform at the outset of this litigation *subjectively* believed that Missouri law applied. Indeed, Insituform asserted in its Complaint that American Home's claims handling violated Missouri's bad faith statute.

Given all of these factors, this Court should conclude that Insituform's recovery for the MWRA Claim is governed by Missouri's prejudgment interest statute, Mo. Rev. Stat. § 408.020.

**B.    In Missouri, prejudgment interest does not run until after the date that a claim becomes liquidated and Insituform's claim did not become liquidated until April 7, 2006, when Insituform first provided its damages calculation in its interrogatory answers.**

Missouri Revised Statute § 408.020 authorizes the award of prejudgment interest only for liquidated claims. Therefore, under established Missouri law, prejudgment interest does not run until after the date that a claim becomes liquidated. Commercial Union Assur. Co. of Australia, Ltd. v. Hartford Fire Ins. Co., 86 F. Supp. 2d 921, 931-932 (E.D. Mo. 2000) ("Missouri courts have held that 'in determining whether prejudgment interest should be awarded, the significant questions are whether and when the amount due became 'liquidated''") (quoting Twin River Constr. Co. v. Pub. Water Dist. No. 6, 653 S.W.2d 682, 695 (Mo. Ct. App. 1983)); Fohn v. Title Ins. Corp. of St. Louis, 529 S.W.2d 1, 5 (Mo. 1975) (a claimant may not recover prejudgment interest in Missouri on an unliquidated claim); Ritter Landscaping, Inc. v. Meeks, 950 S.W.2d 495, 497 (Mo. Ct. App. 1997). A claim becomes liquidated when it becomes "fixed and

---

and the insured's principal place of business. Second, even though this Court ruled that the American Home policy "follows form" to the Liberty Mutual Policy, American Home and Liberty Mutual had separate and distinct contracts with Insituform. See Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London, 449 Mass. 621, 633 (2007) (excess carrier is not bound by the primary carrier's coverage determination, even where the policy expressly provides follow form coverage; "[t]o conclude otherwise would undermine the distinct and separate nature of each insurer's contract"). Accordingly, this Court should focus on choice of law facts related to the American Home Policy, not the separate Liberty Mutual Policy.

determined or readily ascertainable by computation or recognized standard." Transit Cas. Co. v. Selective Ins. Co. of the Southeast, 137 F.3d 540, 546 (8th Cir. 1998) (quoting Schnucks v. Carrollton Corp. v. Bridgeton Health and Fitness, Inc., 884 S.W.2d 733, 740 (Mo. Ct. App. 1994)). The rationale for this rule is that one cannot default on debt if he "does not know the amount he owes." Fohn, 529 S.W.2d at 5.

The Eighth Circuit's decision in Hampton Foods, Inc. v. Aetna Cas. and Sur. Co., 787 F.2d 349 (8th Cir. 1986), is particularly instructive. There, Hampton purchased a property policy from Aetna that covered losses resulting from "risks of direct physical loss." Hampton Foods, 787 F.2d at 351. Hampton incurred expenses in evacuating its building when it showed signs of collapse. Id. Aetna denied Hampton's claim on the ground that the policy did not cover damages resulting from mere conjectural risks. Id. at 352. The District Court found the policy language ambiguous and construed the ambiguity against Aetna. Id. at 351-352. However, the District Court denied recovery for lost profits, interest expenses on corporate debts, vexatious refusal to pay damages, and *prejudgment interest*. Id. at 351.

On appeal, the Eighth Circuit affirmed the District Court's refusal to award prejudgment interest. The court held that Hampton Foods' claim was not liquidated and that Hampton Foods was not entitled to prejudgment interest because "Hampton's claim presented a novel situation where there was justifiable lack of certainty as to whether liability existed and as to the measure of damages." Id. at 353. "Under such circumstances . . . damages were not sufficiently ascertainable to justify an award of prejudgment interest." Id.; see also Fohn, 529 S.W.2d at 5 (concluding plaintiff's claim unliquidated and denying prejudgment interest where title insurer unsuccessfully denied liability, unsuccessfully argued that the measure of damages was the value of the lost parcel rather than the lost value to the whole tract, and unsuccessfully disputed

plaintiff's evidence of the loss); <u>Ritter Landscaping</u>, 950 S.W.2d at 496-497 (holding that even if prejudgment interest was available on a tort claim, plaintiff's claim that defendant failed to procure flood insurance was unliquidated since there was no readily ascertainable method for computing damages).

In this case, Insituform's claim did not become liquidated until April 7, 2006, the date that Insituform provided its first complete damages estimate. In its initial disclosure of May 4, 2004, Insituform stated that "the amount of the loss is still not known as the repair and replacement is ongoing. [Its consequential damages] are not yet computed due to incomplete information." In addition, the so-called Phase II repairs were not completed until August 2005. Finally, on April 7, 2006, Insituform provided its first complete damages calculation in its answers to American Home's first set of interrogatories, but qualified: "Insituform's analysis and compilation of the costs associated with the MWRA Claim are ongoing and subject to adjustment." Indeed, even after April 7, 2006, Insituform repeatedly provided differing damages estimates.

Insituform contends that prejudgment interest should begin to run as early as January 1, 2004, two days after it provided its first notice of loss to American Home. However, under established Missouri law, Insituform's damages were not liquidated in January 2004 because they were not "fixed and determined" or "readily ascertainable by computation."

As in <u>Hampton Foods</u>, Insituform's claim presented "a novel situation where there was justifiable lack of certainty as to whether liability existed." American Home was justified in believing that its policy did not follow form to the "Contractor Rework Coverage Amendment" in the Liberty Mutual Policy. Like the <u>Hampton Foods</u> Court, this Court only found liability because it applied the rule that courts must construe ambiguity against an insurer. "In this

circumstance, the tie-breaking rule must be invoked." See Memorandum and Order, March 30, 2005 [Docket Entry 24.] Thus, American Home's uncertainty concerning liability was every bit as "justifiable" as Aetna's uncertainty in Hampton Foods.

Moreover, as in Hampton Foods, there was "justifiable lack of certainty" as to the measure of damages in this case. Like in Hampton Foods, the parties here disputed damages for lost profits, business interruption, consequential damages in the form of interest expenses on corporate debt, and vexatious refusal to pay. While many of these uncertainties persisted until the damages stipulation on February 1, 2008, American Home could not even begin to ascertain how much it owed until Insituform provided a complete estimate of its damages on April 7, 2006.

Accordingly, this Court should find that prejudgment interest did not begin to run until Insituform's claim became liquidated, on or about April 7, 2006.[2]

**C.    Alternatively, prejudgment interest did not begin to run until December 13, 2004, at the earliest, when the primary insurer paid the claim and exhausted its coverage.**

In the event the Court disagrees with American Home's argument in Section B above, the Court should rule that prejudgment interest did not begin to run until December 13, 2004, at the earliest, the date on which Liberty Mutual paid the claim and the underlying policy limit was exhausted.

---

[2]    Using Insituform's cost numbers, and applying a 9 percent interest rate, American Home determined that the prejudgment interest from April 7, 2006 to February 25, 2008 totals $1,029,124.04. (See American Home's spreadsheet attached hereto as Exhibit A.) It is important to note, however, that this calculation is based on Insituform's costs on an "accrual" as opposed to a cash basis, i.e., when Insituform incurred the costs as opposed to when it actually paid for the costs. As argued in Section D below, it is American Home's position that prejudgment interest should run from the dates when Insituform paid the costs at issue, not the dates when such costs accrued. However, this issue is of less importance if the Court finds that prejudgment interest runs from April 7, 2006, inasmuch as Insituform likely paid all of its costs by April 7, 2006.

Under Mo. Rev. Stat. § 408.020, when an insured sues for benefits under an insurance policy, "[t]he general rule is a policyholder is entitled to interest from the date the claim became payable under the policy." Nichols v. Preferred Risk Group, 44 S.W.3d 886, 896 (Mo. Ct. App. 2001) (quoting Huffstutter v. Michigan Mut. Ins. Co., 778 S.W.2d 391, 394 (Mo. Ct. App. 1989); Francka v. Fire Ins. Exch., 668 S.W.2d 189, 190-191 (Mo. Ct. App. 1984); St. Louis County Nat'l. Bank v. Maryland Cas. Co., 564 S.W.2d 920, 930 (Mo. Ct. App. 1978).

It is well established that an excess insurer's liability is not triggered until the primary insurance is exhausted by payment or settlement. A majority of jurisdictions, including Missouri and Massachusetts, have adopted the rule that an excess insurer has no duty to indemnify or contribute to a settlement until after the primary insurer's policy limits have been exhausted. See, e.g., Reliance Ins. Co. v. Chitwood, 433 F.3d 660, 663-664 (8th Cir. 2006) (Missouri law) ("In general, an excess insurer does not pay until the limit of the insured's primary insurance is 'exhausted'"); United States Fidelity & Guar. Co. v. Safeco Ins. Co., 555 S.W.2d 848, 853 (Mo. Ct. App. 1977) (excess insurer "is liable only when the primary insurer's . . . liability has been exhausted" and "exhaustion of the primary insurance [is] a necessary condition precedent to liability under [an] excess policy"); Barrett v. Chin, 843 F. Supp. 783, 787 (D. Mass. 1994) (policies were excess, "attaching only in excess of underlying insurance. Liability commences only when all underlying insurance is exhausted").

These cases make clear that the primary insurer pays first and the excess insurer then pays only after the primary is exhausted. Planet Ins. Co. v. Ertz, 920 S.W.2d 591, 593 (Mo. Ct. App. 1996) ("Primary insurance *first* pays toward the loss. Excess insurance *then* pays *after* the limit of the primary insurance is exhausted . . . excess insurance policies begin coverage *when* the underlying coverage ends") (emphases added); Smith v. Wausau Underwriters Ins. Co., 977

S.W.2d 291, 293 (Mo. Ct. App. 1998) (emphasis added) (excess insurance policy pays "only *after* the limit of the insured's primary insurance [is] exhausted").  Accordingly, as an excess carrier, American Home's liability was not triggered until the primary limit was exhausted by Liberty Mutual's payment on December 13, 2004.

Insituform now contends that prejudgment interest should begin to run as early as January 2004.[3]  Insituform argues that under the "When Loss is Payable" provision and "Retained Limit" definition of the American Home Policy, the loss was payable when either Insituform or Liberty Mutual paid, or became obligated to pay, $1,000,000.  However, Insituform's argument is inconsistent with both the plain language of the American Home Policy and the case law.

The "When Loss is Payable" provision and "Retained Limit" confirm that American Home has no liability unless and until the primary insurance is exhausted.  The "When Loss is Payable" provision reads in full:

> Coverage under this policy will not apply unless and until the Insured or the Insured's underlying insurer is obligated to pay the Retained Limit.
>
> When the amount of loss has finally been determined, we will promptly pay on behalf of the Insured the amount of loss falling within the terms of the policy.
>
> You shall promptly reimburse us for any amount within the Self Insured Retention paid by us on behalf of an Insured.

American Home Policy, Condition P, at 15.

The "Retained Limit" provision reads in full:

---

[3]  Insituform's position on when American Home's breach of contract occurred and when prejudgment interest started to run on the MWRA Claim has shifted frequently during the course of this litigation. Initially, on January 18, 2005, Insituform contended that with Liberty Mutual's *December 13, 2004* payment, "the underlying limit is exhausted and American Home's failure to pay at this point in time constitutes a breach of contract."  More recently, in the Joint Pretrial Memorandum, Insituform took the position that it was entitled to recover prejudgment interest from *March 10, 2004.*

We will be liable only for that portion of damages in excess of the Insured's Retained Limit which is defined as the greater of either:

1. The total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the Insured; or

2. The amount stated in the Declarations as Self Insured Retention as a result of any one Occurrence not covered by the underlying policies listed in the Schedule of underlying Insurance nor by any other underlying insurance providing coverage to the Insured;

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

American Home Policy, Limit E., at 2.

Under the above provisions, it is clear that American Home is not liable to pay a claim unless and until the applicable limit of the underlying policy is exhausted, thereby triggering American Home's obligation to pay damages in excess of the Retained Limit. Even Insituform acknowledged this when it contended in its January 18, 2005, letter that with Liberty Mutual's December 13, 2004 payment, "the underlying limit is exhausted and American Home's failure to pay at this point in time constitutes a breach of contract." Moreover, Liberty Mutual itself was not "obligated" to pay Insituform the Retained Limit earlier than December 13, 2004, when Liberty Mutual had completed its investigation, determined that there was coverage and concluded its adjustment of the loss.[4]  Contrary to Insituform's assertion, the "When Loss is Payable" provision would only apply to Insituform's obligation to pay the Retained Limit if Insituform's claim was covered by the self-insured retention and if Insituform had exhausted that

---

[4]    The Liberty Mutual Policy does not specify when damages become payable.  However, it does state: "We may, at our discretion, *investigate* any 'occurrence' and settle any claim or 'suit' that may result," (Declarations, at I 00007) (emphasis added), and "We have the right to: a. Make inspections and surveys at any time." (Declarations, at I00021).  Also, in Missouri, when a contract does not specify the time for performance, "performance must be made within a reasonable time." Millington v. Masters, 96 S.W.3d 822, 830 (Mo. Ct. App. 2002).  "What constitutes a reasonable time depends upon the circumstances of each case." Id.  Accordingly, under the Liberty Mutual Policy, Liberty Mutual had a "reasonable time" to investigate and make a final determination on Insituform's claim.

self-insured retention under section two of the "Retained Limit" definition.  Finally, Insituform

conveniently ignores that the "When Loss is Payable" provision does not require American

Home to pay until "the amount of loss has *finally* been determined." (Emphasis added).  Here, as

set forth above, the amount of Insituform's loss was not "finally" determined until sometime in

2006.  See Landes v. State Farm Fire & Cas. Co., 907 S.W.2d 349, 354, 356 (Mo. Ct. App. 1995)

(holding that insurer complied with the terms of the property policy by paying insured *after*

insured *completely finished* repairing fire-damaged property, because the policy provided that if

insurer paid on a replacement cost basis, it did not have to pay until insured completed repairs).[5]

### D.      Prejudgment interest runs from the dates of actual payment of the costs, not when such costs accrued.

In its proposed prejudgment interest calculations, Insituform listed the costs on an

"accrual" as opposed to a cash basis, *i.e.*, when Insituform incurred the costs as opposed to when

it actually paid for the costs.  However, prejudgment interest should run from the dates when

Insituform paid the costs at issue, not the dates when such costs accrued.

The primary purpose behind the Missouri prejudgment interest statute is to compensate a

party for the loss of use of its money.  Davis v. Stewart Title Guar. Co., 726 S.W.2d 839, 854

(Mo. Ct. App. 1987) ("The award of prejudgment interest subserves two policies:  to compensate

for the *true cost* of the money damages incurred, and *where liability and the damages are fairly

certain*, to promote settlement and to deter unfair benefit from the delay of litigation.")

(emphases added).

---

[5]  Using Insituform's cost numbers, and applying a 9 percent interest rate, American Home determined that the prejudgment interest from December 13, 2004 to February 25, 2008 totals $1,628,917.36. (See American Home's spreadsheet attached hereto as Exhibit A.)  Again, it is important to note that this calculation is based on when Insituform incurred the costs as opposed to when it actually paid for the costs.  As argued in Section D below, it is American Home's position that prejudgment interest should run from the dates when Insituform paid the costs at issue, not the dates when such costs accrued.

If prejudgment interest were calculated based on when the costs accrued, Insituform would receive interest when it had not been deprived of the use of its money. Moreover, to the extent that there were any delays in payment of costs, Insituform would get to enjoy the benefit of the "float," resulting in a windfall for Insituform. However, the dates of actual payment of the costs, which should be readily ascertainable, are the relevant dates for purposes of calculating prejudgment interest, because before those costs were paid, Insituform was not deprived of the use of its money. See Sterilite Corp. v. Cont'l Cas. Co., 397 Mass. 837, 841-842 (1986) (holding that prejudgment interest did not start running until dates that insured paid bills for legal fees since insured "was not deprived of the use of its money" before those dates). Any other rule would result in a windfall for Insituform, which the legislature could not have intended.[6]

**E.    American Home is entitled to a credit for the full amount of Liberty Mutual's $1 million underlying policy limit up front before any prejudgment interest is calculated against American Home, because American Home could not be liable under its policy unless and until the underlying insurer had been obligated to pay $1 million in costs.**

A final issue regarding prejudgment interest concerns when American Home should benefit from Liberty Mutual's $1 million payment. Under Insituform's proposed prejudgment interest calculations, American Home would receive the benefit of the Liberty Mutual payments (i.e., a $1 million offset against Insituform's total costs of $7,054,899) when they were made, in September and December 2004. However, American Home should receive the credit for the full amount of Liberty Mutual's $1 million policy limit up front before any prejudgment interest is calculated against American Home, because, as discussed above, American Home could not be

---

[6]    Note that because Insituform's proposed prejudgment interest calculations were based on when it incurred costs and because Insituform has not provided all the dates on which it paid each cost, the Court must order Insituform to submit evidence of the dates it paid each cost. However, this issue will likely be moot if the Court finds that prejudgment interest runs from April 7, 2006, see Argument, Section B, supra, inasmuch as Insituform likely paid all of its costs by April 7, 2006.

liable under its policy unless and until the underlying insurer had been obligated to pay $1 million in costs.

## CONCLUSION

For the foregoing reasons, this Court should conclude and rule that: (1) the Missouri prejudgment interest statute applies to Insituform's recovery for the MWRA Claim; (2) prejudgment interest did not begin to run until Insituform's claim became liquidated, on or about April 7, 2006; (3) alternatively, prejudgment interest did not begin to run until December 13, 2004, at the earliest, the date on which Liberty Mutual paid the claim and the underlying policy limit was exhausted; (4) prejudgment interest runs from the dates of Insituform's payment of costs, not when the costs accrued; and (5) American Home is entitled to a credit for the full amount of Liberty Mutual's $1 million policy limit up front before any prejudgment interest is calculated against American Home, because American Home could not be liable under its policy unless and until the underlying insurer had been obligated to pay $1 million in costs.

Respectfully submitted,

AMERICAN HOME ASSURANCE COMPANY,

By its attorneys,

/s/ Gregory P. Deschenes
Gregory P. Deschenes (BBO #550830)
gdeschenes@nixonpeabody.com
Kurt M. Mullen (BBO #651954)
kmullen@nixonpeabody.com
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts  02110
(617) 345-1000
(617) 345-1300 (facsimile)

Dated:  February 25, 2008

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon all parties registered for electronic notification via the Court's electronic filing system on February 25, 2008.

<u>/s/ Gregory P. Deschenes</u>
Gregory P. Deschenes

# EXHIBIT A

Instituform Technologies Inc. v. American Home Assurance Co.
MWRA Claim
American Home's Preliminary Calculation of Monthly Prejudgment Interest

| | Monthly Cost | Cumm. Cost | Liberty Limit Credit | Net Alleged Costs incurred | 9% Calculated From 4/7/06 | | 9 % Calculated From 12/13/04 | |
|---|---|---|---|---|---|---|---|---|
| 10/31/03 | 44,079 | 44,079 | 1,000,000 | -955,921 | | | | |
| 11/30/03 | 645,409 | 689,488 | | -310,512 | | | | |
| 12/31/03 | 645,313 | 1,334,801 | | 334,801 | | | | |
| 01/31/04 | 953,588 | 2,288,389 | | 1,288,389 | | | | |
| 02/29/04 | 266,273 | 2,554,662 | | 1,554,662 | | | | |
| 03/31/04 | 1,792,548 | 4,347,210 | | 3,347,210 | | | | |
| 04/30/04 | 421,665 | 4,768,875 | | 3,768,875 | | | | |
| 05/31/04 | 245,834 | 5,014,709 | | 4,014,709 | | | | |
| 06/30/04 | 37,907 | 5,052,616 | | 4,052,616 | | | | |
| 07/31/04 | | 5,052,616 | | 4,052,616 | | | | |
| 08/31/04 | | 5,052,616 | | 4,052,616 | | | | |
| 09/30/04 | | 5,052,616 | | 4,052,616 | | | | |
| 10/31/04 | | 5,052,616 | | 4,052,616 | | | | |
| 11/30/04 | | 5,052,616 | | 4,052,616 | | | | |
| 12/31/04 | | 5,052,616 | | 4,052,616 | | | 18,628.96 | 19 Days from 12/13/04 |
| 01/31/05 | | 5,052,616 | | 4,052,616 | | | 30,394.62 | |
| 02/28/05 | | 5,052,616 | | 4,052,616 | | | 30,394.62 | |
| 03/31/05 | | 5,052,616 | | 4,052,616 | | | 30,394.62 | |
| 04/30/05 | 20,344 | 5,072,960 | | 4,072,960 | | | 30,547.20 | |
| 05/31/05 | 12,384 | 5,085,344 | | 4,085,344 | | | 30,640.08 | |
| 06/30/05 | 8,582 | 5,093,926 | | 4,093,926 | | | 30,704.45 | |
| 07/31/05 | 480,085 | 5,574,011 | | 4,574,011 | | | 34,305.08 | |
| 08/31/05 | 611,174 | 6,185,185 | | 5,185,185 | | | 38,888.89 | |
| 09/30/05 | 593,749 | 6,778,934 | | 5,778,934 | | | 43,342.01 | |
| 10/31/05 | 275,965 | 7,054,899 | | 6,054,899 | | | 45,411.74 | |
| 11/30/05 | | 7,054,899 | | 6,054,899 | | | 45,411.74 | |
| 12/31/05 | | 7,054,899 | | 6,054,899 | | | 45,411.74 | |
| 01/31/06 | | 7,054,899 | | 6,054,899 | | | 45,411.74 | |
| 02/28/06 | | 7,054,899 | | 6,054,899 | | | 45,411.74 | |
| 03/31/06 | | 7,054,899 | | 6,054,899 | | | 45,411.74 | |
| 04/30/06 | | 7,054,899 | | 6,054,899 | 36,329.39 | 24 Days from 4/7/06 | 45,411.74 | |
| 05/31/06 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 06/30/06 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 07/31/06 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 08/31/06 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 09/30/06 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 10/31/06 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 11/30/06 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 12/31/06 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 01/31/07 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 02/28/07 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 03/31/07 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 04/30/07 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 05/31/07 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 06/30/07 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 07/31/07 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 08/31/07 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 09/30/07 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 10/31/07 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 11/30/07 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 12/31/07 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 01/31/08 | | 7,054,899 | | 6,054,899 | 45,411.74 | | 45,411.74 | |
| 02/25/08 | | 7,054,899 | | 6,054,899 | 39,148.05 | 25 Days in February | 39,148.05 | 25 Days in February |
| | | | | | 1,029,124.04 | | 1,628,917.36 | |

10903326